## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.** [1] | Case No. 15-11498 (____) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY AND HONOR CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION OBLIGATIONS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") for the entry of interim and final orders, substantially in the forms attached hereto as Exhibits A and B, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), (i) authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to pay and honor certain prepetition wages, benefits, and other compensation obligations, and (ii) authorizing the Debtors' banks and other financial institutions (collectively, the "**Banks**") to honor and process related checks and electronic transfers. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Christopher S. Cunningham in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), which was filed with the Court concurrently herewith. In further support of this Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3.      The Debtors continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

4.      Additional information about the Debtors' business, their capital and debt structure, and the events leading up to the Petition Date can be found in the First Day Declaration.

### The Debtors' Workforce

5.      The Debtors currently employ 302 employees (collectively, the "**Employees**"), of which approximately 96 are full-time, salaried Employees and 206 are full-time, hourly Employees.  In addition, the Debtors engage approximately 22 independent contractors or

subcontractors that provide additional personnel to complement the Debtors' services through delivery of project-specific services that the Employees are unable to provide (the "**Independent Contractors**").[2]   The Debtors also contract with third-party staffing companies that provide personnel to the Debtors, including painters, fitters, welders, and certain carpenters (the "**Staffing Companies**").   Currently, the Staffing Companies provide the Debtors with approximately 15 individuals who perform services that are fundamental to the day-to-day operations of the Debtors.

6.     As more fully discussed below, to ensure that the Debtors can provide their customers with the highest levels of service and effectively operate the Debtors' business, minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as otherwise expected, and maintain employee morale and a focused workforce during this critical time, the Debtors believe it is necessary and in the best interest of the estates and all stakeholders to seek the relief requested herein.

### RELIEF REQUESTED

7.     By this Motion, the Debtors request that the Court enter interim and final orders authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to (i) pay, honor, or otherwise satisfy prepetition obligations incurred in relation to the Wage Obligations, the Independent Contractor Obligations, the Reimbursable Expenses, the Deductions, the Payroll Taxes, the Employee Benefits, and the Workers' Compensation Program, including all fees and costs incident to the foregoing and related amounts owed to

---

[2]     To the extent the costs related to certain Independent Contractors are included as a surcharge billed to the Debtors' clients and customers, the Debtors are seeking authority, but not direction, to pay such Independent Contractors under the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Honor and Pay (A) Prepetition Customer Obligations and (B) Prepetition Obligations that are Reimbursable by Customers and (II) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations.*

third-party administrators (collectively, and as described in greater detail below, the "**Employee Wages and Benefits**") and (ii) continue to honor in the ordinary course of business the practices, programs, and policies with respect to the Employee Wages and Benefits, as those practices, programs, and policies were in effect as of the Petition Date, and as such practices, programs, and policies may be modified, amended, or supplemented from time to time in the ordinary course of business.

8.       The Debtors also request that the Court authorize the Banks, when requested by the Debtors, in their discretion, to honor and process any checks or electronic transfers drawn on the Debtors' bank accounts to pay any prepetition obligations described herein, whether such checks or other requests were submitted prior to or after the Petition Date, provided that sufficient funds are available to make such payments.  The Debtors further request that the Banks be authorized to rely on the Debtors' designation of any particular check or electronic transfer request as approved pursuant to this Motion.

I.       **OBLIGATIONS ON ACCOUNT OF EMPLOYEE WAGES, INDEPENDENT CONTRACTORS, REIMBURSABLE BUSINESS EXPENSES, DEDUCTIONS, AND PAYROLL TAXES**

A.       **Employee Wages**

9.       In the ordinary course of business, the Debtors pay wages and salaries on a weekly basis to hourly Employees and on a semi-monthly basis to salaried Employees (the "**Wage Obligations**").  The Debtors pay almost all of the Employees through direct deposit, except for a very small percentage that are paid by manually-issued check.  On average, the Debtors' estimated weekly payroll for hourly production Employees is approximately $185,000 and semi-monthly payroll for salaried and non-exempt Employees is approximately $415,000. As of the Petition Date, the Debtors believe approximately $185,000 in Wage Obligations have

01:16813972.7

accrued and remain unpaid.  The Debtors do not believe that the amount of Wage Obligations owed to any single Employee exceeds $12,475.

