## EXHIBIT A

**Sales and Bidding Procedures Order**

01:17111520.6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.**[1] | Case No. 15-11498 (MFW) |
| Debtors. | Jointly Administered |
| | RE: Docket No. ___ |

## ORDER (A) APPROVING SALES AND BIDDING PROCEDURES IN CONNECTION WITH SALE OF ASSETS OF THE DEBTORS, (B) APPROVING BID PROTECTIONS, (C) APPROVING FORM AND MANNER OF NOTICE, (D) SCHEDULING THE AUCTION AND SALE HEARING, (E) AUTHORIZING PROCEDURES GOVERNING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (F) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (a) approving the Sales and Bidding Procedures, (b) approving bid protections, (c) approving form and manner of notices in connection with the Sales and Bidding Procedures, (d) scheduling the Auction and Sale Hearing, (e) authorizing procedures governing assumption and assignment of certain executory contracts and unexpired leases, and (f) granting related relief; and upon consideration of any timely objections filed in opposition to the relief requested in the Motion; and upon the record of the hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the hearing; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N) and this Court may enter a final order consistent with Article III of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

United States Constitution; and proper and adequate notice of the Motion and the hearing thereon having been given; and it appearing that no other or further notice is necessary; and it appearing that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor; it is hereby,

FOUND, CONCLUDED AND DECLARED THAT:[3]

A.      The relief granted herein is in the best interests of the Debtors, their estates, and other parties in interest.

B.      The Debtors have articulated good and sufficient business reasons for this Court to (i) approve the Sales and Bidding Procedures, (ii) approve the Teachers' Retirement System of Alabama, or its designee ("**TRS**") and the Employees' Retirement System of Alabama, or its designee ("**ERS**") as the Stalking Horse Bidder, (iii) approve the Break-Up Fee, (iv) approve the Assumption and Assignment Procedures, (v) approve the form and manner of notice of the Sale Motion, the Auction, and the Sale Hearing, and (vi) set the date of the Auction and the Sale Hearing.

C.      Due, sufficient, and adequate notice of the hearing on the Motion and the hearing thereon having been given in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required.

D.      The Sales and Bidding Procedures, substantially in the form attached hereto, and incorporated herein by reference as if fully set forth herein, are fair, reasonable, and appropriate;

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

were negotiated in good faith by the Debtors and the Stalking Horse Bidder; and represent the best way to maximize the value of the Debtors' estates.

E.      The Debtors have demonstrated a compelling business justification for the payment of the Break-Up Fee under the circumstances.  The Break-Up Fee, to the extent payable under the Stalking Horse APA, (i) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) is of substantial benefit to the Debtors' estates, (iii) is reasonable and appropriate, including in light of the size and nature of the transaction and the efforts that have been and will be expended by the Stalking Horse Bidder, (iv) has been negotiated by the parties and their respective advisors at arm's-length and in good faith, and (v) is necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed transaction.  The Break-Up Fee is a material inducement for, and condition of, the Stalking Horse Bidder's entry into the Stalking Horse APA.  The Stalking Horse Bidder is unwilling to commit to perform under the terms of the Stalking Horse APA unless the Stalking Horse Bidder is assured payment of the Break-Up Fee in accordance with the Stalking Horse APA.

F.      The Assumption and Assignment Procedures are reasonable and appropriate.

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The relief requested in the Motion is GRANTED as set forth herein.

2.      All objections to the Motion or the relief provided herein, as they pertain to the entry of this Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3. The Sales and Bidding Procedures, which are attached hereto as **Exhibit 1**, including without limitation, the Qualified Bid Requirements set forth therein, are hereby approved and are incorporated herein as if set out in full.

4. The Assumption and Assignment Procedures, which are attached hereto as **Exhibit 2**, are hereby approved and are incorporated herein as if set out in full.

5. The Cure Notice, substantially in the form attached as Exhibit A to the Assumption and Assignment Procedures, is approved and shall be served by first-class mail, postage prepaid, within five (5) business days of entry of this Order on all Contract Parties, and such notice is fair and adequate under the circumstances.

6. The Sale Notice, substantially in the form attached to the Sale Motion as Exhibit C, is approved.

7. No later than five (5) business days after the entry of this Order (the "**Mailing Date**"), the Debtors (or their agents) shall serve by first class mail, postage prepaid, a copy of the Sales and Bidding Procedures Order, which includes the Sales and Bidding Procedures, and the Sale Notice[4] on:

      i      the DIP Lender and its counsel;

      ii      the Stalking Horse Bidder and its counsel;

      iii      the Office of the United States Trustee for the District of Delaware;

      iv      counsel to the Committee (and any other statutorily-appointed committee in these chapter 11 cases);

      v      the United States Attorney for the District of Delaware;

      vi      the Internal Revenue Service;

      vii      the Environmental Protection Agency;

---

[4] Any document referenced herein will be in English, unless specifically identified as being translated into another language.

viii    all known taxing authorities for the jurisdictions to which the Debtors are subject;

ix    all entities known or reasonably believed to have asserted a Lien on any of the Debtors' Assets;

x    all creditors who are known to have or have asserted in writing secured claims;

xi    the Equal Opportunity Employment Commission;

xii    all entities reasonably known to have expressed a bona fide interest in acquiring the Debtors' Assets during the six (6) months preceding the date of this Motion;

xiii    the non-Debtor counterparties to the Contracts and Leases; and

xiv    those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

8.    The Debtors shall cause the Sale Notice to be translated into Tamil, Hindi, and Malayalam by an interpreter who has been certified in the applicable language by a reputable certification organization (or who possesses a comparable level of skill as to one who has been so certified) (the "**Translated Sale Notices**").  On the Mailing Date or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first-class mail, postage prepaid, a copy of the Sale Notice and the Translated Sale Notices upon any H-2B Worker[5] who has not formally filed a request for notice in these chapter 11 cases at the last address known to the Debtors.  The Translated Sale Notices shall also be provided to any other party upon request.

9.    On the Mailing Date or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first-class mail, postage prepaid, a copy of the Sale Notice upon all other known creditors of the Debtors.  The Debtors shall also post the Motion, the Sales and Bidding

---

[5]  For purposes of this Order, "H-2B Workers" means any and all former employees and recruits of any Debtor hired and/or recruited through the United States H-2B immigration program who, independently or through the Equal Employment Opportunity Commission, have asserted or may assert certain legal and equitable claims against any Debtor.

Procedures Order, the Sales and Bidding Procedures, the Sale Notice, and the Translated Sale

Notices on the website maintained by the Debtors' claims and noticing agent.

10.     Within five (5) business days after the entry of the Sales and Bidding Procedures

Order (or as soon thereafter as reasonably practicable, but no later than twenty-five (25) days

prior to the Sale Objection Deadline), the Debtors (or their agents) will cause:   (i) the Sale

Notice, as modified for publication (the "**Publication Notice**"), to be published once in *The New

York Times* (national edition), the Mississippi *SunHerald*, the *Houston Chronicle*, and an English

language newspaper of general circulation in India and (ii) the Publication Notice translated in

Malayalam to be published once in *Malayala Manorama.*

11.     The form and manner of notice described in this Order are deemed to fulfill the

notice requirements of the Bankruptcy Rules and the Local Rules and shall be sufficient and

proper notice of the Motion, the relief requested in the Motion, the Auction, and the proposed

Sale to any interested parties, whether or not such parties are known to the Debtors and whether

or not such parties have domestic or foreign addresses.

