# EXHIBIT 1

## SALES AND BIDDING PROCEDURES

These sales and bidding procedures (collectively, the "**Sales and Bidding Procedures**") set forth the process by which the debtors and debtors-in-possession (collectively referred to herein as the "**Debtors**") are authorized to conduct a sale of substantially all of the assets of the Debtors in accordance with the Sales and Bidding Procedures Order (as defined herein).

These Sales and Bidding Procedures were approved by order of the Bankruptcy Court dated [September 1], 2015 (the "**Sales and Bidding Procedures Order**"), pursuant to the *Debtors' Motion for Entry of: (I) an Order (A) Approving Sales and Bidding Procedures in Connection with Sale of Assets of the Debtors, (B) Approving Bid Protections, (C) Approving Form and Manner of Notice, (D) Scheduling the Auction and Sale Hearing, (E) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving Purchase Agreement, (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief Motion of the Debtors* (the "**Sale Motion**")[1] seeking entry of orders as follows:

    A.    With respect to the Sales and Bidding Procedures Order:[2]

- Approving these Sales and Bidding Procedures;

- Approving the bid protections set forth in the asset purchase agreement that has been filed with the Bankruptcy Court on July 22, 2015, and attached to the Sale Motion (as may be amended, the "**Stalking Horse APA**"), subject to higher and better bids, for the sale of the Debtors' Assets to the the Teachers' Retirement System of Alabama, a body corporate of the State of Alabama created under Section §§ 16-25-1, *et seq.*, of the Alabama Code (or its designee) ("**TRS**") and the Employees' Retirement

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion and the Sales and Bidding Procedures Order, as applicable.

[2] A summary of key dates and events is attached hereto as Exhibit A.

01:17291525.16

System of Alabama, a body corporate of the State of Alabama created under Section §§ 36-27-1 *et seq.*, of the Alabama Code (or its designee) ("**ERS**" and together with TRS, and in such capacity, the "**Stalking Horse Bidder**");

- Scheduling an auction (the "**Auction**") to be held only if necessary based upon the receipt of a Qualified Bid (as defined herein) greater than the bid of the Stalking Horse Bidder, to sell the Debtors' Assets to the Prevailing Purchaser (as defined herein) to be held on October 14, 2015;

- Scheduling the final hearing (the "**Sale Hearing**") to approve a sale of the Debtors' Assets to the Prevailing Purchaser for November 24, 2015, at the United States Bankruptcy Court, District of Delaware, 824 Market Street North, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801;

- Approving the form and manner of notice of the proposed sale transactions, the Sales and Bidding Procedures, the Auction, and the Sale Hearing;

- Authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "**Assigned Contracts**") to the Prevailing Purchaser; and

- Granting related relief.

B. With respect to the Sale of the Debtors' Assets, an order, the form of which will be filed with the Bankruptcy Court and served on the entities receiving the Sale Motion by September 10, 2015 at 12:00 p.m. Prevailing Eastern Time (the "**Sale Order**"):

- Authorizing the sale (the "**Sale**") of the Debtors' Assets and the assumption and assignment of the Assigned Contracts to the Prevailing Purchaser at the Auction, if necessary, free and clear of all liens, claims, encumbrances, and other interests (collectively, "**Liens**"), other than any Liens permitted by the purchase agreement between the Debtors and the Prevailing Purchaser; and

- Granting related relief.

1. **Assets to Be Sold.**

The Debtors are providing these Sales and Bidding Procedures whereby prospective bidders may qualify for and participate in the Auction, if necessary, thereby competing to make the highest or otherwise best offer to purchase assets of the Debtors (referred to herein as the "**Debtors' Assets**") free and clear of all Liens, except those expressly assumed in the Prevailing

Purchaser's (as defined herein) asset purchase agreement. All or substantially all of the Debtors' Assets are to be sold, however, less than all or substantially all of the Debtors' Assets may be sold to one or more Prevailing Purchasers, provided any and all debt owed by the Debtors to TRS and ERS in their capacity as postpetition lender under that certain Post-Petition Superpriority Loan Agreement (collectively and in such capacity, the "**DIP Lender**").

