# Exhibit 1

**Proposed Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.**[1] | Case No. 15-11498 (MFW) |
| Debtors. | Jointly Administered |
| | RE: Docket Nos. 120 and 280 |

## ORDER (I) APPROVING STALKING HORSE APA, (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING CERTAIN RELATED RELIEF

Upon consideration of the motion (the "**Motion**"),[2] dated July 22, 2015, of Signal International, Inc., Signal Ship Repair, LLC, Signal International, LLC, Signal International Texas GP, LLC, and Signal International Texas, L.P., the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") for, among other things, entry of an order (this "**Order**") (i) approving the terms of that certain Asset Purchase Agreement, dated as of July 13, 2015, as amended and attached hereto as Exhibit A (as the same may be further amended, modified or supplemented and together with all exhibits, schedules and related documents and agreements, the "**Stalking Horse APA**"), by and among each of the Debtors, as Sellers, and the Teachers' Retirement System of Alabama, a body corporate of the State of Alabama created under §§ 16-25-1, *et seq.*, of the Alabama Code (including any permitted designee thereof under the Stalking Horse APA, "**TRSA**") and Employees' Retirement System of Alabama, a body corporate of the State of Alabama created under Section 36-27-1, *et seq.*, of the Alabama Code

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Stalking Horse APA (as defined herein), as applicable.

(including any permitted designee thereof under the Stalking Horse APA, "**ERSA**" and collectively with TRSA, in such capacity, the "**Buyers**"), as Buyers, (ii) authorizing and approving the sale (together with all related transactions and events authorized by this Order, the "**Sale**") of substantially all of the Acquired Assets (as defined in Section 2.1 of the Stalking Horse APA) free and clear of all Claims (as defined herein), except for Permitted Encumbrances (as defined below), pursuant to this Order, the Stalking Horse APA, sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (iii) authorizing the assumption and assignment of certain executory contracts and unexpired leases in accordance with the Assumption and Assignment Procedures (as defined herein), the Stalking Horse APA and this Order (the "**Assigned Contracts**"), and (iv) granting certain related relief; and this Court having held a hearing on [November 24], 2015 (the "**Sale Hearing**") to approve the Sale; and this Court having reviewed and considered (a) the Motion, (b) the declarations filed by the Debtors (and the Debtors' agents) in support of the Motion, (c) the objections to the Motion, (d) all responses to any objections and replies in further support of the Motion, and (e) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and other parties in interest; and upon the record of the Sale Hearing and the Chapter 11 Cases (as defined herein); and after due deliberation thereon; and good cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.     **Jurisdiction and Venue.**  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     **Statutory Predicates.**  The statutory predicates for the relief sought in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1.

C.     **Petition Date.**  On July 12, 2015 (the "**Petition Date**"), each of the Debtors commenced a case (collectively, the "**Chapter 11 Cases**") by filing a petition for relief under chapter 11 of the Bankruptcy Code.

D.     **Entry of Sale Procedures Order**.  On September 1, 2015, this Court entered the *Order (A) Approving Sales and Bidding Procedures in Connection with Sale of Assets of the Debtors, (B) Approving Bid Protections, (C) Approving Form and Manner of Notice, (D) Scheduling the Auction and Sale Hearing, (E) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief* [D.I. 280] (the "**Sale Procedures Order**").  Pursuant to the Sale Procedures Order, this Court approved the Sale and Bidding Procedures attached as Exhibit 1 to the Sale Procedures Order (the "**Sale Procedures**") and granted other relief.

E.     **Compliance with Sale Procedures Order.**  As demonstrated by (i) the *Declaration of Christopher S. Cunningham in Support of Chapter 11 Petition and First Day Motions* [D.I. 12], (ii) the *Declaration of* [•] *in Support of the Sale Motion,* filed on [•], 2015

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

[D.I. [•]], (iii) the testimony and other evidence proffered or adduced at the Sale Hearing, and (iv) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Acquired Assets and conducted the sale process in compliance with the Sale Procedures Order, and the Auction was duly noticed and conducted in a non-collusive, fair, and good-faith manner. The Debtors and their professionals have actively marketed the Acquired Assets and conducted the sale process in compliance with the Sale Procedures Order, and have afforded potential purchasers a full and fair opportunity to make higher and better offers. The Buyers, the Pre-Petition Credit Parties (as defined below), and the DIP Lenders (as defined below) acted in compliance with the terms of the Sale Procedures. In accordance with the Sale Procedures, the Debtors determined that the bid submitted by the Buyers and memorialized by the Stalking Horse APA is the Prevailing Bid (as defined in the Sale Procedures).

F.     **Notice.** As evidenced by the affidavits, declarations, and/or certificates of service and publication previously filed with this Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the Assumption and Assignment Procedures (including the objection deadline with respect to the amount, if any, determined by the Debtors to be necessary to be paid to cure and compensate for any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**")), and the assumption and assignment of the Assigned Contracts and the Cure Amounts has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and in compliance with the Sale Procedures Order, (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assigned Contracts or the Cure

Amounts is or shall be required.  With respect to all persons and entities, including all H-2B Workers (as defined herein),[4] whose identities or addresses are not reasonably ascertained by the Debtors, publication of the Sale Notice in *The New York Times* (national edition) and the *Houston Chronicle* on September 4, 2015, the Mississippi *SunHerald* on September 5, 2015, and the *Hindustan Times* and the *Malayala Manorama* on September 8, 2015, was sufficient and reasonably calculated under the circumstances to reach such persons and entities.

