## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.**[1] | Case No. 15-11498 (MFW) |
| Debtors. | Jointly Administered |
| | RE: Docket No. 287 |

## NOTICE OF FILING OF LIQUIDATION ANALYSIS

**PLEASE TAKE NOTICE** that, on September 3, 2015, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Disclosure Statement for Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 287] (the "**Disclosure Statement**"). You were previously served with a copy of the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** attached hereto is the following exhibit to the Disclosure Statement, which was intentially omitted from the original filing of the Disclosure Statement:

- **Exhibit 2 – Liquidation Analysis**

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights to amend, modify, or supplement the attached.

| | |
|---|---|
| Dated: October 7, 2015<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Jaime Luton Chapman*<br>M. Blake Cleary (No. 3614)<br>Jaime Luton Chapman (No. 4936)<br>Travis G. Buchanan (No. 5595)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>*Counsel to the Debtors and Debtors in Possession* |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

01:17810818.1

# Exhibit 2

**LIQUIDATION ANALYSIS**

I.  **Issues and Qualifying Factors**[1]

The Debtors believe, based on the following hypothetical analysis (the "<u>Liquidation Analysis</u>") that the Plan meets the "best interest of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code. There is at least one Impaired Class of Claims contemplated to receive recoveries under the Plan. Further, each Holder of an Impaired Claim will receive under the Plan value on the Effective Date that is not less than the value such Holder would receive if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code ("<u>Chapter 7</u>") on the Effective Date. The Debtors believe the Liquidation Analysis and the conclusions set forth herein are fair and accurate, and represent the Debtors' best judgment with regard to the results of a Chapter 7 liquidation of the Debtors. The analysis was prepared solely to assist the Court in making this determination, and should not be used for any other purpose. The Liquidation Analysis was prepared by the Debtors and is based on the Debtors' unaudited balance sheet as of July 31, 2015.

The Liquidation Analysis is based on a number of estimates and assumptions that are inherently subject to significant uncertainties and contingencies that are beyond the control of the Debtors. There can be no assurances that the values assumed in the accompanying analysis would be realized if the Debtors were, in fact, liquidated under Chapter 7. Accordingly, actual recovery values and recovery percentages could vary from the amounts set forth herein and such variances could be material.

The estimated net recovery values presented herein consist of the net proceeds from the hypothetical disposition of the Assets, reduced by certain costs and claims that may arise under a Chapter 7 liquidation. Asset recoveries presented herein are net of estimated direct costs of a Chapter 7 liquidation and related encumbrances. Discounts have been applied to the recovery values of certain Assets to account for the nature and timing of the Chapter 7 liquidation process. The Liquidation Analysis assumes that an orderly wind-down would be substantially completed within approximately six-months. The Debtors believe that six-months is an appropriate time period for liquidation, after taking into account the amount of time it would take to market, sell and dispose of the remaining Assets. There can be no assurances that the liquidation activities could be completed within the time frames outlined above. It is possible that the disposition of the Assets could exceed the assumed liquidation period, which could reduce the hypothetical recoveries.

The Debtors are being substantively consolidated under the Plan, and therefore the Liquidation Analysis is presented on a consolidated basis. The Liquidation Analysis also assumes that the Chapter 7 liquidation process would be uncontested and cooperative. To the extent this were not the case, the recoveries on the Assets could be lower than assumed in this Liquidation Analysis.

The outcome of an orderly liquidation process could be materially different from the estimated recoveries as indicated herein if the Debtors expedited the liquidation of Assets on a forced liquidation basis (i.e. the Chapter 7 trustee disposes of the Assets in fewer than six-months).

The Liquidation Analysis necessarily contains an estimate of the amount of Claims that will ultimately become Allowed Claims. Estimates for various Classes of Claims are based solely upon the Debtors' continuing review of the Debtors' books and records. No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the projected levels set forth in the Liquidation Analysis. In preparing the Liquidation Analysis, the Debtors have projected amounts of Claims that are consistent with the estimated Claims reflected in the Disclosure Statement.

The Liquidation Analysis assumes that there are no recoveries from the pursuit of any potential preferences, fraudulent conveyances or other causes of action (which the Debtors believe even if pursued would not be

---

[1] Terms not otherwise defined herein shall be given the meanings ascribed to them in the Plan.

material to the analysis) and does not include the estimated costs of pursuing those actions. The Debtors reserve all rights in connection with any preferences, fraudulent conveyances, or other causes of action.

