# EXHIBIT 1

**Blackline Against Initial Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.**[1] | |
| Debtors. | Case No. 15-11498 (MFW) |
| | Jointly Administered |

**DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated: ~~September 3,~~October    , 2015
         Wilmington, Delaware


**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
M. Blake Cleary (No. 3614)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600

*Counsel for the Debtors and the Debtors in Possession*

**HOGAN LOVELLS US LLP**
Christopher R. Donoho III
Christopher R. Bryant
John D. Beck
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000

*Special Counsel for the Debtors and the Debtors in Possession*

---

[1]The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066).The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARTICLE I.    DEFINED TERMS, RULES OF INTERPRETATION  AND COMPUTATION
OF TIME .............................................................................................................. 1

A.    Rules of Interpretation ............................................................................. 1

B.    Computation of Time ............................................................................... 2

C.    Defined Terms ......................................................................................... 2

ARTICLE II.    PAYMENT OF UNCLASSIFIED CLAIMS ................................................ ~~14~~15

A.    Administrative Claims ............................................................................. ~~14~~15

B.    Professional Fee Claims .......................................................................... ~~15~~16

C.    DIP Facility Claims ................................................................................. ~~15~~16

D.    Priority Tax Claims ................................................................................. ~~15~~17

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
EQUITY INTERESTS ......................................................................................... ~~16~~17

A.    Summary ................................................................................................. ~~16~~17

B.    Classification and Treatment of Claims and Equity Interests ................. ~~16~~18

C.    Non-Consensual Confirmation ................................................................ ~~18~~20

~~D.~~    ~~Deemed Acceptance if No Votes Cast~~ ..................................................... ~~19~~

~~E.~~    Elimination of Vacant Classes ................................................................. ~~19~~20

~~F~~E.    Special Provision Governing Unimpaired Claims .................................... ~~19~~20

ARTICLE IV.    IMPLEMENTATION OF THE PLAN ........................................................ ~~19~~20

A.    Implementation of the Plan ..................................................................... ~~19~~20

B.    Consummation of the Asset Purchase Agreement ................................... ~~19~~21

C.    Substantive Consolidation of the Debtors ~~for Plan Purposes Only~~ ........ ~~20~~ 22

D.    Cash Reserves ......................................................................................... ~~21~~23

E.    Effective Date ......................................................................................... ~~21~~23

F.      Operations of the Debtors Between the Confirmation Date and the Effective Date...............................................................................................................2123

G.      Term of Injunctions or Stays...............................................................................2123

H.      Setoffs..................................................................................................................2123

I.      Corporate Action..................................................................................................2224

J.      Cancellation of Existing Agreements and Existing Equity Interests...................2224

K.      Authorization of Plan-Related Documentation...................................................2224

L.      Dissolution of Committee....................................................................................2224

M.      Closing the Bankruptcy Cases............................................................................25

N.      Exemption from Certain Fees and Taxes.............................................................2325

ARTICLE V.    THE SIGNAL LIQUIDATING TRUST.............................................................2325

A.      Signal Liquidating Trust......................................................................................2325

B.      Establishment and Purpose of the Signal Liquidating Trust................................2325

C.      Authority and Role of the Signal Liquidating Trustee.........................................2325

D.      Appointment of the Signal Liquidating Trustee...................................................2426

E.      Signal Liquidating Trust Assets...........................................................................2426

F.      Treatment of Signal Liquidating Trust for Federal Income Tax Purposes...........2426

G.      Signal Liquidating Trust as a "Grantor Trust"....................................................2426

H.      Signal Liquidating Trustee's Right and Power to Invest.....................................2427

I.      Responsibilities of the Signal Liquidating Trustee..............................................2527

J.      Expenses of the Signal Liquidating Trustee.........................................................2527

K.      Bonding of the Signal Liquidating Trustee..........................................................2527

L.      Fiduciary Duties of the Signal Liquidating Trustee.............................................2528

M.      Cooperation; Transfer of Books and Records......................................................2528

N.      Transfer of Privileged Information.......................................................................2628

O.      Dissolution of the Signal Liquidating Trust.........................................................2629

P.      Full and Final Satisfaction against Signal Liquidating Trust...............................2729

ARTICLE VI.   LITIGATION SETTLEMENT TRUST AND  DISTRIBUTIONS TO
              LITIGATION CLAIMANTS ......................................................... 2729

    A.    Establishment and Administration of the Litigation Settlement Trust ............ 2729

    B.    Litigation Settlement TDP ........................................................... 2730

    C.    Imposition of Channeling Injunction ............................................... 2830

    D.    Release of Liabilities to Litigation Claimants ..................................... 2931

    E.    Assumption of Certain Liabilities .................................................. 2932

    F.    Appointment of the Litigation Settlement Trustee .................................. 3032

    G.    Litigation Settlement Trust Assets ................................................. 3032

    H.    Litigation Settlement TAC .......................................................... 3235

    I.    Cooperation; Transfer of Books and Records ........................................ 3235

    J.    Transfer of Privileged Information ................................................. 3335

    K.    Institution and Maintenance of Legal and Other Proceedings ........................ 3336

ARTICLE VII.  PROVISIONS FOR TREATMENT OF CONTINGENT  CLAIMS AND
              DISPUTED NON-LITIGATION Claims CLAIMS .......................... 34CLAIMS      36

    A.    Treatment of Contingent Claims ..................................................... 3436

    B.    Objection to Claims and Prosecution of Disputed Non-Litigation Claims ............. 3436

    C.    Distributions and Reserves on Account of Contingent and Disputed
          Non-Litigation Claims .............................................................. 3436

    D.    Estimation of Non-Litigation Claims ................................................ 3537

    E.    Certain Objections to Allowance of Litigation Settlement Trust Claims ............. 3537

    F.    No Postpetition Interest ........................................................... 3537

ARTICLE VIII.                       PROVISIONS GOVERNING DISTRIBUTIONS for claims          35FO

    A.    Timing of Distributions Under The Plan ............................................. 3538

    B.    Manner of Payment Under the Plan ................................................... 3538

    C.    Withholding of Taxes ............................................................... 3638

    D.    Allocation of Distribution Between Principal and Interest .......................... 3638

    E.    Unclaimed Distributions ............................................................ 3638

F.    Transfer of Claim ................................................................... 3639

G.    Fractional Cents ..................................................................... 3739

H.    Delivery of Distributions in General ....................................... 3739

I.    Minimum Distribution Amount ............................................... 3739

J.    Disallowance of Claims .......................................................... 3739

K.    Release of Liens ..................................................................... 37

L.    Subordination ......................................................................... 37

ARTICLE IX.    TREATMENT OF EXECUTORY CONTRACTS .................. 3840

A.    Assumption or Rejection of Executory Contracts .................. 3840

B.    Approval by Confirmation Order ............................................ 3840

C.    Cure of Defaults ..................................................................... 38

D.    Notice of Proposed Cure ......................................................... 38

E.    Rejection Damages Bar Date ................................................... 3940

ARTICLE X.    CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN ......................................................... 3940

A.    Condition Precedent to Confirmation ..................................... 3940

B.    Conditions Precedent to the Effective Date ............................ 4041

C.    Waiver of Conditions .............................................................. 4142

D.    Effect of Nonoccurrence of Conditions .................................. 4143

ARTICLE XI.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS .......................................................................... 4143

A.    Compromise and Settlement of Claims, Equity Interests, and Controversies ...................................... 41Binding Effect ............ 43

B.    Release of Liens ..................................................................... 4243

C.    Subordinated Claims ............................................................... 4243

D.    Non-Discharge of the Debtors; Plan Injunction ...................... 4243

E.    Exculpation ............................................................................. 4344

F.    Debtors' Release ..................................................................... 4445

G.    Consensual Releases by Non-Debtor Released Parties ................................ 45

H.    Releases by Holders of Claims and Interests ................................ 45 46

I.    Channeling Injunction ................................ 47

J.    Injunction Against Barred Claims ................................ 47

ARTICLE XII.  RETENTION OF BANKRUPTCY COURT JURISDICTION ................................ 46 48

A.    General Jurisdiction ................................ 46 48

B.    Specific Jurisdiction ................................ 46 49

C.    Litigation Settlement TDP Controlling ................................ 48 51

ARTICLE XIII.                    MODIFICATION AND REVOCATION OF THE PLAN ................................ 48 51

A.    Immediate Binding Effect ................................ 48 51

B.    Modification of the Plan ................................ 48 51

C.    Revocation or Withdrawal of the Plan ................................ 49 51

ARTICLE XIV.                    MISCELLANEOUS PROVISIONS ................................ 49 52

A.    Payment of Statutory Fees ................................ 49 52

B.    Governing Law ................................ 49 52

C.    Corporate Action ................................ 49 52

D.    Severability of Plan Provisions ................................ 50 52

E.    Successors and Assigns ................................ 50 53

F.    Reservation of Rights ................................ 50 53

G.    Further Assurances ................................ 50 53

H.    Post-Effective Date Service List ................................ 50 53

I.    Other Notices ................................ 51 53

J.    Conflicts ................................ 52 55

K.    Maintenance of Books and Records ................................ 52 55

L.    Determination of Tax Liability ................................ 52 55

M.    Entire Agreement ................................ 52 55

N.      Change of Control Provisions..................................................................................5255

O.      Substantial Consummation......................................................................................5255

P.      Preservation of Insurance........................................................................................5255

Q.      Asset Purchase Agreement......................................................................................5355

R.      Powers of  Purchaser...............................................................................................5356

## INTRODUCTION

The above-referenced debtors and debtors in possession in the Bankruptcy Cases hereby respectfully propose the Plan pursuant to section 1121(a) of the Bankruptcy Code.  Reference is made to the Disclosure Statement distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties, and operations; a summary and analysis of the Plan; and certain related matters.  Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I hereof.

The Plan provides for (i) the implementation of the sale of substantially all of the Debtors' assets and distributions to Holders of Claims in accordance with the priorities set forth in the Bankruptcy Code; and (ii) the establishment of two trusts pursuant to section 105 of the Bankruptcy Code:  (a) a Litigation Settlement Trust for payment of Litigation Claims and (b) a Signal Liquidating Trust for the benefit of all Holders of General Unsecured Claims.  ***The Litigation Claims will be channeled to the Litigation Settlement Trust.***  The General Unsecured Claims will be marshaled through the Signal Liquidating Trust.  The Signal Liquidating Trustee shall administer the Non-Litigation Claims.

The Debtors will seek to confirm the Plan pursuant to section 105(a) and other sections of the Bankruptcy Code to create the Litigation Settlement Trust and the Signal Liquidating Trust.  ***Section 105(a) of the Bankruptcy Code and other sections of the Bankruptcy Code authorize the Bankruptcy Court to enter a "channeling injunction" pursuant to which the Litigation Claims are channeled to the Litigation Settlement Trust.  Following the issuance of the Channeling Injunction, (i)*** *Litigation Claimants will be permanently enjoined from* ~~seeking satisfaction of their Litigation Claims against the Debtors and the~~***taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any Litigation Claim other than from the Litigation Settlement Trust in accordance with the Litigation Settlement Trust Agreement and the Litigation Settlement TDP, and (ii) the Debtors and other*** *Released Parties* ***shall have no obligations or liabilities for or in respect of any Litigation Claims.***

***Holders of General Unsecured Claims will receive, on account of their claims, their Pro Rata share of that portion of the Excess Sale Overpayment allocated to the Holders of General Unsecured Claims, and, each Holder of an Allowed General Unsecured Claim that votes to accept the Plan and does not opt out of the releases set forth in Section 11.H will also receive, on account of its claim, its Pro Rata share (determined without taking the Litigation Claimants into account) of the GUC Payment Amount net of Signal Liquidating Trust Expenses.***

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

**A.    Rules of Interpretation**

For purposes of the Plan:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified, supplemented or restated; (iv) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits

of or to the Plan; (v) the words "hereof", "herein", "hereto", "hereunder" and comparable terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) the words "include", "includes" and "including" shall not be limiting and shall be deemed to be followed by "without limitation" whether or not they are, in fact, followed by such words or words of like import; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ix) any capitalized term used in the Plan that is not defined herein but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) in the event of any inconsistency between the terms of the Plan and the terms of the Disclosure Statement, the terms of the Plan shall control; and (xi) in the event of any inconsistency between the terms of the Plan and the terms of the Asset Purchase Agreement or the Litigation Settlement Trust Agreement, the terms of the Plan shall control.

**B.      Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**C.      Defined Terms**

When used in capitalized form in the Plan, the following terms shall have the respective meanings assigned to such terms below:

1.      "**Acquired Assets**" means the "Acquired Assets", as defined in the Asset Purchase Agreement.

2.      "**Administrative Claim**" means any cost or expense of administration of the Bankruptcy Cases allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code, excluding Professional Fee Claims and DIP Facility Claims.

3.      "**Administrative Claims Bar Date**" means the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including, without limitation, the Bar Date Order.

4.      "**Allowed**" means (i) any Claim, proof of which is timely filed by the applicable Bar Date (or for which Claim, under the Plan, the Bankruptcy Code, or a Final Order, is not or shall not be required to be filed); (ii) any Claim that is listed in the Schedules as not contingent, not unliquidated and not disputed, and for which no Proof of Claim has been timely filed; (iii) any Claim that is allowed pursuant to a Final Order; or (iv) any Claim that is allowed pursuant to the Plan; *provided*, *however*, that with respect to any Claim described in clauses (i) and (ii) above, such Claim shall be considered Allowed only if and to the extent that (a) no objection to the allowance of such Claim or any portion thereof has been filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, (b) such an objection is filed and the Claim shall have been Allowed by a Final Order, or (c) such Claim is Allowed by agreement of the Claimant and applicable trustee in writing. Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been filed, is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless specified under the Plan, under the Bankruptcy Code or by order of the Bankruptcy Court, Allowed Claims shall not, for any purpose under the Plan, include any interest, costs,

fees or charges on such Claims from and after the Petition Date.  "**Allow**" and "**Allowing**" shall have correlative meanings.

5.        "**Apology Letter**" means that certain formal letter of apology to the Litigation Claimants for the conduct that gave rise to the Litigation Claims, in form and substance reasonably satisfactory to the Litigation Claimants through their advisors, and issued to the Litigation Claimants within two (2) weeks from the entry of the PSA Order.

6.        "**Asset Purchase Agreement**" means that certain Asset Purchase Agreement, dated as of July 13, 2015, among the Debtors and the Purchaser, as the same may have been amended from time to time, or such other purchase agreement with respect to the sale or sales of Assets, as may be approved by the Sale Order.

7.        "**Assets**" means all property owned by the Debtors, including, but not limited to, Cash, real property, personal property, intellectual property, intangible property, and the Signal Causes of Action.

8.        "**Auction**" means the auction conducted pursuant to, and in accordance with, the Bidding Procedures Order.

9.        "**Avoidance Actions**" means (i) any and all actions that are Filed or that may be Filed pursuant to sections 544, 545, 547, 548, 550, and 551 of the Bankruptcy Code, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code; or (ii) any other similar actions or proceedings filed to recover property for or on behalf of the Estates or to avoid a lien or transfer.

10.        "**Ballot**" means the ballots accompanying the Disclosure Statement upon which Holders of Claims entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and procedures approved by the Bankruptcy Court governing the solicitation process.

11.        "**Bankruptcy Cases**" means, collectively, the Debtors' bankruptcy cases under chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court and jointly administered under Case No. 15-11498 (MFW).

12.        "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time.

13.        "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over any Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over such Bankruptcy Case in lieu of the United States Bankruptcy Court for the District of Delaware.

14.        "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Bankruptcy Cases and as amended from time to time.

15.        "**Bar Date**" means any of the dates fixed by orders of the Bankruptcy Court by which Entities required by such order to file a Proof of Claim must file a Proof of Claim or be forever barred



01:17263822.161
7263822.27

from asserting such Claim against the Debtors or their property and from voting on the Plan and/or sharing in distributions hereunder.

16.     "**Bar Date Order**" means that certain *Order (i) Establishing Bar Dates for Filing Proofs of Prepetition Claims, Including Section 503(b)(9) Claims and (ii) Approving the Form and Manner of Notice Thereof* entered by the Bankruptcy Court on August 11, 2015 [Docket No. 205].

17.     "**Bidding Procedures**" means the bidding procedures approved by, and attached as Exhibit 1 to, the Bidding Procedures Order.

18.     "**Bidding Procedures Order**" means that certain *Order (a) Approving Sales and Bidding Procedures in Connection With Sale of Assets of the Debtors, (b) Approving Bid Protections, (c) Approving Form and Manner of Notice, (d) Scheduling the Auction and Sale Hearing, (e) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (f) Granting Related Relief*, entered by the Bankruptcy Court on September 1, 2015 [Docket No. 280].

19.     "**Break-Up Fee**" means the $1,000,000 break-up fee payable to the TRSA and ERSA in accordance with the terms of the Bidding Procedures Order.

20.     "**Business Day**" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in Delaware are required to close.

21.     "**Case Professionals**" mean the attorneys, accountants, consultants, financial advisors and other third party professionals who have represented the Plan Participants in connection with the negotiation and implementation of the Plan, the Plan Documents and the Plan Supplement Documents.

22.     "**Cash**" means legal tender of the United States of America and equivalents thereof.

23.     "**Channeling Injunction**" means the permanent injunction provided for in Section ~~VI.~~6.C of the Plan with respect to Litigation Claims to be issued pursuant to the Confirmation Order.

24.     "**Claim**" means a "claim" against a Debtor, as defined in section 101(5) of the Bankruptcy Code, whether or not asserted.

25.     "**Claims Agent**" means Kurtzman Carson Consultants, LLC, the entity designated by order of the Bankruptcy Court during the Bankruptcy Cases to, among other things, receive, maintain, record and otherwise administer Claims against the Debtors, or such other entity as the Debtors may retain to provide such services.

