IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re                                                            :    Chapter 11
                                                                 :
SIGNAL INTERNATIONAL, INC, et al.,[1]                            :    Case No. 15-11498 (MFW)
                                                                 :
                                    Debtors.                     :    (Jointly Administered)
---------------------------------------------------------------- x

### LIMITED OBJECTION OF MAX SPECIALTY INSURANCE COMPANY TO DEBTORS' MOTION TO APPROVE PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS [ECF No. 120]

Max Specialty Insurance Company ("Max Specialty"), by and through undersigned counsel, hereby respectfully submits this objection to the Debtors' Sale Motion.[2] For the reasons stated below, Max Specialty respectfully requests that this Court deny approval of the Sale Motion.

### PRELIMINARY STATEMENT

Max Specialty opposes the Sale Motion to the extent that the Debtors seek Court approval to consummate the sale of their assets prior to funding of the MS Escrow as required by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066) (collectively, the "Debtors"). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

[2] Debtors' Motion for Entry of: (I) An Order (A) Approving Sales and Bidding Procedures In Connection With Sale of Assets of the Debtors, (B) Approving Bid Protections, (C) Approving Form and Manner of Notice, (D) Scheduling the Auction and Sale Hearing, (E) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contractions and Unexpired Leases, and (F) Granting Related Relief; and (II) An Order (A) Approving Purchase Agreement, (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief [ECF No. 120] (the "Sale Motion").

1

the Final DIP Order.[3] Max Specialty is a judgment creditor of Signal International, LLC ("Signal") with a lien on all of Signal's property within Jackson County, Mississippi, including Signal's Pascagoula, Mississippi facility. In resolution of Max Specialty's Objection[4] to the Debtors' DIP Financing Motion,[5] the Debtors and Max Specialty reached as Settlement pursuant to which, upon the occurrence of an "MS Escrow Funding Event" (as defined in the Final DIP Order), the MS Escrow (as defined in the Final DIP Order) would be funded. The Final DIP Order provides that the establishment and funding of the MS Escrow "shall be a condition to the Court's authorization to consummate" a sale of the Debtors' property encumbered by any lien held or asserted by Max Specialty. Pursuant to the Sale Motion, the Debtors seek to sell their assets, including the Mississippi assets subject to Max Specialty's lien, free and clear of liens. However, neither the Sale Motion nor the Proposed Sale Order,[6] provide for the funding of the MS Escrow as a condition precedent to consummation of the sale of the Debtors' assets. Max Specialty objects to approval of the Sale Motion to the extent that such approval is not conditioned on the funding of the MS Escrow prior to consummation of the sale transaction. Therefore, the Sale Motion should be denied.

---

[3] Final Order Authorizing Debtors In Possession To (I) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Grant Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. § 364; (III) Use Cash Collateral, (IV) Provide Adequate Protection to Prepetition Credit Parties, and (IV) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 [ECF No. 316] (the "Final DIP Order").

[4] Objection of Max Specialty Insurance Company to Debtors Motions Seeking Approval of (I) DIP Financing [ECF No. 11], (II) Bid Procedures [D.I. No. 120], and (III) Assumption of Plan Support Agreement [D.I. No. 112] [ECF No. 239] (the "Objection").

[5] Debtors Motion for Interim and Final Orders (I) Authorizing Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection To Pre-Petition Lenders, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing [ECF No. 11] (the "DIP Financing Motion").

[6] Proposed Order (I) Approving Stalking Horse APA, (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, And Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Certain Related Relief [ECF No. 317-1] (the "Proposed Sale Order").

## BACKGROUND

In August 2009, a dry dock at Signal's Orange Yard in Port Arthur, Texas took on water and sank. Signal submitted claims, *inter alia*, for $13.6 million for the value of the property. The primary insurer paid $10 million under its policy, and Max Specialty paid $3.6 million for damage under an excess policy. In March 2010, some of Signal's insurers filed an action against Signal and other insurers seeking a determination on coverage for the damage in the U.S. District Court for the Southern District of New York. Signal filed cross-claims against Max Specialty relating to business interruption and extra expense losses under the excess policy. During discovery, Max Specialty found that Signal had misrepresented the pre-damage condition of the dry dock and filed cross-claims against Signal seeking rescission of the excess policy and a refund of the amounts it had paid.

