# <u>**EXHIBIT 1**</u>



LEASE AGREEMENT

by and between

Pinto Island Land Company, Inc.

Landlord

and

Bender Shipbuilding & Repair Co., Inc.

Tenant

dated July 1, 1998

# TABLE OF CONTENTS

PARAGRAPH                                                                                    PAGE

1.    LEASE SUMMARY ...........................................................................................................1

2.    LEASED PREMISES ........................................................................................................2

3.    TERM ..............................................................................................................................2

4.    RENT ...............................................................................................................................2

5.    RIGHT OF FIRST REFUSAL ..........................................................................................3

6.    ACCEPTANCE OF PREMISES ......................................................................................3

7.    USE OF PREMISES.........................................................................................................3

8.    ALTERATIONS, ADDITIONS AND IMPROVEMENTS ...............................................4

9.    RIGHTS-OF-WAY ..........................................................................................................4

10.   UTILITIES AND SERVICES ..........................................................................................5

11.   INDEMNIFICATION/LIABILITY INSURANCE............................................................5

12.   WAIVER OF SUBROGATION........................................................................................5

13.   TAXES.............................................................................................................................6

14.   MAINTENANCE AND REPAIR .....................................................................................6

15.   DISPOSITION OF IMPROVEMENTS ............................................................................7

16.   INSPECTION ..................................................................................................................7

17.   DAMAGE........................................................................................................................7

18.   DEFAULTS .....................................................................................................................8

19.   ADVANCES BY LANDLORD FOR TENANT ...............................................................9

20.   HOLDING OVER ............................................................................................................9

21.   ASSIGNMENT OR SUBLEASE .....................................................................................9

22.   COMPLIANCE WITH REGULATIONS/ALL LAWS .....................................................10

23.   HAZARDOUS SUBSTANCES AND/OR PETROLEUM OR ANY PETROLEUM PRODUCTS ............................................................................................................................. 10

24.   EMINENT DOMAIN ............................................................................................................. 13

25.   INSOLVENCY ...................................................................................................................... 13

26.   ATTORNEY'S FEES AND COSTS ...................................................................................... 14

27.   JOINT AND SEVERAL LIABILITY .................................................................................... 14

28.   APPLICABLE LAW .............................................................................................................. 14

29.   INVALIDITY OF PARTICULAR PROVISIONS ................................................................. 14

30.   QUIET ENJOYMENT ........................................................................................................... 14

31.   RENT DEMAND ................................................................................................................... 15

32.   WAIVER ................................................................................................................................ 15

33.   BINDER ................................................................................................................................. 15

34.   RELATIONSHIP OF PARTIES ............................................................................................ 15

35.   COMMISSIONS AND FEES ................................................................................................. 15

36.   SHORT-TERM LEASE ......................................................................................................... 16

37.   COMPLETE AGREEMENT .................................................................................................. 16

38.   ACCELERATION .................................................................................................................. 16

39.   NOTICES ............................................................................................................................... 16

40.   LANDLORD'S LIEN ............................................................................................................. 17

THIS LEASE (this "Lease") is made this 1st day of July, 1998, by and between the Pinto Island Land Company, Inc., 6110 Parkland Boulevard, Cleveland, Ohio 44124-4187, an Alabama corporation, Landlord, hereinafter referred to as "the Landlord," and the Tenant described below, hereinafter referred to as "Tenant."

WITNESSETH:

WHEREAS, Landlord is the owner of a certain premises more particularly described on Exhibit A attached hereto (including all buildings, structures, fixtures, improvements, and necessary furnishings located thereon or a part thereof, hereinafter collectively referred to as the "Premises"); and

WHEREAS, Landlord has agreed to lease the Premises to Tenant.

NOW, THEREFORE, in consideration of the mutual premises, covenants, terms and conditions herein contained and intending to be legally bound, Landlord and Tenant hereby agree as follows:

1.    LEASE SUMMARY.

TENANT.

| | |
|---|---|
| Name: | Bender Shipbuilding & Repair Co., Inc. |
| Address: | P.O. Box 42 |
| City, State, Zip Code: | Mobile, Alabama  36601 |

PREMISES.

As described on Exhibit A attached hereto.

TERM.

Ten (10) years beginning July 1, 1998, ending June 30, 2008.

OPTION TO RENEW

One (1) option to renew for five (5) additional years, hereinafter referred to as the "Renewal Term". The Renewal Term shall be upon the terms, covenants, and conditions contained herein (except for rent). The Renewal Term shall commence on the expiration of the immediately preceding term. Such Option to Renew may be exercised only by written notice to the Landlord no later than one hundred eighty (180) days prior to the expiration of the then current term. Tenant shall not be entitled to renew this Lease if Tenant is in default of the performance of its obligations hereunder at the date notice of renewal is due or at the date the Renewal Term is to commence.

X:LMC\Agr\1998\BenderLse

1

RENT.

During the first year of the Initial Term, Tenant shall pay to Landlord the sum of $540,000, payable in equal monthly installments of $45,000. For each subsequent year during the Initial Term, the rent shall be increased by the percentage increase (if any) in the Consumer Price Index during the immediately preceding year. The term "Consumer Price Index" shall mean the consumer price index for all urban consumers (CPI-U) as published monthly by the Bureau of Labor Statistics of the United States Department of Labor using 1967 as the base year. After five (5) years, the rent shall be calculated as the greater of (i) $54,000 per month or (ii) the amount of rent that would have been calculated with the normal CPI increases. During the sixth through tenth years, rent will increase annually by CPI as set forth above. After ten (10) years, if the renewal option is exercised, the rent shall be calculated as the greater of 120% of the rent payable in year six per month or (ii) the amount of rent that would have been calculated with the normal CPI increases. During the second through fifth years of the Renewal Term, rent will increase annually by CPI as set forth above.

## USE OF PREMISES.

Tenant covenants with Landlord that the Premises shall be used only for the drydocking, repair, construction and conversion of boats and ships and all work attendant thereto.

2.    LEASED PREMISES.

The Landlord hereby leases to Tenant, and Tenant hereby leases from the Landlord, the Premises described in paragraph 1 above, located in Mobile, Alabama.

3.    TERM.

This Lease shall be for the term specified in paragraph 1 above.

4.    RENT.

It is the intention of the parties hereto that, except for the payment of real estate taxes by the Landlord, the rent specified in the Lease shall be net to the Landlord in each year during the term of the Lease. Accordingly, all costs, expenses and obligations of every kind relating to the leased property (except as otherwise, specifically provided in the Lease) which may arise or become due during the term of the Lease shall be paid by Tenant and the Landlord shall be indemnified by the Tenant against such costs, expenses and obligations. All such costs, expenses, and obligations and payments coming due hereunder shall be deemed as "additional rent". Tenant agrees to pay as rent for the use and occupancy of the Premises during the term of this Lease, without deduction or offset, the rent specified in paragraph 1 above, payable to the Landlord in advance on or before the first day of each and every month and payable at such place as the Landlord may designate. If the Tenant does not pay the rent by the 10th of the month, then in addition to the overdue rent, Tenant shall pay interest on the rent payment then due at a rate per annum equal to the greater of twelve percent (12%) per annum or two (2) percentage points over the composite prime rate of interest set forth in the Wall Street Journal "Money Rates" Column (or its successor) most recently prior to such date. Such interest commences on the date

2

the rent is due and continues until such rent is paid. The imposition of such interest does not prevent the Landlord from exercising any other rights and remedies under this Lease.

### 5.    RIGHT OF FIRST REFUSAL.

If Landlord receives an offer from a third-party unrelated to Landlord to purchase all or any part of the Premises (the "Third-Party Offer") at any time during the Initial Term or any Renewal Term hereunder, Landlord shall immediately deliver to Tenant written notice containing the terms of the Third-Party Offer (the "Offer Notice"). For a period of 30 days after the date of the Offer Notice, Tenant shall have the option to purchase that portion of the Premises which is subject to the Third-Party Offer, at the price and upon the same terms as set forth in the Third-Party Offer. If at the expiration of that 30 day period the Tenant does not exercise its option pursuant hereto, then the Landlord may sell the property which is subject to the Third-Party Offer to any third-party within a period of three months thereafter so long as the price and terms and conditions of such a sale are no more favorable to that third-party than those contained in the Third-Party Offer, and upon such sale the purchaser will succeed to all of Landlord's rights and obligations under this Lease. If the property subject to the Third-Party Offer is not sold within such three-month period, then Landlord shall not thereafter sell all or any part of the Premises without complying again with the provisions of this Paragraph. In no event, however, shall the provisions of this Paragraph be applicable after the termination of this Lease for any reason. Tenant may exercise its option hereunder by delivering a written notice of its exercise of that option to Landlord prior to the expiration of the 30-day option period. Tenant shall be obligated to close its purchase of the Premises within 30 days after Tenant exercises its option as provided herein. Any person may rely on and be protected by an affidavit sworn to and signed by the Landlord that full compliance with the provisions of this paragraph has been followed, that the offer was properly made, and that such offer was not accepted within the period set forth above.

### 6.    ACCEPTANCE OF PREMISES.

Tenant has examined the Premises and accepts them in their present condition. There are no warranties expressed or implied as to any condition apparent or unknown except as otherwise stated in this Lease. Tenant agrees to make any changes in the Premises necessary to conform to any federal, state or local law applicable to Tenant's use of the Premises.