10.     The Debtors use Automatic Data Processing, Inc. (the "**Payroll Processor**") to administer payroll.  The Payroll Processor's services are crucial to the smooth functioning of the Debtors' payroll system and, therefore, to the Debtors' operations generally.  Payroll is made primarily through the Payroll Processor by direct deposit to the Employees' bank accounts.  On average, the Debtors pay $9,180 per month to the Payroll Processor (the "**Payroll Processor Fees**") for payroll-related services provided to the Debtors.  The Debtors estimate that approximately $4,000 in prepetition Payroll Processor Fees was outstanding as of the Petition Date.

### B.     Independent Contractor Obligations

11.     In addition to the Wage Obligations, the Debtors estimate that the average monthly payments to Independent Contractors is approximately $743,000 per month and the average monthly payments to the Staffing Companies is approximately $759,000 per month (collectively, the "**Independent Contractor Obligations**").  The Independent Contractor Obligations are paid through the Debtors' accounts payable system following submission of a documented and supported invoice, which must be approved by members of the relevant Debtors' operational team prior to payment.  Based on historical monthly averages, as of the Petition Date, the Debtors estimate that approximately $2,000,000 in prepetition Independent Contractor Obligations remains outstanding.  Given the significant role that these individuals, agencies, and subcontractors play in supporting the Debtors' delivery of services to their customers and clients, the Debtors are seeking authority, but not direction, to pay all prepetition Independent Contractor Obligations.  The Debtors believe that this relief is particularly justified because, in many cases, the costs of such Independent Contractor Obligations are directly or

01:16813972.7

indirectly passed through to, and ultimately paid by, the Debtors' customers. Therefore, the Debtors' payment of these obligations will not result in a net loss of value.

### C.    Reimbursable Expenses

12.    Prior to the Petition Date, and in the ordinary course of business, the Debtors reimburse Employees directly or pay corporate credit card invoices for certain business expenses incurred on the Debtors' behalf in the scope of the Employees' employment, including, without limitation, lodging and other similar business travel expenses (collectively, the "**Reimbursable Expenses**"). The Reimbursable Expenses are incurred in the ordinary course of the Debtors' business operations and include expenses for meals, travel, automobile mileage, and other business-related expenses. Most Employees initially incur and pay such expenses by using personal funds or credit cards and then are reimbursed by the Debtors after submission and approval of expense reimbursement requests. The Debtors also pay Reimbursable Expenses directly, without Employee cash outlay, through the use of a corporate credit card issued by Region Commercial Bankcard. Because a significant lag time may occur between the time certain Reimbursable Expenses are incurred and the time an expense reimbursement request is submitted, it is difficult to precisely determine the aggregate amount of outstanding Reimbursable Expenses. However, the Debtors estimate that, as of the Petition Date, approximately $75,000 in Reimbursable Expenses remains unpaid.

### D.    Deductions and Payroll Taxes

13.    During each applicable pay period, the Debtors routinely deduct certain amounts from the Employees' paychecks, including, without limitation, (i) garnishments, child support, and similar deductions and (ii) other pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein, such as the Employees' share of health care benefits, insurance premiums, 401(k) contributions, legally ordered deductions, and other

miscellaneous deductions (collectively, the "**Deductions**"), and forward those amounts to various third-party recipients.

14.     Further, the Debtors are required by law to withhold from the Employees' paychecks amounts related to, among other things, federal, state and local income taxes, and social security and Medicare taxes (collectively, the "**Withheld Amounts**") for remittance to the appropriate federal, state, and local taxing authorities.  The Debtors must then match from their own funds for social security and Medicare taxes and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (together with the Withheld Amounts, the "**Payroll Taxes**").  The Debtors believe that, as of the Petition Date, approximately $50,000 has accrued and remains unpaid on account of Payroll Taxes.