12.     Any bid submitted by a Potential Bidder, other than the bid of the Stalking Horse

Bidder, must (i) be delivered in writing to the Bid Notice Parties **by no later than 5:00 p.m.**

**(Prevailing Eastern Time) on October 13, 2015** (the "**Bid Deadline**") and (ii) satisfy the

Qualified Bid Requirements.

13.     If a Qualified Bid, other than that submitted by the Stalking Horse Bidder, has

been received by the Debtors prior to the Bid Deadline from a Qualified Bidder, the Debtors

shall conduct an Auction at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney

Square, 1000 North King Street, Wilmington, Delaware 19801 **at 10:00 a.m. (Prevailing**

**Eastern Time) on October 21, 2015**, or such other place and time as the Debtors timely communicate to all entities entitled to attend the Auction.

14.     Within 48 hours of the conclusion of the Auction, the Debtors will file the Supplement with the Court and post the same on the website maintained by the Debtors' claims and noticing agent and no further notice of the Supplement to any parties-in interest in the Debtors' chapter 11 cases is required.

15.     The Sale Hearing is hereby scheduled for _____**, 2015 at _____ (Prevailing Eastern Time)**.  Objections, if any, to the Sale, other than objections to the adequate assurance of future performance obligations by Qualified Bidders other than the Stalking Horse Bidder, must be filed and served on the Bid Notice Parties **by September 30, 2015 at 4:00 p.m. (Prevailing Eastern Time)** (the "**Sale Objection Deadline**").

16.     Objections to the Cure Amount, the adequate assurance of future performance by the Stalking Horse Bidder, and any other objections to the assumption and assignment of the Contract or Lease, other than to adequate assurance of future performance by Qualified Bidders other than the Stalking Horse Bidder, (collectively, the "**Contract Objections**") **must be filed and served by no later than the Sale Objection Deadline**.  Any objections to the adequate assurance of future performance obligations by Qualified Bidders other than the Stalking Horse Bidder ("**Adequate Assurance Objections**") **must be filed and served no later than 4:00 p.m. (prevailing Eastern Time) on October 29, 2015** (the "**Adequate Assurance Objection Deadline**").

17.     For a Contract Party listed on a Supplemental Cure Notice, (i) the deadline to file Contract Objections shall be the later of (a) fourteen (14) days after the date the Supplemental Cure Notice is filed and (b) the Sale Objection Deadline and (ii) the deadline to file Adequate

Assurance Objections shall be the later of (a) the Contract Party's deadline to file Contract Objections and (b) the Adequate Assurance Objection Deadline.

18.     If the Supplemental Cure Notice provides for a deadline to file Contract Objections that is after the date of the Sale Hearing, unless the Contract Party timely files and serves a Contract Objection to the Supplemental Cure Notice, the Debtors shall be authorized to assume and assign the applicable Contract or Lease, subject to the occurrence of the Closing, without further order or notice of hearing.

19.     Unless a Contract Party files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be (i) forever barred from objecting to the Cure Amount and (ii) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on the schedule to the Cure Notice, against the Debtors, the Prevailing Purchaser, or any other assignee of the Assigned Contract.

20.     Unless a Contract Party to an Assigned Contract files a timely objection to the assumption and assignment of such Contract or Lease to the Prevailing Purchaser, then such counterparty shall be deemed to have consented to the assumption and assignment to the Prevailing Purchaser and will be forever barred from objecting to such assumption and assignment on account of Cure Amount, lack of adequate assurance, or any other grounds.

21.     TRS and ERS are hereby approved as the Stalking Horse Bidder pursuant to the terms of the Stalking Horse APA, and the Debtors' obligations under the Stalking Horse APA intended to be performed prior to the Sale Hearing, including, without limitation, obligations such as the Break-Up Fee, are approved.

22.     Upon entry of this Order, the Break-Up fee (if payable pursuant to the terms of the Stalking Horse APA) shall, until paid in full as set forth in the Stalking Horse APA, be

01:17291525.5

entitled to priority administrative expense status pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

23.     The obligations of the Debtors related to the Break-Up Fee shall survive any termination of the Stalking Horse APA.

24.     This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.  Certain provisions of this Order that relate to bid protections shall inure to the benefit of the Stalking Horse Bidder and its affiliates, successors, and assigns.

25.     In the event the Stalking Horse Bidder is not the Prevailing Purchaser, the Stalking Horse Bidder shall have standing to object to the Sale of the Acquired Assets or any portion thereof (including the conduct of the Auction and interpretation of the Sales and Bidding Procedures) at the Sale Hearing.

26.     The Debtors are authorized to take such actions as are necessary or appropriate to implement the Sales and Bidding Procedures and the Assumption and Assignment Procedures.

27.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d), or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

28.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including any matter, claim or dispute arising from or related to the Break-Up Fee, the Stalking Horse APA, and the Sales and Bidding Procedures.

29.     In accordance with this Court's *Order Authorizing the Debtors to Assume the Plan Support Agreement* entered on August ___, 2015 [D.I. ___] (the "**PSA Order**"), to be deemed a Qualified Bidder and participate in the Auction, each such Bidder must agree to be

bound by the terms of the Westport Participation Agreement (as defined in the PSA Order and the Plan Support Agreement by and among the Debtors and certain of their creditors dated as of July 12, 2015).

Dated: August _____, 2015
      Wilmington, Delaware

_____
Mary F. Walrath
United States Bankruptcy Judge

01:17291525.5

## EXHIBIT 1

## SALES AND BIDDING PROCEDURES

These sales and bidding procedures (collectively, the "**Sales and Bidding Procedures**") set forth the process by which the debtors and debtors-in-possession (collectively referred to herein as the "**Debtors**") are authorized to conduct a sale of substantially all of the assets of the Debtors in accordance with the Sales and Bidding Procedures Order (as defined herein).

These Sales and Bidding Procedures were approved by order of the Bankruptcy Court dated [August 12], 2015 (the "**Sales and Bidding Procedures Order**"), pursuant to the *Debtors' Motion for Entry of: (I) an Order (A) Approving Sales and Bidding Procedures in Connection with Sale of Assets of the Debtors, (B) Approving Bid Protections, (C) Approving Form and Manner of Notice, (D) Scheduling the Auction and Sale Hearing, (E) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving Purchase Agreement, (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief Motion of the Debtors* (the "**Sale Motion**")[1] seeking entry of orders as follows:

A.    With respect to the Sales and Bidding Procedures Order:

- Approving these Sales and Bidding Procedures;

- Approving the bid protections set forth in the asset purchase agreement that has been filed with the Bankruptcy Court on July 22, 2015, and attached to the Sale Motion (the "**Stalking Horse APA**"), subject to higher and better bids, for the sale of the Debtors' Assets to the the Teachers' Retirement System of Alabama, a body corporate of the State of Alabama created under Section §§ 16-25-1, *et seq.*, of the Alabama Code (or its designee) ("**TRS**") and the Employees' Retirement System of Alabama, a body corporate of the State of Alabama created under Section §§ 36-27-1 *et seq.*, of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion and the Sales and Bidding Procedures Order, as applicable.