2. **Confidentiality Agreements and Due Diligence.**

Upon execution of a confidentiality agreement with the Debtors in a form and substance reasonably satisfactory to the Debtors, any bona fide potential bidder (each a "**Potential Bidder**") that wishes to conduct due diligence on the Debtors' Assets may be granted access to all marketing information. Potential Bidders interested in conducting due diligence should contact SSG Attn: J. Scott Victor, (email: jsvictor@ssgca.com) and Teresa C. Kohl, (email: tkohl@ssgca.com). The Debtors, in consultation with SSG and any statutorily-appointed committee in these chapter 11 cases (the "**Committee**"), may determine in their reasonable judgment whether an entity is a bona fide Potential Bidder based on, among other things, the Debtors' reasonable assessment of the legitimacy of the Potential Bidder's interest in acquiring the Debtors' Assets as well as the Potential Bidder's financial ability to do so. The information to be provided to any Potential Bidder will be information that the Debtors reasonably believe is appropriate in light of the Debtors' needs to protect their confidential commercial information.

Each Potential Bidder that submits a bid (each, a "**Bidder**") shall be deemed to acknowledge and represent as follows: (a) it has had an opportunity to conduct due diligence on the Debtors' Assets prior to making its bid; (b) it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid; and (c) it did not rely upon any written or oral statement, representations, promises, warranties, or

guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Debtors' Assets, or the completeness of any information provided in connection therewith.

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors and SSG regarding such Bidder and its contemplated transaction. Failure by a Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with SSG and the Committee, to determine that such Bidder is not a Qualified Bidder (as defined herein).

3. **Notice Parties**.

The following persons or entities are the "**Bid Notice Parties**" who are entitled to receive a copy of any initial bid that is submitted by a Bidder:

Investment Banker to the Debtors: SSG Advisors, LLC, 300 Barr Harbor Drive, West Conshohocken, PA 19428, Attn: J. Scott Victor (jsvictor@ssgca.com) and Teresa C. Kohl (tkohl@ssgca.com);

Counsel to the Debtors: Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: M. Blake Cleary, Esq. (mbcleary@ycst.com) and Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, Attn: Christopher R. Donoho III, Esq. (chris.donoho@hoganlovells.com);

Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Tiiara N.A. Patton, Esq. (tiiara.patton@usdoj.gov);

Counsel to the Stalking Horse Bidder and DIP Lender: Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, AL 35203 (Attn: Derek F. Meek, Esq., email: dmeek@burr.com) and Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Eric D. Schwartz, Esq. (eschwartz@mnat.com) and Gregory W. Werkheiser, Esq. (gwerkheiser@mnat.com); and

Counsel for the Committee: Pachulski Stang Ziehl & Jones, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com).

4. **Determination of "Qualified Bidder" Status.**

To participate in the sales and bidding process, and to be deemed a "**Qualified Bidder**", each Bidder (except the Stalking Horse Bidder which is deemed to be Qualified Bidder) must comply with the requirements of this Paragraph 4 and deliver to the Bid Notice Parties a written offer, so as to be received by no later than October 13, 2015 at 5:00 p.m. (Prevailing Eastern time) (the "**Bid Deadline**"), that meets the following requirements:

(a) states such Bidder's offer to purchase some or all or substantially all of the Debtors' Assets, with a specific indication of which Debtors' Assets are subject to the bid. Less than all or substantially all of the Debtors' Assets may be sold, provided that the net cash proceeds of such sale or sales equal or exceed the Minimum Bid Threshold (as defined herein);[3]

(b) is based on the Stalking Horse APA and contains executed transaction documents, including a definitive purchase agreement and all schedules and exhibits thereto (in the same detail as those attached to the Stalking Horse APA), signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a transaction for some or all or substantially all of the Debtors' Assets (as the terms thereof may have be improved or otherwise modified prior to the conclusion of the Auction, the "**Bidder APA**"), and such Bidder APA shall also include a copy of the Bidder APA marked against the Stalking Horse APA to show all changes requested by the Bidder, if any;

(c) is consistent with and complies with the Plan Support Agreement and includes within the Bidder APA an undertaking to enter into and be bound by the terms of the Westport Participation Agreement as required by the PSA Order;

(d) includes a summary term sheet with the material terms of the bid;

(e) if such bid is for substantially all of the Debtors' Assets, provides that the net cash proceeds of such sale equal or exceed the Minimum Bid Threshold;