G.     **Corporate Authority.** Each Debtor (i) has full corporate power and authority to execute the Stalking Horse APA and all other documents contemplated thereby, and the Sale of the Acquired Assets by the Debtors has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Stalking Horse APA, and (iii) has taken all corporate action and formalities necessary to authorize and approve the Stalking Horse APA and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, as required by their respective organizational documents, and there are no governmental, regulatory or other consents or approvals, other than those expressly provided for in the Stalking Horse APA, required for the Debtors to enter into the Stalking Horse APA and consummate the Sale.

H.     **Opportunity to Object.** A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the DIP Lenders and their counsel; (ii) the Stalking

---

[4]      As used in this Order, the term "**H-2B Workers**" shall mean any and all former employees and recruits of any Debtor hire and/or recruited through the United States H-2B nonimmigrant temporary foreign worker program who, independently, as a member of a class, through the United States Equal Employment Opportunity Commission, or through any agency or instrumentality of any governmental unit (as defined in section 101(27) of the Bankruptcy Code) with responsibility for enforcing laws against employment condition or otherwise relating to conditions of employment, have asserted or may assert Claims (as defined herein) against any Debtor or its property.

Horse Bidder and its counsel; (iii) the Office of the United States Trustee for the District of Delaware; (iv) counsel to the Committee; (v) the United States Attorney for the District of Delaware; (vi) the Internal Revenue Service; (vii) the Environmental Protection Agency; (viii) all known taxing authorities for the jurisdictions to which the Debtors are subject; (ix) all entities known or reasonably believed to have asserted a Lien on any of the Acquired Assets; (x) all creditors who are known to have or have asserted secured claims; (xi) the H-2B Workers and their counsel, if any, at the last address known to the Debtors; (xii) the Equal Opportunity Employment Commission; (xiii) all entities reasonably known to have expressed a bona fide interest in acquiring the Acquired Assets during the six (6) months preceding the date of the Motion; (xiv) the non-Debtor counterparties to the Contracts and Leases; and (xv) those parties who have formally filed requests for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

        I.      **Sale in Best Interest**. Consummation of the Sale of the Acquired Assets at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

        J.      **Business Justification.** Sound business reasons exist for the Sale.  Entry into the Stalking Horse APA, and the consummation of the transactions contemplated thereby, including the Sale and the assumption and assignment of the Assigned Contracts, constitutes each Debtor's exercise of sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest.  This Court finds that each Debtor has articulated good and sufficient business reasons justifying the Sale.  Such business reasons include, but are not limited to, the following: (i) the Sale is the only viable alternative to liquidation; (ii) the Stalking Horse APA constitutes the highest and best offer for the Acquired Assets; (iii) the

Stalking Horse APA and the Closing thereon will present the best opportunity to realize the value of the Acquired Assets on a going-concern basis and avoid decline and devaluation of the Acquired Assets; (iv) unless the Sale and all of the other transactions contemplated by the Stalking Horse APA are concluded expeditiously, as provided for in the Motion and pursuant to the Stalking Horse APA, recoveries to creditors may be diminished; and (v) the consummation of the Sale is integral to the Debtors' ability to implement the transactions contemplated by the Plan Support Agreement and the *Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 286] (as it may be amended, modified, or supplemented from time to time, the "**Plan**").

K.     **Fair and Reasonable.**   The terms and conditions of the Stalking Horse APA, including, without limitation, the consideration to be realized by the Debtors, are fair and reasonable. Approval of the Motion, the Stalking Horse APA, and the transactions contemplated thereby, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

L.     **Arms'-Length Sale.**   The Stalking Horse APA was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtors, the Buyers, any of their respective Affiliates, nor any of their respective past, present, or future representatives, controlling person, officers, directors, agents, attorneys, advisors, employees, subsidiaries, shareholders, partners (general or limited), board members, members, managers, equity holders, trustees, executors, predecessors in interest, successors, or assigns of any of the foregoing (each such person or entity, a "**Representative**") have engaged in any conduct that would cause or permit the Stalking Horse

APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Buyers have not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

M.    **Good Faith Purchaser.** The Buyers are good faith purchasers for value and, as such, are entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law. Specifically: (i) the Buyers recognized that the Debtors were free to deal with any other party interested in purchasing the Acquired Assets; (ii) the Buyers complied in all respects with the provisions in the Sale Procedures Order; (iii) the Buyers agreed to subject their bid to the competitive bid procedures set forth in the Sale Procedures Order; (iv) all payments to be made by the Buyers in connection with the Sale have been disclosed; (v) the negotiation and execution of the Stalking Horse APA was at arm's length and in good faith, and at all times each of the Buyers and the Debtors were represented by competent counsel of their choosing; (vi) the Buyers did not in any way induce or cause the chapter 11 filing of the Debtors; and (vii) the Buyers have not acted in a collusive manner with any person. The Buyers will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in Closing the transactions contemplated by the Stalking Horse APA.