## II.     General Assumptions

The following is a list of key assumptions that were utilized in the Liquidation Analysis:

1. The basis for the Liquidation Analysis is (i) the Asset values in the Debtors' unaudited balance sheet as of July 31, 2015 presented in the Debtors' monthly operating report filed with the Bankruptcy Court (adjustments have been made to these balances and are further described below), (ii) information included in the Disclosure Statement and the Plan, and (iii) amounts presented in the Schedules filed on August 11, 2015.

2. The Liquidation Analysis assumes that the liquidation of the Debtors would commence on December 1, 2015 under the direction of a court-appointed Chapter 7 trustee.  The Liquidation Analysis reflects the wind-down of operations and liquidation of substantially all of the Assets over a six-month period (the "Liquidation Period"), during which time all of the major Assets would be sold and the Cash proceeds, net of liquidation-related costs, would be distributed to satisfy Claims.

3. The Liquidation Analysis assumes that the Liquidation Period would not provide sufficient time to maximize value during the sale of the Assets , rather, the Assets would likely be valued and transacted upon at "distressed" levels.

4. The Liquidation Analysis assumes the Debtors' interests in the Westport Loan would be marketed for sale and liquidated during the six month Liquidation Period.  Liquidation values were derived by estimating the potential proceeds from the sale of the Westport Note that a Chapter 7 trustee might achieve.  Proceeds are net of all costs assumed to be incurred.

5. The Liquidation Analysis assumes that proceeds realized from a Chapter 7 liquidation would be further reduced by the administrative costs incurred during the wind-down of the operations, the disposition of Assets and the reconciliation of Claims.  These costs include primarily professional fees and fees of the Chapter 7 trustee.

6. The Liquidation Analysis assumes that net proceeds from the sale of the Assets will be distributed under the absolute priority rule provided in section 1129(b)(2) of the Bankruptcy Code and that no distributions will be made to Holders of Equity Interests until all Creditors are paid in full.

7. Upon conversion of the Bankruptcy Cases to Chapter 7, it is assumed that the Debtors will be permitted the use of Cash for the purposes of managing a wind-down and liquidation of the Assets.

8. While the Liquidation Analysis assumes a liquidation over a six-month period commencing December 1, 2015, it is possible that the disposition and recovery from certain Assets could take longer to realize. The potential impact of litigation and actions by other Creditors could increase the amount of time required to realize the recoveries assumed in this analysis.  Such events could also add additional costs to the liquidation in the form of higher legal and professional fees to resolve these potential events.

## III.    Liquidation Analysis for the Debtors

Presented in the schedule below is a summary of the estimated net book value of Assets and the related estimated liquidation recoveries ($ in millions):

(in thousands)

| Remaining Assets | Reported Book Value at 7/31/2015 | Estimated Book Value at Liquidation Date[1] | Potential Recovery Under Chapter 7 Conversion | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Lower ($) | (%) | Mid ($) | (%) | Higher ($) | (%) |
| Cash | 3,247 | - | - | 0% | - | 0% | - | 0% |
| Accounts Receivable | 1,818 | 1,818 | 545 | 30% | 909 | 50% | 1,272 | 70% |
| Claim Receivable | 1,399 | 1,399 | 979 | 70% | 1,119 | 80% | 1,259 | 90% |
| Inventory | 297 | 297 | - | 0% | 15 | 5% | 30 | 10% |
| Deposits & Prepaid Expenses | 3,364 | 3,364 | 1,009 | 30% | 1,346 | 40% | 1,682 | 50% |
| Plant, Property and Equipment - Net | 67,669 | 67,669 | 33,835 | 50% | 40,602 | 60% | 47,368 | 70% |
| Westport Note | 29,894 | 29,894 | 17,937 | 60% | 19,431 | 65% | 20,926 | 70% |
| Other - Net | 798 | 798 | - | 0% | - | 0% | - | 0% |
| **Total Remaining Assets** | **108,487** | **105,240** | **54,305** | **52%** | **63,421** | **60%** | **72,538** | **69%** |
| **Estimated Liquidation Costs and Claims** | | | | | | | | |
| Chapter 7 Trustee Fees | | | 1,624 | | 1,897 | | 2,171 | |
| Chapter 7 Trustee's Professional Fees | | | 1,050 | | 1,050 | | 1,050 | |
| Administrative Claims | | | - | | - | | - | |
| Professional Fee Claims | | | - | | - | | - | |
| **Total Estimated Liquidation Costs and Claims** | | | **2,674** | | **2,947** | | **3,221** | |
| **Net Estimated Liquidation Proceeds** | | | **51,631** | **49%** | **60,474** | **57%** | **69,317** | **66%** |