26.     "**Claims Objection Deadline**" means the first Business Day that is 180 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court upon a motion Filed and served in accordance with Section 14.H (which motion to extend the objection deadline shall not be deemed a modification of the Plan).

27.     ~~26.~~ "**Claims Register**" means the official register of Claims maintained by the Claims Agent.

28.     ~~27.~~ "**Class**" means a category of Claims or Equity Interests described in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.



29. ~~28.~~ "**Committee**" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Cases pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

30. ~~29.~~ "**Committee Members**" means all current and former members of the Committee.

31. ~~30.~~ "**Confirmation**" means the entry of the Confirmation Order, subject to all conditions specified in Section 10.A of the Plan having been (i) satisfied or (ii) waived pursuant to Section 10.C.

32. ~~31.~~ "**Confirmation Date**" means the date of entry of the Confirmation Order on the docket of the Bankruptcy Cases within the meaning of Bankruptcy Rules 5003 and 9021.

33. ~~32.~~ "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

34. ~~33.~~ "**Confirmation Hearing Date**" means the date on which the Confirmation Hearing is first commenced.

35. ~~34.~~ "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

36. ~~35.~~ "**Consummation**" means the occurrence of the Effective Date.

37. ~~36.~~ "**Contingent**" means contingent and/or unliquidated.

38. ~~37.~~ "**Creditor**" means the Holder of a Claim against any Debtor or its Estate.

~~38.    "Cure" means the payment of Cash or the distribution of other property (as the Debtors, the Purchaser, and the counterparty to the applicable Executory Contract, as applicable, may agree or the Bankruptcy Court may order), as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract of the Debtors and (ii) permit the Debtors to assume such Executory Contract under section 365(a) of the Bankruptcy Code.~~

39.    "**Debtors**" means Signal International, Inc., Signal Ship Repair, LLC, Signal International, LLC, Signal International Texas GP, LLC, and Signal International Texas, L.P.

40.    "**DIP Facility**" means the senior secured credit facility provided by the DIP Lenders in an aggregate principal amount of up to $90,088,952.00 made pursuant to the DIP Loan Agreement.

41.    "**DIP Facility Claim**" means any Claim arising under or related to the DIP Loan Agreement and/or any other DIP Loan Documents (as defined in the DIP Loan Agreement), including, but, not limited to, the DIP Indemnity Obligations (as hereafter defined).  "DIP Indemnity Obligation" means any contingent or unliquidated indemnification obligations to the DIP Lenders and their Representatives of any Debtor under the DIP Loan Agreement (including those described in §§ 8.4, 8.5 and 8.6 of the DIP Loan Agreement) that by their terms survive the satisfaction or payment of the Obligations (as defined in the DIP Loan Agreement) or the termination of the DIP Loan Agreement.

42.    "**DIP Lenders**" means those certain lenders who are lenders under the DIP Facility.

43.    "**DIP Loan Agreement**" means that certain *Debtor-In-Possession Loan and Security Agreement,* dated July 15, 2015, by and among the Debtors, as borrowers, and the TRSA and ERSA as lenders, as the same may have been amended, supplemented, modified, extended, renewed, and/or restated from time to time.

44.    "**Disclosure Statement**" means the disclosure statement for the Plan, as amended, supplemented or otherwise modified from time to time subject to the terms of the Plan Support Agreement, that is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

45.    "**Disclosure Statement Order**" means a Final Order approving the Disclosure Statement and the Debtors' proposed solicitation procedures, ~~which Final Order shall be materially consistent with the Plan Support Agreement~~.

46.    "**Disputed**" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed and has not yet been disallowed by Final Order.  For the avoidance of doubt, any Claim, in whole or in part, that is subject to a pending objection to the Allowance of such Claim shall be considered a Disputed Claim in its entirety until that objection has been resolved by Final Order.

47.    "**Disputed Claims Reserve**" means the reserve account established by the Debtors or the Signal Liquidating Trust on the Effective Date, and maintained by the Signal Liquidating Trust for the payment of: (i) the face value of all Administrative Claims (that are not Purchaser Assumed Liabilities), Priority Tax Claims, Other Priority Claims, and Other Secured Claims as of the Effective Date plus (ii) an amount to be agreed upon by the Debtors, Committee and RSA in an amount necessary to satisfy any Contingent and/or unliquidated Administrative Claims (that are not Purchaser Assumed Liabilities), Priority Tax Claims, Other Priority Claims, and Other Secured Claims*, provided, however,* that such amount shall not be less than the maximum non-contingent and liquidated amount set forth in any Proof of Claim or request for payment of an Administrative Claim; plus (iii) such other amount as determined by order of the Bankruptcy Court.

48.    "**Distribution**" means the distributions to be made in accordance with the Plan of, as the case may be, (i) Cash or (ii) any other consideration or residual value distributed to Holders of Allowed Claims under the terms and provisions of the Plan.

49.    "**EEOC**" means the United States Equal Employment Opportunity Commission or any agency or instrumentality of any Governmental Unit with responsibility for enforcing laws against employment condition or otherwise relating to conditions of employment.

50.    "**Effective Date**" means that date following the Confirmation Date on which all conditions to consummation of the Plan shall have been satisfied or waived as provided in Section 10.B and Section 10.C of the Plan.

51.    "**Entity**" means an "entity," as defined in section 101(15) of the Bankruptcy Code.

52.    "**Equity Interest**" means, with respect to a Debtor, as of the Petition Date, any capital stock or other ownership interest in such Debtor, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in such Debtor, and any redemption, conversion, exchange, voting, participation, dividend rights, and liquidation preferences relating to such capital stock or other ownership interest.

53.    "**ERSA**" means the Employees' Retirement System of Alabama, a corporate body of the State of Alabama created under Section §§ 16-25-1 *et seq.,* of the Alabama Code.

54.    "**ERSA Note**" means the $24,750,000 Term Loan Note held by ERSA.

55.    "**Estate**" means the estate of each of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Cases.

56.    "**Excess Sale Overpayment**" has the meaning provided in Section VI.6.G of the Plan.

57.    "**Exculpated Parties**" means, solely to the extent of the Exculpation, each of (i) the Debtors, and any of their respective Related Parties; (ii) the Committee, and any of its respective Related Parties;  (iii) the ERSA and TRSA, and any of their respective Related Parties; and (iv) the Supporting Litigation Claimants, and any of their respective Related Parties.

58.    "**Exculpation**" means the exculpation provision set forth in Section 11.E herein.

59.    "**Executory Contract**" means an executory contract or unexpired lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

60.    "**File**" or "**Filed**" means file or filed on the Bankruptcy Court's docket or with the Bankruptcy Court for the Bankruptcy Cases or, in the case of a Proof of Claim, file or filed with the Claims Agent.

61.    "**Final DIP Order**" means *Final Order Authorizing Debtors In Possession to (i) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (ii) Grant Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. §§ 364; (iii) Use Cash Collateral, (iv) Provide Adequate Protection to Prepetition Credit Parties and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, And 364; and (v) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Bankruptcy Rule 4001-2,* entered September —,11, 2015 [Docket No. —][316].

62.    "**Final Order**" means an order of the Bankruptcy Court: (i) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (ii) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (iii) in the event that an appeal, writ of certiorari, reargument, rehearing or new trial has been sought, as to which (a) such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order is appealed, (b) certiorari has been denied as to such order, or (c) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such actions having been taken.

63.    "**First Lien Loan Agreement**" means the senior secured financing facility governed by the terms of that certain Credit Agreement, dated as of January 31, 2014, by and among Signal International, Inc., as Borrower, Signal International, LLC, Signal Ship Repair, LLC, Signal International Texas GP, LLC, and Signal International Texas, L.P., as Guarantors, the TRSA, as administrative and collateral agent, the TRSA and ERSA, as lenders, as the same may be amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date.

64.     "**First Lien Loan Agreement Claim**" means any Claim arising under or related to the First Lien Loan Agreement and all other documents referred to therein or delivered in connection therewith.

65.     "**General Unsecured Claim**" means any Claim that is (i) not a DIP Facility Claim, Professional Fee Claim, First Lien Loan Agreement Claim, Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Litigation Claim, Intercompany Claim, or an Equity Interest, or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim. General Unsecured Claims shall not include any Claims that are disallowed or released, whether by operation of law or pursuant to a Final Order, written release or settlement, the provisions of the Plan or otherwise.

66.     "**Governmental Unit**" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

67.     "**GUC Payment Amount**" means an aggregate amount equal to the lesser of (i) $900,000, or (ii) an amount equal to fifteen percent (15%) of the total amount of all ~~allowed~~Allowed General Unsecured Claims which remain outstanding after all assumption and cure has been implemented with respect thereto. ~~Any amounts reserved or recovered on account of a Claim that is later disallowed shall be refunded~~Prior to the first distribution to Holders of Class 5 Allowed General Unsecured Claims, the Signal Liquidating Trust shall refund to the Purchaser the difference between (i) and (ii) of the foregoing sentence, if any.

68.     "**GUC Payment Fund**" means the bank account to be opened and/or maintained by the Signal Liquidating Trust in which the (i) GUC Payment Amount, plus (ii) the Pro Rata share of the Excess Sale Overpayment, if any, payable to the Holders of General Unsecured Claims are deposited.

69.     "**H-2B Workers**" means the workers from India that the Debtors ~~hired~~, or any Entity acting or purporting to act on behalf of the Debtors, hired or recruited, or that applied for employment with the Debtors prior to the Petition Date as part of or through the federal government's H-2B guestworker program.

70.     "**Holder**" means any Entity holding a Claim or Equity Interest.

71.     "**Impaired**" means, with respect to a Claim or Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

72.     "**Injunctions**" means the Plan Injunction provided for in Section 11.D of the Plan and the Channeling Injunction provided for in Section 6.C of the Plan.

73.     "**Intercompany Claim**" means any Claim of a Debtor against another Debtor.

74.     "**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

75.     "**Litigation Claimants**" means any and all ~~persons or entities~~Entities who hold or allege they ~~have~~hold a Litigation Claim.

76.     "**Litigation Claims**" means all Claims against the Debtors or any Released Party by ~~the H-2B Workers or any EEOC either~~or on behalf of ~~itself or~~the H-2B Workers or the EEOC arising out of

or related to the employment or recruitment of any of the H-2B Workers, excluding, for the avoidance of doubt, the Retained Claims.

77.     "**Litigation Settlement TAC**" means the Litigation Settlement Trust Advisory Committee to be formed to advise the Litigation Settlement Trustee, whose duties and responsibilities are set forth in Section 6.F hereof and in the Litigation Settlement Trust Agreement.   Prior to the Confirmation Hearing, the Supporting Litigation Claimants shall select the initial members of the Litigation Settlement TAC.

78.     "**Litigation Settlement TDP**" means the Litigation Settlement Trust Distribution Procedures to be implemented by the Litigation Settlement Trust pursuant to the terms and conditions of the Plan and attached as an Exhibit to the Litigation Settlement Trust Agreement, as it may be amended from time to time.

79.     "**Litigation Settlement Trust**" means the trust described in Article VI of the Plan to be established under Delaware law, which form shall be satisfactory to the Southern Poverty Law Center, in respect of the Litigation Claims.   With respect to any action required or permitted to be taken by the Litigation Settlement Trust, the term Litigation Settlement Trust includes the Litigation Settlement Trustee or any other person authorized to take such action in accordance with the Litigation Settlement Trust Agreement.

80.     "**Litigation Settlement Trust Agreement**" means the agreement establishing the Litigation Settlement Trust in conformity with the provisions of the Plan, which shall be approved in the Confirmation Order and entered into by the Debtors, the TRSA and ERSA, and the Litigation Settlement Trustee on the Effective Date and which shall be Filed as part of the Plan Supplement.

81.     "**Litigation Settlement Trust Assets**" means all property transferred to the Litigation Settlement Trust on the Effective Date pursuant to this Plan, including, as set forth in greater detail in Section 6.E of the Plan, the Litigation Settlement Trust's percentage of the Sharing Ratio, the Sale Overpayment, if any, and Pro Rata share of the Excess Sale Overpayment, if any.

82.     "**Litigation Settlement Trustee**" means the individual or entity identified in the Signal Liquidating Trust Agreement to be the trustee of the Signal Liquidating Trust pursuant to the terms of the Signal Liquidating Trust Documents to administer the Signal Liquidating Trust, and any successors thereto.

83.     "**Litigation Settlement Trust Expenses**" means any and all costs and expenses incurred in connection with the administration of the Litigation Settlement Trust, including litigation expenses and professional fees, pursuant to the Plan, Confirmation Order, and Litigation Settlement Trust Agreement.

84.     "**Litigation Settlement Trust Termination Date**" means the date on which the Litigation Settlement Trust is terminated as determined pursuant to the terms of the Litigation Settlement Trust Agreement.

85.     "**Non-Litigation Claim**" means any Claim other than a Litigation Claim.

86.     "**Official Bankruptcy Forms**" means the Official Bankruptcy Forms, prescribed by the Judicial Conference of the United States, the observance and use of which is required pursuant to Bankruptcy Rule 9009, as such forms may be amended, revised or supplemented from time to time.



87.     "**Ordinary Course Professionals Order**" means that certain *Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized in the Ordinary Course of Business, Effective as of the Petition Date* entered by the Bankruptcy Court on August 11, 2015 [Docket No. 207].

88.     "**Other Priority Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

89.     "**Other Secured Claim**" means any Claim, other than a DIP Facility Claim or a First Lien Loan Agreement Claim, that is secured by a lien on property in which an Estate has an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, solely to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to section 506(a) of the Bankruptcy Code.

90.     "**Permissible Investments**"  means (i) short-term direct obligations of, or obligations guaranteed by, the United States of America, (ii) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (iii) demand deposits or certificates of deposit at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, or (iv) such other investments as the Bankruptcy Court may approve from time to time.

91.     "**Person**" means a "person," as defined in section 101(41) of the Bankruptcy Code.

92.     "**Petition Date**" means July 12, 2015.

93.     "**Plan**" means the Plan, as amended, supplemented or otherwise modified from time to time subject to, and consistent in all material respects with, the terms of the Plan Support Agreement and the Plan Term Sheet, that is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

94.     "**Plan Cash Amount**" means the GUC Payment Amount, together with the Secured Debt Cash Obligations, and the Break-Up Fee.

95.     "**Plan Documents**" means the Plan, the Disclosure Statement, the Disclosure Statement Order, the related solicitation materials, the Confirmation Order, the PSA Assumption Motion, the PSA Order, and each other agreement, instrument, pleading, order or certificate or other related document utilized to implement the Plan, including any exhibits, amendments, modifications or supplements made from time to time thereto.

96.     "**Plan Injunction**" means the injunction issued pursuant to Section 11.D of the Plan.

97.     "**Plan Participants**" means (i) the Debtors, (ii) the TRSA and ERSA, and (iii) the Supporting Litigation Claimants (iv) the Litigation Settlement Trust.

98.     "**Plan Supplement**" means that certain compilation of documents and forms of documents, schedules and exhibits to the Plan, as such compilation may be amended, supplemented or modified from time to time in accordance with the terms of the Plan, the Bankruptcy Code and Bankruptcy Rules through the Effective Date that shall be filed no later than November 2, 2015.



99. "**Plan Supplement Documents**" means the Plan Supplement, and such other definitive documentation, as amended, relating to the Debtors as is necessary to consummate the Restructuring and the transactions contemplated hereby or thereby, including, without limitation the Litigation Settlement Trust Agreement, the Signal Liquidating Trust Agreement, the Westport Participation Agreement and the Apology Letter, the Apology Letter, the Signal Liquidation Trust Documents, and the identities of each of the following: (i) the Litigation Settlement Trustee; (ii) Litigation Settlement TAC; and (iii) the Signal Liquidation Trustee.

100. "**Plan Support Agreement**" means that certain Plan Support Agreement by and among (i) the Debtors, (ii) the TRSA and ERSA, (iii) the Supporting Litigation Claimants, and (iv) the Committee.

101. "**Plan Term Sheet**" means the term sheet describing the material terms of a proposed chapter 11 plan of reorganization for the Debtors attached as Exhibit A to the Plan Support Agreement.

102. "**Post-Effective Date Assets**" means any Assets that are not sold through the Sale Transaction or otherwise disposed of prior to the Effective Date, which shall be administered by the Signal Liquidating Trust.

103. "**Priority Tax Claim**" means a Claim of a "governmental unit" (as such term is defined in section 101(27) of the Bankruptcy Code) of the kind specified in, and entitled to priority under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

104. "**Privileged Information**" means any document (as used in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized compilations), communication, or other information subject to any attorney-client privilege, work product protection, common interest privilege or other privilege, protection or immunity held by any or all of the Debtors or the Estates. For purposes of Federal Rules of Evidence 501 and 502, the Litigation Settlement Trustee and/or the Signal Liquidating Trustee, as applicable, shall be deemed a successor in interest to the Debtors with respect to all privileges, protections and immunities held by the Debtors or their Estates.

105. "**Professional Fees**" means the fees for professional services rendered and expenses incurred in connection with such services by Retained Professionals on and after the Petition Date and prior to and including the Effective Date.

106. "**Professional Fee Reserve**" means the reserve established from the Cash on hand existing immediately prior to the Effective Date to pay in full in Cash in an amount not to exceed the budget agreed to by the DIP Lenders (i) the Professional Fee Claims incurred on or prior to the Effective Date, plus (ii) the reasonable fees, costs and expenses incurred by the Retained Professionals on or after the Effective Date in connection with the preparation of final fee applications and obtaining Bankruptcy Court approval of their respective Professional Fee Claims. Counsel for the Debtors shall hold the amounts allocated for Debtors' professionals in trust for the Debtors' professionals. Counsel for the Committee shall hold the amounts allocated for the Committee's professionals in trust for the Committee's professionals.