On March 31, 2014, the district court entered summary judgment in favor of Max Specialty, dismissing Signal's claims against Max Specialty and voiding the excess policy *ab initio*. On June 17, 2014, the district court entered a $3,976,362.45 judgment in favor of Max Specialty against Signal.

On April 7, 2015, Max Specialty filed a Domestication of Judgment in the Circuit Court of Jackson County, Mississippi. *See* Exhibit 1 (Domestication of Judgment and Notice to Signal). On April 10, 2015,[7] the Clerk of the Circuit Court of Jackson County, Mississippi enrolled the Judgment on the Judgment Roll. *See* Exhibit 2 (Judgment Roll). In accordance with Mississippi Code § 11-7-191, the enrolled Judgment is a lien on all the property of Signal within Jackson County. *See* Miss. Code. Ann. § 11-7-191 (2015) ("A judgment so enrolled shall be a

---

[7] Signal filed for bankruptcy on July 12, 2015. April 13, 2015 is 90 days prior to that date. Therefore, the enrollment was more than 90 days prior to the filing of the petition.

lien upon and bind all property of the defendant within the county where so enrolled from rendition thereof, and shall have priority according to the order of such enrollment, in favor of the judgment creditor, his representatives or assigns, against the judgment debtor and all persons claiming the property under him after the rendition of the judgment."). Therefore, Max Specialty has a lien on all of Signal's assets located in Jackson County, Mississippi.[8] That lien covers all of Signal's property at the Pascagoula, Mississippi facility, which the Debtors described as handling rig fabrication and repair, with significant automation as well as a deep hole for thruster work, space for storage of offshore equipment, and a 30,000-ton Dual Carrier/heavy lift dry dock.[9]

Signal appealed the District Court decision to the Second Circuit. The appeal has been fully briefed and argued and the parties are awaiting a decision.[10]

On September 21, 2015, Max Specialty filed its proof of claim (the "Max Specialty's Claim") in the amount of $3,981,144.34, which includes interest through the petition date. The proof of claim explicitly reserved Max Specialty's rights to post-petition interest to the extent Max Specialty is determined to be oversecured.

## BASIS FOR OBJECTION

Pursuant to the Settlement between the Debtors and Max Specialty contained in the Final DIP Order, upon the occurrence of an MS Escrow Funding Event, the MS Escrow is required to be established and funded. *Final DIP Order* ¶ 36(b), (c) and (e). Upon such events, the MS

---

[8] Max Specialty is continuing to investigate whether it has a lien on any other assets of the Debtor and reserves the right to assert further liens to the extent it has any.

[9] *See* Declaration of Christopher S. Cunningham In Support of Chapter 11 Petition and First Day Motions [ECF No. 12] (the "Cunningham Declaration") at ¶ 33.

[10] This Court lifted the automatic stay to allow the Second Circuit to proceed to decision on September 10.

Escrow is to be funded in such amount as the Court determines or in the amount agreed to by the Debtors, DIP Lenders and Max Specialty. *Final DIP Order* ¶ 36(b).

Two of the MS Escrow Funding Events trigger upon the Court's approval of a bid for the sale of the Debtors' assets: (i) approval of the bid of the Stalking Horse Bidder as the Prevailing Bid, "if such bid of the Stalking Horse includes a credit bid of Pre-Petition Debt and/or DIP Obligations in excess of the amount of the Pre-Petition Debt as of the Petition Date," and (ii) approval of any other Bidder as the Prevailing Bidder if the Prevailing Bid results in "proceeds in excess of the amount of the Pre-Petition Debt as of the Petition Date. *Final DIP Order* ¶ 36(e)(i) and (e)(ii).