### 7.    USE OF PREMISES.

Tenant shall use the Premises only for those purposes stated in paragraph 1 above and shall not use them for any other purpose without the written consent of the Landlord, which consent will not be unreasonably withheld. The Premises shall be used only for lawful purposes; and only in accordance with all applicable building, fire and zoning codes. Tenant shall use the entire Premises for the conduct of said business in a first-class manner continuously during the entire term of this Lease. Tenant agrees that it will not disturb the Landlord or any other Tenant of the Landlord by making or permitting any disturbance or any unusual noise, vibration or other condition on or in the Premises. At the termination or sooner expiration of this Lease, all signs, advertising matter, symbols, canopies or awnings attached to or painted by Tenant shall be removed by Tenant at its own expense, and Tenant shall repair any damage or injury to the Premises and correct any unsightly condition caused by such removal.

8.    ALTERATIONS, ADDITIONS AND IMPROVEMENTS.

Tenant covenants and agrees not to make or permit to be made any alterations, improvements, additions or install any fixtures (other than trade fixtures which can be removed without injury to the Premises) to the Premises or any part thereof without the prior written consent of Landlord, which consent shall not be unreasonably withheld. Upon installation of any such improvements or additions which affect the structural integrity of the Premises or on a per project basis cost in excess of $25,000, Tenant shall furnish the Landlord with a copy of any drawings prepared by or for Tenant including utility installations and site plans detailing the nature of the additions, alterations or improvements. Prior to making any alterations, improvements or additions, Tenant shall submit in writing to Landlord a description of said proposed alterations, improvements or additions. Unless within thirty (30) days from the date of submission to Landlord of such description Landlord shall have furnished written disapproval of same (specifying in detail the reason for such disapproval), Landlord's approval shall be deemed given. All alterations, improvements and additions to said Premises shall be made in a good and workmanlike manner in accordance with all applicable laws and, except for removable trade fixtures, including but not limited to the drydock, bridge and dolphins, overhead and gantry cranes, compressors, transformers, and CO$_2$, oxygen and other service-gas containers or vessels, shall at once when made or installed be deemed to have attached to the freehold and to have become the property of Landlord and shall remain for the benefit of Landlord at the end of the term or other expiration of this Lease in as good order and condition as they were when installed, reasonable wear and tear excepted; provided, however, if prior to the termination of this Lease, or within fifteen (15) days thereafter Landlord so directs, by written notice to Tenant, Tenant shall promptly remove any non-permanent alterations, improvements and additions to the Premises by Tenant and which are designated in said notice and shall repair any damage occasioned by such removal; in default thereof, Landlord may effect said removals and repairs at Tenant's sole expense at the end of the Lease Term as provided in paragraph 15, DISPOSITION OF IMPROVEMENTS. Tenant shall be given a reasonable amount of time to effect such removals. The parties acknowledge that in the case of industrial concerns, the City of Mobile does not require permits for improvements. Further, in the case of building floor heights, Tenant is not required to meet any sea level ordinances. In the event of making such alterations, improvements and additions as herein provided, Tenant further agrees to indemnify and save harmless the Landlord from all expense, liens claims or damages either to persons or to property arising out of or resulting from the undertaking or making of said alterations, additions and improvements.

9.    RIGHTS-OF-WAY

No representation on the part of the Landlord is here contained concerning the existence or not of any rights-of-way, party wall agreements, zoning ordinances, easements, prescriptions, or covenants running with the land affecting the Premises or improvements here demised, and to the extent only as such may be determined by a physical inspection of the Premises and/or as such may be of record in the Probate Court of Mobile County, Alabama, the Tenant takes possession hereunder charged with notice thereof, and is bound to recognize all such rights-of-way, party wall agreements, easements, prescriptions and covenants running with the land, zoning ordinances, and to indemnify and hold the Landlord harmless for any violations or breaches by the Tenants.

10.    UTILITIES AND SERVICES.

Tenant shall be liable for and shall pay throughout the term of this Lease all charges for all utility services furnished to the Premises, including but not limited to, light, heat, gas, janitorial services, garbage disposal, security, electricity, water, stormwater and sewerage, including any connection fees, and any fire protection, police protection, or emergency health services as furnished by local authorities.

11.    INDEMNIFICATION/LIABILITY INSURANCE.

The Landlord, its employees and agents shall not be liable for any injury (including death) to any persons or for damage to any property, regardless of how such injury or damage be caused, sustained or alleged to have been sustained by Tenant or by others (including, but not limited to all persons directly or indirectly employed by Tenant, and any agents, contractors, subcontractors, suppliers, customers or invitees of Tenant) as a result of any condition (including existing or future defects in the Premises), or occurrence (including failure or interruption of utility service) whatsoever related in any way to the Premises; provided, however, that the foregoing provisions shall not be construed to make Tenant responsible for loss, damage, liability or expense resulting from injuries to third parties to the extent caused by the gross negligence of the Landlord or employees of the Landlord. Tenant agrees to indemnify, defend and to hold and save the Landlord harmless from all liability or expense (including attorneys' fees, costs and all other expenses of litigation) in connection with any such items of actual or alleged injury or damage. In addition, Tenant shall, at its own expense, provide and maintain commercial general liability insurance with a reputable insurance company or companies satisfactory to the Landlord, and including, but not limited to, personal injury, contractual liability, independent contractors, broad form property damage, and such additional types and amounts of liability insurance as the Landlord may deem reasonably necessary for the types of services or activities offered by Tenant and with the minimum policy limits set forth above in an amount of not less than $5,000,000. The coverage afforded by such policies shall thereafter be in such increased amounts as the Landlord may specify to indemnify both the Landlord and Tenant against such liability or expense.  The Landlord shall be named as one of the insured on the policies (and, at the Landlord's option, shall be furnished with a copy of such policy or policies of insurance or certificate thereof).  The above-mentioned insurance certifications are to be provided by Tenant upon Landlord's request, and shall be for a period of not less than one (1) year, it being understood and agreed that ten (10) days after the expiration of any policy of insurance the Tenant will deliver to the Landlord a certificate of the renewal or new policy to take the place of the policy expiring, with the further understanding that, should the Tenant fail to furnish certificates of insurance as is provided in this Lease, and at the times herein provided, the Landlord may obtain such insurance and the premiums on such insurance shall be deemed additional rent to be paid by the Tenant unto the Landlord upon demand.

12.    WAIVER OF SUBROGATION.

The Tenant hereby agrees to release Landlord from liability and waive all right of recovery against Landlord for any loss from perils insured against under its insurance contracts, including any extended coverage endorsements thereto, provided, that this paragraph shall be inapplicable to the extent it would have the effect of invalidating any insurance coverage of the Landlord.  Tenant agrees to cause its insurance carrier(s) to include in its policy or policies a waiver of subrogation clause or endorsement.

13.   TAXES.

Landlord shall be liable for, and shall pay, throughout the term of this Lease, all real estate taxes assessed and levied against the Premises. Tenant shall be responsible for all personal property taxes upon Tenant's fixtures, furnishings, equipment and stock in trade, Tenant's leasehold interest under this Lease or upon any other personal property situated in or upon the Premises and shall promptly pay same when they become due. If any governmental authority at any time levies a tax on rentals payable under this Lease or a tax in any form against Landlord because of or measured by income derived from the leasing or rental of the Premises, such tax shall be paid by Tenant; provided, however, that Tenant shall not be liable for the payment of any tax imposed generally on Landlord's gross or net income without regard to the source of such income.

14.   MAINTENANCE AND REPAIR.

Tenant shall, at its own expense, keep the Premises, structures and other improvements and the adjoining roadways, sidewalks and areas in a neat, clean, safe and sanitary condition and maintain and keep all of the Premises maintained equal in quality to that of other owners of similar class properties and conditions in Mobile, Alabama, reasonable wear and tear excepted, and to maintain the landscape and undeveloped areas (including ditches and shoulders of adjoining roadways, if applicable) in a clean, sanitary, orderly and attractive condition, mowed and free from rubbish and debris. Tenant shall also, at its own expense, at all times keep the Premises free from infestation of pests and conditions which might result in harborage for, or infestation of, pests. (Pests shall include, without limitation, rodents, insects, and birds in numbers to the extent that a nuisance is created.) Tenant shall keep the Premises clean and presentable, and shall maintain and keep the Premises in a good state of repair, and shall commit no waste of any kind, and, without limiting the generality of the foregoing, shall keep the electrical system and all drains clean and in a good state of repair, and shall protect all sprinkler systems and all pipes and drains. Tenant shall replace any and all improvements which become worn out, obsolescent, deteriorated, unsafe or unusable and shall replace such improvements with new fixtures and improvements of at lease as good a quality as originally installed at the commencement of this Lease. Tenant shall also be wholly responsible for any and all repairs, maintenance and improvements to maintain building structure integrity (including foundations, bearing columns, bearing walls and exterior walls), and to maintain the roof and utility service and lines, whether located on or off the Premises. In the event Tenant fails to properly maintain, repair and replace the Premises or any improvements thereon, and if the Landlord shall give a ten (10) day written notice to Tenant, Tenant shall comply with Tenant's responsibilities under this paragraph, and the Landlord shall be entitled, but shall not be obligated, to enter the leased Premises and perform such work as may be necessary to restore the leased Premises and improvements to the conditions set forth herein. The cost of such repairs shall be billed to Tenant by the Landlord and shall be payable upon receipt and subject to the same penalties for late payment as if such payment was additional rent. Tenant shall keep the Premises free and clear of any liens and encumbrances arising or growing out of the use and occupancy of the Premises by Tenant. At the Landlord's request, Tenant shall furnish the Landlord with written proof of payment of any item which would or might constitute the basis for such a lien on the Premises if not paid. Tenant shall have no claim as deduction or offset any monies or charges against the rent paid to the Landlord for maintenance or repairs. Tenant has inspected the Premises and accepts the Premises "as is".