## II.    EMPLOYEE BENEFITS

15.     In the ordinary course of business, the Debtors provide their Employees, directly or indirectly, with a number of employee benefits, including, but not limited to:  (i) medical, dental, and vision coverage; (ii) vacation and other leaves of absences; (iii) a 401(k) retirement savings plan; (iv) flexible spending accounts for health and dependent care; (v) basic life insurance; and (vi) certain other employee benefits (collectively, the "**Employee Benefits**").

### A.    **Medical, Dental, and Vision Coverage**

16.     The Debtors provide medical and prescription drug coverage to full-time, regular Employees through a self-insured program administered by Fox-Everett, Inc. (the "**Medical Plan**").  The Debtors pay Fox-Everett monthly fees based on the number of covered Employees for administrative services related to the Medical Plan.  The Debtors pay, on average, approximately $30,000 per month in administrative fees and approximately $300,000 per month on account of Employee claims under the Medical Plan.  Employees participating in the Medical Plan are responsible for making a contribution for their benefits each pay period.  Employee

contributions to the Medical Plans average approximately $37,000 per month.  In addition, HCC Life Insurance Company provides the Debtors with stop-loss insurance for the Medical Plan for an additional premium paid through Fox-Everett.  The stop-loss insurance covers any claims in excess of $175,000 per covered Employee, as well as up to $1 million in coverage for aggregate claims that are in excess of a threshold of approximately $3.5 million.  As of the Petition Date, the Debtors estimate that they owe Fox-Everett approximately $21,000 in fees for prepetition administrative services related to the Medical Plan.

17.     In addition to the Medical Plan, the Debtors also make dental and vision insurance available to eligible Employees through Guardian and National Guardian Life Insurance Company, respectively.  The premiums for dental and vision insurance are paid entirely by the electing Employee.

### B.    Vacation and Additional Leave

18.     The Debtors provide eligible full-time Employees with various leaves of absence (paid and unpaid), including, but not limited to, leave related to vacation, sickness, certain holidays, jury duty, bereavement, and family leave (collectively, "**Vacation and Additional Leave**").

19.     The Debtors provide paid vacation time to full-time, regular Employees after one year of full-time continuous service.  Eligible Employees are entitled to earn vacation ranging from 40 hours to 160 hours based upon years of service and pursuant to company procedures. Production Employees are allowed to roll over a maximum of one week of vacation into the next anniversary year, but at no time may the amount of vacation exceed an Employee's earned vacation plus one week.  Any vacation carried over to the next year by a production Employee must be taken during that year or it will be forfeited.  Administrative Employees who have completed seven years or greater of service are allowed to roll over one week of vacation per

year, but at no time may the amount of vacation due the Employee exceed a total of four additional weeks of vacation in one year.  Any vacation not permitted to be rolled over by an administrative employee is forfeited.  Upon termination, Employees generally are entitled to a cash payment for accrued and unused vacation time.  As of the Petition Date, the Debtors estimate that there is approximately $656,000 in accrued and unused vacation time.

20.    Administrative Employees also are eligible to receive forty hours per anniversary year of paid sick leave after one year of continuous service.  Unused sick leave is not accumulated or rolled over and is forfeited at the end of employment.

C.    **Additional Employee Benefits**

(i)    **401(k) Plan**

21.    The Debtors offer a 401(k) plan for the benefit of eligible Employees (the "**401(k) Plan**").  The 401(k) Plan is administered by The Standard, and generally provides for automatic pre-tax earnings deductions of eligible compensation up to a certain percentage.  The Debtors do not make matching contributions to the 401(k) Plan.  As of the Petition Date, the Debtors believe they owe approximately $919.00 in outstanding administrative fees and expenses on account of the 401k Plan.

(ii)    **Flexible Spending Accounts**

22.    The Debtors also offer eligible Employees the ability to contribute a portion of their pre-tax compensation (collectively, the "**FSA Contributions**") to spending accounts (the "**FSA Plans**"), which contributions are deducted by the Debtors from the participating Employees' paychecks.  The FSA Contributions accumulate in participating Employees' flexible spending accounts and are available for Employees to use to pay for eligible out-of-pocket health care and dependent care expenses.  FSA Contributions are taken out of an Employee's paycheck and put in an account to be used for eligible expenses throughout the year.  As of the Petition

01:16813972.7

Date, the Debtors believe they owe approximately $42.00 in outstanding administrative fees and expenses on account of the FSA Plans.