Alabama Code (or its designee) ("**ERS**" and together with TRS, and in such capacity, the "**Stalking Horse Bidder**");

- Scheduling an auction (the "**Auction**") to be held only if necessary based upon the receipt of a Qualified Bid (as defined herein) greater than the bid of the Stalking Horse Bidder, to sell the Debtors' Assets to the Prevailing Purchaser (as defined herein) to be held on October 21, 2015;

- Scheduling the final hearing (the "**Sale Hearing**") to approve a sale of the Debtors' Assets to the Prevailing Purchaser for [●], 2015, at the United States Bankruptcy Court, District of Delaware, 824 Market Street North, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801;

- Approving the form and manner of notice of the proposed sale transactions, the Sales and Bidding Procedures, the Auction, and the Sale Hearing;

- Authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "**Assigned Contracts**") to the Prevailing Purchaser; and

- Granting related relief.

B.    With respect to the Sale of the Debtors' Assets, an order, the form of which will be filed with the Bankruptcy Court and served on the entities receiving the Sale Motion by August 7, 2015 at 12:00 p.m. prevailing Eastern Time (the "**Sale Order**"):

- Authorizing the sale (the "**Sale**") of the Debtors' Assets and the assumption and assignment of the Assigned Contracts to the Prevailing Purchaser at the Auction, if necessary, free and clear of all liens, claims, encumbrances, and other interests (collectively, "**Liens**"), other than any Liens permitted by the purchase agreement between the Debtors and the Prevailing Purchaser; and

- Granting related relief.

1.    **Assets to Be Sold**.

The Debtors are providing these Sales and Bidding Procedures whereby prospective bidders may qualify for and participate in the Auction, if necessary, thereby competing to make the highest or otherwise best offer to purchase assets of the Debtors (referred to herein as the "**Debtors' Assets**") free and clear of all Liens, except those expressly assumed in the Prevailing Purchaser's (as defined herein) asset purchase agreement.  All or substantially all of the Debtors'

Assets are to be sold, however, less than all or substantially all of the Debtors' Assets may be sold to one or more Prevailing Purchasers, provided any and all debt owed by the Debtors to TRS and ERS in their capacity as postpetition lender under that certain Post-Petition Superpriority Loan Agreement (collectively and in such capacity, the "**DIP Lender**").

       2.     **Confidentiality Agreements and Due Diligence.**

Upon execution of a confidentiality agreement with the Debtors in a form and substance reasonably satisfactory to the Debtors, any bona fide potential bidder (each a "**Potential Bidder**") that wishes to conduct due diligence on the Debtors' Assets may be granted access to all marketing information.  Potential Bidders interested in conducting due diligence should contact SSG Attn: J. Scott Victor, (email: jsvictor@ssgca.com) and Teresa C. Kohl, (email: tkohl@ssgca.com).  The Debtors, in consultation with SSG and any statutorily-appointed committee in these chapter 11 cases (the "**Committee**" and together with the DIP Lender, the "**Creditor Constituencies**"), may determine in their reasonable judgment whether an entity is a bona fide Potential Bidder based on, among other things, the Debtors' reasonable assessment of the legitimacy of the Potential Bidder's interest in acquiring the Debtors' Assets as well as the Potential Bidder's financial ability to do so.  The information to be provided to any Potential Bidder will be information that the Debtors reasonably believe is appropriate in light of the Debtors' needs to protect their confidential commercial information.

Each Potential Bidder that submits a bid (each, a "**Bidder**") shall be deemed to acknowledge and represent as follows:  (a) it has had an opportunity to conduct due diligence on the Debtors' Assets prior to making its bid; (b) it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid; and (c) it did not rely upon any written or oral statement, representations, promises, warranties, or

guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Debtors' Assets, or the completeness of any information provided in connection therewith.

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors and SSG regarding such Bidder and its contemplated transaction. Failure by a Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with SSG and the Creditor Constituencies, to determine that such Bidder is not a Qualified Bidder (as defined herein).

3.    **Notice Parties**.

The following persons or entities are the "**Bid Notice Parties**" who are entitled to receive a copy of any initial bid that is submitted by a Bidder:

> Investment Banker to the Debtors:  SSG Advisors, LLC, 300 Barr Harbor Drive, West Conshohocken, PA 19428, Attn: J. Scott Victor (jsvictor@ssgca.com) and Teresa C. Kohl (tkohl@ssgca.com);

> Counsel to the Debtors: Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: M. Blake Cleary, Esq. (mbcleary@ycst.com) and Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, Attn:  Christopher R. Donoho III, Esq. (chris.donoho@hoganlovells.com);

> Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Tiiara N.A. Patton, Esq. (tiiara.patton@usdoj.gov);

> Counsel to the Stalking Horse Bidder and DIP Lender: Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, AL 35203 (Attn: Derek F. Meek, Esq., email: dmeek@burr.com) and Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Eric D. Schwartz, Esq. (eschwartz@mnat.com) and Gregory W. Werkheiser, Esq. (gwerkheiser@mnat.com); and

> Counsel for the Committee: Pachulski Stang Ziehl & Jones, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com).

4.      **Determination of "Qualified Bidder" Status**.

To participate in the sales and bidding process, and to be deemed a "**Qualified Bidder**",

each Bidder (except the Stalking Horse Bidder which is deemed to be Qualified Bidder) must

comply with the requirements of this Paragraph 4 and deliver to the Bid Notice Parties a written

offer, so as to be received by no later than October 13, 2015 at 5:00 p.m. (prevailing Eastern

time) (the "**Bid Deadline**"), that meets the following requirements:

(a)      states such Bidder's offer to purchase some or all or substantially all of the Debtors' Assets, with a specific indication of which Debtors' Assets are subject to the bid.  Less than all or substantially all of the Debtors' Assets may be sold, provided any and all debt owed by the Debtors to the DIP Lender is paid in full from the proceeds of such sale at the closing of the sale transaction;

(b)      is based on the Stalking Horse APA and contains executed transaction documents, including a definitive purchase agreement and all schedules and exhibits thereto (in the same detail as those attached to the Stalking Horse APA), signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a transaction for some or all or substantially all of the Debtors' Assets (as the terms thereof may have be improved or otherwise modified prior to the conclusion of the Auction, the "**Bidder APA**"), and such Bidder APA shall also include a copy of the Bidder APA marked against the Stalking Horse APA to show all changes requested by the Bidder, if any;

(c)      includes within the Bidder APA an undertaking to enter into and be bound by the terms of the Westport Participation Agreement as required by the PSA Order;

(d)      includes a summary term sheet with the material terms of the bid;

(e)      provides for the immediate payment at closing of all obligations, including principal, fees, interest and expenses, arising under or related to the Debtors' DIP Facility at the closing of the sale transaction;