(f) is irrevocable unless and until the Debtors accept a higher or otherwise better bid and the Bidder is not selected as the Back-Up Bidder, as defined herein, and if the Bidder is selected as the Back-Up Bidder, is irrevocable until 11:59 p.m. (Prevailing Eastern time) on the date that is the earlier of: (i) 60 days after the date of the Sale Hearing, and (ii) the closing of the sale transaction with the Prevailing Purchaser;

---

[3] For purposes of these Sales and Bidding Procedures, "**Minimum Bid Threshold**" shall mean net cash proceeds in an amount equal to or greater than the aggregate of: (i) all outstanding principal, interest, and other obligations owing as of the Petition Date to the TRSA and the ERSA under the Pre-Petition Loan Documents (as defined in the Stalking Horse APA), which amounts are not less than approximately $70.1 million; (ii) the Break-Up Fee in the amount of $1.0 million; and (iii) such additional amount as the Bankruptcy Court may require pursuant to any final order of the Bankruptcy Court authorizing and approving the DIP Facility (as defined in the First Day Declaration) to be provided by the TRSA and the ERSA (a "**Final DIP Order**").

(g) does not request any expense reimbursement, break-up fee, "topping," termination, contribution, or other similar fee or payment;

(h) otherwise contains terms and conditions that are substantially similar to, or more favorable to, the Debtors than those set forth in the Stalking Horse APA in each case as determined by the Debtors in their exercise of reasonable discretion, *provided, however*, there shall be no requirement that Schedule 10.1 to a Bidder APA be substantially similar to Schedule 10.1 of the Stalking Horse APA;

(i) contains such financial and other information that will reasonably allow the Debtors, in consultation with the Committee, to make a determination as to the Bidder's financial and other capabilities to consummate the transactions contemplated by the Bidder APA, including:

(i) contact names and numbers for verification of financing sources;

(ii) evidence of such Bidder's internal resources and proof of unconditional debt or equity funding commitments from a recognized financial institution in the amount of the bid or the posting of an irrevocable letter of credit from a recognized financial institution issued in favor of the Debtors in the amount of the bid, in each case, as are needed to consummate the Bidder APA;

(iii) such Bidder's current financial statements (audited, if they exist) or other similar financial information reasonably acceptable to the Debtors;

(iv) such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code, in a form that will allow the Debtors to serve on counterparties to any contracts or leases being assumed and assigned in connection with the proposed sale in a timely manner so as to not disrupt the sale process; and

(v) any such other financial disclosure or credit-quality support information or enhancement, demonstrating that such Bidder has the ability to consummate the Bidder APA;

(j) indicates which executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assigned to it pursuant to the Bidder APA, and provides that the Bidder will (x) pay all cure costs necessary to assign such executory contracts and unexpired leases at the closing of the sale transaction and (y) provide adequate assurance of performance to the non-Debtor parties to such executory contracts and unexpired leases;

(k) contains the identity of each entity that will be bidding for the Debtors' Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(l) includes evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Bidder APA;

(m) provides that, under no circumstances, is the bid conditioned on the obtaining or the sufficiency of financing or any internal or credit committee approval, syndication requirements, or on the outcome or review of due diligence, but such bid may

be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, all of which shall be specifically set forth in the Bidder APA;

(n) is accompanied by a good faith deposit provided by a wire transfer in an amount no less than 5% of the purchase price set forth in the Bidder APA (the "**Good Faith Deposit**"), which shall be deposited in a master escrow account to be established by the Debtors subject to a master escrow agreement satisfactory to the Debtors, and which will be credited against the purchase price;[4] and

(o) includes a covenant not to sue on account of acquired chapter 5 causes of action, except for the avoidance of doubt, an avoidance action against Max Specialty to avoid any avoidable liens against the assets of the Debtors in accordance with the Plan Support Agreement.

By submitting a bid, a Bidder (other than the Stalking Horse Bidder) shall be deemed to waive the right to assert or seek payment of any post-filing claim, including administrative expense claims, and to the extent otherwise applicable, a substantial contribution claim under section 503 of the Bankruptcy Code, with respect to its bid or the marketing or auction process.