N.    **DIP Financing Claims.**

(i)    <u>DIP Order and DIP Facility Documents</u>. On September 11, 2015, this Court entered the *Final Order Authorizing Debtors in Possession to (I) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Grant Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. §§ 364, (III) Use Cash Collateral, and (IV) Provide Adequate Protection to Prepetition Credit Parties and (V) Modifying Automatic*

*Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364* [D.I. 316] (the "**DIP Order**") approving,

on a final basis, the Debtors' entry into (i) that certain *Debtor-In-Possession Loan and Security*

*Agreement* (together with all schedules, exhibits and annexes thereto, and as any time amended,

the "**DIP Loan Agreement**"), by and among the Debtors, as Borrowers, and TRSA and ERSA,

as Lenders (together in such capacity, the "**DIP Lenders**").  The DIP Loan Agreement, together

with any other agreement, note, instrument, guaranty, mortgage, fixture filing, deed of trust,

financing statement, pledge, assignment, and other document executed at any time in connection

therewith, in each case as the same may be amended, modified, restated or supplemented from

time to time, are hereinafter referred to collectively as the "**DIP Facility Documents**".

   (ii) <u>DIP Facility</u>.  Pursuant to the DIP Order and the DIP Facility

Documents, the Debtors have obtained post-petition financing from the DIP Lenders consisting

of: (a) a superpriority, secured revolving credit facility in the principal amount of up to

$15,000,000.00 (the "**DIP Working Capital Facility**") to be used for general working capital

and liquidity purposes, including the payment of Administrative Expenses as described in the

DIP Loan Agreement; (b) a superpriority, secured revolving credit facility in the principal

amount of up to $5,000,000.00 (the "**DIP Credit Enhancement Facility**") to be used for credit

enhancement obligations under customer contracts as described in the DIP Loan Agreement and,

if required or agreed in accordance with the terms of the DIP Order, to allow the Debtors to fund

the MS Escrow (as defined in the DIP Order); and (c) a superpriority, secured term loan facility

in an aggregate principal amount of $70,088,952.00 (the "**DIP Term Facility**," and together

with the DIP Working Capital Facility and the DIP Credit Enhancement Facility, the "**DIP**

**Facility**"), pursuant to which the Debtors may obtain loans from time to time (the "**DIP Loans**,"

and collectively with all interest, fees, charges, and related obligations of the Debtors under the

DIP Order and the DIP Facility Documents, the "**DIP Obligations**"), all in accordance with and subject to the terms of the DIP Facility Documents.

(iii)    <u>DIP Collateral</u>. All DIP Obligations are secured by security interests in and liens upon the DIP Collateral (as defined in the DIP Order).

(iv)    <u>DIP Obligations</u>.   As of the Sale Hearing, the Debtors, as Borrowers, jointly and severally, were justly and lawfully indebted and liable under the DIP Facility Documents and the DIP Order to the DIP Lenders for DIP Obligations totaling not less than $[•] (the "**DIP Claim Amount**").   The DIP Obligations are due and owing without any defense, offset, recoupment, or counterclaim of any kind.   The DIP Obligations constitute the legal, valid, and binding obligation of each Debtor, enforceable in accordance with the terms of the DIP Order and the DIP Facility Documents.   None of the DIP Obligations or any payments made to any DIP Lender or applied to the obligations owing under any DIP Facility Document or the DIP Order is subject to avoidance, subordination, re-characterization, recovery, attack, offset, counterclaim, defense or Claim (as defined herein) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.   Accordingly, the DIP Lenders hold allowed secured claims in the aggregate amount not less the DIP Claim Amount, plus accrued interest, which claim is not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts to the extent allowed under the DIP Order and the DIP Facility Documents (the "**Allowed DIP Financing Claim**"), and, pursuant to the Sale Procedures and the DIP Order, the Buyers were and are authorized to credit bid any or all of such Allowed DIP Financing Claim (together with such additional amounts as the Buyers were and are authorized to credit bid pursuant to the Sale

Procedures Order and paragraphs 19(e), 35, and 36(f) and other applicable provisions of the DIP Order) at the Auction.

O.     **Pre-Petition Lenders' Secured Claims.**

(i)     <u>Prepetition Loan Documents</u>.  Pursuant to that certain *Credit Agreement,* dated as of January 31, 2014 (together with all schedules, exhibits and annexes thereto, and as any time amended, the "**Pre-Petition Loan Agreement**"), among Signal International, Inc., one of the Debtors herein, as Borrower, and the other Debtors herein, as Guarantors, the TRSA, as administrative and collateral agent (together, the "**Pre-Petition Agent**"), the TRSA and ERSA, as Lenders (the "**Pre-Petition Lenders**," and collectively with TRSA as the Pre-Petition Agent, the "**Pre-Petition Credit Parties**"), made a term loan facility available to the Debtors in the aggregate principal amount of $75,000,000.00 (the "**Pre-Petition Loans**," and collectively with all interest, fees, charges, and related obligations of the Debtors under the Pre-Petition Loan Documents (as defined herein), the "**Pre-Petition Obligations**"). The Pre-Petition Loan Agreement, together with any other agreement, note, instrument, guaranty, mortgage, fixture filing, deed of trust, financing statement, pledge, assignment, and other document executed at any time in connection therewith, in each case as the same may be amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "**Pre-Petition Loan Documents**").