| | | Liquidation Distribution | | | | | |
|---|---|---|---|---|---|---|---|
| | Est. Claim Amount | Net Distribution | % | Net Distribution | % | Net Distribution | % |
| **PRELIMINARY[2]** | | | | | | | |
| **Estimated Claims** | | | | | | | |
| Unclassified: DIP Facility Claims | 90,089 | 51,631 | 57% | 60,474 | 67% | 69,317 | 77% |
| Unclassified: Priority Tax Claims | - | - | 0% | - | 0% | - | 0% |
| Class 1: Other Priority Claims | - | - | 0% | - | 0% | - | 0% |
| Class 2: Other Secured Claims | 4,000 | - | 0% | - | 0% | - | 0% |
| Class 3: First Lien Loan Agreement Claims | 426 | - | 0% | - | 0% | - | 0% |
| Class 4: Litigation Claims | 200,000 | - | 0% | - | 0% | - | 0% |
| Class 5: General Unsecured Claims | 6,000 | - | 0% | - | 0% | - | 0% |
| Class 6: Intercompany Claims | - | - | 0% | - | 0% | - | 0% |
| Class 7: Equity Interests | - | - | 0% | - | 0% | - | 0% |
| **Total** | **300,515** | **51,631** | **17%** | **60,474** | **20%** | **69,317** | **23%** |

[1] - Liquidation Date is assumed to be December 1, 2015.
[2] - The information in this table is preliminary and the Debtors reserve all rights with respect to any asserted claim.

**[See Section *IV. Notes to Liquidation Analysis* on the following pages]**

**IV.    Notes to Liquidation Analysis**

Except where noted, the Asset and liability values are assumed to be consistent with the latest available financial data. For the purposes of the Liquidation Analysis, the Debtors have utilized the estimated values presented in the unaudited balance sheet as of July 31, 2015, included in the Debtors' monthly operating report filed with the Bankruptcy Court. That balance sheet was then adjusted to eliminate intercompany balances as well as to reflect the commencement of a hypothetical liquidation on December 1, 2015. In addition, amounts from the Disclosure Statement and amounts presented in the Schedules have been utilized.

*(1) Cash*

The Debtors' Cash balance as of the end of July was $3.2 million as reported in the monthly operating report for the period ending July 31, 2015. The Liquidation Analysis assumes that a conversion to Chapter 7 would reduce the Cash balance amount to zero by the commencement of the hypothetical liquidation.

*(2) Accounts Receivable*

Accounts Receivable primarily consist of trade receivables. It is assumed that a Chapter 7 trustee would retain certain existing staff of the Debtors to lead an aggressive collection effort for the outstanding accounts receivable of the Debtors. The Debtors' accounts receivable have historically exhibited low loss rates. Company management believes that in the case of liquidation, the Debtors would be able to collect 30% - 70% of outstanding receivables. Recovery percentages were discounted to reflect potential liquidated damages Claims from customers for jobs not completed.

*(3) Claim Receivable*

Claim Receivable consists mainly of workers' compensation receivable from previous year audits. Company management believes that in the case of liquidation, Claim Receivable is assumed to have a recovery rate of 70% to 90%.

*(4) Inventory*

Inventory primarily consists of raw material located at the Mobile, Alabama shipyard. Company management believes that in the case of liquidation, total inventory is assumed to have a recovery rate of 0%-10%, which reflects net scrap value.

*(5) Deposits & Prepaid Expenses*

Deposits & Prepaid Expenses consist of: (i) prepaid insurance, and (ii) security deposits. Company management believes that in the case of liquidation, Deposits & Prepaid Expenses are assumed to have a recovery rate of 30% to 50%.

*(6) Property, Plant and Equipment*

Property Plant and Equipment, net of depreciation, consists primarily of: (i) real property in Alabama and Texas, (ii) marine vessels, cranes, machinery & equipment, and cranes & lifts in the Alabama and Mississippi shipyards, (iii) furniture & fixtures, and (iv) computer equipment & software. Company management believes that in the case of liquidation, Property, Plant & Equipment is assumed to have a recovery rate of 50% to 70% based on the latest property and equipment appraisals.

*(7) Westport Loan*

The Westport Loan is a seller note that was entered into by the Debtors as part of a sale transaction that closed on October 3, 2014, through which Assets in Texas were sold to Westport Orange Shipyard, LLC and Westport Orange Shipyard, LLC (collectively, "Westport"). Westport financed the transaction by entering into the Westport Loan in the principal amount of $28.9 million due on or before October 3, 2019. Company management believes that in the case of liquidation, the Westport Loan is assumed to have a recovery rate of 60% to 70%.

*(8) Other – Net*

Other – Net Assets consists of prepaid loan cost. Company management believes that in the case of liquidation, Other - Net is assumed to have a recovery rate of 0%.