107. "**Professional Fees Bar Date**" means the Business Day that is forty-five (45) days after the Effective Date or such other date as approved by Final Order.

108. "**Proof of Claim**" means a proof of Claim Filed against any of the Debtors in the Bankruptcy Cases.

109.    "**Pro Rata**" means, as applicable, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that all Allowed Claims in a particular Class bears to the aggregate amount of Allowed Claims in such Class and other Classes entitled to share in the same recovery under the Plan.

110.    "**PSA Assumption Motion**" means that certain *Motion for Entry of an Order Authorizing the Debtors to Assume the Plan Support Agreement* [Docket No. 112].

111.    "**PSA Creditor Parties**" means the creditors or potential creditors of the Debtors that are parties to the Plan Support Agreement.

112.    "**PSA Order**" means that certain *Order Authorizing the Debtors to Assume the Plan Support Agreement* entered by the Bankruptcy Court on September 1, 2015 [Docket No. 279].

113.    "**Purchase Price**" means the "Purchase Price", as defined in the Asset Purchase Agreement.

114.    "**Purchaser**" means the prevailing bidder at the Auction, as approved by the Bankruptcy Court in the Sale Order, who shall purchase the Acquired Assets pursuant to the Asset Purchase Agreement.

115.    "**Purchaser Assumed Liabilities**" means the Assumed Liabilities as defined in the Asset Purchase Agreement.

116.    "**Related Parties**" means, with respect to any person or entity, any past, present or future representative, controlling person, officer, director, agent, attorney, advisor, employee, subsidiary or affiliate, shareholder, partner (general or limited), board member, member, manager, equity holder, trustee, executor, predecessor in interest, successor or assign of any such person or entity.

117.    "**Released Claims**" means any and all Claims or causes of action released by Article XI of the Plan, including the Released Related Party Claims, but excluding the Retained Claims.

118.    "**Released Parties**" mean (i) the Plan Participants, and (ii) the ~~Related Parties of the Plan Participants, and (iii) the Related Parties of any~~ Related Parties of the Plan Participants.

119.    "**Released Related Party Claims**" means any claims or causes of action against (i) the officers, directors, shareholders or other equity holders of the Debtors, or (ii) the Case Professionals.

120.    "**Released Signal Causes of Action**" means any Causes of Action expressly waived, relinquished, released, sold, compromised or settled by the Debtors under the Plan, the Asset Purchase Agreement, Final DIP Order, or any other Final Order.

121.    "**Releasing Parties**" means all Entities who have held, hold or may hold Claims or Interests that have been released pursuant to ~~Section~~Sections 11.G and 11.H of the Plan or are subject to ~~exculpation pursuant to Section 11.C of the Plan~~the Exculpation.

122.    "**Restructuring**" means the liquidation and financial restructuring of the Debtors.

123.    "**Restructuring Documents**" means the Plan Documents, the motions and orders, the Plan Supplement Documents, and each other agreement, instrument, pleading, order, instrument or

certificate or other related document utilized to implement the Restructuring, or the transactions contemplated hereby or thereby, and to obtain confirmation of the Plan.

124.    "**Retained Claims**" means the following claims or causes of action held by certain of the Plan Participants, which shall be retained by such Plan Participants and shall not be Released Claims: (i) the ~~claims or causes of action of the Litigation Claimants against Malvern C. Burnett, Law Offices of Malvern C. Burnett, A.P.C., Gulf Coast Immigration Law Center, L.L.C., Sachin Dewan, and Dewan Consultants Pvt. Ltd. (a/k/a/ Medtech Consultants) and (ii) the claims or causes of action of any Plan Participant against its own Related Parties, other than the Released Related Party Claims.~~Retained H-2B Claims and (ii) the claims or causes of action of any Plan Participant against its own Related Parties, other than the Released Related Party Claims.

125.    "**Retained H-2B Claims**" shall mean all claims or causes of action held by or on behalf of the Litigation Claimants and the Plan Participants (including without limitation the TRSA and ERSA, the Debtors or any successor to or assignee of the Debtors under the Plan) against Malvern C. Burnett, Law Offices of Malvern C. Burnett, A.P.C., Gulf Coast Immigration Law Center, L.L.C., Sachin Dewan, and Dewan Consultants Pvt. Ltd. (a/k/a/ Medtech Consultants).

126.    ~~125.~~ "**Retained Professional**" means any Entity (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code, or (ii) who wishes to apply to the Bankruptcy Court for compensation and reimbursement of expenses pursuant to section 503(b)(4) of the Bankruptcy Code.

127.    ~~126.~~ "**Sale Order**" means the Final Order approving the Sale Transaction and the Asset Purchase Agreement, which may be the Confirmation Order.

128.    ~~127.~~ "**Sale Overpayment**" means any cash bid amounts in excess of the Plan Cash Amount.

129.    ~~128.~~ "**Sale Transaction**" means the transaction between the Debtors and the Purchaser set forth in the Asset Purchase Agreement.

130.    ~~129.~~ "**Scheduled**" means an entry that appears on the Schedules.

131.    ~~130.~~ "**Schedules**" means the schedules of assets and liabilities, schedules of executory contracts, and the statements of financial affairs Filed by each Debtor pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms, as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date in accordance with Bankruptcy Rule 1009.

132.    ~~131.~~ "**Secured Debt Cash Obligations**" means all outstanding obligations owed under the Senior Notes (to the extent not repaid through proceeds of the DIP Facility) and the DIP Facility as of the Effective Date.

133.    ~~132.~~ "**Securities Act**" means the Securities Act of 1933, as amended.

134.    ~~133.~~ "**Senior Notes**" means the ERSA Note together with the TRSA Note.

135.    ~~134.~~ "**Sharing Ratio**" has the meaning provided in Section ~~VI.~~6.G of the Plan.

136.    135. "**Signal Causes of Action**" means all of the Debtors' actions, causes of action, objections to claims, rights of setoff, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Cases, through and including the Effective Date; *provided*, *however*, that the Signal Causes of Action shall not include the Released Signal Causes of Action.

137.    136. "**Signal Liquidating Trust**" means the Signal Liquidating Trust established by Article 5 of the Plan pursuant to section 105(a) of the Bankruptcy Code and the Signal Liquidating Trust Agreement.

138.    137. "**Signal Liquidating Trust Agreement**" means the trust agreement establishing and delineating the terms and conditions of the Signal Liquidating Trust.

139.    138. "**Signal Liquidating Trust Assets**" means (i) all Post-Effective Date Assets, if any, (ii) the GUC Payment Fund, (iii) the Signal Liquidating Trust Expense Fund, and (iv) the Disputed Claims Reserve.

140.    139. "**Signal Liquidating Trust Beneficiaries**" means the Holders of Allowed General Unsecured Claims under the Plan, excluding, for the avoidance of doubt, the Litigation Claimants.

141.    140. "**Signal Liquidating Trust Documents**" means the Signal Liquidating Trust Agreement and all documents, attachments and exhibits thereto, and any amendments thereto made in accordance with the Bankruptcy Code, or any other documents that aid in effectuating the Signal Liquidating Trust, which such Signal Liquidating Trust Documents shall be filed with the Bankruptcy Court.

142.    141. "**Signal Liquidating Trustee**" means the individual or entity initially selected to act as trustee of the Signal Liquidating Trust pursuant to the terms of the Signal Liquidating Trust Documents to administer the Signal Liquidating Trust, and any successors thereto.

143.    142. "**Signal Liquidating Trust Expenses**" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Signal Liquidating Trustee on account of administration of  the Signal Liquidating Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, and reasonable escrow expenses.

144.    143. "**Signal Liquidating Trust Expense Fund**" means the fund established by the Debtors on or prior to the Effective Date, in the amount of $_____, to fund a portion of the Signal Liquidating Trust Expenses.

145.    144. "**Stamp or Similar Tax**" means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

146.    ~~145.~~ "**Supporting Litigation Claimants**" means those Litigation Claimants signatories to the Plan Support Agreement.

~~146.    "Third Party Release" has the meaning provided in Section 11.G of the Plan.~~

147.    "**TRSA**" means the Teachers' Retirement System of Alabama, a corporate body of the State of Alabama created under Section §§ 16-25-1 *et seq.,* of the Alabama Code.

148.    "**TRSA Note**" means the $50,250,000 Term Loan Note held by the TRSA.

149.    "**Unclassified Claims**" means Administrative Claims, DIP Facility Claims, Priority Tax Claims, and Professional Fee Claims.

150.    "**Unexpired Lease**" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

151.    "**Unimpaired**" means a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

152.    "**United States Trustee**" means the United States Trustee appointed under 28 U.S.C. § 581 to serve in the District of Delaware.

153.    "**Westport Loan**" means that certain purchase money indebtedness currently owing to Signal International Texas, LP, by Westport Orange Shipyard, LLC, in the principal amount of up to $29,894,469.

154.    "**Westport Documents**" means all instruments or documents evidencing, securing, governing or otherwise pertaining to the Westport Loan.

155.    "**Westport Participants**" means, collectively, the Litigation Settlement Trust and Purchaser.

156.    "**Westport Participation Agreement**" means the loan participation agreement between the Westport Participants, governing the sharing of their respective interests in the Westport Loan, in form and content reasonably acceptable to the Westport Participants, which shall be Filed as part of the Plan Supplement.

## ARTICLE II.
## PAYMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Facility Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III hereof.

**A.    Administrative Claims**

Except with respect to Administrative Claims that constitute Professional Fees or DIP Facility Claims and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtor, the Signal Liquidating Trustee, or the Purchaser, as applicable, agree to less favorable treatment with such Holder, on, or as soon as reasonably practicable after (i) the Effective Date, if such



Administrative Claim is an Allowed Administrative Claim as of the Effective Date, or (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive, in full settlement, satisfaction and release of, and in exchange for, such Allowed Administrative Claim, (a) Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim or (b) such other treatment as may be agreed upon in writing by such Holder and the Debtors, the Signal Liquidating Trustee, or the Purchaser, as applicable; *provided*, *however*, that the Debtors, the Signal Liquidating Trustee or the Purchaser shall be authorized to pay Allowed Administrative Claims that arise in the ordinary course of the Debtors' business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such ordinary course of business transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order) or as provided by this Article II unless previously Filed, requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the Debtors, the Signal Liquidating Trustee, and the Purchaser no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date and entry of the Confirmation Order. Objections to such requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the requesting party by the Claims Objection Deadline. Absent further order of the Bankruptcy Court, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or the Purchaser, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

Notwithstanding anything in the Plan to the contrary, (i) any Allowed Administrative Claims that constitute Purchaser Assumed Liabilities shall be satisfied subject to the terms of the applicable Asset Purchase Agreement without the necessity of any further action by the Debtors, the Signal Liquidating Trustee or order of the Bankruptcy Court and the Holders of such Administrative Claims shall not receive any Distributions pursuant to the Plan with respect to such Administrative Claims; and (ii) any Allowed Administrative Claims that do not constitute Purchaser Assumed Liabilities shall be satisfied solely from the Disputed Claims Reserve.

**B.     Professional Fee Claims**

Retained Professionals asserting a Claim for Professional Fees for services rendered before the Effective Date must File and serve on the Signal Liquidating Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than the Professional Fees Bar Date; provided that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order, in each case without further application or notice to or order of the Bankruptcy Court, unless otherwise required pursuant to the Ordinary Course Professionals Order.

Objections to any Professional Fee Claim must be Filed and served on the Signal Liquidating Trustee and the requesting party by no later than twenty-~~one~~four days (~~21~~24) days after the ~~Filing~~service of the applicable final request for payment of the Professional Fee Claim.

Each Holder of an Allowed Professional Fee Claim shall be paid in full in Cash from the Professional Fee Reserve within five (5) Business Days after entry of the order approving such Allowed

Professional Fee Claim. The Professional Fee Reserve shall be comprised of two separate and independent reserves: one reserve to be used exclusively for the Debtors' Retained Professionals, and the other reserve to be used exclusively for the Committee's Retained Professionals. For the avoidance of doubt, the portion of the Professional Fee Reserve allocated to each Retained Professional shall be limited to the specific itemized amount set forth in the Professional Fee Reserve for such applicable Retained Professional.

**C.    DIP Facility Claims**

On the Effective Date, in full satisfaction, settlement, discharge and release of, all DIP Facility Claims, the TRSA and ERSA shall either (i) acquire the Acquired Assets as the Purchaser in accordance with the Asset Purchase Agreement, the Plan, and the Sale Order, or (ii) be paid in full, in Cash, the total amount outstanding under the DIP Facility from the proceeds received in accordance with the Asset Purchase Agreement; *provided, however,* that such satisfaction, settlement, discharge and/or release of DIP Facility Claims shall be without prejudice to any DIP Indemnity Obligations, all of which, subject to further Order of the Bankruptcy Court, shall be reserved for and the obligation to establish such reserve, if any, shall be secured by a DIP Lien (as defined in the Final DIP Order) on any proceeds of the Sale Transaction not paid to the TRSA or ERSA on the Effective Date.

**D.    Priority Tax Claims**

On, or as soon as reasonably practicable after (i) the Effective Date, if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date, or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim against a Debtor shall receive, (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) Cash in an amount agreed to by such Holder and the Debtors or the Signal Liquidating Trustee, as applicable solely from the Disputed Claims Reserve, provided that such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date without any further notice to or action, order, or approval of the Bankruptcy Court, or (c) at the sole discretion of the Signal Liquidating Trustee, Cash in the aggregate amount of such Allowed Priority Tax Claim solely from the Disputed Claims Reserve, payable in installment payments over a period not more than five years from the Petition Date with payment of interest at a rate agreed to by the Signal Liquidating Trustee and the Holder of such Allowed Priority Tax Claim, or as determined by the Bankruptcy Court in accordance with section 511 of the Bankruptcy Code and applicable non-bankruptcy law.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT**
**OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.    Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests that are required to be designated in classes pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Facility Claims, and Priority Tax Claims have not been classified and their treatment is set forth in Article II hereof. Classification of Claims and Equity Interests in the Plan is for all purposes, including voting, confirmation and distribution pursuant to the Plan.

A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class only to the extent that any portion of such Claim or Equity Interest qualifies within

the description of such different Class.  A Claim or Equity Interest is placed in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.  Notwithstanding any Distribution provided for in the Plan, no Distribution on account of any Claim or Equity Interest is required or permitted unless and until such Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest, as the case may be, which might not occur, if at all, until after the Effective Date.

| Summary of Classification and Treatment of Classified Claims and Equity Interests | | | |
|---|---|---|---|
| **Class** | **Claim** | **Status** | **Voting Rights** |
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | First Lien Loan Agreement Claims | ~~Potentially Impaired~~Unimpaired | ~~Entitled~~Deemed to ~~Vote~~Accept |
| 4 | Litigation Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests | Impaired | Deemed to Reject |

**B.      Classification and Treatment of Claims and Equity Interests**

    1.        Class 1 – Other Priority Claims

    (i)      (a) *Classification*:  Class 1 consists of Other Priority Claims.

    (ii)      (b) *Treatment*:  On or as soon as practicable after the Effective Date, each Holder of an Allowed Other Priority Claim shall be paid in full in Cash by the Signal Liquidating Trustee solely from the Disputed Claims Reserve, or be treated on such other terms as agreed between the Signal Liquidating Trustee and the Holder thereof, subject to the reasonable consent of the Purchaser.

    (iii)      (c) *Voting*:  Class 1 is Unimpaired and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan.

    2.        Class 2 – Other Secured Claims

    (i)      (a) *Classification*:  Class 2 consists of Other Secured Claims.

    (ii)      (b) *Treatment*:  On or as soon as practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall be paid in full in Cash by the Signal Liquidating Trustee solely from the Disputed Claims Reserve, receive delivery of collateral securing any such Claim and payment of any interest requested under section 506(b) of the Bankruptcy Code, or be treated on such other terms as agreed between the Signal Liquidating Trustee and the Holder thereof, subject to the reasonable consent of the Purchaser.

    (iii)      (c) *Voting*:  Class 2 is Unimpaired and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan.

    3.        Class 3 – First Lien Loan Agreement Claims

    (i)      (a) *Classification*:  Class 3 consists of First Lien Loan Agreement Claims.



(ii)    ~~(b)~~ *Treatment*:  ~~Unless otherwise repaid through proceeds of the DIP Facility, on the Effective Date, the Senior Notes shall each be cancelled, and on account of the~~All First Lien Loan Agreement Claims~~, the TRSA and ERSA shall either (i) acquire the Acquired Assets as the Purchaser in accordance with the Asset Purchase Agreement or (ii) be paid in full, in Cash, the total amount outstanding under the First Lien Loan Agreement from the proceeds received in accordance with the Asset Purchase Agreement~~ have been satisfied in full and repaid through the borrowings under the DIP Facility.

(iii)    ~~(c)~~ *Voting*:  Class 3 is ~~potentially impaired~~unimpaired and Holders of First Lien Loan Agreement Claims are ~~entitled to vote~~deemed to accept ~~or reject~~ the Plan.

4.    Class 4 – Litigation Claims

(i)    ~~(a)~~ *Classification*:  Class 4 consists of Litigation Claims.