Upon information and belief, the Stalking Horse Bid includes a credit bid in excess of the Pre-Petition amount. *See Sale Motion* p. 6 (indicating that the credit bid amount includes all amounts owed under Pre-Petition Loan documents plus additional amounts owed under the DIP Loan Documents and additional amounts for payment of unsecured claims).[11] The minimum bid of any competing bid also exceeds the Pre-petition Debt. *See Final DIP Order* ¶ 35 ("the term 'Minimum Bid Threshold', as used in the Sale Procedures Order, the Sale and Bidding Procedures and herein, shall mean net cash proceeds in an amount equal to or greater than the aggregate of: (a) full amount of the outstanding DIP Obligations and Pre-Petition Debt [as applicable], in each case including any accrued interest or other charges; and (b) the Break-Up

---

[11] "**Purchase Price**: As set forth in Section 2.5 of the Stalking Horse APA, the aggregate consideration for the sale and transfer of the Acquired Assets (the 'Purchase Price') shall consist of (a) cash in the amount of the Unsecured Creditor Claim Cash in the sum of $400,000, (b) the assumption of the Assumed Liabilities, and (c) a credit bid against the indebtedness owing under the DIP Loan Documents and the Pre-Petition Loan Documents in an amount equal to the Credit Bid Amount (the 'Credit Bid'). The Credit Bid Amount means the aggregate amount of all principal, interest, fees, reimbursable expenses and other agreed charges owing under (i) the DIP Loan Documents, and (ii) the Pre-Petition Loan Documents (unless subsumed by the DIP Loan Documents pursuant to a Final Order). . . . The Current outstanding principal amount under the Pre-Petition Loan Documents is in excess of $70 million." Sale Motion p. 6.

Fee in the amount of $1.0 million). Therefore, whether this Court approves the Stalking Horse Bid or the bid of another Bidder as the Prevailing Bid, an MS Escrow Funding Event will occur.

In both cases, the Final DIP Order requires the establishment and funding of the MS Escrow as a condition to the Court's authorization to consummate the sale.

> Unless the MS escrow is funded in the amount of $4,000,000 or such other amount as agreed to in writing by the MS Stipulation Parties, the Court's determination of the MS Adequate Protection Amount, if any, ***shall be a condition to the Court's authorization to consummate any such sale transaction*** for any of Debtors' property encumbered by any lien held or asserted by Max Specialty. If the Court determines that the MS Escrow must be established and funded, the funding of the MS Escrow in the MS Adequate Protection Amount or such other amount as the MS Stipulation Parties may agree in writing ***shall be made a condition to the Court's authorization to consummate any such sale transaction*** concerning Debtors' property encumbered by any lien held or asserted by Max Specialty.

Final DIP Order ¶ 36(e)(1) and (e)(2) (emphasis added). Under this Settlement, the Debtors agreed that the Court's authorization to consummate a sale of their assets would be conditioned upon the establishment and funding of the MS Escrow in the amount of $4,000,000 or such other amount as agreed upon by the parties or determined by the Court. However, neither the Sale Motion nor the Proposed Sale Order condition consummation of the sale to the Stalking Horse Bidder (or other Bidder) upon the establishment and funding of the MS Escrow as required.

Upon information and belief, the MS Escrow has not been established and funded in accordance with the Final DIP Order. Max Specialty objects to approval of the Sale Motion because it does not require the establishment and funding of the MS Escrow as a condition prior to the Court's authorization to consummate the sale. This Court should not approve the Sale Motion and Proposed Sale Order as it would allow the Debtor to ignore its obligations under the Settlement which the Debtors agreed to in order to resolve Max Specialty's Objection and obtain DIP Financing. The Debtors should be required to comply with that Settlement. The Court's

authorization to consummate the sale to the Stalking Horse Bidder (or other Prevailing Bidder) should only be granted after the establishment and funding of the MS Escrow.

## **CONCLUSION**

Based on the foregoing, Max Specialty respectfully requests that this court deny approval of the Sale Motion and grant such other just and appropriate relief as the Court sees fit.

Dated: October 13, 2015　　　　　　　　　　**CROSS & SIMON, LLC**
Wilmington, Delaware

By: */s/ Christopher P. Simon*
　　Christopher P. Simon (No. 3697)
　　1105 N. Market St., Suite 901
　　P.O. Box 1380
　　Wilmington, DE 19899-1380
　　Tel: (302) 777-4200
　　Facsimile: (302) 777-4224
　　csimon@crosslaw.com

　　- and -

　　Filiberto Agusti
　　Joshua R. Taylor
　　Steptoe & Johnson LLP
　　1330 Connecticut Ave., NW
　　Washington, DC 20036
　　Tel: (202) 429-3000
　　Facsimile: (202) 261-0658

　　*Counsel for Max Specialty Insurance*
　　*Company n/k/a Alterra Excess Company*