15.   DISPOSITION OF IMPROVEMENTS.

a.    Within sixty (60) days after the expiration or earlier termination of this Lease, the Tenant shall at Tenant's expense, promptly and diligently remove, demolish or clear off from the leased Premises all or any designated portion of the improvements and other property constructed by Tenant during the Term hereof without Landlord's consent, and after such removal or clearance, Tenant shall restore the surface of the ground to a graded, properly filled, level and uniform condition, free from all debris; provided, however, that if Tenant at such time shall be in default in the payment of rents or any other charges hereunder, the Landlord shall have a lien on the improvements to secure payment of such rents or charges.

b.    Provided, however, that the Landlord may, at its sole discretion, elect to have any Tenant improvements (including but not limited to those referenced in Section 15A*) remain, in which event title to the same shall automatically pass to the Landlord, free of any right, title, interest of Tenant therein, or its successors or assigns, without the necessity of executing any further instrument and without any allowance, compensation, or payment by the Landlord. Tenant hereby grants and conveys to the Landlord all of its right, title and interest in and to such improvements, to be effective for all purposes upon any termination of this Lease. Notwithstanding the foregoing, if the Landlord does not elect to have Tenant remove the improvements, Tenant agrees to execute, acknowledge and deliver to the Landlord prior to the expiration of such sixty-day (60) period a proper recordable instrument quit claiming and releasing to the Landlord to any right, title and interest of Tenant in and to the leased Premises and all improvements thereon, and giving such further assurances of title as may be required by the Landlord. Tenant shall, upon such lease termination, surrender and deliver the leased Premises and all remaining improvements to the Landlord, without delay and in good order, condition and repair, ordinary wear and tear excepted, and in a neat and clean condition, excepting only Tenant's or any subtenant's movable trade fixtures, machinery, equipment and personal property. Tenant shall also deliver to the Landlord all documents necessary or appropriate for the proper operation, maintenance and management of the leased Premises and improvements.

16.   INSPECTION.

The Landlord reserves the right to inspect the Premises at any and all reasonable times throughout the term of this Lease, provided that it shall not unduly interfere with Tenant's operations. The right of inspection reserved to the Landlord hereunder shall impose no obligation on the Landlord to make inspections to ascertain the condition of the Premises, and shall impose no liability upon the Landlord for failure to make such inspections. The Landlord shall have the right to place and maintain "For Rent" signs in conspicuous places on the Premises for a reasonable period of time prior to the expiration or sooner termination of this Lease.

17.   DAMAGE.

If any building or improvement erected by Tenant on the leased Premises or any part thereof shall be damaged or destroyed by fire or other casualty during the term of this Lease, Tenant shall at its own cost and expense, repair or restore the same according to the original plans thereof or according to such modified plans as shall be previously approved in writing by the Landlord. Such work of repair or restoration shall be commenced within sixty (60) days after

X:LMC\Ag\l998\BenderLse          *excluding, however, removable trade fixtures
                                  referenced in Section 8                        7

the damage or loss occurs and shall be completed with due diligence but not longer than one (1) year after such work is commenced, and such work shall be otherwise done in accordance with the requirements of the provisions hereof pertaining to the construction of improvements upon the leased Premises. All insurance proceeds collected for such damage or destruction shall be applied to the cost of such repairs or restoration. If *(i)* there are not insurance proceeds, or *(ii)* the same shall be insufficient for said purpose, Tenant shall make up the deficiency out of its own funds. Should Tenant fail or refuse to make the repair, restoration or removal as herein above provided, then in such event said failure or refusal shall constitute a default under the covenants and conditions hereof, and all insurance proceeds so collected shall be forthwith paid over to and be retained by the Landlord on its own account, and the Landlord may, but shall not be required to, sue and apply the same for and to the repair, restoration or removal of said leased Premises or improvements, and the Landlord may, at its option, terminate this lease as elsewhere provided herein.

18.   DEFAULTS.

All rights and remedies of Landlord herein enumerated shall be cumulative, and none shall exclude any other right or remedies allowed by law. Tenant covenants and agrees that if:

(a)   Tenant shall fail, neglect or refuse to pay any installment of rent at the time and in the amount as herein provided, or to pay any other monies agreed by it to be paid promptly when and as the same become due and payable under the terms hereof, and if any such default should continue uncured for a period of more than ten (10) days;

(b)   Any voluntary or involuntary petition or similar pleading under any section or sections of any bankruptcy code shall be filed by or against Tenant, or any voluntary or involuntary proceeding in any court or tribunal shall be instituted to declare Tenant insolvent or unable to pay its debts, and the same shall not be dismissed or discharged within sixty (60) days thereafter;

(c)   Tenant makes any assignment of its property for the benefit of creditors, or should the Premises be taken under a levy of execution or attachment in an action against Tenant, and such levy, attachment or assignment is not dismissed or discharged within thirty (30) days;

(d)   Tenant shall abandon or vacate the Premises or shall fail, neglect or refuse to keep and perform any of the other covenants, conditions, stipulations or agreements herein contained, covenanted and agreed to be kept and performed by it, and in the event any such default shall continue for a period of more than thirty (30) days after notice thereof given in writing to Tenant by Landlord; provided, however, that if the cause for giving such notice involves the making of repairs or other matters reasonably requiring a longer period of time than the period of such notice, Tenant shall be deemed to have complied with notice so long as it commenced to comply with said notice and has taken all proper steps or proceedings under the circumstances to prevent the seizure, destruction, alteration or other interference with said Premises by reason of non-compliance with the requirements of any law or ordinance or with the rules, regulations or directions of any governmental authority as the case may be and thereafter diligently proceeds to cure such default or violation; or

(e)   A receiver is appointed to take control of Tenant's property;

then the Tenant does hereby authorize and fully empower said Landlord or Landlord's agent to cancel or annul this Lease at once and to initiate legal action to recover immediate possession of the Premises and all improvements thereto, in which event this Lease shall terminate and Tenant shall indemnify the Landlord against all unavoidable loss of rent which Landlord incurs by reason of such termination during the residue of the term herein specified. If suit shall be brought for recovery of possession of the Premises, for the recovery of rent, or any other amount due under the provisions of this Lease, or because of the breach of any other covenant herein contained on the part of Tenant to be kept or performed, and a breach shall be established, Tenant shall pay to Landlord all expenses incurred therefor, including reasonable attorneys' fees.

### 19.   ADVANCES BY LANDLORD FOR TENANT.

If Tenant shall fail to do anything required to be done by it under the terms of the Lease, except to pay rent, the Landlord may, at its sole operation, do such act or thing on behalf of Tenant, and upon notification to Tenant of the cost thereof to the Landlord, Tenant shall promptly pay the Landlord the amount of that cost. However, if the Landlord shall pay any monies on Tenant's behalf, Tenant shall repay such monies, together with interest thereon commencing on the date the Landlord paid such monies and calculated at the greater of the rate of eighteen percent (18%) per annum, or two (2) percentage points over the composite prime rate of interest set forth in the Wall Street Journal "Money Rates" column (or its successor) most recently prior to such date.

### 20.   HOLDING OVER.

If Tenant shall, without the consent of the Landlord, hold over after the expiration or sooner termination of this Lease, the resulting tenancy shall, unless otherwise mutually agreed, be on a month-to-month basis. During such month-to-month tenancy, Tenant shall pay to the Landlord the rate of 125% the then-current rental under the terms of the Lease, unless a different rate shall be agreed upon and the Tenant shall be bound by all of the additional provisions of this Lease.

### 21.   ASSIGNMENT OR SUBLEASE.

Tenant shall not assign or transfer (including any assignment or transfer for security purposes) this Lease or any interest therein nor sublet the whole or any part of the Premises, nor shall this Lease or any interest hereunder be assignable or transferable by operation of law or by any process or proceeding of any court, or otherwise, without the advance written consent of the Landlord, which consent shall not be unreasonably withheld; provided, however, that Tenant shall be permitted to collaterally assign this Lease to the United States of America in connection with obtaining financing guaranteed by the United States of America under Title XI of the Merchant Marine Act of 1936, as amended, to be obtained by Tenant for improvements to Yard 8. Any assignment or subletting to which landlord has consented shall not relieve Tenant from Liability for payment of rent or other sums herein provided or from the obligation to keep and be bound by terms, conditions and covenants of this Lease. If Tenant is a corporation, Tenant further agrees that if at any time during the term of this Lease, more than one-half (1/2) of the outstanding shares of any class of stock of the Tenant corporation shall belong to any

9

stockholders other than those who own the outstanding shares of that class of stock at the time of the execution of this Lease or to members of their immediate families, including their estates, such change in the ownership of the stock of Tenant shall be deemed an assignment of this Lease within the meaning of this paragraph. If Tenant is a partnership, Tenant further agrees that if at any time during the term of this Lease, more than one-half of the interests in the partnership shall belong to any partners other than those who own an interest in the partnership at the time of the execution of this Lease or to members of their immediate families, including their estates, such change in the ownership of interests in Tenant shall be deemed an assignment of this Lease within the meaning of this paragraph.

22.     COMPLIANCE WITH REGULATIONS/ALL LAWS.

Tenant agrees to comply with all applicable federal, state and municipal laws, ordinances and regulations, including, without limitation, those relating to environmental matters, and Americans with Disabilities Act, and to indemnify the Landlord for any liability, damages, costs or fees incurred by the Landlord due to Tenant's failure to comply with the requirements of this section. Costs and fees shall include all direct and indirect costs and professional fees, including engineering and attorney's fees. Any fees for any federal, state or local inspections and/or certificates required for use and occupancy of the leased Premises shall be paid by Tenant.