### (iii) Basic Life Insurance

23.     The Debtors provide all eligible Employees with basic life and accidental death and dismemberment insurance coverage (collectively, the "**Basic Insurance**") through Guardian. The Debtors provide Basic Insurance coverage to hourly Employees in the amount of $18,000, salaried Employees in the amount of $30,000, and Employees at the level of senior vice president and above in the amount of $50,000.  The Debtors pay approximately $1,500 per month on account of premiums for the Basic Insurance.  As of the Petition Date, the Debtors estimate that they owe approximately $2,035 on account of Basic Insurance.

### (iv) Supplemental Insurance

24.     The Debtors also provide eligible Employees with the opportunity to purchase: supplemental life and long-term disability insurance through Guardian; short-term disability, accident, and critical illness insurance through Unum; and Cancer/Specified Disease Insurance through American Heritage Life Insurance Company (collectively, the "**Supplemental Insurance**").  The premiums for the Supplemental Insurance are paid entirely by the electing Employee.

## III.   WORKERS' COMPENSATION PROGRAM

25.     The Debtors provide workers' compensation insurance for Employees at the statutorily-required level (the "**Workers' Compensation Program**").   These benefits are currently provided to Employees through fully insured policies with Great American Insurance Group and American Longshore Mutual Association, Ltd.

26.     In the aggregate, the annual cost of the Workers' Compensation Program is approximately $1,080,000.  As of the Petition Date, the Debtors believe they are current with

premium and administrative expenses in connection with the Workers' Compensation Program. To ensure that all claims incurred under the Workers' Compensation Program are resolved, the Debtors must pay any outstanding prepetition liability, as well as any premiums or true-ups, as they become due and owing.  For the claims administration process in these chapter 11 cases to operate as efficient as possible, and to ensure that the Debtors comply with state law requirements, it is necessary that the Debtors obtain authority to continue to maintain the Workers' Compensation Program in the ordinary course of business, and to pay any prepetition amounts related thereto, including, without limitation, any payments for workers' compensation claims, deductibles and fees owed for administrative costs, and other amounts required in connection with the program as such amounts become due in the ordinary course of the Debtors' business.

## BASIS FOR RELIEF

### I.    THE COURT SHOULD AUTHORIZE, BUT NOT DIRECT, THE DEBTORS, IN THEIR DISCRETION, TO PAY OR OTHERWISE HONOR THE EMPLOYEE WAGES AND BENEFITS.

27.    The Debtors seek the relief requested herein because any delay in paying or otherwise honoring any of the Employee Wages and Benefits could severely disrupt the Debtors' relationship with, and irreparably impair the morale of, the Employees, Independent Contractors, and Staffing Companies at a time when their continued dedication, confidence, cooperation, and services are most critical to the Debtors and the success of these chapter 11 cases.  The Debtors face the risk that their ability to effectively operate their business and the success of these chapter 11 cases and may be severely jeopardized if the Debtors are not immediately granted authority to pay the Employee Wages and Benefits.  Granting the relief requested in this Motion on the grounds set forth below will allow the Debtors to continue to operate with minimal disruption and enable them to maximize the value of their estates for the benefit of all stakeholders.

01:16813972.7

28.    Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,475 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A)    wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B)    sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services, for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor…

11 U.S.C. § 507(a)(4).

29.    Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> (A)    arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)    for each such plan, to the extent of –
>
> > (i)    the number of employees covered by each such plan multiplied by $12,475; less
> >
> > (ii)    the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

01:16813972.7

30.     The Debtors believe that a substantial portion, if not all, of the relief requested herein is within the statutory caps of sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. The Debtors, therefore, would be required to pay these claims in full to confirm any chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan).  Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts to the extent that they constitute priority claims.