(f)      is irrevocable unless and until the Debtors accept a higher or otherwise better bid and the Bidder is not selected as the Back-Up Bidder, as defined herein, and if the Bidder is selected as the Back-Up Bidder, is irrevocable until 11:59 p.m. (prevailing Eastern time) on the date that is the earlier of:  (i) 60 days after the date of the Sale Hearing, and (ii) the closing of the sale transaction with the Prevailing Purchaser;

(g)      does not request any expense reimbursement, break-up fee, "topping," termination, contribution, or other similar fee or payment;

(h)      otherwise contains terms and conditions that are substantially similar to, or more favorable to, the Debtors than those set forth in the Stalking Horse APA in each case as determined by the Debtors in their exercise of reasonable discretion;

(i)  contains such financial and other information that will reasonably allow the Debtors, in consultation with the Creditor Constituencies, to make a determination as to the Bidder's financial and other capabilities to consummate the transactions contemplated by the Bidder APA, including:

(i)  contact names and numbers for verification of financing sources;

(ii)  evidence of such Bidder's internal resources and proof of unconditional debt or equity funding commitments from a recognized financial institution in the amount of the bid or the posting of an irrevocable letter of credit from a recognized financial institution issued in favor of the Debtors in the amount of the bid, in each case, as are needed to consummate the Bidder APA;

(iii)  such Bidder's current financial statements (audited, if they exist) or other similar financial information reasonably acceptable to the Debtors;

(iv)  such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code, in a form that will allow the Debtors to serve on counterparties to any contracts or leases being assumed and assigned in connection with the proposed sale in a timely manner so as to not disrupt the sale process; and

(v)  any such other financial disclosure or credit-quality support information or enhancement, demonstrating that such Bidder has the ability to consummate the Bidder APA;

(j)  indicates which executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assigned to it pursuant to the Bidder APA, and provides that the Bidder will (x) pay all cure costs necessary to assign such executory contracts and unexpired leases at the closing of the sale transaction and (y) provide adequate assurance of performance to the non-Debtor parties to such executory contracts and unexpired leases;

(k)  contains the identity of each entity that will be bidding for the Debtors' Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(l)  includes evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Bidder APA;

(m)  provides that, under no circumstances, is the bid conditioned on the obtaining or the sufficiency of financing or any internal or credit committee approval, syndication requirements, or on the outcome or review of due diligence, but such bid may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, all of which shall be specifically set forth in the Bidder APA; and

(n)  is accompanied by a good faith certified check payable to Signal International, Inc. or cash deposit in an amount no less than 10% of the purchase price set forth in the Bidder APA (the "**Good Faith Deposit**"), which shall be deposited in a master escrow account to be established by the Debtors subject to a master escrow

agreement satisfactory to the Debtors, and which will be credited against the purchase price.

By submitting a bid, a Bidder (other than the Stalking Horse Bidder) shall be deemed to waive the right to assert or seek payment of any post-filing claim, including administrative expense claims, and to the extent otherwise applicable, a substantial contribution claim under section 503 of the Bankruptcy Code, with respect to its bid or the marketing or auction process.

The Debtors will then determine, in consultation with SSG and the Creditor Constituencies, whether a bid is a Qualified Bid based on the requirements herein and will notify each Bidder of such determination within two (2) business days following the Bid Deadline of such determination.

The Stalking Horse Bidder is deemed a Qualified Bidder without having to comply with the requirements of this Paragraph 4.  Nothing contained herein or in the Sale Order shall affect the rights of the Stalking Horse Bidder to assert any claims held against the Debtors and their respective bankruptcy estates including, any administrative priority claims.

No bids, other than the bid of the Stalking Horse Bidder, shall be deemed to have been accepted until it has been approved by the Bankruptcy Court at the Sale Hearing as the Prevailing Bid or Back-Up Bid.

The Good Faith Deposit of a Prevailing Purchaser shall be applied to the purchase price for the Debtors' Assets to be paid by the Prevailing Purchaser, as set forth in the applicable Bidder APA.  The Good Faith Deposit of the Back-Up Bidder shall be retained by the Debtors until the earlier of (a) the Closing Date of the Sale with the Successful Bidder(s) or (b) the sixtieth (60th) day after entry of the Sale Order and thereafter returned to the Back-up Bidder (unless, during such 60-day period, the Debtors deliver the Back-Up Notice, as defined below). The Good Faith Deposits of all other Qualified Bidders shall be held by the Debtors and returned

01:17291525.5

in accordance with Paragraph 14. If a Prevailing Purchaser fails to consummate an approved Sale because of a breach or failure to perform on the part of such Prevailing Purchaser, the Debtors shall be entitled to retain the Good Faith Deposit, in addition to being entitled to exercise all other remedies provided for in the applicable Bidder APA.

Following the giving of the Back-Up Notice, the Good Faith Deposit of the Back-Up Bidder shall be applied to the Purchase Price to be paid by the Back-Up Bidder as defined in the applicable Bidder APA. If the Back-Up Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Back-Up Bidder, the Debtors shall be entitled to retain the Good Faith Deposit, in addition to being entitled to exercise all other remedies provided for in the applicable Bidder APA.

5.     **Modifications of Qualified Bids Prior to Auction**.

Between the date that a Bidder submits a bid and the conclusion of the Auction, the Debtors may discuss, negotiate, or seek clarification of any bid or Qualified Bid from a Bidder or Qualified Bidder, as the case may be. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period of time such bid remains binding as specified herein.

6.     **Auction**.

In the event that the Debtors determine there is more than one Qualified Bidder, the Debtors are authorized to conduct an Auction. Other than as expressly set forth herein, the Debtors may conduct an Auction in the manner they determine, in consultation with SSG and the Creditor Constituencies, will result in the highest or otherwise best offer for the Debtors' Assets. If necessary, the Auction will be held on **October 21, 2015, beginning at 10:00 a.m.**

(**prevailing Eastern Time**), at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or such other location as will be timely communicated to all entities entitled to attend the Auction.   Only the Debtors, Qualified Bidders, the Committee, DIP Lender, Stalking Horse Bidder, United States Trustee, and the respective advisors of any of the foregoing, will be permitted to attend the Auction. Notwithstanding the foregoing, creditors may observe, but not participate in, the Auction, provided that they provide written notice of their intention to attend the Auction to the Debtors on or before the Bid Deadline.   Such written notice must be sent to Debtors' counsel at mbcleary@ycst.com and chris.donoho@hoganlovells.com.   Debtors' counsel shall promptly notify the Creditor Constituencies of any such requests it receives.

7.      **Overbid**.

At the commencement of the Auction, the Debtors will announce the then-existing highest or otherwise best Qualified Bid (the "**Auction Baseline Bid**"), and will solicit overbids. An "**Overbid**" is any bid or bids made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid.   To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(a)      the initial Overbid after and above the Auction Baseline Bid shall be an amount equal to or greater than the Auction Baseline Bid *plus* $1,000,000;

(b)      each subsequent Overbid shall be made in increments valued at not less than $500,000 (or such other amount that the Debtors, in consultation with SSG and the Creditor Constituencies, determine appropriate to facilitate the Auction);

(c)      any Overbid shall remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept as an Overbid a higher Qualified Bid for the Debtors' Assets, and (ii) such Overbid is not selected as the Back-Up Bid (as defined herein); and

(d)      to the extent not previously provided, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence demonstrating such Qualified Bidder's ability to close the transactions proposed by such Overbid.