The Debtors will then determine, in consultation with SSG and the Committee, whether a bid is a Qualified Bid based on the requirements herein and will notify each Bidder of such determination as soon as practicable. Each Qualified Bidder shall be provided with a copy of all other Qualified Bids.

The Stalking Horse Bidder is deemed a Qualified Bidder without having to comply with the requirements of this Paragraph 4. Nothing contained herein or in the Sale Order shall affect the rights of the Stalking Horse Bidder to assert any claims held against the Debtors and their respective bankruptcy estates including, any administrative priority claims.

No bids, other than the bid of the Stalking Horse Bidder, shall be deemed to have been accepted until it has been approved by the Bankruptcy Court at the Sale Hearing as the Prevailing Bid or Back-Up Bid.

---

[4] Delivery instructions for a Good Faith Deposit: US Bank NA; ABA# 091000022; BNF: US Bank Trust; A/C# 180121167365; Ref SEI# 259228000; Acct Name: SIGNAL INTERNATIONAL BIDDER ESCROW.

01:17291525.16

The Good Faith Deposit of a Prevailing Purchaser shall be applied to the purchase price for the Debtors' Assets to be paid by the Prevailing Purchaser, as set forth in the applicable Bidder APA. The Good Faith Deposit of the Back-Up Bidder shall be retained by the Debtors until the earlier of (a) the Closing Date of the Sale with the Successful Bidder(s) or (b) the sixtieth (60th) day after entry of the Sale Order and thereafter returned to the Back-up Bidder (unless, during such 60-day period, the Debtors deliver the Back-Up Notice, as defined below). The Good Faith Deposits of all other Qualified Bidders shall be held by the Debtors and returned in accordance with Paragraph 14. If a Prevailing Purchaser fails to consummate an approved Sale because of a breach or failure to perform on the part of such Prevailing Purchaser, the Debtors shall be entitled to retain the Good Faith Deposit, in addition to being entitled to exercise all other remedies provided for in the applicable Bidder APA.

Following the giving of the Back-Up Notice, the Good Faith Deposit of the Back-Up Bidder shall be applied to the Purchase Price to be paid by the Back-Up Bidder as defined in the applicable Bidder APA. If the Back-Up Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Back-Up Bidder, the Debtors shall be entitled to retain the Good Faith Deposit, in addition to being entitled to exercise all other remedies provided for in the applicable Bidder APA.

5. **Modifications of Qualified Bids Prior to Auction.**

Between the date that a Bidder submits a bid and the conclusion of the Auction, the Debtors may discuss, negotiate, or seek clarification of any bid or Qualified Bid from a Bidder or Qualified Bidder, as the case may be. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments

to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period of time such bid remains binding as specified herein.

6. **Auction**.

In the event that the Debtors determine there is more than one Qualified Bidder, the Debtors are authorized to conduct an Auction. Other than as expressly set forth herein, the Debtors may conduct an Auction in the manner they determine, in consultation with SSG and the Committee, will result in the highest or otherwise best offer for the Debtors' Assets. If necessary, the Auction will be held on **October 14, 2015, beginning at 10:00 a.m. (Prevailing Eastern Time)**, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or such other location as will be timely communicated to all entities entitled to attend the Auction. Only the Debtors, Qualified Bidders, the Committee, the DIP Lender, the Stalking Horse Bidder, the United States Trustee, creditors providing written notice of their intention to attend the Auction to Debtors' counsel at mbcleary@ycst.com and chris.donoho@hoganlovells.com on or before the Bid Deadline, and the respective advisors of any of the foregoing will be permitted to attend the Auction. Notwithstanding the foregoing, such creditors may observe, but not participate in, the Auction. Debtors' counsel shall promptly notify the Committee of any such requests it receives.

7. **Overbid**.

At the commencement of the Auction, the Debtors, in consultation with the Committee, will announce the then-existing highest or otherwise best Qualified Bid (the "**Auction Baseline Bid**"), and will solicit overbids. An "**Overbid**" is any bid or bids made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(a) the initial Overbid after and above the Auction Baseline Bid shall be an amount equal to or greater than the Auction Baseline Bid *plus* $1,000,000;

(b) each subsequent Overbid shall be made in increments valued at not less than $500,000 (or such other amount that the Debtors, in consultation with SSG and the Committee, determine appropriate to facilitate the Auction);

(c) any Overbid shall remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept as an Overbid a higher Qualified Bid for the Debtors' Assets, and (ii) such Overbid is not selected as the Back-Up Bid (as defined herein); and

(d) to the extent not previously provided, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence demonstrating such Qualified Bidder's ability to close the transactions proposed by such Overbid.