(ii)     <u>Pre-Petition Collateral</u>. Pursuant to certain Collateral Documents (as defined in the Pre-Petition Loan Agreement) executed by the Debtors in favor of the Pre-Petition Agent, each of the Debtors granted the Pre-Petition Agent, for the benefit of the Pre-Petition Credit Parties and to secure such Debtors' obligations and indebtedness under the Pre-Petition Loan Documents, first priority liens on and security interests (the "**Pre-Petition**

**Security Interests**") in the Collateral, as defined in the Pre-Petition Loan Agreement and Collateral Documents, including, without limitation, all cash, securities or other property of the Debtors (and the proceeds therefrom) as of the Petition Date, including, without limitation, all amounts on deposit or maintained by any Debtor in any account with any Pre-Petition Credit Party or any bank or other depository institution, was subject to rights of setoff or to valid, perfected, enforceable first priority liens under the Pre-Petition Loan Documents and applicable law, and is included in the Pre-Petition Collateral, and therefore the Debtors' entire cash balances are cash collateral of the Pre-Petition Credit Parties within the meaning of section 363(a) of the Bankruptcy Code (collectively, the "**Pre-Petition Collateral**").

(iii)    <u>Pre-Petition Obligations</u>. As of the Petition Date, the Debtors, jointly and severally, were justly and lawfully indebted and liable under the Pre-Petition Loan Documents to the Pre-Petition Credit Parties for Pre-Petition Obligations totaling not less than $70,088,952.00 (the "**Pre-Petition Claim Amount**").  The Pre-Petition Obligations are due and owing to the Pre-Petition Credit Parties without any defense, offset, recoupment, or counterclaim of any kind.  The Pre-Petition Obligations constitute the legal, valid and binding obligation of each Pre-Petition Obligor, enforceable in accordance with the terms of the Pre-Petition Loan Documents.  None of the Pre-Petition Obligations or any payments made to any Pre-Petition Credit Party or applied to the obligations owing under any Pre-Petition Loan Document prior to the Petition Date is subject to avoidance, subordination, re-characterization, recovery, attack, offset, counterclaim, defense, or Claim (as defined herein) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  Accordingly, the Pre-Petition Credit Parties hold allowed secured claims in the aggregate amount not less the Pre-Petition Claim Amount, plus accrued interest which claim is not subject to avoidance, reduction, disallowance,

impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts to the extent allowed under the DIP Order (the "**Allowed First Lien Claim**"), and, pursuant to the Sale Procedures and the DIP Order, the Buyers were and are authorized to credit bid any or all of such Allowed First Lien Claim, less any portion thereof that as of the commencement of the Auction had been indefeasibly repaid or deemed repaid from proceeds of the DIP Facility, at the Auction.

P.      **Credit Bid.** Pursuant to their agreement under the Stalking Horse APA and sections 363(b) and 363(k) of the Bankruptcy Code, the Buyers, in addition to the other consideration offered under the Stalking Horse APA, credit bid $[•] of the Allowed DIP Financing Claim and $[•] of the Allowed First Lien Claim (together, the "**Credit Bid**").  With respect to the Credit Bid, this Court finds and determines that: (i) the Credit Bid was and is a valid and proper offer pursuant to the Sale Procedures Order and Sale Procedures; (ii) there is no cause to limit the amount of the Credit Bid pursuant to section 363(k) of the Bankruptcy Code; (iii) the Debtors valued each dollar of the Credit Bid as equivalent to one dollar of cash, and such valuation represents a reasonable exercise of the Debtors' business judgment; and (iv) subject to the occurrence of the Closing Date, the Credit Bid is binding on the Pre-Petition Credit Parties and the DIP Lenders.  For the avoidance of doubt, the Credit Bid is without prejudice to any contingent or unliquidated indemnification obligations of any Debtor to the DIP Lenders and their Representatives under the DIP Loan Agreement (including those described in the §§ 8.4, 8.5, and 8.6 of the DIP Loan Agreement) that by their terms survive the satisfaction or payment of the Obligations (as defined in the DIP Loan Agreement) or the termination of the DIP Loan Agreement.

Q.      **Free and Clear**.  The Sale of all Acquired Assets to the Buyers under the terms of the Stalking Horse APA satisfies the applicable provisions of section 363(f) of the Bankruptcy Code such that each of the following will be free and clear of any and all Claims (as defined herein), except Permitted Encumbrances (as defined below): (i) the Sale of the Acquired Assets to the Buyers; (ii) the transfer of the Acquired Assets to the Buyers; and (iii) assumption and/or assignment to the Buyers of the Assigned Agreements.  "Permitted Encumbrances" shall mean (i) "Assumed Liabilities" as defined in Section 2.3 of the Stalking Horse APA and (ii) subject to the terms and conditions of the Plan Support Agreement (including the Plan Term Sheet annexed thereto) and the Plan, as confirmed and effective, the interest of the Litigation Settlement Trust (as defined in the Plan Term Sheet) in the Westport Loan (as defined in the Plan Term Sheet) and the Westport Documents (as defined in the Plan Term Sheet) and certain proceeds thereof, as provided in the Plan Support Agreement and the Plan.  All holders of Claims who did not object, or withdrew their objections to the transactions contemplated by the Stalking Horse APA, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Claims are adequately protected—thus, satisfying section 363(e) of the Bankruptcy Code—by having their Claims, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert a Claim or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such Claim holder had prior to the Sale, subject to any rights, claims, and defenses of the Debtors, their estates, and other parties-in-interest, as applicable, or as otherwise provided herein; *provided*, *however*, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale.

R.    The Buyers would not have entered into the Stalking Horse APA and would not consummate the transactions contemplated thereby, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, (i) if the transfer of the Acquired Assets were not free and clear of all Claims (subject only, in the case of the Buyers with respect to the Acquired Assets, to Permitted Encumbrances), including, without limitation, rights or claims based on any taxes, successor, or transferee liability.   The Buyers will not consummate the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, unless this Court expressly orders that none of the Buyers, their affiliates, their present or contemplated members or shareholders, or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims, including, without limitation, rights or claims based on any taxes, successor or transferee liability.