*(9) Chapter 7 Trustee Fees*

Amount represents the preliminary estimated Chapter 7 trustee costs. The Chapter 7 trustee fees are calculated based upon the statutory scale set forth in section 326(a) of the Bankruptcy Code, which provides for fees equal to 25% of the first $5,000 of distributions; 10% of the next $45,000 of distributions; 5% of the next $950,000 of distributions; and 3% of distributions in excess of $1,000,000.

*(10) Chapter 7 Trustee's Professional Fees*

It is assumed that the Chapter 7 trustee will hire advisors to assist in the administration of the Chapter 7 liquidation. The Debtors have assumed $175,000 per month during the Liquidation Period for the compensation of the trustee's legal and financial professionals including accounting and tax support.

*(11) Administrative Claims*

This liquidation analysis assumes Administrative Claims have been paid current during the Bankruptcy Cases.

*(12) Professional Fee Claims*

This liquidation analysis assumes Professional Fee Claims have been paid current during the Bankruptcy Cases.

*(13) DIP Facility Claims*

On the Effective Date, in full satisfaction, settlement, discharge and release of, all DIP Facility Claims, the TRSA and ERSA shall either (i) acquire the Acquired Assets as the Purchaser in accordance with the Asset Purchase Agreement, the Plan, and the Sale Order, or (ii) be paid in full, in Cash, the total amount outstanding under the DIP Facility from the proceeds received in accordance with the Asset Purchase Agreement; *provided, however*, that such satisfaction, settlement, discharge and/or release of DIP Facility Claims shall be without prejudice to any DIP Indemnity Obligations, all of which, subject to further Order of the Bankruptcy Court, shall be reserved for and the obligation to establish such reserve, if any, shall be secured by a DIP Lien (as defined in the Final DIP Order) on any proceeds of the Sale Transaction not paid to the TRSA or ERSA on the Effective Date. Based on the assumptions noted, liquidation would result in a recovery of 57-77% of the DIP Facility.

*(14) Priority Tax Claims*

This liquidation analysis assumes Priority Tax Claims have been paid current during the Chapter 11 Cases.

*(14) Class 1: Other Priority Claims*

In the case of liquidation, Other Priority Claims would have no recovery.

*(15) Class 2: Other Secured Claims*

In the case of liquidation, Other Secured Claims would have no recovery.

*(16) Class 3: First Lien Loan Agreement Claims*

First Lien Loan Agreement Claims have been satisfied through the proceeds of the DIP Facility.

*(17) Class 4: Litigation Claims*

In the case of liquidation, the Litigation Claims would have no recovery.

*(18) Class 5: General Unsecured Claims*

In the case of liquidation, the General Unsecured Claims would have no recovery.

*(19) Class 6: Intercompany Claims*

Per the Plan, holders of Allowed Intercompany Claims shall not receive any Distributions on account of such Claims.

*(20) Class 7: Equity Interests*

Per the Plan, holders of Equity Interests in the Debtors shall neither receive nor retain any property under the Plan. On the Effective Date, all Equity Interests in the Debtors shall be cancelled and of no further force or effect and all Claims filed on account of Equity Interests shall be deemed disallowed by operation of the Plan.

**V. Comparison to Hypothetical Recovery Under the Plan**

The Plan estimates a recovery of 100% to Unclassified: DIP Facility Claims, Unclassified: Priority Tax Claims, Class 1: Other Priority Claims, Class 2: Other Secured Claims and Class 3: First Lien Loan Agreement Claims. The Plan estimates a recovery for Class 4: Litigation Claims in excess of ten percent (10%) of the total amount of all allowed Litigation Claims and Class 5: General Unsecured Claims equal to the lesser of (i) $900,000, or (ii) an amount equal to fifteen percent (15%) of the total amount of all allowed General Unsecured Claims which remain outstanding after all assumption and cure has been implemented with respect thereto. The Debtors believe the estimates are fair and accurate, and represent the Debtors' best judgment with regard to the results of the confirmation of the Plan. The estimated recoveries under the Plan are based on a number of estimates and assumptions that are inherently subject to significant uncertainties and contingencies and that are beyond the control of the Debtors. There can be no assurances that the recoveries assumed would be realized if the Plan was, in fact, confirmed. Accordingly, actual recovery values and recovery percentages could vary from the amounts set forth in the Plan and such variances could be material.

The Plan estimates that each holder of an Impaired Claim will receive value on the Effective Date that is not less than the value such Holder would receive if the Debtors were to be liquidated under Chapter 7 on the Effective Date.  The Debtors believe that the Plan meets the "best interest of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code.