(ii)    ~~(b)~~ *Treatment*:  Each Litigation Claimant shall receive its share of the Litigation Settlement Trust Assets, which share shall be determined in accordance with the terms, provisions, and procedures of the Litigation Settlement Trust Agreement and the Litigation Settlement TDP.  Litigation Claims shall be resolved by the Litigation Settlement Trust in accordance with the terms of the Litigation Settlement TDP.  On the Effective Date, the Litigation Claims shall be deemed Allowed in the total aggregate amount of no less than $200 million.  On the Effective Date, all Litigation Claims shall be released as against the Debtors pursuant to the terms and conditions of the Plan and the Litigation Settlement Trust Agreement.  Pursuant to the Channeling Injunction, each Litigation Claimant shall have its Claim permanently channeled to the Litigation Settlement Trust, and such Litigation Claim may thereafter be asserted exclusively against the Litigation Settlement Trust and resolved in accordance with the terms, provisions and procedures of the Litigation Settlement Trust Agreement and the Litigation Settlement TDP.   For the avoidance of doubt, Litigation Claimants are not entitled to receive Distributions or other payment of funds from the Signal Liquidating Trust on behalf of, related to or with respect to such Litigation Claims.  **Litigation Claimants are, subject to the Litigation Settlement Trust Agreement and the Litigation Settlement TDP, enjoined from filing any future litigation, claims or causes of action arising out of such Litigation Claims against the Debtors and/or any of the Plan Participants, and may not proceed in any manner against the Debtors and/or any of the Plan Participants, in any forum whatsoever, including, without limitation, any state or federal court or administrative or arbitral forum, and are required to pursue their Litigation Claims against the Litigation Settlement Trust solely as provided in the Litigation Settlement Trust Agreement and the Litigation Settlement TDP.**

(iii)    ~~(c)~~ *Voting*:  Class 4 is Impaired and Litigation Claimants are entitled to vote to accept or reject the Plan.

5.    Class 5 – General Unsecured Claims

(i)    ~~(a)~~ *Classification*:  Class 5 consists of General Unsecured Claims.

(ii)    ~~(b)~~ *Treatment*:  On the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, on account of its claim, its Pro Rata share ~~(determined without taking the Litigation Claimants into account) of the GUC Payment Amount and its Pro Rata share of that portion of the Excess Sale Overpayment allocated to the holders~~of that portion of the Excess Sale Overpayment allocated to the Holders of General Unsecured Claims.~~, and, each Holder of an Allowed General Unsecured Claim that votes to accept the Plan and does not opt out of the releases set forth in Section 11.H shall also receive, on account of its claim, its Pro Rata share (determined without taking the Litigation Claimants into

account) of the GUC Payment Amount.  All distributions to Holders of General Unsecured Claims shall be net of the Signal Liquidating Trust Expenses.  The GUC Payment Amount shall be an aggregate amount equal to the lesser of (i) $900,000, or (ii) an amount equal to fifteen percent (15%) of the total amount of all allowed General Unsecured Claims which remain outstanding after all assumption and cure has been implemented with respect thereto.  For the avoidance of any doubt, Holders of General Unsecured Claims are not entitled to receive Distributions or other payment of funds from the Litigation Settlement Trust on behalf of, related to or with respect to such General Unsecured Claims.

(iii)    (c) *Voting*:  Class 5 is Impaired and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.    Class 6 – Intercompany Claims

(i)    (a) *Classification*:  Class 6 consists of Intercompany Claims.

(ii)    (b) *Treatment*:  Holders of Allowed Intercompany Claims shall not receive any Distributions on account of such Claims.

(iii)    (c) *Voting*:  Class 6 is Impaired and Holders of Intercompany Claims are deemed to reject the Plan.

7.    Class 7 – Equity Interests in the Debtors

(i)    (a) *Classification*:  Class 7 consists of all Equity Interests in the Debtors.

(ii)    (b) *Treatment*:  Holders of Equity Interests in the Debtors shall neither receive nor retain any property under the Plan.  On the Effective Date, all Equity Interests in the Debtors shall be cancelled and of no further force or effect and all Claims filed on account of Equity Interests shall be deemed disallowed by operation of the Plan.

(iii)    (c) *Voting*: Class 7 is Impaired and Holders of Equity Interests in the Debtors are deemed to reject the Plan.

**C.    Non-Consensual Confirmation**

In the event that any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite majorities required by section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to (i) modify the Plan in accordance with Section 3.D hereof and/or (ii) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code notwithstanding such lack of acceptance.

**D.    Deemed Acceptance if No Votes Cast**

If no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims.

**D.    E. Elimination of Vacant Classes**

Any Class or sub-Class of Claims or Equity Interests that is not occupied as of the Confirmation Hearing Date by at least one Allowed Claim or Allowed Equity Interest, as applicable, or at least one Claim or Equity Interest, as applicable, temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii)

determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**E.**    ~~F.~~ **Special Provision Governing Unimpaired Claims**

Except as otherwise expressly provided in the Plan, nothing in the Plan shall affect the Debtors' or Signal Liquidating Trustee's rights in respect of any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**ARTICLE IV.**
**IMPLEMENTATION OF THE PLAN**

**A.    Implementation of the Plan**

The Plan will be implemented by the Signal Liquidating Trust and the Signal Liquidating Trustee, and the Litigation Settlement Trust and the Litigation Settlement Trustee, as applicable.

As of the Effective Date, and without the need for any further order of the Bankruptcy Court, action, formality or payment of any fees which might otherwise be required under applicable non-bankruptcy laws, each of the Debtors shall be deemed dissolved without the need for any filings with the Secretary of State or other governmental official in each Debtor's respective state of incorporation; provided, however, that notwithstanding the dissolution of such Debtors, the Signal Liquidating Trustee shall be authorized and empowered to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of and consummate the Plan. Such dissolution of the Debtors shall be deemed to have occurred on a "bottom up" basis, with lower tier Debtor Entities being deemed to have dissolved before higher tier Debtor Entities.

On the Effective Date, each existing member of the boards of directors of the Debtors shall be deemed to have been removed.

**B.    Consummation of the Asset Purchase Agreement**

On the Effective Date, the Debtors shall consummate the transactions contemplated by the Asset Purchase Agreement pursuant to the terms thereof in exchange for the Purchase Price. Upon entry of the Sale Order and the Confirmation Order by the Bankruptcy Court, all matters provided for under the Asset Purchase Agreement will be deemed authorized and approved without any requirement of further act or action by Holders of Equity Interests or the Debtors' boards of directors. The Debtors and the Signal Liquidating Trustee (as applicable) are authorized to execute and deliver, and to consummate the transactions contemplated by the Asset Purchase Agreement as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

1.    Transfer of Acquired Assets

On the Effective Date, in consideration and in exchange for the Purchase Price, and subject to the terms of and condition of the Plan and Bankruptcy Court's order authorizing such transaction, the Debtors will tender to the Purchaser duly executed bills of sale and assignment or other appropriate instruments and documents transferring title to and interest in the Acquired Assets free and clear of all Liens, Claims and interests (other than the Purchaser Assumed Liabilities and the Litigation



Settlement Trust's participation interest in the Westport Loan) pursuant to the terms and conditions of the Asset Purchase Agreement.  For the avoidance of doubt, nothing in this Section 4.B.1 prejudices Max Specialty's ability to object to any such transaction, or modifies the rights or obligations of Max Specialty, the DIP Lenders, or any other party in interest under the Final DIP Order.  Notwithstanding this Section 4.B.1, nothing in the Plan modifies the obligation under the Plan Support Agreement to commence an avoidance action against Max Specialty to avoid any avoidable liens against the Assets.

    2.    <u>Payment of Purchase Price and Discharge of Purchaser Assumed Liabilities</u>

        The Purchaser shall (i) promptly perform and discharge all Purchaser Assumed Liabilities in the ordinary course of business in accordance with the terms and conditions of any applicable agreements relating thereto and (ii) remit the Purchase Price in accordance with the Asset Purchase Agreement.

    3.    <u>Good Faith of the Purchaser</u>

        The transactions contemplated by the Asset Purchase Agreement are undertaken by the Debtors and the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction (including the assumption, assignment and/or transfer of any Executory Contract), unless such authorization and consummation of such Sale Transaction are duly stayed pending such appeal.  The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code as applicable.

    4.    <u>No Successor Liability for the Purchaser</u>

        Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order or the Asset Purchase Agreement, the Purchaser: (i) does not, pursuant to the Plan, the Sale Order or otherwise, assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations of or Assets of the Debtors on or prior to the Effective Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity; and (iii) shall not have any successor or transferee liability of any kind or character; *provided* that the Purchaser shall promptly perform and discharge the obligations specified in the Asset Purchase Agreement, including, without limitation, the Purchaser Assumed Liabilities.

**C.**    **Substantive Consolidation of the Debtors** ~~for Plan Purposes Only~~

        Entry of the Confirmation Order shall constitute approval, pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Estates ~~solely~~ for ~~the~~all purposes ~~of confirming and consummating the Plan~~, including, but not limited to, voting, Confirmation and Distribution.  Accordingly, (i) the Assets and liabilities of the Debtors will be deemed to be the Assets and liabilities of a single, consolidated entity, (ii) each and every Claim filed or to be filed in the Bankruptcy Cases against any Debtor shall be considered filed against the consolidated Debtors and shall be considered one Claim against and obligation of the consolidated Debtors on and after the Effective Date, (iii) all joint obligations of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations, are considered a single claim against the Debtors and (iv) all guaranties by any of the Debtors of the obligations of any Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Debtor and

any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors.

Such substantive consolidation of the Estates, however, shall not (other than for purposes related to funding Distributions under the Plan) affect (i) the legal and organizational structure of the Debtors, (ii) Executory Contracts that were entered into during the Bankruptcy Cases or that have been or will be assumed or rejected, (iii) any agreements entered into by the Litigation Settlement Trust or the Signal Liquidating Trustee on the Effective Date, (iv) the Debtors', the Litigation Settlement Trust's, or the Signal Liquidating Trustee's ability to subordinate or otherwise challenge Claims on an entity by entity basis, and (v) the extent to which liens, if any, attach to Assets. For the avoidance of doubt, except as otherwise ordered by the Bankruptcy Court, such substantive consolidation shall be without prejudice to any Entity's position as to: (i) the validity, perfected status, enforceability, priority, or avoidability of any lien held or asserted by Max Specialty; (ii) the validity, enforceability, or amount of any judgment or Claim held or asserted by Max Specialty; (iii) any purported requirement under the Bankruptcy Code or applicable law that the DIP Lenders or Pre-Petition Credit Parties (as defined in the Final DIP Order) be subject to the equitable doctrine of marshaling or any similar doctrine in connection any lien held or asserted by Max Specialty; (iv) the determination of the MS Adequate Protection Amount (as defined in the Final DIP Order); and (v) the value or allocation of any Assets or the proceeds thereof allegedly encumbered by an lien held or asserted by Max Specialty. Moreover, the Debtors reserve the right to seek confirmation of the Plan on an entity-by-entity basis.

In the event the Bankruptcy Court authorizes the Debtors to substantively consolidate less than all of the Estates or the Debtors do not pursue substantive consolidation, (i) the Plan shall be treated as a separate plan of liquidation for each Debtor not substantively consolidated and (ii) the Debtors shall not be required to resolicit votes with respect to the Plan and each Ballot submitted properly in accordance with the Disclosure Statement Order will be counted only as votes with respect to the Plan of the specific Debtor against which Holder has a Claim.

**D.    Cash Reserves**

On or before the Effective Date, the Debtors or the Signal Liquidating Trust shall establish the Disputed Claims Reserve, the Signal Liquidating Trust Expense Fund, and the GUC Payment Fund.

On or before the Effective Date, the Professional Fee Reserve shall be established.  Counsel for the Debtors shall hold the amounts allocated for Debtors' professionals in trust for the Debtors' professionals.  Counsel for the Committee shall hold the amounts allocated for the Committee's professionals in trust for the Committee's professionals.  Payment of Professional Fees from the Professional Fee Reserve are subject to entry of a Bankruptcy Court order approving the applicable Retained Professional's fee application.

**E.    Effective Date**

On the Effective Date, the Debtors shall File and serve a notice of Confirmation and occurrence of the Effective Date.  Such notice shall contain, among other things, the deadline by which all parties will be required to File and serve any Proofs of Claim for damages arising out of the rejection of an Executory Contract pursuant to the Plan and for any unpaid Administrative Claims.

On the Effective Date, the Debtors' Retained Professionals shall be deemed to have completed their services to the Debtors, but they shall be authorized to file and be compensated for filing final applications for reasonable compensation and reimbursement of expenses through the Effective Date as permitted by the Plan.

**F.      Operations of the Debtors Between the Confirmation Date and the Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as debtors in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**G.      Term of Injunctions or Stays**

Unless otherwise provided herein or in another order of the Bankruptcy Court, all injunctions or stays provided for in the Bankruptcy Cases pursuant to sections 105, 362 and 524 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**H.      Setoffs**

Subject to the limitations provided in section 553 of the Bankruptcy Code, the Debtors, the Signal Liquidating Trust and the Litigation Settlement Trust, as applicable, may, but shall not be required to, setoff against any Claim and the payments or Distributions to be made pursuant to the Plan in respect of such Claim, any claims, rights, causes of action and liabilities of any nature that the Debtors, the Signal Liquidating Trust or the Litigation Settlement Trust may hold against the Holder of such Claim; *provided, however*, that neither the failure to effect such a setoff nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Signal Liquidating Trust or the Litigation Settlement Trust, as the case may be, of any of such claims, rights, causes of action and liabilities that the Debtors, the Signal Liquidating Trust or the Litigation Settlement Trust has or may have against the Holder of such Claim.

**I.      Corporate Action**

The entry of the Confirmation Order shall constitute the approval of the authorization for the Debtors to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and any documents contemplated to be executed therewith, prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order rule or regulation.

**J.      Cancellation of Existing Agreements and Existing Equity Interests**

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates, and other documents evidencing any Claims or Equity Interests shall be canceled, shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

**K.      Authorization of Plan-Related Documentation**

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or



rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

Any responsible officer or director of the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**L.      Dissolution of Committee**

The Committee shall continue in existence through and including the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court or in the Plan or the Confirmation Order prior to the Effective Date.  On the Effective Date, the Committee shall be deemed dissolved, and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Bankruptcy Cases or the Plan and its implementation, and the retention or employment of the Committee's Retained Professionals shall terminate.

On the Effective Date, the Committee's Retained Professionals shall be deemed to have completed their services to the Committee, but they shall be authorized to file final applications for reasonable compensation and reimbursement of expenses through the Effective Date as permitted by the Plan.

**M.      Closing the Bankruptcy Cases**

Upon the Effective Date, the Bankruptcy Cases for the Debtors, except for Signal International Inc., shall be deemed closed, and the Signal Liquidating Trustee shall submit separate orders to the Bankruptcy Court under certification of counsel closing each such Bankruptcy Case, which certification of counsel shall not be filed until all applicable monthly operating reports have been filed and all fees due and payable pursuant to 28 U.S.C. § 1930 have been paid.  After all Causes of Action and Disputed Claims have been resolved, all statutory fees have been paid, all of the Assets have been distributed in accordance with this Plan, or at such earlier time as the Signal Liquidating Trustee deems appropriate, the Signal Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Bankruptcy Case for Signal International Inc., in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

**N.      Exemption from Certain Fees and Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan, the Asset Purchase Agreement or the Restructuring Documents shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and the Sale Order and Confirmation Order shall direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under the Plan, the Asset Purchase Agreement, or the Restructuring Documents and (ii) the maintenance or creation of security interests or any Lien as contemplated by the Plan, the Asset Purchase Agreement, or the Restructuring Documents.



## ARTICLE V.
## THE SIGNAL LIQUIDATING TRUST

**A.      Signal Liquidating Trust**

The Signal Liquidating Trust Agreement is incorporated into and made a part of the Plan.  In the event of any conflict between the terms of the Plan and the terms of the Signal Liquidating Trust Agreement, the terms of the Plan shall control.

**B.      Establishment and Purpose of the Signal Liquidating Trust**

On or before the Effective Date, the Debtors and the Signal Liquidating Trustee shall execute the Signal Liquidating Trust Agreement and shall have established the Signal Liquidating Trust pursuant to the Plan.  The Signal Liquidating Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Signal Liquidating Trust.

**C.      Authority and Role of the Signal Liquidating Trustee**

The authority and role of the Signal Liquidating Trustee shall be in accordance with the provisions of the Signal Liquidating Trust Agreement and the Plan.  In furtherance of and consistent with the purpose of the Signal Liquidating Trust Agreement and the Plan, solely for the purpose of carrying out the Plan and discharging the duties in the Signal Liquidating Trust Agreement, the Signal Liquidating Trustee shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in these Bankruptcy Cases and, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable State corporate law, is appointed as the successor-in-interest to, and the representative of, the Estates for the retention, enforcement, settlement or adjustment of all claims and rights, known and unknown, and all interests belonging to the Debtors or the Estates, which arose prior to the Confirmation Date, except in connection with any proceeding involving, relating to or arising out of, in whole or in part, the Litigation Claims.

**D.      Appointment of the Signal Liquidating Trustee**

The Signal Liquidating Trustee is set forth in the Signal Liquidating Trust Agreement.  The appointment of the Signal Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be as of the Effective Date.  In accordance with the Signal Liquidating Trust Agreement, the Signal Liquidating Trustee shall serve in such capacity through the earlier of (i) the date that the Signal Liquidating Trust is dissolved in accordance with the Signal Liquidating Trust Agreement and/or (ii) the date such Signal Liquidating Trustee resigns, is terminated or is otherwise unable to serve.

The Signal Liquidating Trustee and its professionals, in their capacity as such, shall be exculpated and indemnified pursuant to and in accordance with the terms of the Signal Liquidating Trust Agreement, *provided, however,* that no such parties shall be indemnified for willful misconduct, actual fraud or gross negligence.

**E.      Signal Liquidating Trust Assets**

On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred the Signal Liquidating Trust Assets to the Signal Liquidating Trust.   In accordance with section 1141 of the Bankruptcy Code, the Signal Liquidating Trust Assets shall



automatically vest in the Signal Liquidating Trust free and clear of all Claims, liens, encumbrances, or interests subject only to the Signal Liquidation Trust Expenses, as provided for in the Plan and the Signal Liquidating Trust Agreement.