23.     HAZARDOUS SUBSTANCES, ETC.

Tenant certifies, represents, warrants, covenants and agrees that:

(a)     For itself, its contractors, subcontractors and agents, Tenant will comply with all applicable local, state and federal environmental laws, regulations, ordinances and administrative and judicial orders relating to the generation, recycling, treatment, use, sale, storage, handling, transport and disposal of any Hazardous Substances (as defined below) and petroleum or any petroleum products by any person on the leased Premises or common areas. Tenant shall not keep on or around the Premises any Hazardous Substances and/or petroleum or any petroleum products except as used in the ordinary course of Tenant's business as permitted hereby.

(b)     With respect to any Hazardous Substance and/or petroleum or any petroleum product, Tenant shall:

(i)     Comply promptly, timely and completely with all governmental requirements for reporting, keeping and submitting manifests and obtaining and keeping current identification numbers;

(ii)     Make available for the Landlord's review and copying during normal business hours, true and correct copies of all reports, manifests and identification numbers at the time as they are required to be and/or are submitted to the appropriate governmental authorities;

(iii)     Within five (5) business days of the Landlord's request, submit written reports to the Landlord regarding Tenant's use, storage, treatment, transportation, generation, disposal or sale of Hazardous Substances and/or petroleum or any petroleum products and provide evidence satisfactory to the Landlord of Tenant's compliance with the applicable laws, rules and regulations;

10

(iv)    Allow the Landlord or the Landlord's agents or representatives to come on the leased Premises at all reasonable times to check Tenant's compliance with all applicable laws, rules and regulations regarding Hazardous Substances and/or petroleum or any petroleum products; and

(v)    Comply with minimum levels, standards or other performance standards or requirements which may be set forth or established for certain Hazardous Substances and/or petroleum or any petroleum products (if minimum standards or levels are applicable to Hazardous Substances and/or petroleum or any petroleum products) present on the leased Premises, including those levels or standards established by an on-site inspection by the appropriate governmental authorities.

In the event of a material violation of any of the items (i) through (v) listed above, any and all costs incurred by the Landlord and associated with the Landlord's inspections of Tenant's leased Premises and the Landlord's monitoring of Tenant's compliance with this section, and including the Landlord's attorney's fees and costs, shall be additional rent and shall be due and payable to the Landlord immediately upon demand by the Landlord.

(c)    Tenant has not and will not release or waive the liability of any party who may be potentially responsible for the presence or removal of Hazardous Substances and/or petroleum or any petroleum products on or from the leased Premises.

(d)    Tenant agrees to immediately notify the Landlord if Tenant becomes aware of (a) any Hazardous Substances, petroleum or any petroleum products or other environmental problem or liability with respect to the leased Premises or any Other Property (as defined below); or (b) any lien, action or notice resulting from violation of any laws, regulations, ordinances or orders described in this Section 23. At its own cost, Tenant will take all actions which are necessary or desirable to clean up any Hazardous Substances and/or petroleum or any petroleum products affecting the leased Premises and not disclosed in the so-called "Baseline Assessment" submitted by Thompson Engineering Testing, Inc. in 1991(whether such Hazardous Substances and/or petroleum or any petroleum products were introduced to the Premises before or during the term hereof), including removal, containment or any other remedial action whether or not required by governmental authorities. Any cleanup or remediation of any Hazardous Substances and/or petroleum or any petroleum products affecting the Premises and disclosed in such Baseline Assessment shall be the responsibility of Landlord, provided, however, that Landlord shall not be responsible for any exacerbation of any existing condition disclosed in the Baseline Assessment.

(e)    If Tenant is in violation of any governmental law, rule or regulation concerning Hazardous Substances and/or petroleum or any petroleum products and/or petroleum or any petroleum products or is in violation of this Lease relating thereto, it shall promptly take such action as is necessary to mitigate and correct the violation. If Tenant does not act in a prudent and prompt manner, the Landlord reserves the right, but not the obligation to come onto the Premises, to act in place of the Tenant (with Tenant hereby appointing the Landlord as its agent for such purposes), and to take such action as the Landlord deems necessary to insure compliance or to mitigate the violation. If the Landlord has a reasonable belief that Tenant is in violation of any such regulation, or that Tenant's actions or inactions present a threat of violation or a threat of damage to the Premises, the Landlord reserves the right to enter the Premises and take such action as the Landlord deems necessary to mitigate, abate or correct the threat thereof. All costs and expenses incurred by the Landlord in connection with any such action shall be payable by

the Tenant and shall become immediately due and payable as additional rent upon presentation of an invoice therefor.

(f)    Tenant shall be fully and completely liable to the Landlord for, and shall indemnify and save and hold the Landlord harmless from and against any and all actual or alleged claims, demands, damages, losses, liens, liabilities, penalties, fines, lawsuits and other proceedings and costs and expenses (including attorneys' fees and disbursements), which occur prior to the execution of this Lease or are suffered by Tenant or the Landlord during the term of this Lease (and any renewal term, if applicable) which arise or are alleged to arise directly or indirectly from or out of, or are in any way connected with (a) the inaccuracy of the representations and warranties contained herein, (b) the breach of any covenant contained herein, (c) any operations or activities (including, without limitation, use, disposal, transportation, storage, generation or sale of Hazardous Substances and/or petroleum or any petroleum products an/or petroleum or any petroleum products) on or about the leased Premises during Tenant's possession or control of the leased Premises which directly or indirectly result in the leased Premises or any Other Property becoming contaminated with Hazardous Substances and/or petroleum or any petroleum products or otherwise violating any applicable law, rule or regulation pertaining to Hazardous Substances and/or petroleum or any petroleum products, and (d) the cleanup of Hazardous Substances and/or petroleum or any petroleum products from the leased Premises or any Other Property. Tenant acknowledges that it will be solely responsible for all costs and expenses relating to investigation (including preliminary investigation) and cleanup of Hazardous Substances and/or petroleum or any petroleum products from the leased Premises or from any Other Property, except for any investigation and cleanup of Hazardous Substances and/or petroleum or any petroleum products which are responsibility of Landlord pursuant to Section 23(d) above.

(g)    Tenant's obligations under this Section 23 are unconditional and shall not be limited by any other limitations of liability provided for in this Lease. The representations, warranties and covenants of Tenant set forth in this Section 23(a) are separate and distinct obligations from tenant's other obligations under the Lease and (b) shall survive and continue in effect after any termination or expiration of this Lease for any reason.

(h)    As used in this Section 23 "Hazardous Substances " means (i) any hazardous substance, pollutant and/or contaminant as defined in the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended from time to time, and/or any regulation promulgated thereunder, and/or (ii) any hazardous waste as defined in the Resource Conservation and Recovery Act of 1976, as amended from time to time, and/or any regulation promulgated thereunder.

(i)    As used in this Section 23 "Other Property" means any real or personal property (including, without limitation, surface or ground water) which becomes contaminated with Hazardous Substances and/or petroleum or any petroleum products as a result of operations or other activities on, or the contamination of, the leased Premises.

(j)    Upon expiration or sooner termination of this Lease, Tenant shall have removed from the leased Premises any contaminated soils or other contaminated or hazardous materials or substances deposited thereon by Tenant. Any failure to complete such removal by the expiration or sooner termination of this Lease shall be deemed a holding over by Tenant subject to the provision of paragraph 20, HOLDING OVER.

(k)    Tenant shall comply with all environmental laws in connection with its occupancy and use of the Premises and shall be responsible for applying for and obtaining all necessary and desirable federal, state or local governmental permits or approvals for the use of the leased Premises; shall not commence any activity on the leased Premises until all permits or approvals required for such activity have been issued; and shall conduct all of its activities on the leased Premises in full compliance with all applicable permits and approvals.

24.    EMINENT DOMAIN.

If the Premises shall be taken or condemned for any public purpose, or for any reason whatsoever, to such an extent as to render the Premises wholly untenantable, either Landlord or Tenant shall have the option to terminate this Lease effective as of the date of taking or condemnation, which shall be the earlier of the date the final condemnation judgment or the date possession is taken by the condemning authority. If the taking or condemnation does not render the Premises wholly untenantable, this Lease shall continue in effect, and Landlord shall, if the condemnation award is sufficient therefor, promptly restore the portion not taken to the extent possible to the condition existing prior to the taking. If, as a result of such restoration, the area of the Premises is reduced, the rental shall be reduced proportionately. All proceeds from any taking or condemnation shall be paid to Landlord and Tenant waives all claim against such proceeds; provided, however, that Tenant shall be entitled to any award separately designated for Tenant's relocation expenses or for damage or taking of Tenant's trade fixtures or other personal property. A voluntary sale or conveyance in lieu of but under the threat of condemnation shall be considered taking or condemnation for public purpose, and shall include the Landlord's use of the Premises for any purpose for public use in connection with the operation of the business of the Landlord.