31.     Even if a particular claim is not entitled to priority, payment is nonetheless justified under section 105(a) of the Bankruptcy Code and the well-established "doctrine of necessity."  The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The United States Supreme Court first articulated the doctrine of necessity over a century ago in *Miltenberger v. Logansport Railway Company*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  *See id.* at 309–14.  The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger.  See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581–82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious, jeopardy.").

32.    The doctrine of necessity permits the Court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

33.    The Debtors' ability to maximize value depends, in large part, upon the motivation of the Employees whose efforts will be critical to a successful restructuring process. Any disruption from Employee resignations or lack of morale could have adverse effects on the Debtors' restructuring efforts.  If amounts owed are not received, insurance reimbursements are not made, or other benefits delayed, Employees may suffer extensive personal hardship or face legal action that makes it difficult or impossible for them to continue working for the Debtors.

34.    In addition, the types of services provided by the Debtors are enhanced by the engagement of the Independent Contractors and Staffing Companies.  The personnel support provided by them is critical to the Debtors' business, particularly in circumstances where the Debtors are unable to provide a required service necessary to deliver the highest level of service to their customers.  In addition, the Debtors' clients often request, and even require, the services or products of specific Independent Contractors.  Without the ability to satisfy outstanding Independent Contractor Obligations, it is possible that the Staffing Companies and Independent

Contractors will refuse to provide services to the Debtors or provide services in a less than satisfactory manner, which would affect the Debtors' ability to retain clients and customers and damage the Debtors' chances of a successful restructuring.

35.     At this critical stage, the Debtors simply cannot risk the substantial disruption of their business and affairs that, in all likelihood, would accompany any decline in workforce morale attributable to the Debtors' failure to pay the Employee Wages and Benefits in the ordinary course of business.  Absent the requested relief, the Employees would suffer great hardship and, in many instances, financial difficulties, because these monies are needed to enable them to meet their personal obligations.  Additionally, without the requested relief, the Debtors' stability would be undermined by the potential threat that otherwise loyal Employees at all levels would seek other employment.  Similarly, the Independent Contractors may choose to end their relationships with the Debtors, resulting in disruptions to the services provided to the Debtors' clients at a crucial time.  The Debtors, therefore, believe it is critical to pay the prepetition amounts owing on account of the Employee Wages and Benefits to preserve the Debtors' workforce and maximize the value of the Debtors' business.

**II.     THE COURT SHOULD AUTHORIZE THE BANKS TO HONOR AND PROCESS THE DEBTORS' PAYMENTS ON ACCOUNT OF THE EMPLOYEE WAGES AND BENEFITS.**

36.     The Debtors represent that they have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor in possession financing, and anticipated access to cash collateral.  As a result of the commencement of these chapter 11 cases and in the absence of an order of the Court providing otherwise, the Debtors' checks and electronic fund transfers in respect of the Employee Wages and Benefits may be dishonored or rejected by financial institutions.  Under the Debtors' cash management system, the Debtors can readily identify

01:16813972.7

checks or transfers as relating directly to payment of Employee Wages and Benefits. Accordingly, the Debtors believe that prepetition checks and transfers other than those for Employee Wages and Benefits will not be honored inadvertently.  The Debtors submit that any Bank should be authorized to rely on the representations of the Debtors with respect to whether any check drawn or transfer request issued by the Debtors prior to the Petition Date should be honored pursuant to this Motion.

37.    For the reasons set forth above, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates, and their creditors, and, therefore, should be granted.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

38.    Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estates pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within 21 days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  The Debtors believe that, among other things, the success of their chapter 11 efforts will require the continued focus and dedication of the Employees, as any deterioration in Employee morale or significant loss in workforce will have an adverse impact on the Debtors' ability to continue to operate their business and to prosecute these cases in a successful manner.  Thus, if the relief requested herein is not granted, the failure to satisfy the Employee Wages and Benefits would cause the Debtors' estates immediate and irreparable harm by detracting from, and potentially derailing, the Debtors' chapter 11 efforts.

01:16813972.7

16

39.     For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

40.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, any delay in paying the Employee Wages and Benefits would be detrimental to the Debtors, their estates, and their creditors. Indeed, the Debtors' ability to operate their business with as little disruption as possible requires, in large part, an able and willing workforce, which the Debtors currently have in the Employees.