8.      **Credit Bidding**.

The Stalking Horse Bidder shall (a) have the right to credit bid (i) the full amount of the outstanding obligations under the DIP Loan Documents and the Pre-Petition Loan Documents (unless subsumed by the DIP Loan Documents pursuant to a Final Order), as of the date of the Auction and (ii) the Break-Up Fee, (b) be deemed a Qualified Bidder, (c) be able to participate fully at the Auction and (d) be entitled to a dollar-for-dollar credit for the maximum amount of the Break-Up Fee.

9.      **Auction Procedures**.

In addition to complying with the above-requirements, the Auction will be governed by the following procedures:

(a)      the Auction will be conducted openly by the Debtors, and only the Qualified Bidders and the Stalking Horse Bidder will be entitled to: (i) make any subsequent bids at the Auction; (ii) make statements on the record at the Auction; or (iii) otherwise participate at the Auction in any manner whatsoever;

(b)      each Qualified Bidder will be required to represent that it has not engaged in any collusion with respect to the bidding or the sale;

(c)      the Qualified Bidders will appear in person at the Auction, through a duly authorized representative, or as otherwise agreed by the Debtors;

(d)      bidding will commence and proceed as determined by the Debtors, in consultation with the Creditor Constituencies;

(e)      the Auction will be transcribed or videotaped, at the Debtors' election;

(f)      all Qualified Bidders will have the right to submit additional bids and make additional modifications to their respective Bidder APA at the Auction, provided that any such modifications to the Bidder APA, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors than such Qualified Bidder's previous bid in the Debtors' discretion, in consultation with the Creditor Constituencies, and the fact that a Qualified Bidder shall have made any such modifications or improvements, including those made at the request of the Seller, shall not be an indication that such Qualified Bid was not qualified prior to the Bid Deadline;

(g)      the Auction will continue until the Debtors determine, in consultation with the Creditor Constituencies, that a Qualified Bid or Overbid, as applicable, is the highest

or otherwise best offer from among the Qualified Bids (including Overbids) (the "**Prevailing Bid**," and the party or parties that submitted such Prevailing Bid, the "**Prevailing Purchaser**"), which shall be subject to Bankruptcy Court approval;

(h)     in selecting the Prevailing Bid, the Debtors, in consultation with the Creditor Constituencies, may consider all factors, including the amount of the purchase price, the likelihood of each Qualified Bidder's ability to close a transaction and the timing thereof, the form and substance of the respective Bidder APA, and the net benefit to the Debtors' bankruptcy estates.  Less than all or substantially all of the Debtors' Assets may be sold to one or more Prevailing Purchaser provided any and all debt owed by the Debtors to the DIP Lender is paid in full;

(i)     following the Auction, the Debtors will file with the Bankruptcy Court a supplement (the "**Supplement**"), which will, among other things, identify (i) the Prevailing Purchaser as the proposed purchaser of the Debtors' Assets, (ii) the amount and form of consideration to be paid by the Prevailing Purchaser for the Debtors' Assets, (iii) the Assumed Liabilities to be assumed by the Prevailing Purchaser, and (iv) the Contracts and Leases to be assumed by the Debtors and assigned to the Prevailing Purchaser in connection with the Sale, subject only to the Prevailing Purchaser's right prior to the Executory Contract Designation Deadline to amend the Contract & Cure Schedule to (a) add or remove any Executory Contract or (b) modify the treatment of any Executory Contract.  The Supplement will also include similar information relating to the Back-Up Bidder and the Back-Up Bid.  In addition, the Debtors will attach to the Supplement (i) any revised proposed order approving the Sale to the Prevailing Purchaser, (ii) copies of the Bidder APA of the Prevailing Purchaser and Back-Up Bidder submitted to the Debtors, and (iii) any additional information or documentation relevant to the Prevailing Bid and/or Back-Up Bid.  Within 48 hours of the conclusion of Auction, the Debtors will file the Supplement with the Bankruptcy Court and post the same on the website maintained by the Debtors' claims and noticing agent, but no further notice of the Supplement will be provided to parties-in-interest in the Debtors' chapter 11 cases; and

(j)     the Debtors reserve the right, in their business judgment and in consultation with the Creditor Constituencies, to make one or more continuances of the Auction to, among other things:  facilitate discussions among the Debtors and Qualified Bidders; allow Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors and Creditor Constituencies with such additional information as the Debtors in their business judgment, after consultation with the Creditor Constituencies, may require.

10.    **No Auction**

In the event that no Qualified Bids, other than the Stalking Horse Bid, are received by the

Bid Deadline, the Auction shall be cancelled and the Stalking Horse Bid shall be deemed the

Prevailing Purchaser.

11.    **Break-Up Fee**

As consideration for the value of the Stalking Horse Bidder's bid, in the event that the Debtors consummate the Sale of the Debtors' Assets with any party other than the Stalking Horse Bidder, subject to the terms of the Stalking Horse APA and Sale and Bidding Procedures Order, the Debtors shall pay to the Stalking Horse Bidder a $2,000,000.00 break-up fee (the "**Break-Up Fee**") out of the cash portion of the consideration of the Prevailing Bid.  In all subsequent bids at the Auction, the Stalking Horse Bidder shall get a dollar-for-dollar credit for the amount of the Break-Up Fee as if the Debtors had accepted an Alternative Transaction in accordance with Section 7.3 of the Stalking Horse APA, which may be used as part of any credit bid by the Stalking Horse Bidder.  No fees shall be payable to Qualified Bidders other than the Stalking Horse.

12.    **"As Is, Where Is"**

Other than as specifically provided in the Stalking Horse APA or prevailing Bidder APA, as applicable, all of the Debtors' Assets shall be transferred "as is," "where is" and "with all faults."   The Debtors expressly disclaim any warranty of merchantability or fitness for a particular purpose and make no warranty, express or implied, as to the nature, quality, value or condition of any assets, in each case other than as specifically provided in the Stalking Horse APA or prevailing Bidder APA, as applicable.

13.    **Sale Hearing**.

The final hearing to approve the sale of the Debtors' Assets to the Prevailing Purchaser (the "**Sale Hearing**") is scheduled to take place on [●], 2015, beginning at ___:___ a.m. (prevailing Eastern Time), before the Honorable Mary F. Walrath at the United States Bankruptcy Court, District of Delaware, 824 Market Street North, 5th Floor, Courtroom No. 4,

Wilmington, Delaware 19801.  The Sale Hearing may be adjourned from time to time by the

Debtors with the consent of the DIP Lender and with the approval of the Bankruptcy Court and

with notice to any other party in interest by announcement of the adjournment in open court on

the date scheduled for the Sale Hearing or a notice filed with the Bankruptcy Court.  Any

objections to the Sale, other than objections to the adequate assurance of future performance

obligations by Qualified Bidders other than the Stalking Horse Bidder, shall be filed and served

on the Bid Notice Parties by September 30, 2015 at 4:00 p.m. (prevailing Eastern Time) (the

"**Sale Objection Deadline**").