8. **Credit Bidding.**

The Stalking Horse Bidder shall (a) have the right to credit bid (i) absent further order of the Bankruptcy Court, the full amount of the outstanding obligations under the Pre-Petition Loan Documents and any other amounts that the Court authorizes the DIP Lender to credit bid under a Final DIP Order, as of the date of the Auction and (ii) the Break-Up Fee, (b) be deemed a Qualified Bidder, (c) be able to participate fully at the Auction and (d) be entitled to a dollar-for-dollar credit for the maximum amount of the Break-Up Fee.

9. **Auction Procedures.**

In addition to complying with the above-requirements, the Auction will be governed by the following procedures:

(a) the Auction will be conducted openly by the Debtors, and only the Qualified Bidders and the Stalking Horse Bidder will be entitled to: (i) make any subsequent bids at the Auction; (ii) make statements on the record at the Auction; or (iii) otherwise participate at the Auction in any manner whatsoever;

(b) each Qualified Bidder will be required to represent that it has not engaged in any collusion with respect to the bidding or the sale;

(c) the Qualified Bidders will appear in person at the Auction, through a duly authorized representative, or as otherwise agreed by the Debtors;

(d) bidding will commence and proceed as determined by the Debtors, in consultation with the Committee;

(e) the Auction will be transcribed or videotaped, at the Debtors' election;

(f) all Qualified Bidders will have the right to submit additional bids and make additional modifications to their respective Bidder APA at the Auction, provided that any such modifications to the Bidder APA, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors than such Qualified Bidder's previous bid in the Debtors' discretion, in consultation with the Committee, and the fact that a Qualified Bidder shall have made any such modifications or improvements, including those made at the request of the Seller, shall not be an indication that such Qualified Bid was not qualified prior to the Bid Deadline;

(g) the Auction will continue until the Debtors determine, in consultation with the Committee, that a Qualified Bid or Overbid, as applicable, is the highest or otherwise best offer from among the Qualified Bids (including Overbids) (the "**Prevailing Bid**," and the party or parties that submitted such Prevailing Bid, the "**Prevailing Purchaser**"), which shall be subject to Bankruptcy Court approval;

(h) in selecting the Prevailing Bid, the Debtors, in consultation with the Committee, may consider all factors, including the amount of the purchase price, the likelihood of each Qualified Bidder's ability to close a transaction and the timing thereof, the form and substance of the respective Bidder APA, and the net benefit to the Debtors' bankruptcy estates. Less than all or substantially all of the Debtors' Assets may be sold to one or more Prevailing Purchaser provided any and all debt owed by the Debtors to the DIP Lender is paid in full;

(i) following the Auction, the Debtors will file with the Bankruptcy Court a supplement (the "**Supplement**"), which will, among other things, identify (i) the Prevailing Purchaser as the proposed purchaser of the Debtors' Assets, (ii) the amount and form of consideration to be paid by the Prevailing Purchaser for the Debtors' Assets, (iii) the Assumed Liabilities to be assumed by the Prevailing Purchaser, and (iv) the Contracts and Leases to be assumed by the Debtors and assigned to the Prevailing Purchaser in connection with the Sale, subject only to the Prevailing Purchaser's right prior to the Executory Contract Designation Deadline to amend the Contract & Cure Schedule to (a) add or remove any Executory Contract or (b) modify the treatment of any Executory Contract. The Supplement will also include similar information relating to the Back-Up Bidder and the Back-Up Bid. In addition, the Debtors will attach to the Supplement (i) any revised proposed order approving the Sale to the Prevailing Purchaser, (ii) copies of the Bidder APA of the Prevailing Purchaser and Back-Up Bidder submitted to the Debtors, and (iii) any additional information or documentation relevant to the Prevailing Bid and/or Back-Up Bid. Within 48 hours of the conclusion of Auction, the Debtors will file the Supplement with the Bankruptcy Court and post the same on the website maintained by the Debtors' claims and noticing agent, but no further notice of the Supplement will be provided to parties-in-interest in the Debtors' chapter 11 cases; and

(j) the Debtors reserve the right, in their business judgment and in consultation with the Committee, to make one or more continuances of the Auction to, among other things: facilitate discussions among the Debtors and Qualified Bidders; allow Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors and Committee with such additional information as the Debtors in their business judgment, after consultation with the Committee, may require.