S.    Not transferring the Acquired Assets free and clear of all Claims (subject only, in the case of the Buyers with respect to the Acquired Assets, to Permitted Encumbrances), including, without limitation, rights or claims based on any taxes, successor, or transferee liability, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Acquired Assets other than pursuant to a transfer that is free and clear of all Claims would be of substantially less benefit to the Debtors' estates.

T.    Without limiting the generality of the foregoing, none of the Buyers, their affiliates, their respective present or contemplated members or shareholders, or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, or otherwise, directly or indirectly, any liens,

claims, encumbrances, and other interests relating to any federal, state, local, or foreign income tax liabilities, that the Debtors incur in connection with the consummation of the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, other than Permitted Encumbrances as expressly provided in the Stalking Horse APA and this Order.

U.     **Assumption of Executory Contracts and Unexpired Leases.** Without in any way limiting any lease or contract counterparty's rights under section 365 of the Bankruptcy Code, the (i) transfer of the Acquired Assets to the Buyers and (ii) assignment to the Buyers of the Assigned Contracts, will not subject the Buyers to any liability whatsoever prior to the Closing Date (defined below) or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust, successor or transferee liability. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Buyers in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is the best interests of the Debtors, their estates, and their creditors. The Assigned Contracts being assigned to the Buyers are an integral part of the Acquired Assets being purchased by the Buyers and, accordingly, such assumption and assignment of Assigned Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

V.     **Cure/Adequate Assurance.** The Buyers have (i) cured, or have provided adequate assurance of cure upon Closing, of any default existing prior to the date of Closing under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the

Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of Closing under any of the Assigned Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, as to each Assigned Contract by the payment or promise of payment of the Cure Amounts set forth on Exhibit B hereto.  For the avoidance of doubt, if no amount is listed or the Cure Amount is listed as $0.00 for an Assigned Contract, no amount has been paid or is required to be paid by the Buyer or the Debtors on account of such Assigned Contract.  The Buyers have provided or will provide adequate assurance of future performance of and under the Assigned Contracts within the meaning of section 365(b)(1)(C) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Assigned Contracts to be assumed and assigned under the Stalking Horse APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyers notwithstanding any provision in such contracts or other restrictions prohibiting their assignment or transfer.

W.     **Section 1146(a) Predicates.**  The Sale and transfer of the Acquired Assets (including the assumption and assignment of the Assigned Contracts) to the Buyers is an integral element of the Plan. The Sale and transfer to the Buyers of the Acquired Assets is a "transfer" that will occur "under" the Plan as such term is used in section 1146(a) of the Bankruptcy Code.

X.     **Prompt Consummation.** The Sale must be approved and consummated promptly to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Sale, and the Debtors and the Buyers intend to close the Sale as soon as reasonably practicable.

Y.     **No Fraudulent Transfer.** The Stalking Horse APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or

under the laws of the United States, any state, territory, possession, or the District of Columbia. The Buyers are not a mere continuation, and are not holding themselves out as mere continuations, of any of the Debtors or their respective estates and there is no continuity between the Buyers and the Debtors. The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyers and any of the Debtors.

Z.    The consideration provided by the Buyers for the Acquired Assets pursuant to the Stalking Horse APA (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act, as in effect in any jurisdiction of the United States).

AA.    **Buyers Are Not Insiders and No Successor Liability.** The Buyers are not "insiders" of the Debtors, as such term is defined in the Bankruptcy Code.  The transfer of the Acquired Assets and the assumption of the Assumed Liabilities (including any individual elements of the Sale) to the Buyers, except as otherwise set forth in the Stalking Horse APA, does not, and will not, subject the Buyers to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the Closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability. Pursuant to the Stalking Horse APA, the Buyers are not purchasing all of the Debtors'

assets in that, among other things, the Buyers are not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyers are not holding themselves out to the public as a continuation of the Debtors. The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyers and the Debtors and/or the Debtors' estates. There is not substantial continuity between the Buyers and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyers. The Buyers are not a mere continuation of the Debtors or the Debtors' estates, and the Buyers do not constitute successors to the Debtors or the Debtors' estates.

BB.    **Legal, Valid Transfer.** The transfer of the Acquired Assets to the Buyers will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Buyers with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Claims (other than Permitted Encumbrances), as set forth in the Stalking Horse APA.  The Acquired Assets constitute property of the Debtors' estates and good title is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and rightful owners of the Acquired Assets.

CC.    **Stalking Horse APA Fair and Reasonable**.  The terms of the Stalking Horse APA, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects.

DD.    **Legal and Factual Bases.** The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

It is therefore **ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.    The Motion is GRANTED and APPROVED, as set forth herein.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Approval of the Sale of the Acquired Assets**

3.      The Stalking Horse APA, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Sale of the Acquired Assets to the Buyers free and clear of all Claims (except Permitted Encumbrances) and the transactions contemplated thereby are approved in all respects.