**F.      Treatment of Signal Liquidating Trust for Federal Income Tax Purposes**

In accordance with Treas. Reg. § 301.7701-4(d), the Signal Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Post-Effective Date Assets, if any, make timely distributions to the Signal Liquidating Trust Beneficiaries and not unduly prolong its duration.  The Signal Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Signal Liquidating Trust Agreement.

**G.      Signal Liquidating Trust as a "Grantor Trust"**

The Signal Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Signal Liquidating Trust Beneficiaries treated as grantors and owners of the Signal Liquidating Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Signal Liquidating Trustee, and the Signal Liquidating Trust Beneficiaries) shall treat the transfer of the Signal Liquidating Trust Assets by the Debtors to the Signal Liquidating Trust, as set forth in the Signal Liquidating Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims of Signal Liquidating Trust Beneficiaries entitled to distributions from the Signal Liquidating Trust Assets, followed by a transfer by such Holders to the Signal Liquidating Trust. Thus, the Signal Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

**H.      Signal Liquidating Trustee's Right and Power to Invest**

The right and power of the Signal Liquidating Trustee to invest the Signal Liquidating Trust Assets transferred to the Signal Liquidating Trust, the proceeds thereof, or any income earned by the Signal Liquidating Trust, shall be limited to the right and power to invest such Signal Liquidating Trust Assets (pending distributions in accordance with the Plan) in Permissible Investments; *provided, however,* that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

**I.      Responsibilities of the Signal Liquidating Trustee**

The responsibilities of the Signal Liquidating Trustee shall include, but shall not be limited to:

(i)      the making of Distributions as contemplated herein;

(ii)      conducting an analysis of all Non-Litigation Claims, and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate;

(iii) preparing and filing post-Effective Date operating reports;

(iv)      filing appropriate tax returns with respect to the Signal Liquidating Trust and paying taxes properly payable by the Signal Liquidating Trust, if any, in the exercise of its fiduciary obligations;

(v)      retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations;



(vi)    taking such actions as are necessary and reasonable to carry out the purposes of the Signal Liquidating Trust;

(vii)    protecting and enforcing the rights to the Signal Liquidating Trust Assets vested in the Signal Liquidating Trustee by any method reasonably determined to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; and

(viii)    terminating the Signal Liquidating Trust and seeking to close the Bankruptcy Cases pursuant to section 350(a) of the Bankruptcy Code.

**J.      Expenses of the Signal Liquidating Trustee**

Fees and expenses incurred by the Signal Liquidating Trustee shall be paid from the Signal Liquidating Trust Assets.

**K.      Bonding of the Signal Liquidating Trustee**

The Signal Liquidating Trustee shall not be obligated to obtain a bond but may do so, in his or her sole discretion, in which case the expense incurred by such bonding shall be paid by the Signal Liquidating Trust.

**L.      Fiduciary Duties of the Signal Liquidating Trustee**

Pursuant to the Plan and the Signal Liquidating Trust Agreement, the Signal Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders of Non Litigation Claims against the Debtors that will receive Distributions pursuant to the terms of the Plan.

**M.      Cooperation; Transfer of Books and Records**

On or before the Effective Date, or as soon thereafter as is practical, the Debtors or the Purchaser, as applicable, will transfer and assign, or cause to be transferred and assigned, to the Signal Liquidating Trustee, copies of all of the books and records of the Debtors necessary for the handling of the Non-Litigation Claims. Following the Effective Date, the Purchaser (to the extent practicable) shall cooperate to the extent reasonably requested by the Signal Liquidating Trustee in the handling of Non-Litigation Claims filed against the Debtors, and generally in the operation of the Signal Liquidating Trust for purposes set forth herein and for the duration of the Signal Liquidating Trust, and shall use commercially reasonable efforts (as determined by the Purchaser in its sole discretion) to request any former officer, director, employee, agent or representative of the Debtors employed by the Purchaser cooperate to the extent that the Signal Liquidating Trustee reasonably requests the Purchaser to make such request to any of the foregoing and deems such persons necessary to appear at any trial or arbitration proceeding relating to the liquidation of Non-Litigation Claims against the Debtors. To the extent that the Litigation Settlement Trustee or the Purchaser, as appropriate, require any information from the Signal Liquidating Trustee for preparation of any tax return or financial statement, the Signal Liquidating Trustee shall cooperate in a commercially reasonable manner, to the extent reasonably requested to provide such information to the Litigation Settlement Trustee or the Purchaser, as appropriate. The Purchaser (and any former officer, director, employee, agent or representative of the Debtors employed by  the Purchaser to the extent that such person is requested to perform act or otherwise perform hereunder) and the Litigation Settlement Trustee shall be entitled to the advancement and/or reimbursement of any reasonable costs, expenses or fees, including professional fees, and



expenses, incurred or to be incurred in compliance with any request of the Litigation Settlement Trust pursuant to the foregoing.

## N.    Transfer of Privileged Information

On the Effective Date or as soon thereafter as is reasonably practicable, the Privileged Information of the Debtors needed for the handling of the Non-Litigation Claims shall be transferred, assigned, given over to, and shall vest exclusively in the Signal Liquidating Trustee.  Further, with regard to any such privileges, (i) they are transferred or contributed for the sole purpose of enabling the Signal Liquidating Trustee to perform its duties to administer the Signal Liquidating Trust and for no other reason, (ii) they are vested solely in the Signal Liquidating Trustee, and not in the Signal Liquidating Trust or any other entity, committee or subcomponent of the Signal Liquidating Trust, or any person (including counsel) who has been engaged by, represents or has represented any Litigation Claimant or any person who alleges or may allege a claim directly or indirectly relating to or arising from the Debtors' premises or operations, (iii) they shall be preserved and not waived, (iv) for the avoidance of doubt (if any), any such transfer or contribution shall have no effect on any right, claim or privilege of any person other than the Debtors, and (v) no information subject to a privilege or a prior assertion thereof shall be publicly disclosed by the Signal Liquidating Trustee or the Signal Liquidating Trust or communicated to any person not entitled to receive such information or in a manner that would diminish the protected status of any such information.

## O.    Dissolution of the Signal Liquidating Trust

The Signal Liquidating Trust shall be dissolved no later than five (5) years from the Effective Date unless the Bankruptcy Court, upon a motion Filed with the Bankruptcy Court (the Filing of which shall automatically extend the term of the Signal Liquidating Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Signal Liquidating Trust Assets.  The Signal Liquidating Trust Agreement shall require that each extension be approved by the Bankruptcy Court within six (6) months prior to the conclusion of the extended term.  After (i) the final Distribution to Holders of Allowed Claims, (ii) the Filing by or on behalf of the Signal Liquidating Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (iii) any other action deemed appropriate by the Signal Liquidating Trustee, the Signal Liquidating Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

## P.    Full and Final Satisfaction against Signal Liquidating Trust

On and after the Effective Date, the Signal Liquidating Trust shall have no liability on account of any Claims except as set forth in the Plan and in the Signal Liquidating Trust Agreement.  All payments and all Distributions made by the Signal Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims against the Signal Liquidating Trust.

**ARTICLE VI.**
**LITIGATION SETTLEMENT TRUST AND**
**DISTRIBUTIONS TO LITIGATION CLAIMANTS**

## A.    Establishment and Administration of the Litigation Settlement Trust

On the Effective Date, the Litigation Settlement Trust shall be established in accordance with the Plan Documents.  The Litigation Settlement Trust shall be a "Qualified Settlement Fund" within the



meaning of section 468B of the Internal Revenue Code and the regulations promulgated thereunder. The Litigation Settlement Trust: shall assume the liability for all Litigation Claims; shall administer, process, settle, resolve and liquidate such Litigation Claims; and shall use the Litigation Settlement Trust Assets and the proceeds and income therefrom, after payment of necessary expenses of the Litigation Settlement Trust, including expenses of the Litigation Settlement Trustee and its retained professionals, to satisfy and make payment to all such Litigation Claims that may qualify for a recovery only in accordance with the terms of the Litigation Settlement Trust Agreement and the Litigation Settlement TDP, all in accordance with the Plan, the Litigation Settlement Trust Agreement and the Litigation Settlement TDP. The Litigation Settlement Trust will administer, process, settle, resolve, liquidate, satisfy and/or pay, as applicable, Litigation Claims in such a way that the Holders of Litigation Claims are treated equitably and in a substantially similar manner, subject to the terms of the Plan, the Litigation Settlement Trust Agreement and the Litigation Settlement TDP. Litigation Claims shall be channeled to the Litigation Settlement Trust pursuant to the Channeling Injunction set forth in Section 6.C of the Plan and may thereafter be asserted only and exclusively against the Litigation Settlement Trust. All such Litigation Settlement Trust Claims shall be liquidated and paid in accordance with the Litigation Settlement Trust Agreement, the Litigation Settlement TDP, the Plan and the Confirmation Order. The Litigation Settlement Trust shall be administered and implemented by the Litigation Settlement Trustee as provided in the Litigation Settlement Trust Agreement.

**B.      Litigation Settlement TDP**

On the Effective Date, the Litigation Settlement Trust shall implement the Litigation Settlement TDP in accordance with the terms of the Litigation Settlement Trust Agreement. On or after the Effective Date, the Litigation Settlement Trustee, upon notice to the Litigation Settlement TAC, shall have the power to administer, amend, supplement or modify the Litigation Settlement TDP in accordance with the terms thereof; *provided*, *however*, that such modification is not inconsistent with the Plan or other Plan Documents; *provided*, *further*, to the extent that any modifications to the Litigation Settlement Trust Agreement or the Litigation Settlement TDP constitute a material modification that would affect the rights of the Plan Participants, such Plan Participants shall be provided ten (10) days advance notice of such amendment and an opportunity to contest the proposed amendment before the Bankruptcy Court. In the event that any of the Plan Participants contests a proposed amendment within the notice period contemplated in this paragraph, such modification shall not become effective until such time as the Bankruptcy Court has authorized the amendment or the objecting Plan Participant has consented to the proposed amendment.

**C.      Imposition of Channeling Injunction**

From and after the Effective Date, (i) all Litigation Claims will be subject to the Channeling Injunction pursuant to section 105(a) of the Bankruptcy Code and the provisions of the Plan and the Confirmation Order and (ii) the Plan Participants and Related Parties shall have no obligation to pay any liability of any nature or description arising out of, relating to, or in connection with any Litigation Claims, *provided, however,* that nothing in the Plan shall preclude any action by the Litigation Settlement Trust to enforce the Plan. ***To supplement the injunctive effect of the Plan Injunction, and pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, for Litigation* Settlement Trust *Claims, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date***:

        1.      Terms

***To preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction and the***

*Releases*~~releases~~ *described in Article XI of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Entities that have held or asserted, or that hold or assert any Litigation Claim ~~against the Plan Participants or any of them,~~ shall be permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery ~~from any such Plan Participant or their Related Parties~~ with respect to any such Litigation Claim other than from the Litigation Settlement Trust in accordance with the Litigation Settlement Trust Agreement and the Litigation Settlement TDP, including, but not limited to:*

(i)      *commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding of any kind with respect to any such Litigation Claim, against any of the Plan Participants or their Related Parties, or against the property of any of the Plan Participants or their Related Parties with respect to any such Litigation Claim;*

(ii)     *enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree or other order against any of the Plan Participants or their Related Parties, or against the property of any of the Plan Participants or their Related Parties with respect to any such Litigation Claim;*

(iii)    *creating, perfecting or enforcing in any manner, whether directly or indirectly, any Lien of any kind against any of the Plan Participants or their Related Parties or the property of any of the Plan Participants or their Related Parties with respect to any such Litigation Claim;*

(iv)     *asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due any of the Plan Participants or their Related Parties or against the property of any of the Plan Participants or their Related Parties with respect to any such Litigation Claim; and*

(v)      *taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to such Litigation Claim.*

2.      <u>Reservations</u>

Notwithstanding anything to the contrary in Article XI of the Plan, the Channeling Injunction shall not enjoin:

(i)      the rights of Entities to the treatment afforded them under the Plan, including the right of Entities holding Litigation Claims to assert such Claims in accordance with the Litigation Settlement Trust Agreement and the Litigation Settlement TDP solely against the Litigation Settlement Trust whether or not there are funds to pay such Litigation Claims;

(ii)     the rights of Entities to assert any Claim, debt, litigation, or liability for payment of Litigation Settlement Trust Expenses solely against the Litigation Settlement Trust whether or not there are funds to pay such Litigation Settlement Trust Expenses;

(iii)    the Litigation Settlement Trust from enforcing its rights under the Litigation Settlement Trust Agreement, the Litigation Settlement TDP and the Restructuring Documents; and



(iv)      the rights of any Plan Participant to demand the Litigation Settlement Trust to fulfill its obligations to enforce the terms of the Channeling Injunction consistent with Section 6.C of the Plan.

3.      Modifications

There can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

4.      Non-Limitation Channeling Injunction

Nothing in the Plan or in the Litigation Settlement Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction issued in connection with the Plan or the Litigation Settlement Trust's assumption of all liability with respect to Litigation Claims.

**D.      Release of Liabilities to Litigation Claimants**

~~Except as provided in the Plan, the~~The transfer to, vesting in, and assumption by the Litigation Settlement Trust of the Litigation Settlement Trust Assets as contemplated by the Plan shall, as of the Effective Date, release all obligations and liabilities of and bar recovery or any action against the Plan Participants, and their ~~respective estates, affiliates and subsidiaries~~Related Parties, for or in respect of all Litigation Claims (and the Confirmation Order shall so provide for such release).  The Litigation Settlement Trust shall, as of the Effective Date, assume sole and exclusive responsibility and liability for all Litigation Claims, and such Claims shall be liquidated, resolved or paid by the Litigation Settlement Trust from the Litigation Settlement Trust Assets or as otherwise directed in the Litigation Settlement Trust Agreement.

**E.      Assumption of Certain Liabilities**

In consideration of the Litigation Settlement Trust Assets transferred to the Litigation Settlement Trust under the Plan and in furtherance of the purposes of the Litigation Settlement Trust and the Plan, the Litigation Settlement Trust shall assume all liability and responsibility for all Litigation Claims, including the administration thereof as described in the Plan and the Debtors and the Signal Liquidating Trust shall have no further financial or other responsibility or liability therefor.  For the avoidance of doubt, the Litigation Claims shall be resolved in accordance with the Litigation Settlement Trust Agreement and the Litigation Settlement TDP.

**F.      Appointment of the Litigation Settlement Trustee**

The Litigation Settlement Trustee shall be selected by the Southern Poverty Law Center.  The Debtors shall File a notice, as part of the Plan Supplement, naming the Person designated as Litigation Settlement Trustee.  On the Confirmation Date, the Bankruptcy Court shall appoint the initial Litigation Settlement Trustee to serve in accordance with, and shall have the functions and rights provided in, the Litigation Settlement Trust Agreement.  Any successor Litigation Settlement Trustee shall be appointed in accordance with the terms of the Litigation Settlement Trust Agreement.  For purposes of any Litigation Settlement Trustee performing his or her duties and fulfilling his or her obligations under the Litigation Settlement Trust and the Plan, the Litigation Settlement Trust and the Litigation Settlement Trustee shall be deemed to be "parties in interest" within the meaning of section 1109(b) of the Bankruptcy Code.  The Litigation Settlement Trustee shall be the "administrator" of the Litigation Settlement Trust as that term is used in Treas. Reg. Section 1.468B-2(k)(3).



The Litigation Settlement Trustee may be terminated at any time in accordance with the provisions of the Litigation Settlement Trust Agreement.

The Litigation Settlement Trustee and its professionals and the members of the Litigation Settlement TAC, in their capacity as such, shall be exculpated and indemnified pursuant to and in accordance with the terms of the Litigation Settlement Trust Agreement*, provided, however,* that no such parties shall be indemnified for willful misconduct, actual fraud or gross negligence.

All Litigation Settlement Trust Expenses following the Effective Date shall be borne solely by the Litigation Settlement Trust.

## G.    Litigation Settlement Trust Assets

On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred the Litigation Settlement Trust Assets to the Litigation Settlement Trust.  In accordance with section 1141 of the Bankruptcy Code, the Litigation Settlement Trust Assets shall automatically vest in the Litigation Settlement Trust free and clear of all Claims, liens, encumbrances, or interests, subject only to the Westport Participation Agreement, and as otherwise provided for in the Plan and the Litigation Settlement Trust Agreement.

1.    Westport Loan Proceeds

(i)    (a) Westport Participation Agreement

On the Effective Date, the Purchaser will receive, free and clear of liens, claims or encumbrances (including, without limitation, the prepetition liens of the TRSA and ERSA) other than the participating interest of the Litigation Settlement Trust described below, all right, title and interest of the Debtors in and to certain purchase money indebtedness currently owing to the Debtors under the Westport Loan.  The Westport Loan and the Westport Documents will be transferred to the Purchaser subject to the terms of the Westport Participation Agreement, in form and content reasonably acceptable to the Westport Participants.  Upon the Effective Date, the TRSA and ERSA, and the collateral agent under the First Lien Loan Agreement will execute any documents necessary to effectuate a release and discharge of their respective liens, encumbrances and security interests on the Westport Loan facility.

The Westport Participation Agreement shall provide that each Westport Participant share on a Pro Rata basis in all proceeds derived from the Westport Loan (including scheduled payments of principal and interest, prepayments, proceeds of enforcement or proceeds of liquidation of collateral) as follows:

- The Litigation Settlement Trust shall receive a 66.9% participating interest, and the Purchaser shall receive a 33.1% participating interest, in and to the Westport Loan and the Westport Documents.  The participating interests described above are referred to herein as each Westport Participant's "**Sharing Ratio**".