25.    INSOLVENCY.

If Tenant shall: solicit acceptances of a plan of reorganization to be filed in any subsequent case under the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as hereafter amended or any successor statute thereto (the "Bankruptcy Code"); negotiate with one or more creditors for any workout, including, but not limited to, an extension agreement, composition agreement, standoff, standby, or standstill agreement whereby the creditors agree to forebear in any fashion from their rights to collect a debt of Tenant; cease to pay Tenant's debts as they come due; admit in writing the inability to pay its debts as they come due; make an assignment for the benefit of creditors; become a party to any liquidation or dissolution action or proceeding; have appointed (voluntarily or involuntarily), a trustee, custodian, receiver, conservator, or liquidator for Tenant or for a significant portion of Tenant's assets; have entered against it any order by a district court or bankruptcy court of the United States or any of its territories that dismisses a voluntary petition under the Bankruptcy Code because the bankruptcy petition was filed in bad faith; have entered against it an order, judgment, or decree; have any of its assets levied against by writ of execution, attachment (including pre-judgment attachment), garnishment, recording of a judgment or any similar process whereby a creditor seeks to obtain a legal right to dispose of particular assets of Tenant to satisfy to any extent a debt of the Tenant to the creditor, file a voluntary petition under the Bankruptcy Code or have filed against it an involuntary petition under the Bankruptcy Code creating any automatic stay or other injunctive force protecting the assets of Tenant from the immediate collection actions of a creditor (where such involuntary petition is not subsequently dismissed within 60 days in response to pleadings filed by the

Tenant by entry of an order of any district court or bankruptcy court of the United States or any of its territories); have appointed voluntarily or involuntarily, a trustee, custodian, or examiner with special powers by any district court or bankruptcy court in the United States or any of its territories; admit in an answer filed in response to an involuntary petition filed under the Bankruptcy Code that Tenant is insolvent because Tenant's assets are exceeded by Tenant's debts or that Tenant is unable to pay Tenant's debts as they come due; then, in the event any of the foregoing shall occur, the Landlord may, at its option, terminate this Lease.  If this Lease is assigned pursuant to the provisions of the Bankruptcy Code, any and all monies or other considerations payable or otherwise to be delivered in connection with such assignment shall be paid or delivered to Landlord, shall be and remain the exclusive property of Landlord, and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code.  Any and all monies or other considerations constituting Landlord's property under the preceding sentence not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and be promptly paid or delivered to Landlord.  Any person or entity to which this Lease is assigned pursuant to the provisions of the Bankruptcy Code shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assignment through the expiration of the term and any renewals or extensions thereof.  Any such assignee shall upon demand execute and deliver to Landlord an instrument confirming said assumption.

26.    ATTORNEY'S FEES AND COSTS.

Should a dispute arise between the parties hereto as to the effect of any provision hereof and said dispute is referred to an attorney for enforcement in court, each party shall pay its own costs and expenses including but not limited to attorney's fees.

27.    JOINT AND SEVERAL LIABILITY.

Each and every party who signs this Lease, other than in a representative capacity, as Tenant, shall be jointly and severally liable hereunder.

28.    APPLICABLE LAW.

The laws of the State of Alabama shall govern the validity, performance and enforcement of this Lease.

29.    INVALIDITY OF PARTICULAR PROVISIONS.

If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and shall continue in full force and effect.

30.    QUIET ENJOYMENT.

Landlord covenants and agrees that if Tenant shall pay the rental and other charges herein provided and shall perform all of the covenants and agreements herein stipulated to be performed on the Tenant's part, Tenant shall, at all times during said term, have the peaceable and quiet

enjoyment and possession of said Premises without any manner of hindrance from Landlord or any person lawfully claiming through Landlord, except as to such portion of the Premises as shall be taken under the power of eminent domain.

### 31. RENT DEMAND.

Every demand for rent wherever and whenever made shall have the same effect as if made at the time it falls due and at the place of payment, and after the service of such notice or commencement of any suit, or final judgment therein, Landlord may receive and collect any rent due, and such collection or receipt shall not operate as a waiver of nor affect such notice, suit or judgment.

### 32. WAIVER.

The acceptance of rental by the Landlord for any period or periods after a default by Tenant hereunder shall not be deemed a waiver of such default unless the Landlord shall so intend and shall so advise Tenant in writing. No waiver by the Landlord of any default hereunder by Tenant shall be construed to be or act as a waiver of any subsequent default by Tenant. After any default shall have been cured by Tenant, it shall not thereafter be used by the Landlord as a ground for the commencement of any action under the provisions of paragraph 18, DEFAULTS.

### 33. BINDER.

This Lease is binding upon the parties hereto, their heirs, personal representatives, successors in interest and assigns.

### 34. RELATIONSHIP OF PARTIES.

Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third party to create the relationship of principal and agent or of partnership of or joint venture or of any association whatsoever between Landlord and Tenant, it being expressly understood and agreed that neither the computation of rent and other charges nor any other provisions contained in this Lease nor any act or acts of the parties hereto shall be deemed to create any relationship between Landlord and Tenant other than the relationship of landlord and tenant.

### 35. COMMISSIONS AND FEES.

In the absence of any agreement between the parties to the contrary, each party represents and warrants to the other that it has not been represented by, or introduced to the other by, any broker or agent. In the absence of any agreement between the parties to the contrary, each party hereby agrees to indemnify and hold the other harmless from and against any and all fees, commissions, costs, expenses (including attorneys; fees) obligations and causes of actions arising against or incurred by the other party by reason of any claim for a real estate commission or a fee or finder's fee by reason of any contract, agreement or arrangement with, or services rendered at the request of, the indemnifying party.

15

36. SHORT-TERM LEASE.

The parties will, at any time at the request of either one, promptly execute duplicate originals of an instrument, in recordable form, which will constitute a short form of lease, setting forth a description of the Premises, the term of the Lease, and any other portions thereof, excepting the rental provisions as either party may request.

37. COMPLETE AGREEMENT.

This writing contains the entire agreement between the parties hereto, and no agent, representative, or officer of Landlord hereto has the authority to make or has made any statement, agreement or representation, either oral or written, in connection herewith, modifying, adding or changing the terms and conditions herein set forth. No dealings between the parties or custom shall be permitted to contradict various additions to or modifying the terms hereof. No modifications of this Lease shall be binding unless such modification shall be in writing and signed by the parties hereto.

38. ACCELERATION.

Upon default, breach of condition or upon the termination of this lease or re-entry upon the Premises for any one or more of the causes set forth above, all rents hereunder for the entire rental period and other indebtedness, if any, of Tenant to Landlord shall be payable by Tenant to Landlord without regard to whether or not possession of the Premises shall have been surrendered to or taken by Landlord.

39. NOTICES.

All default and other substantial notices required under the provisions of this Lease may be personally delivered or mailed. If mailed, they shall be sent by certified mail, return receipt requested to the following addresses:

> To the Landlord:
> Pinto Island Land Company, Inc.
> 6110 Parkland Boulevard
> Cleveland, Ohio 44124-4187
> Attention: John L. Selman, President
>
> To the Tenant:
> Bender Shipbuilding & Repair Co., Inc.
> P.O. Box 42
> Mobile, Alabama 36601
> Attention: Thomas B. Bender, Jr., President

or to such other respective addresses as either party hereto may hereafter from time to time designate in writing. Notices given by personal delivery shall be deemed given upon receipt. Notices sent by mail shall be deemed given when properly mailed, and the postmark affixed by the United States Post Office shall be conclusive evidence of the date of mailing.

40. LANDLORD'S LIEN

Landlord shall have a valid and subsisting lien for the payment of all rent upon Tenant's signs, fixtures and personal property situated on the Premises. Upon written request therefor, Tenant agrees to execute such documents as Landlord deems reasonably necessary to perfect the security interest granted hereby. In the event of default by Tenant hereunder, Landlord may, in addition to any other remedies provided herein or by law, enter upon the Premises and take possession of signs, fixtures, equipment and other personal property of Tenant without liability for trespass or conversion, and sell the same with or without notice at public or private sale, at which Landlord or its assigns may purchase and apply the proceeds, less expenses connected therewith, as a credit against sums due by Tenant to Landlord. Any surplus shall be paid to Tenant, and Tenant agrees to pay any deficiency forthwith, upon demand. Landlord may foreclose said lien in the manner provided by law. The lien herein granted to Landlord shall be in addition to any landlord's lien that may at any time be provided by law.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be duly executed on the day and year first above written.

Signed in the presence of:                    LANDLORD:

                                              Pinto Island Land Company, Inc.

                                              _____
                                              John L. Selman, President

Signed in the presence of:                    TENANT:

                                              By: _____

                                              Name: Thomas B. Bender, Jr.

                                              Title: President

STATE OF Ohio

COUNTY OF Cuyahoga

    The undersigned, a Notary Public for said County and State, certify that John L. Selman personally came before me this day and acknowledged that s(he) is the President of Pinto Island Land Company, Inc., an Alabama corporation, and that, by authority duly given and as the act of the corporation, the foregoing instrument was signed by (himself) (herself) as such officer.

    Witness my hand and official seal, this 14th day of January, 1998

My Commission expires: 12/12/2001

(Notary Seal)                                 Notary Public

STATE OF ALABAMA                              AMY L. CANZONE
                                              Notary Public for the State of Ohio
                                              Cuyahoga County
COUNTY OF MOBILE                              My Commission Expires December 12, 2001

    The undersigned, a Notary Public for said County and State, certify that T.B. Bender, Jr. personally came before me this day and acknowledged that s(he) is the President of Bender Shipbuilding & Repair Co., Inc. an Alabama corporation, and that, by authority duly given and as the act of the corporation, the foregoing instrument was signed by (himself) (herself) as such officer.

    Witness my hand and official seal, this 11th day of January, 1998.