41.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

42.     Nothing in this Motion or any actions taken by the Debtors pursuant to relief granted in any order granting the relief requested herein (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates.

**NOTICE**

43.     Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Securities and Exchange Commission; (iii) the Office of the United States Attorney General for the District of Delaware; (iv) the Internal Revenue Service; (v) the parties included on the Debtors' consolidated list of thirty (30) largest

01:16813972.7

unsecured creditors, as filed with the Debtors' chapter 11 petitions; (vi) counsel to the Debtors' prepetition and proposed postpetition secured lenders; and (vii) the Banks.  Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

<u>**CONCLUSION**</u>

WHEREFORE, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as <u>Exhibits A</u> and <u>B</u>, granting the relief requested herein and such other and further relief as is just and proper.

Dated:   July 12, 2015             YOUNG CONAWAY STARGATT & TAYLOR, LLP
         Wilmington, Delaware

*/s/ Jaime Luton Chapman*
M. Blake Cleary (No. 3614)
Jaime Luton Chapman (No. 4936)
Travis G. Buchanan (No. 5595)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Proposed Counsel to the Debtors and Debtors in Possession*

01:16813972.7

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.** [1] | Case No. 15-11498 (____) |
| Debtors. | Jointly Administered |
| | **RE: Docket No. ____** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY AND HONOR
CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION
OBLIGATIONS AND (II) AUTHORIZING BANKS TO HONOR AND
PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for the entry of interim

and final orders, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy

Code, (i) authorizing, but not directing, the Debtors, in accordance with their stated policies and

in their discretion, to pay, honor, or otherwise satisfy certain of the Employee Wages and

Benefits, including amounts and obligations related to the period prior to the Petition Date, and

(ii) authorizing Banks to honor and process related checks and electronic transfers; and upon

consideration of the Motion and all pleadings related thereto, including the First Day

Declaration; and due and proper notice of the Motion having been given; and it appearing that no

other or further notice of the Motion is required; and it appearing that this Court has jurisdiction

to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order* from the United States District Court for the District of Delaware, dated February 29,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the First Day Declaration.

2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUSTED, AND DECREED that:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to pay, honor, or otherwise satisfy any amounts and obligations on account of the Employee Wages and Benefits in the ordinary course of business, including amounts and obligations related to the period prior to the Petition Date in an aggregate amount not to exceed $3 million (not including forwarding of Deductions to third-party recipients); *provided*, *however*, notwithstanding anything to the contrary contained herein, that, except as provided by further order of this Court, no payment to any Employee on account of the Wage Obligations and Vacation and Additional Leave shall exceed the $12,475 statutory cap provided for under section 507(a) of the Bankruptcy Code.

3.      Nothing herein shall be deemed to authorize the Debtors to cash out unpaid Vacation and Additional Leave upon termination of an Employee unless applicable state law requires such a payment.

4.      The Debtors are authorized, but not directed, to continue to honor their practices, programs, and policies with respect to the Employee Wages and Benefits as such practices, programs, and policies were in effect as of the Petition Date and implemented in the ordinary course of the Debtors' business.

01:16813972.7

2

5.      The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process any checks or electronic fund transfers drawn on the Debtors' bank accounts to pay any prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to or after the Petition Date, provided that sufficient funds are available to make such payments.    The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

6.      The Debtors are authorized to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests related to the Employee Wages and Benefits dishonored or rejected as a consequence of the commencement of these chapter 11 cases.

7.      Nothing in this Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code, or (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates.

8.      Nothing in the Motion or this Order shall be deemed to (i) authorize the payment of any amounts in satisfaction of bonus or severance obligations or amounts that may be subject to section 503(c) of the Bankruptcy Code or (ii) violate or permit a violation of section 503(c) of the Bankruptcy Code.

9.      To the extent the Debtors make any payments on account of prepetition health benefits claims incurred under a self-insured plan, such payments shall be made without regard

01:16813972.7

to the current employment status of the Employee (or dependent), provided that such Employee (or dependent) was eligible for coverage on the date such claim was incurred.