14.     **Closing Deadline**.

The Prevailing Purchaser shall close and consummate the sale of the Debtors' Assets as

soon as practicable, but in no event later than twenty (20) days after entry of the Sale Order.

15.     **Failure to Consummate Purchase by the Prevailing Purchaser**.

If an Auction is conducted, the Qualified Bidder (including, but not limited to the

Stalking Horse Bidder) with the Qualified Bid that is next highest or otherwise best to the

Prevailing Bid at the Auction, as determined by the Debtors in consultation with the Creditor

Constituencies, shall be required to serve as a back-up bidder (the "**Back-Up  Bid**" and the

"**Back-Up  Bidder**," respectively) and keep such bid open and irrevocable until 11:59 p.m.

(prevailing Eastern time) on the date that is the earlier of (a) 60 days after the date of the Sale

Hearing, and (b) the closing of the sale transaction with the Prevailing Purchaser.

Following the Sale Hearing, if the Prevailing Purchaser fails to consummate a sale in

accordance with the Prevailing Bid because of a breach or failure to perform on the part of such

Prevailing Purchaser, the Debtors, in consultation with the Creditor Constituencies, are

authorized to deem the Back-Up Bidder to be the new "Prevailing Purchaser," and the Debtors

will be authorized, but not required, to consummate a sale with the Back-Up Bidder as contemplated by the Back-Up Bid without further order of the Bankruptcy Court upon at least three-days written notice to the Creditor Constituencies and the Back-Up Bidder (the "**Back-Up Notice**").   In such case, (a) the defaulting Prevailing Purchaser's deposit, if any, shall be forfeited to the Debtors and (b) all parties in interest, and the Debtors specifically, reserve the right to seek all available damages from the defaulting Prevailing Purchaser.

If an Auction is conducted, and the Seller does not choose the Stalking Horse Bidder as the Prevailing Purchaser, but instead chooses the Stalking Horse Bidder as the bidder having submitted the next highest or otherwise best bid at the conclusion of such Auction, the Stalking Horse Bidder shall be required to serve as the Back-Up Bidder pursuant to the terms and conditions set forth in the Stalking Horse APA, including the purchase price set forth therein, and not pursuant to the terms and conditions of its last and highest bid made at the Auction.  This limitation shall not apply to any other Qualified Bidder chosen as the Back-Up Bidder.

All deposits, if any, shall be returned to each Bidder not selected by the Debtors as the Prevailing Purchaser or the Back-Up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction in accordance with the terms of the master escrow agreement.  The deposit of the Back-Up Bidder shall be held by the Debtors until the earlier of two (2) business days after: (a) 60 days after the date of the Sale Hearing; and (b) the closing of the sale transaction with the Prevailing Purchaser.

16.    **Consultation Rights**.

The Debtors and their advisors will reasonably consult regularly with the Creditor Constituencies and their advisors on all material aspects of the sale process described in these Sales and Bidding Procedures and all material decisions and documents contemplated herein

reasonably prior to their implementation, including, without limitation, all instances in which the DIP Lender and/or the Committee have express consultation rights elsewhere in these Sales and Bidding Procedures.  The debtors and their advisors will also respond reasonably promptly to reasonable requests of the Creditor Constituencies and their advisors for information and/or documents relating to the sale process, Qualified Bids, the Auction, and the Sale Hearing.

17.     **Reservation of Rights; Consent to Jurisdiction**.

The Debtors reserve their rights, in the exercise of their fiduciary obligations, and in consultation with the Creditor Constituencies, (a) to impose, at or prior to the Auction, additional terms and conditions on the sale of the Debtors' Assets, and (b) to announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, *provided*, *however*, that the Debtors shall not materially modify the Sales and Bidding Procedures in any manner adverse to the rights or interests of the Stalking Horse Bidder without the prior written consent of the Stalking Horse Bidder, which consent shall not be unreasonably withheld.

All Qualified Bidders, and all such Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors and the Debtors' Assets, and have waived any right to a jury trial in connection with any disputes relating to the Debtors, the chapter 11 cases, the Sales and Bidding Procedures, the Auction, or the construction and enforcement of any Bidder APA.

01:17291525.5

**EXHIBIT 2**

**ASSUMPTION AND ASSIGNMENT PROCEDURES**

The Assumption and Assignment Procedures are as follows:

1.     **Cure Notice.**  The Debtors will file and serve the Cure Notice attached hereto as **Exhibit A** (the "**Cure Notice**") on all the non-Debtor counterparties to each of the Debtors' Contracts and Leases (the "**Contract Parties**") within two (2) business days after entry of the Sales and Bidding Procedures Order.

2.     **Content of the Cure Notice.**  The Cure Notice will include the following information: (i) the title of the Contract or Lease that may be assumed and assigned; (ii) the name of the applicable Contract Party thereto; (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure and compensate for any existing default, whether arising prepetition or postpetition, in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (as such amounts may be amended from time to time through the filing and service to each affected Contract Party of an amended Cure Notice prior to the Sale Hearing, the "**Cure Amount**"); (iv) the deadline by which any such Contract Party must object to the assumption or assignment of such Contract or Lease, including the proposed Cure Amount to be paid to such Contract Party; and (v) the other objection-related requirements set forth in Section 3 below.

3.     **Objections**.  Objections to the proposed Cure Amount, adequate assurance of future performance of obligations to be provided to the Contract Parties, and any other objections to the assumption and assignment of the Contracts or Leases must: (i) be in writing; (ii) set forth the nature of the objector's claims against or interests in the Debtors' estates (if different than reflected in the Cure Notice); (iii) the basis for the objection; (iv) comply with all applicable Bankruptcy Rules and orders of the Court; and (v) be filed with the Court and served upon the Bid Notice Parties.  Objections to the proposed Cure Amount, the adequate assurance of future performance by the Stalking Horse Bidder, and any other objections to the assumption and assignment of the Contract or Lease, other than to adequate assurance of future performance by Qualified Bidders other than the Stalking Horse Bidder (collectively, the "**Contract Objections**") must be filed and served by no later than the Sale Objection Deadline of **September 30, 2015 at 4:00 p.m. (Prevailing Eastern Time)**.  Any objections to the adequate assurance of future performance obligations by Qualified Bidders other than the Stalking Horse Bidder ("**Adequate Assurance Objections**") must be filed and served no later than **4:00 p.m. (prevailing Eastern Time) on October 29, 2015** (the "**Adequate Assurance Objection Deadline**").