10. **No Auction**

In the event that no Qualified Bids, other than the Stalking Horse Bid, are received by the Bid Deadline, the Auction shall be cancelled and the Stalking Horse Bid shall be deemed the Prevailing Purchaser.

11. **Break-Up Fee**

As consideration for the value of the Stalking Horse Bidder's bid, in the event that the Debtors consummate the Sale of the Debtors' Assets with any party other than the Stalking Horse Bidder, subject to the terms of the Stalking Horse APA and Sale and Bidding Procedures Order, the Debtors shall pay to the Stalking Horse Bidder a $1,000,000.00 break-up fee (the "**Break-Up Fee**") out of the cash portion of the consideration of the Prevailing Bid. In all subsequent bids at the Auction, the Stalking Horse Bidder shall get a dollar-for-dollar credit for the amount of the Break-Up Fee as if the Debtors had accepted an Alternative Transaction in accordance with Section 7.3 of the Stalking Horse APA, which may be used as part of any credit bid by the Stalking Horse Bidder. No fees shall be payable to Qualified Bidders other than the Stalking Horse.

12. **"As Is, Where Is"**

Other than as specifically provided in the Stalking Horse APA or prevailing Bidder APA, as applicable, all of the Debtors' Assets shall be transferred "as is," "where is" and "with all faults." The Debtors expressly disclaim any warranty of merchantability or fitness for a particular purpose and make no warranty, express or implied, as to the nature, quality, value or

condition of any assets, in each case other than as specifically provided in the Stalking Horse APA or prevailing Bidder APA, as applicable.

13. **Sale Hearing.**

The final hearing to approve the sale of the Debtors' Assets to the Prevailing Purchaser (the "**Sale Hearing**") is scheduled to take place on November 24, 2015, beginning at 2:00 p.m. (Prevailing Eastern Time), before the Honorable Mary F. Walrath at the United States Bankruptcy Court, District of Delaware, 824 Market Street North, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801. The Sale Hearing may be adjourned from time to time by the Debtors with the consent of the DIP Lender and with the approval of the Bankruptcy Court and with notice to any other party in interest by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or a notice filed with the Bankruptcy Court. Any objections to the Sale to the Stalking Horse Bidder and entry of the Sale Order shall be filed and served on the Bid Notice Parties **by October 13, 2015 at 4:00 p.m. (Prevailing Eastern Time)** (the "**Sale Objection Deadline**"). Objections to the conduct of the Auction and the terms of a Sale to a Prevailing Purchaser other than the Stalking Horse Bidder must be filed and served on the Bid Notice Parties **by November 3, 2015 at 4:00 p.m. (Prevailing Eastern Time)** (the "**Auction Objection Deadline**").

14. **Closing Deadline.**

The Prevailing Purchaser shall close and consummate the sale of the Debtors' Assets as soon as practicable, but in no event later than twenty (20) days after entry of the Sale Order.

15. **Failure to Consummate Purchase by the Prevailing Purchaser.**

If an Auction is conducted, the Qualified Bidder (including, but not limited to the Stalking Horse Bidder) with the Qualified Bid that is next highest or otherwise best to the

Prevailing Bid at the Auction, as determined by the Debtors in consultation with the Committee, shall be required to serve as a back-up bidder (the "**Back-Up Bid**" and the "**Back-Up Bidder**," respectively) and keep such bid open and irrevocable until 11:59 p.m. (Prevailing Eastern time) on the date that is the earlier of (a) 60 days after the date of the Sale Hearing, and (b) the closing of the sale transaction with the Prevailing Purchaser.