**Sale and Transfer of the Acquired Assets**

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are hereby authorized and directed to sell the Acquired Assets to the Buyers and consummate the Sale in accordance with, and subject to the terms and conditions of, the Stalking Horse APA, and to transfer and assign all right, title, and interest (including common law rights) to all property, licenses, and rights to be conveyed to the Buyers in accordance with and subject to the terms and conditions of the Stalking Horse APA, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate, and implement, the Stalking Horse APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Stalking Horse APA, including, without limitation, the related documents, exhibits, and schedules, and to take all further actions as may be reasonably requested by the Buyers for the purposes of assigning, transferring, granting, conveying, and conferring to the Buyers or reducing to possession the Acquired Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Stalking Horse APA.

01:17661519.3

6.      Except as otherwise expressly provided in the Stalking Horse APA and the terms of this Order with respect to Permitted Encumbrances, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be sold free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights, encumbrances, mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income, or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of licensees or sublicensees (if any) under section 365(n) of the Bankruptcy Code or any similar statute, rights of tenants and subtenants (if any) under section 365(h) of the Bankruptcy Code or any similar statute, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or

disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases (but, for the avoidance of doubt, in each case arising from the ownership of the Acquired Assets or the operation of the Business prior to the Closing Date), and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law, or doctrine of successor liability or related theories (all of the foregoing collectively being referred to in this Order as "**Claims**"), with all such Claims to attach to the proceeds of the Sale to be received by the Debtors with the same validity, force, priority and effect, if any, which they now have as against the Acquired Assets, subject to any claims and defenses the Debtors and other parties in interest may possess with respect thereto; *provided, however,* that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale.  For the avoidance of doubt, the term "claims" as used in this Order includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof).  For the further avoidance of doubt, except as otherwise expressly provided in the Stalking Horse APA and the terms of this Order with respect to Permitted Encumbrances (without in any way limiting the foregoing), the Sale to the Buyers of the Acquired Assets shall be free and clear of all Claims asserted by, for, or on behalf of any of the H-2B Workers.

7.     Following the Closing, the Debtors and/or the Buyers are authorized to execute and file a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, and Claims in the Acquired Assets of any kind or nature whatsoever.  For the purposes of any such post-Closing filing of this Order, the Debtors and/or the Buyers shall not be required to attach the exhibits to

this Order for such filing to be effective.  On the Closing Date, this Order will be construed as, and constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Acquired Assets or a bill (or bills) of sale transferring good and marketable title in such Acquired Assets to the Buyers.  On the Closing Date, this Order also shall be construed as, and constitute for any and all purposes, a complete and general assignment of all right, title, and interest of the Debtors and each bankruptcy estate to the Buyers in the Assigned Contracts. Each and every federal, state, local, and foreign governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA.

8.      All entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyers on the Closing Date.

9.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyers in accordance with the Stalking Horse APA and this Order; *provided, however,* that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order, or from enforcing its rights under section 365 of the Bankruptcy Code.

10.      This Order (i) shall be effective as a determination that, upon the Closing of the Sale, all Claims of any kind or nature whatsoever existing as to the Debtors or the Acquired Assets prior to the Closing have been unconditionally released, discharged, and terminated (other than any Permitted Encumbrances), and that the conveyances described herein have been effected and (ii) shall be binding upon and shall govern the acts of all entities

01:17661519.3

23

including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local, and foreign officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

11.     Except as expressly permitted by the Stalking Horse APA or this Order, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, all H-2B Workers and persons or entities acting for or on their behalf, and other creditors holding Claims or other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, or the operation of the Acquired Assets before the Closing Date, or the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyers, their successors and assigns, their respective property and the Acquired Assets, such persons' or entities' Claims or other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability.

12.     On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims on the Acquired Assets, if any, as such Claims may have been recorded or otherwise exist.

13.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts.

14.     Subject to the terms and conditions of this Order, the transfer of the Acquired Assets to the Buyers pursuant to the Stalking Horse APA constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Buyers with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Claims of any kind or nature whatsoever (other than Permitted Encumbrances).

**<u>No Successor Liability</u>**

15.     The Buyers are not "successors" to the Debtors or their estates by reason of any theory of law or equity, and the Buyers shall not assume, or be deemed to assume, or in any way be responsible for any liability other than Permitted Encumbrances, with respect to the Acquired Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine, or theory of successor liability, or similar theory or basis of liability.  Except to the extent the Buyers assume Assumed Liabilities and the Buyers are ultimately permitted to assume the Assigned Contracts pursuant to the Stalking Horse APA, neither the purchase of the Acquired Assets by the Buyers nor the fact that the Buyers are using any of the Acquired Assets previously

operated by the Debtors will cause the Buyers to be deemed successors in any respect to the Debtors' businesses or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine.

16.     The Buyers have given substantial consideration under the Stalking Horse APA, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyers and which shall be deemed to have been given in favor of the Buyers by all holders of Claims (except for Permitted Encumbrances) in or against the Debtors or the Acquired Assets. Upon consummation of the Sale, the Buyers shall not be deemed to (i) be the successor to the Debtors, (ii) have, *de facto* or otherwise, merged with or into the Debtors, (c) be a single business enterprise with, or (iii) be a mere continuation, alter ego, or substantial continuation of the Debtors.

17.     Except to the extent the Buyers otherwise specifically agreed in the Stalking Horse APA or this Order, the Buyers shall not have any liability, responsibility, or obligation for any claims, liabilities, or other obligations of the Debtors or their estates, including without limitation, any claims, liabilities, or other obligations related to the Acquired Assets prior to Closing Date. Under no circumstances shall the Buyers be deemed successors of or to the Debtors for any Claims (except for Permitted Encumbrances) against, in, or to the Debtors or the Acquired Assets. For the purposes of paragraphs 15 through 17 of this Order, all references to the Buyers shall include their respective Affiliates, Representatives, and shareholders.