- If the Westport Loan is prepaid in full, in accordance with its terms, prior to its scheduled maturity date, and the application of the Litigation Settlement Trust's Sharing Ratio to such prepayment results in an aggregate recovery of less than $20 million by the Litigation Settlement Trust, then the Litigation Settlement Trust shall be entitled to receive additional proceeds from such prepayment in an amount sufficient to increase its aggregate recovery from the Westport Loan to $20 million.



- The maximum aggregate amount payable to the Litigation Settlement Trust by virtue of its Sharing Ratio shall for all purposes be capped at $22 million. Upon receipt of said amount by the Litigation Settlement Trust, all further payments or other recoveries with respect to the Westport Loan will be payable solely to the Purchaser.

For the avoidance of doubt, the Litigation Settlement Trust shall not receive any guarantee or other credit support as to the Westport Loan from the Purchaser, the Debtors, or any party to the Plan Support Agreement.

(ii) (b) Westport Loan Administration Expenses

Pursuant to the Westport Participation Agreement, if the TRSA and ERSA or an affiliate or designee thereof is the Purchaser, the TRSA and ERSA will be responsible for the collection and distribution of the proceeds of the Westport Loan and, if necessary, the enforcement thereof, for the ratable benefit of the Westport Participants. All out-of-pocket costs and expenses reasonably and actually incurred by the TRSA and ERSA in connection with the administration of the Westport Loan shall be payable from proceeds thereof prior to any distribution to the Westport Participants in accordance with their respective Sharing Ratios.

Pursuant to the Westport Participation Agreement, if none of the TRSA and ERSA or an affiliate or designee thereof is the Purchaser, the Litigation Settlement Trust will be responsible for the collection and distribution of the proceeds of the Westport Loan and, if necessary, the enforcement thereof, for the ratable benefit of the Westport Participants. All Litigation Settlement Trust Expenses incurred in connection with the administration of the Westport Loan shall be payable from proceeds thereof prior to any distribution to the Westport Participants in accordance with their respective Sharing Ratios.

(iii) (c) Westport Loan Payments

Any payments of principal received by any of the Debtors, TRSA or ERSA on account of the Westport Loan from June 30, 2015 through the Effective Date, shall be held in trust for the benefit of the Westport Participants and will be distributed to the Westport Participants on the Effective Date in accordance with their respective Sharing Ratios.

Any payments of interest received by any of the Debtors, TRSA or ERSA on account of the Westport Loan from November 5, 2015 through the Effective Date of the Plan, shall be held in trust for the benefit of the Westport Participants and will be distributed to the Westport Participants on the Effective Date in accordance with their respective Sharing Ratios.

(iv) (d) Enforcement of Westport Loan

[To be provided] The transfer of the Debtors' right, title and interest in and to the Westport Loan and the Westport Documents to the Purchaser shall be free and clear of liens, claims or encumbrances (including, without limitation, the prepetition liens of the TRSA and ERSA) pursuant to section 363(f) of the Bankruptcy Code, other than the participating interest of the Litigation Settlement Trust. The Westport Documents shall remain legal, valid, binding and authorized obligations of the parties obligated thereunder, enforceable in accordance with their terms. Each of the Purchaser and the Litigation Settlement Trust shall constitute a holder in due course and a "person entitled to enforce

instrument" under section 3-301 of the Uniform Commercial Code with respect to the notes, instruments and other Westport Documents.

2.  Excess Sale Overpayment

Any Sale Overpayment made on the Effective Date and not subject to a valid and perfected lien shall be paid as follows:

- *First*, to the Litigation Settlement Trust to reduce, on a dollar-for-dollar basis, its participating interest in the Westport Loan (not to exceed a total of $20 million). In such event, the Sharing Ratio of the Litigation Settlement Trust shall be recalculated to account for all sums received from such Sale Overpayment. If the Sale Overpayment is in an amount adequate to result in the immediate payment of the sum of $20 million to the Litigation Settlement Trust, then the Westport Loan will be transferred to the Purchaser free and clear of all liens, claims and encumbrances, and shall not be subject to a continuing participation interest by any party.

- *Second*, any Sale Overpayment greater than $20 million paid to the Litigation Settlement Trust as set forth above (such amount the "**Excess Sale Overpayment**") will be shared as follows: 22.5% of the Excess Sale Overpayment shall be paid to holders of General Unsecured Claims (as defined below), not subject to dilution by the Litigation Claimants, and 77.5% of the Excess Sale Overpayment shall be paid to Litigation Claimants, not subject to dilution by the holders of General Unsecured Claims, *provided*, that at such time as the holders of General Unsecured Claims (other than the Litigation Claims) have received payment in full of the allowed amount of their claims, 100% of any remaining Excess Sale Overpayment shall be paid to the Litigation Claimants.

## H.    Litigation Settlement TAC

The Litigation Settlement TAC shall have the functions and rights provided in the Litigation Settlement Trust Agreement. Prior to the Confirmation Hearing, the Supporting Litigation Claimants shall select the initial members of the Litigation Settlement TAC. On the Confirmation Date, the Bankruptcy Court shall appoint the initial members of the Litigation Settlement TAC, as selected by the Supporting Litigation Claimants.

## I.    Cooperation; Transfer of Books and Records

On or before the Effective Date, or as soon thereafter as is practical, the Debtors or the Purchaser, as applicable, will transfer and assign, or cause to be transferred and assigned, to the Litigation Settlement Trustee, copies of all of the books and records of the Debtors that pertain to the Litigation Claims. Following the Effective Date, the Purchaser (to the extent practicable) shall further cooperate to the extent reasonably requested (as determined by the Purchaser in its sole discretion) by the Litigation Settlement Trustee in the handling of Litigation Claims and generally in the operation of the Litigation Settlement Trust for purposes set forth herein and for the duration of the Litigation Settlement Trust, and shall use commercially reasonable efforts (as determined by the Purchaser in its discretion) to request former officers, directors, employees, agents or representatives of the Debtors employed by the Purchaser cooperate to the extent that the Litigation Settlement Trustee reasonably requests the Purchaser to make such request to any of the foregoing and deems such persons necessary to appear at any trial or



arbitration proceeding relating to the handling of Litigation Claims. To the extent that the Signal Liquidating Trustee or the Purchaser, as appropriate, require any information from the Litigation Settlement Trustee for preparation of any tax return or financial statement, the Litigation Settlement Trustee shall cooperate in a commercially reasonable manner, to the extent reasonably requested to provide such information to the Signal Liquidating Trustee or the Purchaser, as appropriate. The Purchaser (and any former officer, director, employee, agent or representative of the Debtors employed by the Purchaser, to the extent that such person is requested to perform act or otherwise perform hereunder) and/or the Signal Liquidating Trust shall be entitled to the advancement and/or reimbursement of any reasonable costs, expenses or fees, including professional fees, and expenses, incurred or to be incurred in compliance with any request of the Litigation Settlement Trust pursuant to the foregoing.

**J.      Transfer of Privileged Information**

The transfer or assignment of Privileged Information to the Litigation Settlement Trustee does not result in the destruction or waiver of any applicable privileges pertaining to such Privileged Information. Further, with regard to any such privileges, (i) they are transferred or contributed for the sole purpose of enabling the Litigation Settlement Trustee to perform its duties to administer the Litigation Settlement Trust and for no other reason, (ii) they are vested solely in the Litigation Settlement Trustee, and not in the Litigation Settlement Trust, the Litigation Settlement TAC or any other entity, committee or subcomponent of the Litigation Settlement Trust, or any person (including counsel) who has been engaged by, represents or has represented any Litigation Claimant, or any person who alleges or may allege a claim directly or indirectly relating to or arising from the Debtors' premises or operations, (iii) they shall be preserved and not waived, (iv) for the avoidance of doubt any such transfer or contribution shall have no effect on any right, claim or privilege of any person other than the Debtors, and (v) no information subject to a privilege or a prior assertion thereof shall be publicly disclosed by the Litigation Settlement Trustee or the Litigation Settlement Trust or communicated to any person not entitled to receive such information or in a manner that would diminish the protected status of any such information.

**K.      Institution and Maintenance of Legal and Other Proceedings**

As of the Effective Date, the Litigation Settlement Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Litigation Settlement Trust. The Litigation Settlement Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions relating to the Litigation Settlement Trust in the name of the Debtors if deemed necessary or appropriate by the Litigation Settlement Trustee. The Litigation Settlement Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred by the Litigation Settlement Trust subsequent to the Effective Date arising from or associated with any legal action or other proceeding brought pursuant to the Plan. For the avoidance of doubt, the Litigation Settlement Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable State corporate law, is appointed as the successor-in-interest to, and representative of, the Debtors and their Estates for the retention, enforcement, settlement or adjustment of all Litigation Claims.



**ARTICLE VII.**
**PROVISIONS FOR TREATMENT OF CONTINGENT**
**CLAIMS AND DISPUTED NON-LITIGATION CLAIMS**

**A.      Treatment of Contingent Claims**

Holders of Contingent Claims shall be paid only after such Claims have become fixed and/or liquidated.  No interest shall be paid on account of a Contingent Claim except as provided in section 506(b) of the Bankruptcy Code.  ~~Except as otherwise provided for Litigation Claims under the Litigation Settlement Trust Agreement and the Litigation Settlement TDP, (i) any Contingent Claim that has not become fixed or liquidated on or before two years after the Effective Date shall be deemed waived, disallowed and expunged unless the Holder of such Claim has, on or before two years following the Effective Date, filed a request with the Bankruptcy Court requesting estimation of such Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code and (ii) after the later of (a) two years following the Effective Date and (b) the entry of Final Orders on any timely filed requests for estimation, no cash reserves will be held for Contingent Claims and any funds previously held for such purposes may be distributed to the Holders of Allowed Claims.~~

**B.      Objection to Claims and Prosecution of Disputed Non-Litigation Claims**

The Debtors and/or the Signal Liquidating Trustee shall object to the allowance of Non-Litigation Claims with respect to which the Signal Liquidating Trustee disputes liability in whole or in part.  The failure of the Debtors and/or the Signal Liquidating Trustee to object to or to re-examine any Claim shall not be deemed to be a waiver of the right to object to or to re-examine such Claim in whole or in part to determine its allowability.  Any objections to Non-Litigation Claims shall be Filed no later than the Claims Objection Deadline.  The Debtors and/or the Signal Liquidating Trustee shall not be required to object to any Claim where the Debtors and/or the Signal Liquidating Trustee have determined in their good-faith, reasonable discretion that objection to such Claim would not be in the best interest of the Debtors' Estates or the Signal Liquidating Trust, as the case may be.  The Signal Liquidating Trustee shall have the right to compromise and settle any Non-Litigation Claim against the Debtors after the Effective Date (i) without notice to Creditors or order of the Bankruptcy Court if the settlement amount is $250,000 or less or within $50,000 of the amount of such Non-Litigation Claim as set forth in the Schedules or applicable proof of Claim or (ii) upon the filing with the Bankruptcy Court of a notice of settlement to be served on the parties set forth in Section 14.H and on the applicable Holder of the Non-Litigation Claim.

**C.      Distributions and Reserves on Account of Contingent and Disputed Non-Litigation Claims**

Payments and distributions to each Holder of a Contingent Non-Litigation Claim, a Disputed Non-Litigation Claim or any other Non-Litigation Claim that is not an Allowed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the Plan, including the provisions governing the Class of Claims in which such Claim is classified.  As soon as practicable after the date that any Disputed Non-Litigation Claim is Allowed or any Contingent Non-Litigation Claim becomes fixed or liquidated, in whole or in part, the Signal Liquidating Trust shall distribute to the Holder of such Claim any Cash that would have been distributed to such Holder if the Claim had been an Allowed Claim on the Effective Date.  No Distributions shall be made with respect to all or any portion of a Disputed Non-Litigation Claim or Contingent Non-Litigation Claim unless and until all objections to such Claim have been settled, withdrawn, or resolved by Final Order.  Nothing in this Section shall affect the allowance, liquidation or payment of the Litigation Claims.

For purposes of calculating and making Distributions to Holders of Allowed Non-Litigation Claims, the Debtors shall hold in the applicable Cash Reserve at the time of such Distribution an amount sufficient to make Distributions on Non-Litigation Claims that are not Allowed Non-Litigation Claims in such Class in the same Pro Rata percentage as is being made on Allowed Non-Litigation Claims in such Class.  For purposes of determining the amount to be reserved, the Debtors shall use the maximum non-contingent and liquidated amount set forth in the Proof of Claim, unless a lesser amount is so ordered by the Bankruptcy Court or agreed to by the Debtors or the Signal Liquidating Trustee and the Holder of such Non-Litigation Claim.  Notwithstanding the foregoing or anything else in this Plan, unless otherwise so ordered by the Bankruptcy Court, no reserve shall be required to be established or maintained with respect to Proofs of Claims or requests for Administrative Claims filed after the applicable Bar Date.

**D.      Estimation of Non-Litigation Claims**

The Signal Liquidating Trustee may, at any time, request that the Bankruptcy Court, on proper notice, estimate any Contingent and/or Disputed Non-Litigation Claim pursuant to section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Contingent and/or Disputed Non-Litigation Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Contingent and/or Disputed Non-Litigation Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Signal Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution to such Claim.  All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Contingent and/or Disputed Non-Litigation Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Nothing in this Section shall affect the allowance, liquidation or payment of Litigation Claims.

**E.      Certain Objections to Allowance of Litigation Settlement Trust Claims**

Notwithstanding anything to the contrary herein, Litigation Claims shall be channeled to the Litigation Settlement Trust and administered in accordance with the Litigation Settlement Trust Agreement and the Litigation Settlement TDP.

**F.      No Postpetition Interest**

Unless otherwise specifically provided for in any order approving the DIP Facility, this Plan or Confirmation Order, or required by applicable bankruptcy law (including interest allowed pursuant to section 506 of the Bankruptcy Code), postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest; and except as permitted by applicable bankruptcy law (including interest allowed pursuant to sections 506 and 1129 of the Bankruptcy Code), interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Effective Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS FOR CLAIMS

**A.      Timing of Distributions Under The Plan**

Any Distribution to be made pursuant to the Plan shall be deemed to have been timely made if made within ten (10) business days of the time specified in the Plan or, if applicable, the Litigation Settlement Trust Agreement and the Litigation Settlement TDP.

**B.      Manner of Payment Under the Plan**

Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made under the Plan shall be made by check drawn on a domestic bank, or by wire transfer from a domestic bank.

**C.      Withholding of Taxes**

The Signal Liquidating Trustee or the Litigation Settlement Trustee, as applicable, shall withhold from any assets or property distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Entity entitled to such assets to the extent required by applicable law.

Except as set forth in the Litigation Settlement Trust Agreement, all distributions hereunder shall be subject to withholding and reporting requirements. Holders of Claims are required to provide any information requested by the Signal Liquidating Trust or the Litigation Settlement Trust, as applicable, including returning W-9 ~~statements~~forms, to effect the necessary information reporting and withholding of applicable taxes with respect to distributions to be made under the Plan. The Signal Liquidating Trustee or the Litigation Settlement Trustee, as applicable, (i) will make a written request to each Holder of an Allowed Claim requesting a W-9 or similar applicable form to be returned within 90 days and (ii) shall be entitled in its sole discretion to withhold any distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Signal Liquidating Trustee or Litigation Settlement Trustee, as applicable, to such Holder of an Allowed Claim, which timeframe shall not be less than ~~45~~90 days. The Distribution on account of any Holder of an Allowed Claim that fails to timely respond shall be treated as an unclaimed distribution pursuant to ~~Article VIII.~~Section 8.E of the Plan.

**D.      Allocation of Distribution Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

### E.    Unclaimed Distributions

Except as set forth in the Litigation Settlement Trust Agreement or the Litigation Settlement TDP, any Cash, assets, and other property to be distributed under the Plan that cannot be delivered to the Entity entitled thereto within 90 days after an attempted distribution (including by an Entity's failure to negotiate a check issued to such Entity 90 days after issuance of a check) shall become vested in, and shall be transferred to, the Signal Liquidating Trust or the Litigation Settlement Trust, as applicable, notwithstanding state or other escheat or similar laws to the contrary.  In such event, such Entity's Claim shall no longer be deemed to be Allowed and such Entity shall be deemed to have waived its rights to such payments or Distributions under the Plan pursuant to section 1143 of the Bankruptcy Code, shall have no further Claim in respect of such Distribution and shall not participate in any further Distributions under the Plan with respect to such Claim.

### F.    Transfer of Claim

To the extent permitted by law, in the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, it shall immediately advise the Signal Liquidating Trustee or the Litigation Settlement Trustee, as applicable, in writing of such transfer.  The Signal Liquidating Trustee or the Litigation Settlement Trustee, as applicable, shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until written notice of a transfer has been received by the Signal Liquidating Trustee or the Litigation Settlement Trustee and filed with the Bankruptcy Court. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan, and, except as provided in a notice of transfer, the Signal Liquidating Trustee or the Litigation Settlement Trustee, as the case may be, shall be entitled to assume conclusively that the transferee named in any notice of transfer shall thereafter be vested with all rights and powers of the transferor of such Claim.

### G.    Fractional Cents

Notwithstanding anything to the contrary contained herein, no Cash payments of fractions of cents will be made.  Fractional cents shall be rounded to the nearest whole cent (with .5 cent or less to be rounded down).

### H.    Delivery of Distributions in General

Distributions to Holders of Allowed Claims shall be made to the address of the Holder of such Claim as indicated on the records of the Debtors, or if a Proof of Claim has been filed, to the address on the Proof of Claim, unless the Signal Liquidating Trustee or the Litigation Settlement Trustee, as the case may be, is instructed otherwise by a signed writing from the Holder of such Allowed Claim.

### I.    Minimum Distribution Amount

Notwithstanding anything to the contrary contained herein, no Cash payments of $50 or less will be made.

### J.    Disallowance of Claims

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF



SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER.