My Commission expires: 5/8/99                 _____
(Notary Seal)                                 Notary Public

X:LMC\Agt\1998\BenderLse                                                    18

EXHIBIT "A"

Parcel 1.  Beginning at the Northeast intersection of
New Water Street and New Jersey Street, Mobile, Alabama,
said point being 0.75 feet South of a concrete monument, run
thence S 88° 01'03" E along the North right of way line of
New Jersey Street a distance of 385.42 feet to a point;
thence run S 02° 09' 20" W along the East face of a 6 foot
iron fence a distance of 467.40 feet to a point; thence run
S 81° 45' 02" E along a line running along the North face of
the concrete base of a 6 foot iron fence, and along an
extension of said line over the Mobile River, a distance of
1129.66 feet to a point on the West pierhead and bulkhead
line of Mobile River Harbor; thence run N 28° 54' 46" W
along said West pierhead and bulkhead line of Mobile River
Harbor, a distance of 1497.80 feet to a point designated on
the Mobile Harbor Map as No. W-10; thence run N 12° 26' 18"
W along said West pierhead and bulkhead line of Mobile River
Harbor 125.50 feet to a point; thence run N 82° 02' W 37.91
feet to a point on the North line of Lot 6 Square 166 of the
Northern Division of the Bernoudy Tract; thence run N 82°
02' W along the North line of said Lot 6, along an extension
of said North line across Commerce Street (vacated) and
along the North line of Lots 9 and 6, Square 165 of said
Northern Division of the Bernoudy Tract, a distance of 580.0



feet to an iron marker on the East right of way of New Water Street; thence run S 07° 57' W along said East right of way line of New Water Street a distance of 885.32 feet to the point of beginning. Containing 12.71 acres, more or less, land area and 15.28 acres, more or less, water area; Total area of 27.988 acres. Being the same property as shown on survey numbered Y4-14E-3.14 by Normal L. Durant, Surveyor, dated September 28, 1969 and recorded in Map Book 19, Page 97 of the Probate Court Records of Mobile County, Alabama. Less and except the following parcel, to wit:

Commencing at the Northeast intersection of New Water Street and New Jersey Street, Mobile, Alabama, said point being 0.75 feet South of a concrete monument, run thence North 07°57' East along the East right of way line of New Water Street a distance of 885.32 feet to an iron marker on the North line of Lot 6, Square 165 of the Northern Division of the Bernoudy Tract; thence along said North line of Lot 6, Square 165, the North line of Lot 9 of said Square 165 and an extension of said North line run South 82° 02 minutes East 285.09 feet to a point in the remains of an old fence line; said point being the point of beginning of the property herein described; thence along said old fence line run South 81° 11' 51" East 246.01 feet to a point; thence continuing along said old fence line run South 88° 05' 05" East 27.80 feet to a point; thence continuing along said old fence line run South 82° 40' 13" East 59.19 feet to a point on the North line of Lot 6, Square 166 of said Northern Division of the Bernoudy Tract; thence run North 82° 02' West along said North line of Lot 6 and along an extension of said North line a distance of 332.82 feet to the point of beginning. Containing 0.0119 acre.

EXHIBIT "A" (Continued)

Parcel 2. Commencing at the Northeast intersection of New Water Street and New Jersey Street, Mobile, Alabama, said point being 0.75 feet South of a concrete monument, run thence North 07° 57' East along the East right of way line of New Water Street a distance of 885.32 feet to an iron marker on the North line of Lot 6, Square 165 of the Northern Division of the Bernoudy Tract; said point being the point of beginning of the property herein described; thence along said North line of Lot 6, Square 165, the North line of Lot 9 of said Square 165 and an extension of said North line run South 82° 02' East 285.09 feet to a point in the remains of an old iron fence line; thence along said old fence line run North 81° 11' 51" West 285.13 feet to a point on the aforementioned East right of way line of New Water Street; thence along said East line of New Water Street run South 07° 57' West 4.23 feet to the point of beginning. Containing 0.0141 acre.

All said property being lying and situated in Mobile County, Alabama.



# EXHIBIT 2

## AMENDMENT TO LEASE AGREEMENT

**THIS AMENDMENT TO LEASE AGREEMENT** (this "Amendment"), is made as of the 14th day of January, 2010, by and between **PINTO ISLAND LAND COMPANY, INC.**, an Alabama corporation (hereinafter referred to as "Landlord"), and **SIGNAL SHIP REPAIR, LLC.**, a Delaware limited liability company (hereinafter referred to as "Tenant").

W I T N E S S E T H :

**WHEREAS**, Landlord and Bender Shipbuilding & Repair Co., Inc., an Alabama corporation ("Bender") entered into that certain Lease Agreement dated as of July 1, 1998 (the "Lease"), for the lease of certain real property more particularly described therein (the "Premises");

**WHEREAS**, Bender is the debtor in a bankruptcy case pending in the United States Bankruptcy Court for the Southern District of Alabama (the "Bankruptcy Court"), styled as In re: Bender Shipbuilding & Repair Co., Inc., Chapter 11 Case No. 09-12616-MAM (the "Chapter 11 Case");

**WHEREAS**, Tenant or its parent corporation, as purchaser, and Bender, as seller, have entered into that certain Asset Purchase Agreement dated as of the 14th day of January, 2010 (the "Purchase Agreement"), pursuant to which Tenant will purchase and Bender will sell certain real property and improvements thereon, together with certain related tangible and intangible assets, including all of Bender's rights and obligations under the Lease, all as more particularly described in the Purchase Agreement (the "Purchased Assets");

**WHEREAS**, in connection with the Bankruptcy Case and in accordance with the Purchase Agreement, Bender intends to assume the Lease pursuant to U.S. Bankruptcy Code Section 365;

**WHEREAS**, in accordance with the Purchase Agreement and pursuant to an Assignment and Assumption Agreement to be entered into in connection with the Closing (as defined in the Purchase Agreement), Bender intends to assign to Tenant, and Tenant intends to assume from Bender, effective as of the Closing, all Bender's right, title, obligation and interest in and to the Lease on the terms and conditions set forth herein and in such Assignment and Assumption Agreement (the "Assignment"); and

**WHEREAS**, in connection with the foregoing Assignment, Landlord and Tenant wish to amend the Lease as set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby acknowledge and agree as follows:

1.      Effective Date. The effective date of this Amendment (the "Effective Date") shall be the date of Closing, such that this Amendment shall be effective only upon the consummation

of the Assignment. If Tenant notifies Landlord in writing that the Closing will not occur for any other reason, this Amendment shall be null and void *ab initio*, and shall have no further force or effect.

2.      Landlord Consent. Subject to: (i) the terms hereof including, without limitation, Tenant's acknowledgment of and agreement to assume all of the obligations of the Lease as set forth in Section 5, hereof, (ii) the execution and delivery to Landlord of the Guarantee in the form attached hereto as Exhibit A, and (iii) the payment to Landlord all rents due, past due and payable under the Lease including the amount of rent due for the first month after the date hereof, Landlord hereby: (a) consents to the Assignment of the Lease to Tenant; and (b) acknowledges and agrees that the Assignment is not and shall not constitute a default under the applicable provisions of the Lease. For clarification, it is understood and agreed that the payment for the amount of rent due for the month of February, 2010 shall be made by Tenant to Landlord by wire transfer on the Closing date (but in no event after February 1, 2010) and that payments for the amounts due for December 2009 and January 2010 will be made to and received by Landlord by wire transfer by no later than February 16, 2010 (whether through the cure procedure under the Chapter 11 Case or directly by the Tenant; provided, however that if the payment is made directly by the Tenant, the Landlord hereby subrogates its rights for such amounts from Bender in favor of the Tenant) and if such payments are not so made and received, this amendment shall be null and void and of no further force and effect.

3.      Term. The Lease is hereby amended to provide that the term of the Lease shall be extended through the date that is January 31 2035 (the "Expiration Date"). The term "Initial Term," as used in the Lease, shall mean the term of the Lease as hereby extended through the Expiration Date. Tenant may renew the term of the Lease for an additional five (5) year period (until January 31, 2040, the "Renewal Period") by providing Landlord with written notice of such renewal at least one hundred and eighty (180) days prior to the Expiration Date. The term "Renewal Term," as used in the Lease, shall include the Renewal Period. The term "Lease Year" shall mean the first twelve (12) full calendar months after the Effective Date and each subsequent twelve (12) month period thereafter during the term and any extensions.

4.      Rent.

(a)      The Lease is hereby amended to provide that, for the period commencing on February 1, 2010 and continuing for five (5) Lease Years thereafter, Tenant shall pay to Landlord annual rent in the amount of $616,752.00, payable in equal monthly installments of $51,396 ("Initial Rental Rate").

(b)      On February 1, 2015, the amount of annual rent shall be increased to $770,940.00, which amount shall be further increased by the percentage increase (if any) in the Consumer Price Index (but in any event no more than 10%) during the immediately preceding year, and payable in equal monthly installments of $64,245.00, plus the aforementioned Consumer Price Index-based increase ("Regular Rental Rate"). On the first (1st) day of each Lease Year thereafter (including each Lease Year of the Renewal Period), the rent shall be increased by the percentage increase (if any) in the

Consumer Price Index during the immediately preceding year (but in any event no more than 10% in any single year); provided, however, that at the beginning of the eleventh Lease Year following the Effective Date and every fifth year thereafter, the rent shall be calculated as the greater of (i) 120% of the rent payable in the fifth year preceding such Lease Year or (ii) the amount of rent that would have been calculated with the normal CPI increases (subject to the annual ten percent (10%) cap).