10.     Notwithstanding anything to the contrary contained herein, any payment made or authorization contained herein shall be subject to the requirements imposed on the Debtors under any order approving the DIP Facility.

11.     Objections to entry of an order granting the Motion on a final basis must be filed by _____ ___, 2015 at 4:00 p.m. (ET) and served on:  (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary, Esq. and Jaime Luton Chapman, Esq.; (ii) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Tiiara N.A. Patton, Esq.; (iii) counsel to the DIP Lenders, (a) Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek F. Meek, Esq. and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Eric Schwartz, Esq.; and (iv) counsel to any statutory committee appointed in these chapter 11 cases.  A final hearing, if required, on the Motion will be held on _____, 2015 at _____ __.m. (ET).  If no objections are filed to the Motion, this Court may enter a final order without further notice or hearing.

12.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

13.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

14.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

01:16813972.7

15.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2015
       Wilmington, Delaware

                                              _____

                                              United States Bankruptcy Judge

## EXHIBIT B

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.** [1] | Case No. 15-11498 (____) |
| Debtors. | Jointly Administered |
| | RE: Docket Nos. ____ |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY AND HONOR CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION OBLIGATIONS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to pay, honor, or otherwise satisfy certain of the Employee Wages and Benefits, including amounts and obligations related to the period prior to the Petition Date, and (ii) authorizing Banks to honor and process related checks and electronic transfers; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order* from the United States District Court for the District of Delaware, dated February 29,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the First Day Declaration.

2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it

appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and it appearing that the relief requested in the Motion and provided for herein is in

the best interest of the Debtors, their estates, and their creditors; and after due deliberation and

sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUSTED, AND DECREED that:**

1.      The Motion is GRANTED on a FINAL BASIS as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to pay, honor, or

otherwise satisfy any amounts and obligations on account of the Employee Wages and Benefits

in the ordinary course of business, including amounts and obligations related to the period prior to

the Petition Date; *provided*, *however*, notwithstanding anything to the contrary contained herein,

that, except as provided by further order of this Court, no payment to any Employee on account

of the Wage Obligations and Vacation and Additional Leave shall exceed the $12,475 statutory

cap provided for under section 507(a) of the Bankruptcy Code, unless amounts above the

$12,475 statutory cap are a result of cash payment for unpaid Vacation and Additional Leave that

is required under applicable state law.

3.      The Debtors are authorized, but not directed, to continue to honor their practices,

programs, and policies with respect to the Employee Wages and Benefits as such practices,

programs, and policies were in effect as of the Petition Date and implemented in the ordinary

course of the Debtors' business.

4.      The Banks are authorized, when requested by the Debtors, in the Debtors'

discretion, to honor and process any checks or electronic fund transfers drawn on the Debtors'

bank accounts to pay any prepetition obligations authorized to be paid hereunder, whether such

checks or other requests were submitted prior to or after the Petition Date, provided that sufficient funds are available to make such payments. The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

5.      The Debtors are authorized to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests related to the Employee Wages and Benefits dishonored or rejected as a consequence of the commencement of these chapter 11 cases.

6.      Nothing in this Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code, or (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates.

7.      Nothing in the Motion or this Order shall be deemed to (i) authorize the payment of any amounts in satisfaction of bonus or severance obligations or amounts that may be subject to section 503(c) of the Bankruptcy Code or (ii) violate or permit a violation of section 503(c) of the Bankruptcy Code.

8.      To the extent the Debtors make any payments on account of prepetition health benefits claims incurred under a self-insured plan, such payments shall be made without regard to the current employment status of the Employee (or dependent), provided that such Employee (or dependent) was eligible for coverage on the date such claim was incurred.

01:16813972.7

9.       Notwithstanding anything to the contrary contained herein, any payment made or authorization contained herein shall be subject to the requirements imposed on the Debtors under any order approving the DIP Facility.

10.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

11.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

12.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2015
          Wilmington, Delaware

_____
United States Bankruptcy Judge

01:16813972.7