4.     **Supplemental Cure Notice Procedures**.  If, at any time after the entry of the Sales and Bidding Procedures Order, the Debtors or any Qualified Bidder identify additional Contracts or Leases that may be assumed and assigned to the Stalking Horse Bidder or other Prevailing Purchaser as Assigned Contracts (whether before or after closing of the Sale), as applicable, the Debtors shall file with the Court and serve a supplemental Cure Notice on the applicable Contract Party (and its attorney, if known) by overnight mail (the "**Supplemental Cure Notice**").  For a Contract Party listed on a Supplemental Cure Notice, (i) the deadline to

file Contract Objections shall be the later of (a) fourteen (14) days after the date the Supplemental Cure Notice is filed and (b) the Sale Objection Deadline and (ii) the deadline to file Adequate Assurance Objections shall be the later of (a) the Contract Party's deadline to file Contract Objections and (b) the Adequate Assurance Objection Deadline.

If the Supplemental Cure Notice provides for a deadline to file Contract Objections that is after the date of the Sale Hearing, unless the Contract Party timely files and serves an objection as set forth herein to the Supplemental Cure Notice, the Debtors shall be authorized to assume and assign the applicable Contract or Lease, subject to the occurrence of the Closing, without further order or notice of hearing.  If a validly filed objection is not consensually resolved, then the Debtors will schedule a hearing to consider the objection on the next scheduled omnibus hearing date.

5.      **Request for Adequate Assurance.**  Any Contract Party's request for adequate assurance information regarding the Stalking Horse Bidder or other Prevailing Purchaser (a "**Request for Adequate Assurance**") must include an email address, postal address, and/or facsimile number to which a response to such request will be sent.  Upon receiving a Request for Adequate Assurance, the Debtors shall promptly provide the Contract Party with any non-confidential information reasonably related to adequate assurance by email, facsimile or overnight delivery.

6.      **Effects of Objecting to a Cure Notice.**  If a Contract Party does not object to the Cure Amount, such Contract Party shall be deemed to have agreed to the Cure Amount.  A properly filed and served objection to a Cure Notice will reserve such objecting party's rights against the Debtors with respect to the specific objections stated therein, but will not constitute an objection to any of the remaining relief requested in the Sale Motion.  If any validly-filed objection is not consensually resolved, the Court shall adjudicate such objection at the Sale Hearing or on such other date and time as agreed to by the Debtors and the Prevailing Purchaser or as may be fixed by the Court.

7.      **Reservation of Rights.**  The determination whether a Contract or Lease is to be assumed and assigned is subject to a subsequent decision by the Prevailing Purchaser(s) to be made prior to the Executory Contract Designation Deadline and to approval by the Court at the Sale Hearing.  Consequently, the listing of a Contract or Lease in the Cure Notice is not an indication of whether the Contract or Lease will be assumed and assigned or rejected.  Until the Executory Contract Designation Deadline, the Purchaser in its sole and absolute discretion may amend the Contract & Cure Schedule to (i) add or remove any Contract or Lease or (ii) modify the treatment of any Contract or Lease.  The listing of any Contract or Lease on any Cure Notice does not constitute an admission by the Debtors that such Contract or Lease is an executory contract or unexpired lease or that the Debtors have any liability thereunder.

**<u>EXHIBIT A</u>**

Cure Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.**[1] | Case No. 15-11498 (MFW) |
| Debtors. | Jointly Administered |

**NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **PARTIES LISTED ON <u>EXHIBIT I</u> ATTACHED HERETO ARE RECEIVING THIS NOTICE BECAUSE THEY MAY BE A COUNTERPARTY TO A CONTRACT OR LEASE WITH SIGNAL INTERNATIONAL, INC. OR ONE OR MORE OF ITS AFFILIATED DEBTORS**

**PLEASE TAKE NOTICE THAT** on July 12, 2015, Signal International, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE THAT** on July 13, the Debtors entered into that certain Asset Purchase Agreement (the "**Stalking Horse APA**") by and among the Debtors and the Teachers' Retirement System of Alabama and the Employees Retirement System of Alabama (or their respective designees, if any) (collectively, the "**Stalking Horse Bidder**").

**PLEASE TAKE FURTHER NOTICE THAT** on July 22, 2015, the Debtors filed the *Debtors' Motion for Entry of: (I) an Order (A) Approving Sales and Bidding Procedures in Connection with Sale of Assets of the Debtors, (B) Approving Bid Protections, (C) Approving Form and Manner of Notice, (D) Scheduling the Auction and Sale Hearing, (E) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving Purchase Agreement, (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief Motion of the Debtors* [D.I. ●] (the "**Motion**") with the Clerk of the Bankruptcy Court seeking, among other things, entry of an order (the "**Sale Order**") authorizing and approving:  (i) the sale of substantially all of the Debtors' assets (the "**Acquired Assets**") free and clear of liens, claims, encumbrances and other interests, with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the sale proceeds, to the Stalking Horse Bidder or other Prevailing Purchaser (the "**Sale**"); and (ii) the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "**Assigned Contracts**").  Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

**PLEASE TAKE FURTHER NOTICE THAT** on [●], 2015, the Bankruptcy Court entered an order [D.I. ●] (the "**Sales and Bidding Procedures Order**") granting certain of the relief sought in the Motion, including, among other things, approving: (i) the sales and bidding procedures for the Sale of the Acquired

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066).  The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

Assets (the "**Sales and Bidding Procedures**"); and (ii) procedures for the assumption and assignment of Contracts and Leases (the "**Assumption and Assignment Procedures**").

**PLEASE TAKE FURTHER NOTICE THAT** a hearing to consider approval of the Sale (the "**Sale Hearing**") is presently scheduled to take place on **[●], 2015 at __ : __ p.m. (Prevailing Eastern Time) (or such later date as determined in accordance with the Sales and Bidding Procedures)** before the Honorable Mary F. Walrath, United States Bankruptcy Court, 824 Market Street N, 5th Floor, Courtroom No. 4, Wilmington, DE 19801.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