Following the Sale Hearing, if the Prevailing Purchaser fails to consummate a sale in accordance with the Prevailing Bid because of a breach or failure to perform on the part of such Prevailing Purchaser, the Debtors shall deem the Back-Up Bidder to be the new "Prevailing Purchaser," and the Debtors shall consummate a sale with the Back-Up Bidder as contemplated by the Back-Up Bid without further order of the Bankruptcy Court upon at least three-days written notice to the Committee, the DIP Lender, and the Back-Up Bidder (the "**Back-Up Notice**"). In such case, (a) the defaulting Prevailing Purchaser's deposit, if any, shall be forfeited to the Debtors and (b) all parties in interest, and the Debtors specifically, reserve the right to seek all available damages from the defaulting Prevailing Purchaser.

Notwithstanding the foregoing, if an Auction is conducted, and the Seller does not choose the Stalking Horse Bidder as the Prevailing Purchaser, but instead chooses the Stalking Horse Bidder as the bidder having submitted the next highest or otherwise best bid at the conclusion of such Auction, the Stalking Horse Bidder shall be required to serve as the Back-Up Bidder pursuant to the terms and conditions set forth in the Stalking Horse APA, including the purchase price set forth therein, and not pursuant to the terms and conditions of its last and highest bid made at the Auction. This limitation shall not apply to any other Qualified Bidder chosen as the Back-Up Bidder.

All deposits, if any, shall be returned to each Bidder not selected by the Debtors as the Prevailing Purchaser or the Back-Up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction in accordance with the terms of the master escrow agreement. The deposit of the Back-Up Bidder shall be held by the Debtors until the earlier of two (2) business days after: (a) 60 days after the date of the Sale Hearing; and (b) the closing of the sale transaction with the Prevailing Purchaser.

16. **Consultation Rights.**

The Debtors and their advisors will reasonably consult regularly with the Committee and their advisors on all material aspects of the sale process described in these Sales and Bidding Procedures and all material decisions and documents contemplated herein reasonably prior to their implementation, including, without limitation, all instances in which the Committee has express consultation rights elsewhere in these Sales and Bidding Procedures. The Debtors and their advisors will also respond reasonably promptly to reasonable requests of the Committee and their advisors for information and/or documents relating to the sale process, Qualified Bids, the Auction, and the Sale Hearing.

17. **Reservation of Rights; Consent to Jurisdiction.**

The Debtors reserve their rights, in the exercise of their fiduciary obligations, and in consultation with the Committee, (a) to impose, at or prior to the Auction, additional terms and conditions on the sale of the Debtors' Assets, and (b) to announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, *provided, however*, that any modifications to the Sales and Bidding Procedures shall be non-material and consistent with the Sales and Bidding Procedures Order, unless otherwise approved by the Bankruptcy Court.

All Qualified Bidders, and all such Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors and the Debtors' Assets, and have waived any right to a jury trial in connection with any disputes relating to the Debtors, the chapter 11 cases, the Sales and Bidding Procedures, the Auction, or the construction and enforcement of any Bidder APA.

# EXHIBIT A

## Summary of Key Events and Deadlines[1]

| EVENT OR DEADLINE | DATE |
|---|---|
| **Sale Objection Deadline** deadline for Contract Objections and any objections to the Sale to the Stalking Horse Bidder and entry of the Sale Order | October 13, 2015 at 4:00 p.m. (ET) |
| **Bid Deadline** | October 13, 2015 at 5:00 p.m. (ET) |
| **Auction (if necessary)** | October 14, 2015 at 10:00 a.m. (ET) |
| **Deadline for Debtors to File Supplement** | Within 48 hours of the conclusion of Auction |
| **Auction and Adequate Assurance Objection Deadlines** deadline for any objections to the conduct of the Auction, the terms of a Sale to a Prevailing Purchaser other than the Stalking Horse Bidder, and adequate assurance of future performance obligations by Qualified Bidders other than the Stalking Horse Bidder | November 3, 2015 at 4:00 p.m. (ET) |
| **Sale Hearing** | November 24, 2015 at 2:00 p.m. (ET) |

---

[1] This summary is qualified in its entirety by reference to the Sales and Bidding Procedures Order, and the Sales and Bidding Procedures Order shall control to the extent of any conflict. All dates, times, and deadlines are subject to change or modification in accordance with the Sales and Bidding Procedures Order. Please see the Sales and Bidding Procedures Order for additional information.

01:17291525.16