01:17661519.3

**Section 1146(a) Exemption**

18.     The Sale and transfer of the Acquired Assets to the Buyers are transfers under the Plan pursuant to section 1146(a) of the Bankruptcy Code.  Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, recordation tax, sales and use tax or similar tax: (i) the Sale and transfer of the Acquired Assets to the Buyers; (ii) the making or delivery of any deed, deed of trust, mortgage, trust indenture or other instrument of transfer under, in furtherance of or in connection with the Sale; (iii) the creation, modification, renewal, extension, delivery, recording, execution, amendment, or release of any Claims (including any mortgage, note, indebtedness, deed of trust, deed to secure any debt, any trust indenture or any other document or instrument creating a security interest) in connection with the Sale; and (iv) the assignment of any Assigned Contract.

**Good Faith**

19.     The transactions contemplated by the Stalking Horse APA are undertaken by the Buyers and their Representatives in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale shall not affect the validity of the Sale of the Acquired Assets to the Buyers.  The Buyers are purchasers in good faith of the Acquired Assets and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

20.     As good-faith purchasers of the Acquired Assets, the Buyers have not entered into an agreement with any other potential bidders at the Auction, and have not colluded with any other bidders, potential bidders, or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be

entitled to bring an action against the Buyers, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

21.    The Buyers, the Pre-Petition Credit Parties, the DIP Lenders, and their respective Representatives are released from any liability related to or arising from the submission of the Credit Bid.

## Assumption and Assignment of Assigned Contracts

22.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the Debtors' assumption and assignment to the Buyers, and the Buyers' assumption on the terms set forth in the Stalking Horse APA, of the Assigned Contracts is hereby approved, and the requirements of sections 365(b)(1) and 365(f) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

23.    The Debtors are hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (i) assume and assign to the Buyers, effective upon the Closing Date of the Sale, the Assigned Contracts free and clear of all Claims of any kind or nature whatsoever (except for Permitted Encumbrances) and (ii) execute and deliver to the Buyers such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyers.

24.    The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyers in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Buyers.

25.     Upon the Debtors' assignment of the Assigned Contracts under the provisions of this Order, no default shall exist under any Assigned Contract and no counterparty to any such Assigned Contract shall be permitted to declare or enforce a default by the Debtors or the Buyers thereunder or otherwise take action against the Buyers as a result of any of the Debtors' financial condition, change in control, bankruptcy, or failure to perform any of their obligations under the relevant Assigned Contract.  Any provision in an Assigned Contract that prohibits or conditions the assignment or sublease of such Assigned Contract (including the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect only in connection with the assumption and assignment of such Assigned Contract to the Buyers.  The failure of the Debtors or the Buyers to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions or of the Debtors' and the Buyers' rights to enforce every term and condition of the Assigned Contract.

26.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as reasonably practicable, by the payment of the Cure Amounts set forth on Exhibit B hereto.  For the avoidance of doubt, if no amount is listed or the Cure Amount is listed as $0.00 for an Assigned Contract, no amount has been paid or is required to be paid by the Buyer or the Debtors on account of such Assigned

Contract. Until the Closing Date, the Debtors shall timely perform all obligations under unexpired leases, in accordance with section 365(d)(3) of the Bankruptcy Code.

27.     Absent further order of this Court, each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Buyers, or the property of any of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts. Any party that may have had the right to consent to the assignment of a Assigned Contract is deemed, absent further order of this Court, to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to object to the assumption and assignment of such Assigned Contract.

28.     To the extent a counterparty to an Assigned Contract failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty, absent further order of this Court, shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assigned Contract to which it relates.

## Additional Provisions

29.     The consideration provided by the Buyers for the Acquired Assets under the Stalking Horse APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

30.     On the Closing Date, the Debtors and the Buyer are authorized to take such actions as may be necessary to obtain a release of any and all Claims (other than Permitted Encumbrances) on the Acquired Assets.  This Order (i) shall be effective as a determination that, on the Closing Date, all Claims of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected, and (ii) to the greatest extent permitted by applicable law, shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local, and foreign officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.  The Buyers and the Debtors shall take such further steps and execute such further documents, assignments, instruments, and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph.  All interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against the Acquired Assets.   All entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, rights, interests, and encumbrances against the Acquired Assets (other than any Permitted Encumbrances) from their records, official and otherwise.

31.     If any person or entity that has filed statements or other documents or agreements evidencing Claims or interests in any of the Acquired Assets (other than any

31

Permitted Encumbrances) does not deliver to the Debtors or the Buyers prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims and other interests that the person or entity has or may assert with respect to any of the Acquired Assets, the Debtors and/or the Buyers are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such persons or entity with respect to any of the Acquired Assets.

32.     The Debtors will cooperate with the Buyers and the Buyers will cooperate with the Debtors, in each case to ensure that the transaction contemplated in the Stalking Horse APA is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the Closing to facilitate such consummation as contemplated by the Stalking Horse APA (including, without limitation, adding such specific assets to such documents as may be reasonably requested by the Buyers pursuant to the terms of the Stalking Horse APA).

33.     The Buyers shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets other than for Permitted Encumbrances.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Stalking Horse APA, the Buyers shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates other than Permitted Encumbrances, and the Buyers shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtors, the Acquired Assets, or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on

account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date.

34. Under no circumstances shall the Buyers be deemed successors to the Debtors for any Claims against or in the Debtors or the Acquired Assets of any kind or nature whatsoever. The Sale, transfer, assignment, and delivery of the Acquired Assets and the Assigned Contracts shall not be subject to any Claims, and Claims of any kind or nature whatsoever (except the Permitted Encumbrances) shall remain with, and continue to be obligations of, the Debtors. All persons holding Claims against, on, or in the Debtors or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Claims of any kind or nature whatsoever (except Permitted Encumbrances) against the Buyers, their respective Representatives, their property, their successors and assigns, or the Acquired Assets with respect to any Claims of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors, their estates, their respective Representatives, or the Acquired Assets. Following the Closing Date, no holder of a Claim in or against the Debtors shall interfere with the Buyers' title to or use and enjoyment of the Acquired Assets and the Assigned Contracts based on or related to such Claim, or any actions that the Debtors may take in the Chapter 11 Cases.

35. The terms and provisions of the Stalking Horse APA and this Order shall not be subject to rejection and shall be binding in all respects upon, and shall inure to the benefit of: the Debtors and their respective affiliates, successors, assigns, estates, and creditors; the Buyers and their respective affiliates, successors, and assigns; and any affected third parties including, but not limited to, all persons asserting Claims in, to or against the Acquired Assets to

be sold to the Buyers pursuant to the Stalking Horse APA, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

36.    The failure specifically to include any particular provisions of the Stalking Horse APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Stalking Horse APA be authorized and approved in its entirety.

37.    The Stalking Horse APA and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

38.    Nothing contained in the Plan, any other plan of reorganization or liquidation confirmed in the Chapter 11 Cases or any order of this Court confirming such plans or in any other order in the Chapter 11 Cases, including any order entered after any conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate, the provisions of the Stalking Horse APA or the terms of this Order.  The provisions of this Order and the Stalking Horse APA and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating the Plan or any other plan of reorganization or liquidation of the Debtors, or which may be entered converting the Chapter 11 Cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Stalking Horse APA as well as the rights and interests granted pursuant to this Order and the Stalking Horse APA shall continue in the Chapter 11 Cases or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors

and their estates and the Buyers and their respective successors and permitted assigns, including any trustee, responsible officer, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

39.    To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted, without further order of this Court, to the extent necessary (i) to allow the Buyers to give the Debtors any notice provided for in the Stalking Horse APA, and (ii) to allow the Buyers to take any and all actions permitted by the Stalking Horse APA.

40.    Compliance with Laws relating to bulk sales and transfers is not necessary or appropriate under the circumstances.

41.    The Debtors and each other person having duties or responsibilities under the Stalking Horse APA or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered: to carry out all of the provisions of the Stalking Horse APA; to issue, execute, deliver, file, and record, as appropriate, the Stalking Horse APA and any related agreements; to take any action contemplated by the Stalking Horse APA or this Order; to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and perform such other acts, as are consistent with and necessary or appropriate to implement, effectuate and consummate the Stalking Horse APA and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, this Court.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust, and other laws of applicable governmental units with respect to the implementation and consummation of the Stalking Horse APA and this Order and the transactions contemplated thereby and hereby.

01:17661519.3

35

42. No provision of this Order or any other order of this Court relieves the Debtors or the Buyers from the obligation to comply with the Communications Act of 1934, as amended, and the rules, regulations, and orders promulgated thereunder by the Federal Communications Commission (the "**FCC**") and, notwithstanding any other provision of this Order or any other order of this Court, no assignment of any rights and interests of the Debtors in any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such assignment pursuant to the Communications Act of 1934, as amended, and the rules, regulations, and orders promulgated thereunder. The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority. Other than with respect to matters for which this Court has exclusive jurisdiction under 28 U.S.C. § 1334, nothing in this Order divests any tribunal of any jurisdiction it may have under any FCC law and any rules, regulations, and orders pertaining thereto.

43. Nothing in this Order or the Stalking Horse APA: (i) releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including, but not limited to, environmental laws or regulations) that any entity would be subject to as the owner, lessor, lessee, controller, or operator of property that is sold or transferred pursuant to this Order, or (ii) authorizes the transfer to the Buyers of any governmental licenses, permits, registrations, authorizations or approvals without compliance with all applicable legal requirements under the law governing such transfers.

44.     Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal being foreclosed as moot.

45.     This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the Stalking Horse APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Acquired Assets to the Buyers free and clear of Claims (other than Permitted Encumbrances), or compel the performance of other obligations owed by the Buyers or the Debtors, (ii) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (iii) resolve any disputes arising under or related to the Stalking Horse APA, except as otherwise provided therein, (iv) interpret, implement, and enforce the provisions of this Order, and (v) protect the Buyers against (a) claims made related to any of the Excluded Liabilities, (b) any claims of successor or vicarious liability related to the Acquired Assets or Assigned Contracts, or (c) any Claims asserted on or in the Debtors or the Acquired Assets, of any kind or nature whatsoever.

46.    To the extent that any provision of the Stalking Horse APA conflicts with or is in any way inconsistent with any provision of this Order, this Order shall govern and control.

Dated: _____, 2015
       Wilmington, Delaware

_____
Mary F. Walrath
United States Bankruptcy Judge