Nothing herein shall in any way alter, impair, or abridge the legal effect of the Bar Date Order, or the rights of the Debtors, the Signal Liquidating Trustee, the Litigation Settlement Trustee or other parties-in-interest to object to Claims on the grounds that they are time barred or otherwise subject to disallowance or modification.  Nothing in the Plan shall preclude amendments to timely filed Proofs of Claim to the extent permitted by applicable law.

K.      Release of Liens

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Estates, if any, shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the applicable Estate.

L.      Subordination

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtors, the Signal Liquidating Trustee, or the Litigation Settlement Trustee of any Allowed Claim shall remain valid, enforceable and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have, whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code or otherwise, with respect to any and all Distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such Distribution made pursuant to the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined.

## ARTICLE IX.
## TREATMENT OF EXECUTORY CONTRACTS

A.      Assumption or Rejection of Executory Contracts

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all Executory Contracts shall be deemed to be rejected as of the Confirmation Date, subject to the occurrence of the Effective Date, except for any Executory Contract:  (i) that shall be assumed and assigned to the Purchaser pursuant to the Sale Order; (ii) that previously has been assumed and/or assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; or (iii) as to which a motion for approval of the assumption and/or assignment of such Executory Contract has been filed and served prior to the Confirmation Date; or (iv) that is specifically designated as an Executory Contract to be assumed and assigned on Schedule 9.1, which schedule shall be contained in the Plan Supplement and shall list corresponding Cure Amounts.   Notwithstanding anything otherwise herein to the contrary, the Debtors reserve the right, on or prior to the Effective Date, to amend Schedule 9.1 to delete any Executory Contract therefrom or add any Executory Contract thereto, in which event such Executory Contract(s) shall be deemed to be, as applicable, rejected or assumed and assigned.  The Debtors shall provide notice of any amendments to Schedule 9.1 to the parties to the Executory Contracts affected thereby.   The

listing of a document on Schedule 9.1 shall not constitute an admission by the Debtors that such document is an Executory Contract or that the Debtors have any liability thereunder.

**B.      Approval by Confirmation Order**

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections, assumptions and/or assignments contemplated by the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.  Each Executory Contract assumed pursuant to the Plan shall vest in and be fully enforceable by the Signal Liquidating Trustee in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law.  The Debtors reserve the right to file a motion on or before the Confirmation Date to assume or reject any Executory Contract.

**C.      Cure of Defaults**

Except as may otherwise be agreed to by the Debtors or the Signal Liquidating Trustee, as the case may be, and the non-Debtor party to the Executory Contract, within thirty (30) days after the Effective Date, the Debtors shall cure any and all undisputed defaults under any Executory Contract assumed by the Debtors pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code.  Except as otherwise set forth herein, all disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties.

**D.      Notice of Proposed Cure**

The Debtors shall, prior to the conclusion of the Confirmation Hearing, file and serve on parties to Executory Contracts that may be assumed pursuant to the Plan a notice (the "**Plan Cure Notice**") listing the proposed Cure Amount to be paid in connection with the Executory Contracts that may be assumed or assumed and assigned pursuant to the Plan.  The non-Debtor parties to such contracts and leases shall have until fifteen (15) days following service of the Plan Cure Notice to object in writing to the proposed cure and to propose an alternative cure.  In the event that no objection is timely filed, the applicable party shall be deemed to have consented to the cure proposed by the Debtors (including amounts of compensation for actual pecuniary loss) and shall be forever enjoined and barred from seeking from the Debtors and the Signal Liquidating Trustee any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code.  If an objection is timely filed with respect to the Cure Amount proposed by the Debtors for an Executory Contract, the Bankruptcy Court shall hold a hearing to determine the amount of any disputed cure amount not settled by the parties.  Notwithstanding anything otherwise to the contrary, at all times through the date that is thirty (30) days after the entry of a Final Order resolving and fixing the amount of a disputed cure amount, whether such date is before or after the Effective Date, each of the Debtors shall be authorized to reject such Executory Contract by notice to the non-Debtor party to such Executory Contract.

**C.      E.  Rejection Damages Bar Date**

Claims arising out of the rejection of an Executory Contract pursuant to the Plan must be filed with the Bankruptcy Court and served upon the Debtors in accordance with the Barno later than 30 days after service of the notice of Effective Date Order.  All such Claims not filedFiled within such time will be forever barred from assertion against the Debtors and the Signal Liquidating Trustee.

## ARTICLE X.
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND EFFECTIVE DATE OF THE PLAN

**A.      Condition Precedent to Confirmation**

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 10.C hereof:

(i)      The Confirmation Order, the Plan, and the Restructuring Documents shall be in form and substance consistent in all material respects with the Plan Support Agreement and Plan Term Sheet, and otherwise acceptable to the Debtors, the TRSA and ERSA, the Committee, and the Supporting Litigation Claimants;

(ii)      The Sale Order shall be in a form reasonably acceptable to the Purchaser, the Debtors, the TRSA and ERSA, the Committee, and the Supporting Litigation Claimants;

(iii)      There shall be no payment default continuing under the Westport Loan (determined without giving effect to any alleged waiver by the Debtors or any other party);

(iv)      Any payments of principal received by any of the Debtors, TRSA or ERSA on account of the Westport Loan from June 30, 2015 through the Confirmation Date have been held in trust for the benefit of the Westport Participants;

(v)      Any payments of interest received by any of the Debtors, TRSA or ERSA on account of the Westport Loan from November 5, 2015 through the Confirmation Date have been held in trust for the benefit of the Westport Participants; and

(vi)      The Confirmation Order shall have been entered by the Bankruptcy Court.

**B.      Conditions Precedent to the Effective Date**

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 10.C hereof:

(      The Confirmation Order shall be in full force and effect, shall have become a Final Order, and shall not have been amended, modified, reversed, vacated, or stayed pending appeal;

(ii)      The Sale Order shall be in full force and effect, shall have become a Final Order, and shall not have been amended, modified, reversed, vacated, or stayed pending appeal;

(      The Bankruptcy Court shall have entered one or more Final Orders (which may include the Confirmation Order), in form and substance acceptable to the Debtors and the Purchaser, authorizing and approving the assumption, assumption and assignment, and rejection of the Executory Contracts by the Debtors as contemplated in the Asset Purchase Agreement, the Plan and the Plan Supplement;

(      The Plan and the Restructuring Documents shall not have been amended or modified other than in a manner in form and substance consistent in all material respects with the Plan Term Sheet or otherwise acceptable to the Debtors, TRSA and ERSA, and the Supporting Litigation Claimants;

(      The Restructuring Documents shall have been filed, tendered for delivery, and been effected or executed by all Entities party thereto (as appropriate), and in each case be in full force and



effect. All conditions precedent to the effectiveness of such Restructuring Documents, including, without limitation, the Asset Purchase Agreement, shall have been satisfied or waived pursuant to the terms of such applicable Restructuring Documents (or shall be satisfied or waived concurrently with the occurrence of the Effective Date);

(        The Debtors shall have received, or will receive concurrently with the occurrence of the Effective Date, any Cash component of the Purchase Price in accordance with the terms and conditions of the Asset Purchase Agreement;

(        The Debtors or the Liquidating Settlement Trust shall have funded, or will fund concurrently with the occurrence of the Effective Date, the Disputed Claims Reserve and the Signal Liquidating Trust Expense Fund, and the GUC Payment Amount shall have been received by the Signal Liquidating Trust;

(        The Signal Liquidating Trust shall have been formed, and all formation documents for such entity shall have been properly executed and filed as required by the Plan and applicable law;

(        The appointment of the Signal Liquidating Trustee shall have been confirmed by Final Order (which may include the Confirmation Order);

(        The Litigation Settlement Trust shall have been formed, and all formation documents for such entity shall have been properly executed and filed as required by the Plan and applicable law;

(        The appointment of the Litigation Settlement Trustee shall have been confirmed by Final Order (which may include the Confirmation Order);

(        The Litigation Settlement Trust Assets shall have been transferred to the Litigation Settlement Trust;

(        The Purchaser has received, free and clear of liens, claims or encumbrances (including, without limitation, the prepetition liens of the TRSA and ERSA) other than the participating interest of the Litigation Settlement Trust, all right, title and interest of the Debtors in and to the Westport Loan;

(        All consents, actions, documents, certificates and agreements necessary to implement the Plan, including all transfers to the Signal Liquidating Trust and the Litigation Settlement Trust,  and the transactions contemplated by the Asset Purchase Agreement as to the Purchaser shall have closed;

(        All authorizations, consents, and regulatory approvals, if any, required by the Debtors in connection with the Consummation of the Plan shall have been obtained and not revoked;

(        There shall be no payment default continuing under the Westport Loan (determined without giving effect to any alleged waiver by the Debtors or any other party);

(        Any payments of principal received by any of the Debtors, TRSA or ERSA on account of the Westport Loan from June 30, 2015 through the Effective Date have been held in trust for the benefit of the Westport Participants or Cash in an amount equal to the aggregate of such payments is available to be distributed to the Westport Participants under the Plan;

(        Any payments of interest received by any of the Debtors, TRSA or ERSA on account of the Westport Loan from November 5, 2015 through the Effective Date have been held in trust for the benefit of the Westport Participants or Cash in an amount equal to the aggregate of such payments is available to be distributed to the Westport Participants under the Plan;



(       The Plan Support Agreement shall be in full force and effect; and

(       The Confirmation Date shall have occurred.

**C.       Waiver of Conditions**

Subject to section 1127 of the Bankruptcy Code, the conditions to Confirmation and Consummation of the Plan set forth in this Article X of the Plan, with the exception of condition 10.B(vii) may be waived by the Debtors, with the consent of the TRSA and ERSA, the Supporting Litigation Claimants, and the Committee, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.  The failure of the Debtors, the Signal Liquidating Trustee or the Litigation Settlement Trustee, as applicable, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time.

**D.       Effect of Nonoccurrence of Conditions**

If the Confirmation or the Consummation of the Plan does not occur with respect to one or more of the Debtors, then the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (iii) constitute an Allowance of any Claim or Equity Interest; or (iv) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

**ARTICLE XI.**
**SETTLEMENT, RELEASE, INJUNCTION**
**AND RELATED PROVISIONS**

**A.       Compromise and Settlement of Claims, Equity Interests, and ControversiesBinding Effect**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Equity Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of their Assets or properties,

On and after the Effective, the provisions of the Plan, the Plan Supplement, and the Confirmation Order shall bind (i) any Holder of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns (whether or not the Claim or Equity Interests are Impaired under the Plan, whether or not such Holder has voted to accept the Plan, and whether or not such Holder is entitled to a Distribution under the Plan), (ii) all Entities that are parties to or are subject to the settlements, compromises, releases, and Injunctions described in the Plan, (iii) each Person or Entity acquiring property under the Plan or the Confirmation Order, and (iv) any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and causes of action that arose before the Effective Date, any liability to the extent

~~such Claims or Equity Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or proof of Equity Interest based upon such debt, right, or Equity Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Equity Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Equity Interests, subject to the Effective Date occurring~~Holder of a Claim or debt has voted on the Plan.

**B.    Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.

**C.    Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Plan into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Plan, the Signal Liquidating Trustee, or the Litigation Settlement Trustee, as applicable, to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**D.    Non-Discharge of the Debtors; Plan Injunction**

~~FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.~~ IN ACCORDANCE WITH SECTION 1141(D)(3) OF THE BANKRUPTCY CODE, THE PLAN DOES NOT DISCHARGE THE DEBTORS. SECTION 1141(C) OF THE BANKRUPTCY CODE NEVERTHELESS PROVIDES, AMONG OTHER THINGS, THAT THE PROPERTY DEALT WITH BY THE PLAN IS FREE AND CLEAR OF ALL CLAIMS AND EQUITY INTERESTS AGAINST THE DEBTORS.  AS SUCH, NO ENTITY HOLDING A CLAIM AGAINST THE DEBTORS MAY RECEIVE ANY PAYMENT FROM, OR SEEK RECOURSE AGAINST, ANY ASSETS THAT ARE TO BE DISTRIBUTED AND/OR TRANSFERRED UNDER THIS PLAN OTHER THAN ASSETS REQUIRED TO BE DISTRIBUTED TO THAT ENTITY UNDER THE PLAN.  AS OF THE EFFECTIVE DATE, ALL PARTIES ARE PRECLUDED FROM ASSERTING AGAINST ANY PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN ANY CLAIMS, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR EQUITY INTERESTS BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE XI HEREOF, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE XI HEREOF. ~~EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTIONS 11.F OR 11.G OF THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS:~~ , INCLUDING, BUT NOT LIMITED TO: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF ~~OR~~, IN CONNECTION WITH, OR WITH RESPECT TO ANY SUCH RELEASED CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER ~~AGAINST SUCH ENTITIES~~ ON ACCOUNT OF ~~OR~~, IN CONNECTION WITH, OR WITH RESPECT TO ANY SUCH RELEASED CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND ~~AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES~~ ON ACCOUNT OF ~~OR~~, IN CONNECTION WITH, OR WITH RESPECT TO ANY SUCH RELEASED CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF ~~OR~~, IN CONNECTION WITH, OR WITH RESPECT TO ANY SUCH RELEASED CLAIMS OR INTERESTS ~~RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN~~.

~~THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE INTERESTS SHALL BE CANCELLED.~~

~~EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(g) OF THE BANKRUPTCY CODE.~~

~~ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, OR THE SIGNAL LIQUIDATING TRUST, THEIR SUCCESSORS AND ASSIGNS, AND THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT~~

~~OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE~~ THAT OCCURRED BEFORE THE EFFECTIVE DATE.

E.    **Exculpation**

THE EXCULPATED PARTIES SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY PREPETITION OR POST-PETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH THE BANKRUPTCY CASES, OR RELATED TO FORMULATING, NEGOTIATING, SOLICITING, PREPARING, DISSEMINATING, CONFIRMING, OR IMPLEMENTING THE PLAN OR CONSUMMATING THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPORT AGREEMENT, THE ASSET PURCHASE AGREEMENT OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER PREPETITION OR POST-PETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING, EXCEPT FOR ARISING OUT OF ACTUAL FRAUD OR ITS OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; *PROVIDED*, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER, OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN OR ANY OTHER RELATED DOCUMENT, INSTRUMENT, OR AGREEMENT.  WITHOUT LIMITING THE FOREGOING "EXCULPATION" PROVIDED UNDER THIS ARTICLE, THE RIGHTS OF ANY HOLDER OF A CLAIM OR EQUITY INTEREST TO ENFORCE RIGHTS ARISING UNDER THE PLAN SHALL BE PRESERVED, INCLUDING THE RIGHT TO COMPEL PAYMENT OF DISTRIBUTIONS IN ACCORDANCE WITH THE PLAN.

F.    **Debtors' Release**

PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE PLAN SUPPLEMENT, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE SETTLEMENT REACHED WITH THE PLAN PARTICIPANTS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT THE DEBTORS, THE ESTATES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE BANKRUPTCY CASES, THE SALE TRANSACTION, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS DURING THE BANKRUPTCY CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, THE ASSET PURCHASE AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT,

EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES THE FAILURE TO PERFORM THE DUTY TO ACT IN GOOD FAITH AND WHERE SUCH FAILURE TO PERFORM CONSTITUTES WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR ACTUAL FRAUD. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY RELEASED PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT OR THE ASSET PURCHASE AGREEMENT) EXECUTED TO IMPLEMENT THE PLAN, NOR DOES IT RELEASE ANY RETAINED CLAIMS OR OTHER CAUSE OF ACTION, OBLIGATION OR LIABILITY EXPRESSLY PRESERVED BY THE PLAN OR THE PLAN SUPPLEMENT.

**G.**     **Consensual Releases by Non-Debtor Released Parties**

AS OF THE EFFECTIVE DATE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE PLAN SUPPLEMENT, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE SETTLEMENT REACHED WITH THE PLAN PARTICIPANTS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, THE RELEASED PARTIES AND THEIR RELATED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE NON-DEBTOR RELEASED PARTIES AND THEIR RELATED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT THE NON-DEBTOR RELEASED PARTIES OR THEIR RELATED PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE BANKRUPTCY CASES, THE SALE TRANSACTION, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY OR ITS RELATED PARTIES, THE RESTRUCTURING OF CLAIMS AND INTERESTS DURING THE BANKRUPTCY CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, THE ASSET PURCHASE AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY RELEASED PARTY OR ITS RELATED PARTIES UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT OR THE ASSET PURCHASE AGREEMENT) EXECUTED TO IMPLEMENT THE PLAN, NOR DOES IT RELEASE ANY RETAINED CLAIMS OR OTHER CAUSE OF ACTION, OBLIGATION OR LIABILITY EXPRESSLY PRESERVED BY THE PLAN OR THE PLAN SUPPLEMENT.

**H.** ~~G.~~ **Releases by Holders of Claims**

AS OF THE EFFECTIVE DATE, ~~TO THE EXTENT THAT A HOLDER OF A CLAIM RECEIVES A DISTRIBUTION,~~ AND AS PERMITTED BY APPLICABLE LAW, EACH HOLDER OF A CLAIM~~, INCLUDING EACH HOLDER OF A CLAIM DEEMED TO ACCEPT THE PLAN PURSUANT TO SECTION 1126(F) OF THE BANKRUPTCY CODE,~~ SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF A DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE RESTRUCTURING, THE BANKRUPTCY CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS DURING THE BANKRUPTCY CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, THE ASSET PURCHASE AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES THE FAILURE TO PERFORM THE DUTY TO ACT IN GOOD FAITH AND WHERE SUCH FAILURE TO PERFORM CONSTITUTES WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR ACTUAL FRAUD.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT OR THE ASSET PURCHASE AGREEMENT) EXECUTED TO IMPLEMENT THE PLAN, NOR DOES IT RELEASE ANY RETAINED CLAIMS OR OTHER CAUSE OF ACTION, OBLIGATION OR LIABILITY EXPRESSLY PRESERVED BY THE PLAN OR THE PLAN SUPPLEMENT. ~~NOTWITHSTANDING ANY OTHER PROVISION OF THE PLAN, NOTHING IN SECTION 11.F OR THIS SECTION 11.G DISCHARGES OR RELEASES THE RETAINED CLAIMS.~~

THE RELEASES IN THIS SECTION 11.H SHALL APPLY ONLY TO: (1) ANY HOLDER OF A CLAIM IN CLASS 4 (OTHER THAN A RELEASED PARTY); AND (2) ANY HOLDER OF A CLAIM IN CLASS 5 WHO (x) TIMELY AND PROPERLY SUBMITS A BALLOT VOTING IN FAVOR OF THE PLAN AND (y) DOES NOT OPT OUT OF THE RELEASES PROVIDED FOR IN THIS SECTION 11.H.

**I.** **Channeling Injunction**

NOTWITHSTANDING ANY OTHER PROVISION OF THE PLAN, LITIGATION CLAIMS SHALL BE CHANNELED TO THE LITIGATION SETTLEMENT TRUST AND BE SUBJECT TO THE TERMS OF THE CHANNELING INJUNCTION SET FORTH IN SECTION

**6.C.  AS SET FORTH IN ARTICLE VI, FROM AND AFTER THE EFFECTIVE DATE, (1) THE SOLE RECOURSE OF ANY LITIGATION CLAIMANT ON ACCOUNT OF A LITIGATION CLAIM SHALL BE TO THE LITIGATION SETTLEMENT TRUST IN ACCORDANCE WITH THE LITIGATION SETTLEMENT TRUST AGREEMENT AND THE LITIGATION SETTLEMENT TDP, AND (2) THE RELEASED PARTIES SHALL BE RELEASED FROM ALL OBLIGATIONS AND LIABILITIES WITH RESPECT TO THE LITIGATION CLAIMS AND ANY LITIGATION CLAIMANT SHALL HAVE NO RIGHT WHATSOEVER AT ANY TIME TO ASSERT ITS LITIGATION CLAIM AGAINST ANY OF THE RELEASED PARTIES OR ANY OF THEIR RESPECTIVE PROPERTY OR INTERESTS IN PROPERTY.**

**NOTWITHSTANDING ANY OTHER PROVISION OF THE PLAN, NOTHING IN SECTIONS 11.F, 11.G, OR 11.H DISCHARGES OR RELEASES THE RETAINED CLAIMS NOR CHANNELS THE RETAINED CLAIMS TO THE LITIGATION SETTLEMENT TRUST.**

**J.      Injunction Against Barred Claims**

**All Entities, other than Plan Participants, against which any Litigation Claim or Retained H-2B Claim has been or may be asserted, whether before or after the Effective Date, in any judicial proceeding, arbitration proceeding, administrative agency proceeding, or other adjudicatory proceeding in the United States or elsewhere (such Entities, "H-2B Actors") are hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting against any Released Party, whether in the Bankruptcy Court, any federal, state court, other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, any request, claim, or cause of action for or otherwise seeking contribution, indemnification or other remedy, however denominated, against any Released Party arising out of or relating, directly or indirectly, to any Litigation Claim or Retained H-2B Claim where the injury or damage to such H-2B Actor is based upon: (i) such H-2B Actor's alleged liability to any Litigation Claimant or holder of a Retained H-2B Claim or to another H-2B Actor against whom any Litigation Claimant holder of a Retained H-2B Claim has asserted a Litigation Claim or Retained Claim; (ii) the amounts paid, whether by settlement or otherwise, to any Litigation Claimant or holder of a Retained H-2B Claim or another  against whom any Litigation Claimant or holder of a Retained H-2B Claim has asserted a Litigation Claim or Retained H-2B Claim; or (iii) the costs (including attorneys' fees) incurred defending against such claims (collectively, the "Barred Claims").**

**For the avoidance of doubt, nothing in this Section 11.J of the Plan precludes any Plan Participant from commencing, prosecuting, or asserting any Retained Claims.**

**If a court or tribunal of competent jurisdiction determines that a Barred Claim exists that, if otherwise valid and enforceable, would have given rise to liability of a Released Party to the H-2B Actor holding such Barred Claim but for this Section 11.J of the Plan, the H-2B Actor holding such Barred Claim shall be entitled to the judgment reduction provisions set forth herein. This Section 11.J of the Plan is without prejudice to the position of any Entity as to the existence, validity and enforceability, in the absence of this Section 11.J of the Plan or otherwise, of any Barred Claim.**

**To the extent that a holder of a Barred Claim believes that it is entitled to judgment reduction in any lawsuit (a "Released Party Action") commenced by a Released Party or a Litigation Claimant, such holder of a Barred Claim shall provide notice of this Section 11.J of the Plan to the court or tribunal hearing the Released Party Action.  Such court or tribunal shall determine whether the Released Party Action gives rise to Barred Claims on which a Released Party would have been liable to the holder of such Barred Claim in the absence of this Section 11.J**

of the Plan. If the court or tribunal so determines, then, solely to the extent that the holder of a Barred Claim is entitled under applicable non-bankruptcy law to a valid defense for judgment reduction, it shall reduce any judgment against the holder of such Barred Claim in an amount required by the non-bankruptcy law applicable to the Released Party Action. Nothing herein shall prejudice or operate to preclude the right of any H-2B Actor in such Released Party Action to (i) provide notice of this Section 11.J of the Plan to the court or tribunal hearing the Released Party Action at any point, or (ii) raise any issues, claims or defenses regarding judgment reduction or proportionate share of fault in the court or tribunal hearing the Released Party Action at any point in accordance with this Section 11.J of the Plan. Additionally, nothing herein shall prejudice or operate to preclude the right of any Litigation Claimant or holder of a Retained H-2B Claim to oppose any such request for a judgment reduction on any basis, including, but not limited to, that no such right exists and with reference to section 502(e) of the Bankruptcy Code. Nothing in this Section 11.J of the Plan shall impair any Retained H-2B Claim or create any defense to or right to setoff or reduction of any Retained H-2B Claim that would not exist pursuant to applicable non-bankruptcy law but for this Section 11.J of the Plan.

## ARTICLE XII.
## RETENTION OF BANKRUPTCY COURT JURISDICTION

### A.    General Jurisdiction

The Bankruptcy Court shall retain the fullest and most extensive jurisdiction permissible and necessary to ensure that the purposes and intent of the Plan are carried out. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtors, and to adjudicate and enforce all of the Signal Causes of Action. Nothing contained herein shall prevent the Debtors, the Signal Liquidating Trust, or the Litigation Settlement Trust, as applicable, from taking such action as may be necessary in the enforcement of any Signal Cause of Action which the Debtors have or may have and which may not have been enforced or prosecuted by the Debtors, which cause of action shall survive confirmation of the Plan and shall not be affected hereto except as specifically provided herein.

Following the entry of the Confirmation Order, the administration of the Bankruptcy Cases will continue at least until the completion of the transfers contemplated to be accomplished on the Effective Date. Moreover, the Litigation Settlement Trust shall be subject to the continuing jurisdiction of the Bankruptcy Court in accordance with the requirements of section 468(B) of the Internal Revenue Code and the Treasury regulations issued pursuant thereto. The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claim and the re-examination of Claims that have been Allowed temporarily for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claim, other than Litigation Claims.

### B.    Specific Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under or related to the Bankruptcy Cases for, among other things, the following purposes:

(        To modify the Plan after the Confirmation Date, pursuant to the provisions of the Bankruptcy Code, the Bankruptcy Rules and the terms and conditions of the Plan;

(        To correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, the Plan Documents or the Confirmation Order as

may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan Documents in the event that the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(       To hear, determine and resolve controversies related to the Signal Liquidating Trust;

(       To assure the performance by all the Debtors, the Litigation Settlement Trust, and/or the Signal Liquidating Trust, as applicable, of their respective obligations to make Distributions under the Plan;

(       To enforce and interpret the terms and conditions of the Plan Documents and any documents issued or executed with respect to the Plan;

(       To enter such orders or judgments, including, but not limited to, the Injunctions (a) as are necessary to enforce the title, rights, and powers of the Debtors, the Signal Liquidating Trust, and/or the Litigation Settlement Trust, and (b) as are necessary to enable Holders of Claims to pursue their rights against any Entity that may be liable therefore pursuant to applicable law or otherwise, including but not limited to, Bankruptcy Court orders;

(       To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtors, the Signal Liquidating Trust or the Litigation Settlement Trust, arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or based upon the period of administration of the Bankruptcy Cases;

(       To hear and determine all applications for compensation of professionals and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code;

(       To hear and determine any causes of action by, against or involving the Debtors arising during the period from the Petition Date through the Effective Date;

(       To hear and determine any causes of action by, against or involving the Signal Liquidating Trust arising during the period from the Effective Date to the date of the order entering a final decree in the Bankruptcy Cases;

(       To hear and determine any cause of action regarding the enforcement of Plan Documents or the transactions contemplated thereby;

(       To hear and determine such other matters as may be provided in the Confirmation Order;

(       To consider and act on the compromise and settlement of any Claim (other than a Litigation Claim) against or Equity Interest in the Debtors or their Estates including, without limitation, any disputes with respect to the Bar Date;

(       To hear and determine all questions and disputes regarding title to the assets of the Debtors and their Estates, the Signal Liquidating Trust or the Litigation Settlement Trust;

(       To hear and determine all matters, questions, and disputes with respect to the direct causes of action brought by the Debtors and their Estates, the Signal Liquidating Trust or the Litigation Settlement Trust;



(      To hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Bankruptcy Cases;

(      To interpret, enforce, and administer the terms of the Litigation Settlement Trust Agreement and the Litigation Settlement TDP (including all annexes and exhibits to any of the foregoing), only to the extent the documents do not provide for an alternate forum for resolution;

(      To hear and determine any proceeding that involves the validity, application, construction, interpretation, enforceability or enforcement of the Channeling Injunction or the application of section 105(a) of the Bankruptcy Code to the Channeling Injunction.

(      To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which a Debtor may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(      To hear and determine any proceeding seeking to amend or restate the Litigation Settlement Trust Agreement in accordance with the Plan Documents;

(      To enjoin any actions in violation of, or otherwise enforce, the Injunctions and releases provided in the Plan;

(      To hear and determine all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtors, the Signal Liquidating Trust or the Litigation Settlement Trust, as applicable, after the Effective Date;

(      To enter an order or final decree closing the Bankruptcy Cases; and

(      To hear and determine all questions, matters, and disputes with respect to the Plan.

**C.  Litigation Settlement TDP Controlling**

Notwithstanding anything in Article XII to the contrary, the allowance of Litigation Claims and the forum in which such allowance will be determined will be governed by and in accordance with the procedures established by the Litigation Settlement Trust Agreement, the Litigation Settlement TDP and the Plan.

**ARTICLE XIII.**
**MODIFICATION AND REVOCATION OF THE PLAN**

**A.  Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Signal Liquidating Trust Agreement, the Litigation Settlement Trust Agreement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims against or Equity Interests in the Debtors (regardless of whether the Holders of such Claims or Equity Interests are deemed to have accepted or rejected the Plan), all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, and ~~injunctions~~Injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts.  All Claims and debts shall be fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.



## B.        Modification of the Plan

Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, the Asset Purchase Agreement, the Litigation Settlement Trust Agreement, or the Confirmation Order.    Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XIII.

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## C.        Revocation or Withdrawal of the Plan

The Debtors, in consultation with the PSA Creditor Parties and the Committee, reserve the right to revoke or withdraw the Plan with respect to one or more of the Debtors prior to the Confirmation Date and to file subsequent plans.  If the Debtors, in consultation with the PSA Creditor Parties, revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then with respect to such Debtor:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption and assignment or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of the Debtors, the Committee or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

## A.        Payment of Statutory Fees

All fees due and payable pursuant to 28 U.S.C. § 1930 ~~as of~~prior to the ~~Confirmation~~Effective Date shall be paid by the Debtors ~~on or before the Effective Date.  After~~. On and after the Effective Date, the Signal Liquidating Trustee shall pay, in accordance with the Bankruptcy Code and the Bankruptcy Rules, any and all ~~unpaid~~such fees when due and payable ~~pursuant to 28 U.S.C. § 1930 that accrue before or after the Effective Date in Cash~~ from the Signal Liquidating Trust Assets, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee. Notwithstanding any substantive consolidation of the Debtors called for in the Plan, each of the Debtors and the Signal Liquidation Trustee shall remain obligated to pay quarterly fees to the United States Trustee until the earliest of that particular Debtor's case being closed, dismissed,, or converted under chapter 7 of the Bankruptcy Code.

## B.        Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement or other document

executed under the Plan provides otherwise, the Plan, the rights, duties and obligations arising under the Plan, and any claim or controversy directly or indirectly based upon or arising out of the Plan or the transactions contemplated by the Plan (whether based on contract, tort, or any other theory), including all matters of construction, validity and performance, shall be governed by and interpreted, construed and determined in accordance with, the internal laws of the State of Delaware (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

**C.      Corporate Action**

Prior to, on and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the shareholders or directors of any of the Debtors shall be deemed to have occurred and shall be in effect prior to, on and after the Effective Date pursuant to the applicable general corporation law of the jurisdiction in which the Debtors are organized without any requirement of further action by the shareholders or directors of the Debtors.

**D.      Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court or other court of competent jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**E.      Successors and Assigns**

The Plan shall be binding on, and shall inure to the benefit of the Debtors, and their respective successors and assigns. The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**F.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date shall have occurred. Neither the filing of the Plan, any nor statement or provision contained herein, nor the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or the Committee prior to the Effective Date. If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Bankruptcy Cases are and shall be reserved in full. Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Bankruptcy Cases shall be bound or deemed prejudiced by any such concession or settlement.

**G.      Further Assurances**

The Debtors, the Signal Liquidating Trustee, and the Litigation Settlement Trustee are authorized to execute, deliver, file or record such contracts, agreements, instruments, releases and other documents



and take or cause to be taken such action as may be necessary or appropriate to effectuate, implement and further evidence the terms, provisions and intent of the Plan and to consummate the transactions and transfers contemplated by the Plan.

**H.      Post-Effective Date Service List**

Following the Effective Date, unless otherwise provided herein, all pleadings and notices Filed in the Bankruptcy Cases shall be required to be served only upon (i) the Signal Liquidating Trustee, (ii) the Litigation Settlement TAC; (iii) the Litigation Settlement Trustee, (iv) the United States Trustee, (v) the TRSA and ERSA; (vi) any party whose rights are affected by the applicable pleading or notice, (vii) counsel to the Supporting Litigation Claimants; and (viii) any party that Files a renewed notice of appearance and request for service of notices and papers on or after the Effective Date.

**I.      Other Notices**

All notices, requests and demands required or permitted to be provided to the Debtors, the TRSA and ERSA, the Committee, the Signal Liquidating Trustee, the Litigation Settlement TAC, the Litigation Settlement Trust or the Litigation Settlement Trustee under the Plan shall be in writing and shall be deemed to have been duly given or made (a) when actually delivered (i) by certified mail, return receipt requested, (ii) by hand delivery or (iii) by U.S. mail, postage prepaid or, (b) in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

*If to the Debtors:*

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Attn: M. Blake Cleary, Esq. (~~mbcleary@ycst.com~~mbcleary@ycst.com)

and

Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022,
Attn:  Christopher R. Donoho III, Esq. (chris.donoho@hoganlovells.com);



*If to the TRSA and ERSA:*

Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Attn: Derek F. Meek, Esq. (dmeek@burr.com)

and

Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
Attn: Gregory W. Werkheiser, Esq. (gwerkheiser@mnat.com);

*If to the Committee:*

Pachulski Stang Ziehl & Jones
919 North Market Street, 17th Floor
Wilmington, DE 19801
Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com);

*If to the Signal Liquidating Trustee or the Signal Liquidating Trust:*

To be included in the Plan Supplement;

*If to the Litigation Settlement Trust or the Litigation Settlement Trustee:*

To be included in the Plan Supplement; and

*If to the Litigation Settlement TAC:*

To be included in the Plan Supplement

**J.      Conflicts**

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

**K.      Maintenance of Books and Records**

Following the Effective Date, the Signal Liquidating Trustee shall maintain records and books relating to the GUC Payment Fund, the Signal Liquidating Trust Expense Fund, the Disputed Claims Reserve, and any Post-Effective Date Assets. The Signal Liquidating Trustee shall prepare, as soon as practicable after the end of each calendar year and each calendar quarter, a financial statement. The Signal Liquidating Trustee shall file or cause to be filed all required tax returns for the Estates and pay any and all taxes, if any when due from the Signal Liquidating Trust Assets.



**L.      Determination of Tax Liability**

The Signal Liquidating Trustee is authorized, but not required, to request an expedited determination under section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

**M.      Entire Agreement**

The Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations with respect to the subjects addressed herein, all of which have become merged and integrated into the Plan.

**N.      Change of Control Provisions**

Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the Consummation of the Plan shall be waived or otherwise cancelled under the Plan.

**O.      Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**P.      Preservation of Insurance.**

Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover claims or causes of action against any Debtor or any other Entity.

**Q.      Asset Purchase Agreement**

Nothing herein shall be deemed to modify the provisions of the Asset Purchase Agreement or the Sale Order.

**R.      Powers of  Purchaser**

From and after the Effective Date and continuing through the date of entry of a final decree closing these Bankruptcy Cases, the Purchaser shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to these Bankruptcy Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and an opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court.

Dated:   ~~September 3,~~October     , 2015

SIGNAL INTERNATIONAL, INC. AND ITS
AFFILIATE DEBTORS

By:      /s/ Christopher S. Cunningham

Title:    Chief Financial Officer