5.  Acknowledgment of Assumption.  Tenant acknowledges and agrees that it has fully assumed all of the obligations of the "Tenant" as defined in the Lease, whether arising or accruing prior to or after the date of this Amendment, and notwithstanding the Chapter 11 Case or any effect thereof on the Lease or the obligations thereunder – it being absolutely clear that Landlord agrees to this Amendment only on and subject to the condition that Tenant has assumed all the obligations of Bender under the Lease, including without limitation,  any obligations with respect to the environmental or other condition of the Premises, whenever they might have or may accrue and without any effect from the Chapter 11 Case.  In consideration thereof, Landlord hereby subrogates its rights, if any, against Bender in favor of Tenant to the extent Tenant has assumed and performed any obligation that Bender may have had responsibility for under the terms of the Lease, it being understood, however, that such subrogation in no way detracts from Tenant's direct liability to perform any such obligation as provided under the Lease, whether such obligation arose or accrued prior to or after the execution hereof or the date of the Chapter 11 Case.

6.  Landlord and Tenant hereby acknowledge and agree that no term or provision of the Lease shall be modified or amended by this Amendment, except as set forth herein.

7.  Any and all capitalized terms not specifically defined herein shall have the meanings as provided in the Lease.

8.  This Amendment may be executed in any number of counterparts.  Each counterpart shall be deemed an original hereof, and all counterparts when taken together, shall constitute one and the same instrument.

(Signatures on Following Page)

IN WITNESS WHEREOF, Landlord and Tenant have hereunto caused this Amendment to be executed as of the day and year first above written.

**LANDLORD:**

**PINTO ISLAND LAND COMPANY, INC.,** an Alabama corporation

By: _____

Name: JOHN L. SELMAN

Its: PRESIDENT

**TENANT:**

**SIGNAL SHIP REPAIR, LLC,** a Delaware limited liability company

By: _____

Name: Chris Cunningham

As Secretary of Signal International, Inc., its Managing Member

STATE OF ___GEORGIA___ )
COUNTY OF ___GLYNN___ ) ss.
)

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that John L. Selman, whose name as President of **PINTO ISLAND LAND COMPANY, INC.**, an Alabama corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the 24th day of January, 2010.

_____
Notary Public

My Commission Expires: 8-18-13

STATE OF ___ALABAMA___ )
COUNTY OF ___MOBILE___ ) ss.
)

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that CHRIS CUNNINGHAM, whose name as SECRETARY of Signal International Inc., a corporation, as managing member of **SIGNAL SHIP REPAIR, LLC**, a Delaware limited liability company, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation, acting in its capacity as such managing member on the day the same bears date.

Given under my hand this the 22 day of January, 2010.

_____
Notary Public
My Commission Expires: 10/30/2012

# EXHIBIT 3

Guaranty of Lease

This Guaranty is made as of this 14th day of January, 2010 by Signal International, Inc., a Delaware corporation (hereafter whether one or more collectively, "Guarantor") to and in favor of Pinto Island Land Company, Inc., an Alabama corporation (hereafter "Landlord").

## WITNESSETH:

WHEREAS, by Lease Agreement dated July 1, 1998, Landlord has leased to Bender Shipbuilding & Repair Co., Inc. ("Original Tenant") certain premises located in Mobile County Alabama and more particularly described therein (the "Lease" which term includes the same as it may hereafter be modified, amended, extended or renewed, including without limitation as amended and assumed pursuant to the Amendment described below); and

WHEREAS, by Amendment to Lease Agreement dated of even date herewith (the "Amendment"), the Lease is being amended and Signal Ship Repair, LLC, a Delaware limited liability company ("Tenant") is evidencing its assumption of the obligations of the "Tenant" under the Lease; and

WHEREAS, Landlord has required the Guarantor to execute this Guaranty of Lease ("Guaranty") as a condition to the Landlord entering into the Amendment; and

WHEREAS, Guarantor will receive direct or indirect benefit from the Landlord entering into the Amendment with the Tenant.

NOW, THEREFORE, in order to induce Landlord to enter into the Amendment and for other good and valuable consideration, the undersigned Guarantor hereby agrees as follows:

1.      Guarantor hereby absolutely, unconditionally, and irrevocably jointly and severally guarantees to Landlord the full and prompt payment of all base rent and additional rent and any and all other sums and charges payable by Tenant under the Lease (collectively, the "Payment Obligations") and hereby further guarantees the full and timely performance and observance of all of the covenants, terms conditions and agreements therein provided to be performed and observed by Tenant (the "Performance Obligations" and together with the Payment Obligations collectively, the "Obligations"). In the event of a default under the Lease, Guarantor hereby covenants and agrees with Landlord: (i) to make the due and full punctual payment of all Payment Obligations payable by Tenant under the Lease; (ii) to effect prompt and complete performance of all and each of the Performance Obligations, contained in the Lease on the part of Tenant to be kept, observed and performed; and (iii) to indemnify and save harmless Landlord from any loss, costs or damages arising out of any failure by Tenant to pay or perform any Obligation including, without limitation, attorneys' fees and costs of collection. This Guaranty is a continuing guaranty of payment and performance and is not conditional or contingent upon any attempt to collect from Tenant or upon any other condition or contingency.

2.      In the event of a default under the Lease, Guarantor waives any right to require Landlord to first:  (a) proceed against Tenant or pursue any rights or remedies with respect to the Lease; (ii) proceed against or exhaust any security that Landlord holds from Tenant; or (iii) pursue any other remedy whatsoever. Landlord shall have the right to enforce this Guaranty

regardless of the acceptance of additional security from Tenant and regardless of the release or discharge of Tenant or any guarantor by Landlord or by others, or by operation of law.

3. Guarantor hereby expressly waives: (a) any right of setoff, counterclaim or deduction against amounts due under this Guaranty; (b) notice of the acceptance of this Guaranty and notice of default of Tenant under the Lease; and (c) the right to interpose all substantive and procedural defenses of the law of guaranty, indemnification and suretyship, except the defenses of prior payment or prior performance.

4. Without limiting the generality of the foregoing, the liability of Guarantor under this Guaranty shall not be deemed to have been waived, released, discharged, impaired or affected by (a) reason of any waiver or failure to enforce or delay in enforcing any of the Obligations, or (b) the granting of any indulgence or extension of time to Tenant, or (c) the assignment of the Lease, or the subletting of the Premises by Tenant, with or without Landlord's consent, or (d) the expiration of the term, or (e) if Tenant holds over beyond the term of the Lease, or (f) any merger or reorganization or the release or discharge of Tenant or any other guarantor in any voluntary or involuntary receivership, bankruptcy, winding-up or other creditors' proceedings, or (g) the rejection, disaffirmance or disclaimer of the Lease by any party in any action or proceeding, or (h) the release of any collateral held for the Obligations or release of any Guarantor or any other guarantor, or (i) any defect or invalidity of the Lease [or (j) the transfer by Guarantor of any or all of the capital stock of Tenant,] and shall continue with respect to the periods prior thereto and thereafter. The liability of the Guarantor shall not be affected by any repossession, re-entry or re-letting of the Premises by Landlord. [provided, however, that the net payments received by Landlord after deducting all costs and expenses of repossession and/or reletting the same (including, without limitation, any attorney fees, brokerage fees and any reasonable costs or expenses incurred in redecorating, remodeling, or altering the Premises for reletting), shall be credited from time to time by Landlord to the account of Tenant and Guarantor and Guarantor shall pay any balance owing to Landlord from time to time, immediately upon being given written notice of demand by Landlord in the manner for providing notice set forth in the Lease.]

5. The liability of Guarantor under this Guaranty shall not be released by any modification or amendment to the Lease (including any extension or renewal of the term of the Lease), and in the case of any such modification, the liability of Guarantor shall be modified in accordance with the term of any such modification of the Lease. Guarantor waives any notice of the modification or amendment of the Lease.

6. Guarantor shall pay Landlord's reasonable attorneys' fees and all costs and other expenses incurred in any collection or attempted collection of this Guaranty or in any negotiations relative to the Obligations guaranteed under this Guaranty whether or not a lawsuit is commenced. All rights and remedies of Landlord under this Guaranty shall be cumulative and may be exercised singly or concurrently.

7. This Guaranty shall remain in full force and effect until the payment or performance of all Obligations and the other amounts payable under this Guaranty (whether or not the Lease shall have been terminated). Until the payment and performance of all Obligations and the amounts payable under this Guaranty, Guarantor:

(a)     Shall have no right of subrogation against Tenant by reason of any payments or acts of performance by the Guarantor in compliance with the obligations of the Guarantor under this Guaranty;

(b)     Waives any right to enforce any remedy which Guarantor now or hereafter shall have against Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of Guarantor under this Guaranty; and

(c)     Subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to the Landlord under the Lease.

8.     This instrument may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by Guarantor and the Landlord.

9.     All of the terms, agreements and conditions of this Guaranty shall extend to and be binding upon Guarantor, and the heirs, executors, personal administrators, and/or successors and assigns of Guarantor and shall inure to the benefit of and may be enforced by Landlord, its successors and assigns, and the holder of any mortgage to which the Premises may be subject at any time or from time to time.

10.     The use of the singular herein shall include the plural and the use of any gender shall include all genders or neuter as the case may be. This Guaranty is entered into in the State of Alabama and shall be governed by and construed in accordance with the laws of the State of Alabama.

11.     If Guarantor consists of more than one person or entity, the liability of each such person or entity under this Guaranty shall be joint and several.

12.     The undersigned individual acknowledges that he/she is a duly authorized officer of the Guarantor with full power and authority to execute and deliver this Guaranty. This Guaranty has been executed and delivered by Guarantor and constitutes the valid, binding and legal obligation of the Guarantor. Guarantor agrees that it will, from time to time, within ten (10) days of Landlord's request, executed and deliver a statement certifying that this Guaranty is unmodified and in full force and effect.

13.     All notices under this Guaranty shall be delivered by nationally recognized overnight express courier, signature required, to the address of the parties first set forth above. All notices shall be effective one day after depositing the same with such courier.

14.     If any provision of this Guaranty or the application thereof to any person or circumstances shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Guaranty and the application of that provision to other persons or circumstances shall not be affected but rather shall be enforced to the extent permitted by law. This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted.

(i)     As a further inducement to Landlord to enter into the Amendment and to accept this Guaranty, Guarantor hereby intentionally, knowingly and voluntarily waives any right to a trial by jury in any lawsuit, proceeding, counterclaim, or any other litigation procedure based upon, or arising out of this Guaranty. In extension of the foregoing, the Guarantor specifically consents to trial before a court respecting any such matter. Guarantor will not seek to consolidate any such action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived.

Signal International, Inc.

By: _____

Name: Chris Cunningham

Title: Secretary

STATE OF ALABAMA          )
                          ) ss.
COUNTY OF MOBILE          )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that CHRIS CUNNINGHAM, whose name as SECRETARY of SIGNAL INTERNATIONAL INC., a Delaware corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the 22 day of January, 2010.

_____
Notary Public

My Commission Expires: 10/3/2012

# **EXHIBIT 4**

## LANDLORD CONSENT, WAIVER AND ESTOPPEL AGREEMENT

### Dated as of February 27, 2014

WHEREAS, PINTO ISLAND LAND COMPANY, INC., an Alabama corporation (hereinafter, "Landlord") has heretofore leased certain lands described on Exhibit A attached hereto (hereinafter the "Premises") to SIGNAL SHIP REPAIR, LLC, a Delaware limited liability company (hereinafter "Tenant"), pursuant to that certain Lease Agreement dated July 1, 1998 (the "Original Lease"), as amended and extended by that certain Amendment to Lease Agreement dated as of January 14, 2010 (the "Amendment", the Original Lease and the Amendment, collectively, the "Lease");

WHEREAS, Signal International, Inc., a Delaware corporation, as the borrower ("Borrower"), and Tenant and certain other subsidiaries of Borrower, as guarantors (collectively, the "Guarantors"), intend to enter into a Credit Agreement among Borrower, the Guarantors, The Teachers' Retirement System of Alabama, a body corporate of the State of Alabama created under §§ 16-25-1 et. seq. Code of Alabama (1975), as amended, as collateral agent (hereinafter "Lender"), and the lenders from time to time party thereto (as the same has and may in the future be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement), which Credit Agreement provides for certain loans (hereinafter the "Loans") to Borrower;

WHEREAS, Lender is unwilling to make the Loans unless Tenant's obligations under the Credit Agreement are secured by a first leasehold mortgage upon Tenant's interest as tenant under the Lease in the Premises (the "Mortgage"); and

WHEREAS, the parties intend to set forth certain rights and obligations of the parties with respect to the Lease and Mortgage pursuant to the terms and conditions of this Landlord Consent, Waiver and Estoppel Agreement (this "Agreement").

NOW THEREFORE, Landlord hereby certifies to Lender as follows:

1.     Landlord acknowledges receipt of a copy of the Mortgage and hereby consents to Tenant's execution and delivery of the Mortgage as required by, and subject to the terms of Section 21 of the Lease. Landlord and its successors and assigns shall be bound to Tenant and its successors and assigns, including the Lender, as permitted by the terms of the Lease (all of such persons hereinafter referred to singularly and collectively as the "Tenant Parties") under all of the provisions of the Lease with the same force and effect as if an original party thereto. So long as there is not a default (as defined in the Lease), the Tenant Parties shall and may peaceably and quietly have, hold and enjoy the Premises for the full term of the Lease in accordance with its terms.

2.     Notwithstanding any provision in the Lease to the contrary, Landlord hereby subordinates in Lender's favor any and all liens upon Tenant's moveable trade fixtures, machinery, equipment or personal property that the Landlord may have or in the future may acquire, however these liens may arise, whether through a levy for rent or otherwise. For purposes of this instrument, the term "trade fixtures, machinery, equipment or personal property"

20299987 v4

shall for all purposes be deemed to **exclude** any bulkheads currently existing on the Premises or constructed on the Premises at any time hereafter.

3.      Landlord represents to Lender that a true and complete copy of the lease and a copy of the Guaranty of Lease from Signal International, Inc. dated as of the 14th day of January 2010 (the "Guaranty") are attached as Exhibit B and the same are the only agreements between Tenant and Landlord (including any subordination, non-disturbance and attornment agreements) relating to the Premises. Except for the Amendment, the Lease has not been amended, assigned or otherwise modified and except for the Guaranty, there are no guarantees of Tenant's obligations under the Lease. To the knowledge of the Landlord, the Lease is in good standing and in full force and effect on the date hereof; provided, however, that Landlord represents that it has not consented to any subleases or sublicenses of the Premises and, to the extent there are any subtenants or sublicenses on the premises, Landlord reserves the right to call a default under the Lease unless the consent as required under the Lease is obtained.

4.      Landlord hereby agrees that the Lease shall not be modified without providing at least thirty (30) days prior written notice to the Lender. Landlord hereby agrees that the Lease shall not be terminated (except for a termination at the end of the stated term of the Lease) or cancelled, nor shall a surrender of the Premises be accepted, as a result of a default or event of default under the Lease, unless Landlord shall have provided notice to Lender of any such default or event of default and Lender shall have been given an equal number of days as provided to the Tenant under the terms of the Lease (after receipt of such notice) to cure such default or event of default.

5.      Landlord hereby agrees that should Lender become a successor or assignee under the Lease through the exercise of remedies under the Mortgage or should Lender become owner of the leasehold estate in the Premises created by the Lease, leasehold title to the Premises (subject to all the provisions of the Lease), shall automatically vest in Lender.

6.      Landlord confirms that the Premises are not currently subject to any mortgage encumbering the fee estate of the Premises.

7.      In the event of any conflict between the provisions of the Lease and this Agreement, the provisions of this Agreement shall control. Notwithstanding the foregoing, nothing herein shall be deemed to be an amendment or modification of the Lease as between the Landlord and the Tenant and the Tenant shall have no rights against the Landlord arising from this instrument, by implication or otherwise.

8.      To the best of Landlord's knowledge, there are no offsets, counterclaims, defenses, deductions or credits whatsoever outstanding with respect to the lease, or any amounts owing under any other agreement in connection with the Lease.

9.      This Agreement shall be interpreted according to the laws of the State of Alabama. Any covenant, term, or provision of this Agreement that calls for any action or imposes any liability or obligation after the expiration or termination of this Agreement shall survive the expiration or termination of this Agreement. This Agreement constitutes the entire Agreement and understanding of the parties with respect to the subject matter hereof and

supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter. This Agreement shall not be modified or amended except by mutual written agreement. The waiver by any party of a breach or violation of any provisions of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision. In the event any provision of this Agreement is held to be unenforceable or invalid for any reason, this Agreement shall remain in full force and effect and enforceable in accordance with its terms disregarding such enforceable or invalid provision. Any captions or headings in this Agreement are made for convenience and general reference only and should not be construed to describe, define or limit the scope and intent of the provisions of this Agreement. This Agreement may be executed in one or more counterparts, each of which shall be an original and taken together shall constitute the same document. Signature and acknowledgement pages, if any, may be detached from the counterparts and attached to a single copy of this document to form one document. The parties acknowledge that this Agreement was initially prepared by the Lender solely as a convenience and that all parties hereto, and their counsel, have read and fully negotiated all of the language used in this Agreement and that, because all parties and their counsel participated in negotiating and drafting this Agreement, no rule of construction shall apply to this Agreement which construes ambiguous and unclear language in favor of or against any party because such party drafted this Agreement. With respect to all provisions of this Agreement, time is of the essence. The word "including", when following any general statement, term or matter shall not be construed to limit such statement, term or matter to the specific terms or matters as provided immediately following the word "including" or to similar items or matters, whether or not nonlimiting language (such as "without limitation", "but not limited to", or words of similar import) is used with reference to the word "including" or the similar items or matters, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of the general statement, term or matter. Whenever the context so permits, the use of the plural shall include the singular, the singular shall include the plural, and any gender shall be deemed to include all genders.

    10. Any notice to be given hereunder to the Lender by the Landlord shall be deemed given two business days after being placed by Landlord for delivery by nationally recognized overnight express mail courier to the following addresses (or such other address as provided to Landlord by written notice (in the aforementioned fashion) from Lender):

      The Teachers' Retirement System Of Alabama
      c/o M. Hunter Harrell
      Director of Private Placements
      The Retirement Systems of Alabama
      201 South Union Street
      Montgomery, AL 36130

      *With a copy to*:

      Burr & Forman LLP
      420 North 20th Street
      Suite 3400
      Birmingham, AL 35203
      Attention: Damon P. Denney, Esq.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be executed by its duly authorized officers and/or representative, to be effective the day and year first above written.

LANDLORD:

PINTO ISLAND COMPANY, INC., an Alabama corporation

By: _____

Name: _____

Title: _____

STATE OF _Georgia_ }
COUNTY OF _Glynn_ }

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that _John Selmani_, whose name as _President_ of Pinto Island Land Company, Inc., an Alabama corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that being informed of the contents of said instrument, he/she, as such representative and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 25th day of ~~January~~ February, 2014

_____
NOTARY PUBLIC
My Commission Expires: _____

(AFFIX NOTARIAL SEAL)