<u>**Assumption and Assignment Procedures**</u>

**PLEASE TAKE FURTHER NOTICE THAT** in connection with the Sale, the Debtors may seek to assume and assign some or all of the Contracts and Leases set forth on **Exhibit I** attached hereto.  In addition, the amounts, if any, necessary to be paid to cure and compensate for any existing defaults, whether arising prepetition or postpetition, in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code, under each of the Contracts and Leases (the "**Cure Amounts**") are likewise set forth on **Exhibit I** attached hereto.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Sales and Bidding Procedures Order, in the event that the Debtors timely receive one or more Qualified Bids, other than the bid of the Stalking Horse Bidder, the Debtors will conduct an auction (the "**Auction**") for the Acquired Assets.  The Auction will be held at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 **at 10:00 a.m. (Prevailing Eastern Time) on October 21, 2015**, or such other place and time as the Debtors timely communicate to all entities entitled to attend the Auction.  Following the Auction, the Debtors will file with the Bankruptcy Court a supplement (the "**Supplement**"), which will, among other things, identify (i) the Prevailing Purchaser as the proposed purchaser of the Acquired Assets, (ii) the amount and form of consideration to be paid by the Prevailing Purchaser for the Acquired Assets, (iii) the Assumed Liabilities to be assumed by the Prevailing Purchaser, and (iv) the Contracts and Leases to be assumed by the Debtors and assigned to the Prevailing Purchaser in connection with the Sale, subject only to the Prevailing Purchaser's right prior to the Executory Contract Designation Deadline to amend such list to (a) add or remove any Contract or Lease or (b) modify the treatment of any Contract or Lease.  The Supplement will also include similar information relating to the Back-Up Bidder and the Back-Up Bid.  In addition, the Debtors will attach to the Supplement (i) any revised proposed order approving the Sale to the Prevailing Purchaser, (ii) copies of the Bidder APA of the Prevailing Purchaser and Back-Up Bidder submitted to the Debtors, and (iii) any additional information or documentation relevant to the Prevailing Bid and/or Back-Up Bid.  Within 48 hours of the conclusion of Auction, the Debtors will file the Supplement with the Bankruptcy Court and post the same on the website maintained by the Debtors' claims and noticing agent.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Assumption and Assignment Procedures, objections to the proposed Cure Amount, adequate assurance of future performance of obligations to be provided to the Contract Parties, and any other objections to the assumption and assignment of the Contract or Lease must: (i) be in writing; (ii) set forth the nature of the objector's claims against or interests in the Debtors' estates (if different than reflected in the Cure Notice); (iii) the basis for the objection; (iv) comply with all applicable Bankruptcy Rules and orders of the Bankruptcy Court; and (v) be filed with the Bankruptcy Court and served upon the following: (a) counsel to the Debtors: Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: M. Blake Cleary, Esq.) and Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022 (Attn: Christopher R. Donoho III, Esq.); (b) Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Tiiara N.A. Patton, Esq.); (c) counsel to the Stalking Horse Bidder and DIP

Lender: Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, AL 35203 (Attn: Derek F. Meek, Esq.) and Morris Nichols Arsht & Tunnell, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899 (Attn: Eric D. Schwartz, Esq. and Gregory W. Werkheiser, Esq.); and (d) counsel for any statutorily-appointed committee in these chapter 11 cases.  Objections to the proposed Cure Amount, the adequate assurance of future performance by the Stalking Horse Bidder, and any other objections to the assumption and assignment of the Contract or Lease, other than to adequate assurance of future performance by Qualified Bidders other than the Stalking Horse Bidder (collectively, the "**Contract Objections**") must be filed and served by no later than the **Sale Objection Deadline of** September 30, 2015 at 4:00 p.m. **(Prevailing Eastern Time)**.  Any objections to the adequate assurance of future performance obligations by Qualified Bidders other than the Stalking Horse Bidder ("**Adequate Assurance Objections**") must be filed and served no later than **4:00 p.m. (prevailing Eastern Time) on October 29, 2015** (the "**Adequate Assurance Objection Deadline**").

PLEASE TAKE FURTHER NOTICE THAT under the terms of the Assumption and Assignment Procedures, if at any time after the entry of the Sales and Bidding Procedures Order, the Debtors or any Qualified Bidder identify additional Contracts or Leases that may be assumed and assigned to the Stalking Horse Bidder or other Prevailing Purchaser as Assigned Contracts (whether before or after closing of the Sale), as applicable, the Debtors shall file with the Bankruptcy Court and serve a supplemental Cure Notice on the applicable Contract Party (and its attorney, if known) by overnight mail (the "**Supplemental Cure Notice**"). For a Contract Party listed on a Supplemental Cure Notice, (i) the deadline to file Contract Objections shall be the later of (a) fourteen (14) days after the date the Supplemental Cure Notice is filed and (b) the Sale Objection Deadline and (ii) the deadline to file Adequate Assurance Objections shall be the later of (a) the Contract Party's deadline to file Contract Objections and (b) the Adequate Assurance Objection Deadline.  If the Supplemental Cure Notice provides for a deadline to file Contract Objections that is after the date of the Sale Hearing, unless the Contract Party timely files and serves an objection as set forth herein to the Supplemental Cure Notice, the Debtors shall be authorized to assume and assign the applicable Contract or Lease, subject to the occurrence of the Closing, without further order or notice of hearing.

PLEASE TAKE FURTHER NOTICE THAT if a timely objection is received as set forth herein and such objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such objection at the Sale Hearing or on such other date and time as may be set by the Bankruptcy Court or agreed to by the Debtors and the Prevailing Purchaser.

PLEASE TAKE FURTHER NOTICE THAT the determination whether a Contract or Lease is to be assumed and assigned is subject to a subsequent decision by the Prevailing Purchaser(s) to be made prior to the Executory Contract Designation Deadline and to approval by the Bankruptcy Court at the Sale Hearing. Consequently, the listing of a Contract or Lease on **Exhibit I** attached hereto is not an indication of whether the Contract or Lease will be assumed and assigned or rejected.  The listing of any Contract or Lease on any Cure Notice does not constitute an admission by the Debtors that such Contract or Lease is an executory contract or unexpired lease or that the Debtors have any liability thereunder.

PLEASE TAKE FURTHER NOTICE THAT the listing of a Contract or Lease on **Exhibit I** attached hereto shall **not** be deemed or construed as a limitation or waiver of the Debtors' ability to amend, modify, or supplement this Cure Notice with an updated Cure Amount for a particular specified Contract or Lease, which updated Cure Amount may be lower than the original Cure Amount listed herein for such particular Contract or Lease.

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**PLEASE TAKE FURTHER NOTICE THAT** any Contract Party that fails to timely object as set forth herein shall be (i) forever barred from objecting to the assumption and assignment of any Assigned Contract identified on **Exhibit I,** including, without limitation, asserting any additional cure payments, and requesting additional adequate assurance of future performance, (ii) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Assigned Contract, (iii) bound to such corresponding Cure Amount, if any, (iv) deemed to have agreed that the Prevailing Purchaser has provided adequate assurance of future performance within the meaning of section 365(b)(1)(c) of the Bankruptcy Code, (v) deemed to have agreed that all defaults under the applicable Assigned Contract arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Prevailing Purchaser or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Assigned Contract shall remain in full force and effect for the benefit of the Prevailing Purchaser and such entity in accordance with its terms, (vi) deemed to have waived any right to terminate the applicable Assigned Contract or designate an early termination date under the applicable Assigned Contract as a result of any default that occurred and/or was continuing prior to the assignment date, and (vii) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Assigned Contract.

### Obtaining Additional Information

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Motion, the Stalking Horse APA, the Sales and Bidding Procedures Order, the Sales and Bidding Procedures, the Supplement, and any other related documents are available upon request to the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC, at 888-830-4665 (toll free) or 310-751-2648 (international callers), or by visiting the website maintained in these chapter 11 cases at www.kccllc.net/signal.

Dated: [●], 2015          YOUNG CONAWAY STARGATT & TAYLOR, LLP
     Wilmington, Delaware

                              _____
                              M. Blake Cleary (No. 3614)
                              Jaime Luton Chapman (No. 4936)
                              Travis G. Buchanan (No. 5595)
                              Rodney Square
                              1000 King Street
                              Wilmington, Delaware 19801
                              Telephone: (302) 573-7799
                              Facsimile:  (302) 571-1253

                              *Counsel for the Debtors and Debtors in Possession*

## EXHIBIT I

**Schedule of Contracts and Leases**

| Contract Party | Description of Contract or Lease | Proposed Cure Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |