**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.**[1] | Case No. 15-11498 (MFW) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 386** |

**NOTICE OF FILING OF SUPPLEMENT TO THE DEBTORS' FIRST AMENDED
JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE, DATED OCTOBER 8, 2015**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

submit this plan supplement (the "<u>Plan Supplement</u>") in support of, and in accordance with, the

*Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy*

*Code,* dated October 8, 2015 [Docket No. 386] (as may be amended, supplemented, or modified

from time to time, the "<u>Plan</u>").  Capitalized terms used but not defined herein shall have the

meanings ascribed to such terms in the Plan.  The documents contained in this Plan Supplement

are integral to, part of, and incorporated by reference into the Plan.  These documents have not

yet been approved by the Bankruptcy Court.  If the Plan is confirmed by the Bankruptcy Court,

the documents contained in this Plan Supplement will be approved by the Bankruptcy Court

pursuant to the Confirmation Order.

<u>**Contents**</u>

This Plan Supplement contains the following documents, each as may be amended,

modified, or supplemented from time to time by the Debtors in accordance with the Plan as set

forth below:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066).  The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

| Exhibit | Plan Supplement Document |
|---------|--------------------------|
| 1 | Litigation Settlement Trust Agreement |
| 2 | Litigation Settlement TDP |
| 3 | Identity of Litigation Settlement Trustee |
| 4 | Identity of Litigation Settlement TAC Members |
| 5 | Signal Liquidating Trust Agreement |
| 6 | Identity of Signal Liquidating Trustee |
| 7 | Westport Participation Agreement |
| 8 | Apology Letter |

Certain documents, or portions thereof, contained in this Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. Subject to the express provision of the Plan, the Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court..

Dated:   November 2, 2015             YOUNG CONAWAY STARGATT & TAYLOR, LLP
         Wilmington, Delaware

*/s/ Kenneth J. Enos*
M. Blake Cleary (No. 3614)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Travis G. Buchanan (No. 5595)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 1**

**Litigation Settlement Trust Agreement**

01:17910636.1

**SIGNAL LITIGATION SETTLEMENT TRUST AGREEMENT**

NY\7379172.9

## LITIGATION SETTLEMENT TRUST AGREEMENT[1]

This Litigation Settlement Trust Agreement (the "**Agreement**"), dated as of _____, 2015, and effective as of the later of (a) the date on which all parties to this Agreement have executed this Agreement or (b) the Effective Date of the Plan, is entered into by Signal International, Inc., Signal Ship Repair, LLC, Signal International, LLC, Signal International Texas GP, LLC, and Signal International Texas, L.P. (the "**Debtors**" or the "**Settlors**"), debtors and debtors-in-possession in the Bankruptcy Cases, as Settlors and by the Litigation Settlement Trustee and the Litigation Settlement Trust Advisory Committee ("**Litigation Settlement TAC**") identified on the signature page hereof.

## RECITALS

WHEREAS, on the Petition Date, each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Bankruptcy Cases, which are captioned *In re Signal International, Inc. et al.,* Case No. 15-11498 (MFW), are being jointly administered by the Bankruptcy Court; and

WHEREAS, as of the Petition Date, certain Debtors had been named as defendants in the H-2B Litigation; and

WHEREAS, on _____, 2015, the Bankruptcy Court entered the Confirmation Order confirming the Plan; and

WHEREAS, the Plan Documents, provide, among things, for the creation of the Litigation Settlement Trust; and

WHEREAS, pursuant to the Plan, the Litigation Settlement Trust shall use the Litigation Settlement Trust Assets to pay Litigation Claims; and

WHEREAS, the Plan provides, among other things, for the complete treatment of all of the Debtors' liabilities and obligations with respect to Litigation Claims; and

WHEREAS, pursuant to the Plan, the Litigation Settlement Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**IRC**"); and

WHEREAS, it is the intent of the Settlors, the TRSA and ERSA, the Litigation Settlement Trustee and the Litigation Settlement TAC that the Litigation Settlement Trust be administered, maintained, and operated at all times through mechanisms that provide reasonable assurance that the Litigation Settlement Trust will administer, process, settle, resolve, liquidate,

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the *Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, as may be amended, modified or supplemented from time to time (the "**Plan**") and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), shall have the meanings given to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

satisfy and pay, if applicable, all Litigation Claims pursuant to this Agreement and the Litigation Settlement Trust TDP in compliance with the terms of this Agreement; and

WHEREAS, the Bankruptcy Court has determined that the Litigation Settlement Trust and the Plan satisfy all the legal prerequisites for issuing the Channeling Injunction pursuant to section 105 of the Bankruptcy Code, and such Channeling Injunction has been entered in connection with the Confirmation Order.

NOW, THEREFORE, for good and valuable consideration, it is hereby agreed as follows:

## Section I
## AGREEMENT OF TRUST

**1.1.    Creation and Name**.  The Debtors, as Settlors, hereby create the Litigation Settlement Trust, which is the trust provided for and referred to in Article _VI of the Plan. The Litigation Settlement Trustee may transact the business and affairs of the Litigation Settlement Trust in the name of the Litigation Settlement Trust.

**1.2.    Purpose.**   The purpose of the Trust is to assume the Debtors' liabilities for Litigation Claims and to use the Litigation Settlement Trust's assets and income to pay holders of Litigation Claims in accordance with this Agreement and the Litigation Settlement Trust TDP and in such a way that similarly-situated holders of Litigation Claims are treated equitably and in a similar manner, subject to the terms of the Plan, this Agreement, and the Litigation Settlement Trust TDP.

**1.3.    Transfer of Assets**.  Pursuant to Section VI.G of the Plan, upon the Effective Date, the Purchaser and the Debtors, as applicable, will transfer, issue, or assign as appropriate and deliver to the Litigation Settlement Trust, the Litigation Settlement Trust Assets at the time and in the manner contemplated by the Plan Documents, in each case free and clear of any Claims, Liens, Equity Interests or other interests of any creditor, shareholder or other Entity, other than the continuing participation interest in favor of the Purchaser.

**1.4.    Acceptance of Assets and Assumption of Liabilities.**

(a)    In furtherance of the purposes of the Litigation Settlement Trust, the Litigation Settlement Trustee, on behalf of the Litigation Settlement Trust, hereby expressly accepts the transfer and assignment to the Litigation Settlement Trust of the Litigation Settlement Trust Assets in the time and manner contemplated by the Plan. The Litigation Settlement Trust shall receive the benefits of and shall be bound by the Plan Support Agreement as if it had been a party thereto at the time of execution of the Plan Support Agreement.

(b)    In furtherance of the purposes of the Litigation Settlement Trust, the Litigation Settlement Trustee, on behalf of the Litigation Settlement Trust, expressly assumes liability for all Litigation Claims, subject to and as provided in the Plan and the Plan Documents.  The Litigation Settlement Trust shall have all defenses, cross-claims,

-2-

offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors had, have or would have had under the Plan, applicable law or under any agreement related thereto.

(c)     No provision herein or in the Litigation Settlement TDP shall be construed to mandate distributions on any Litigation Claim or other actions that would contravene the Litigation Settlement Trust's compliance with the requirements of a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

(d)     Nothing in this Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction issued in connection with the Plan or the Litigation Settlement Trust's assumption of all liability for Litigation Claims.

### Section II
### POWERS AND TRUST ADMINISTRATION

### 2.1   Powers.

(a)     The Litigation Settlement Trustee is and shall act as the fiduciary to the Litigation Settlement Trust in accordance with the provisions of this Agreement and the Plan, and shall have the power, on behalf of the Litigation Settlement Trust, to exercise all rights and fulfill all obligations of the Litigation Settlement Trust hereunder and under the Plan.  The Litigation Settlement Trustee shall, at all times, administer the Litigation Settlement Trust and the Litigation Settlement Trust Assets in accordance with the purposes set forth in Section 1.2, above. Subject to the limitations set forth in this Agreement, the Litigation Settlement Trustee shall have the power to take any and all actions that, in the judgment of the Litigation Settlement Trustee, are necessary or proper to fulfill the purposes of the Litigation Settlement Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law or otherwise specified herein, the Litigation Settlement Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred on the Litigation Settlement Trustee hereunder.

(c)     Without limiting the generality of Section 2.1(a), above, and except as limited below, the Litigation Settlement Trustee shall have the power to:

(i)     receive and hold legal title to the Litigation Settlement Trust Assets;

(ii)     invest the monies held from time to time by the Litigation Settlement Trust;

NY\7379172.9

(iii)    pay Litigation Settlement Trust Expenses, subject to Section 3.3, below, including, but not limited to:

(A)    reasonable compensation to employees, and legal, financial, accounting, investment, auditing, forecasting, and others hired or retained by the Litigation Settlement Trust, including, without limitation, any such persons hired or retained in connection with the alternative dispute resolution and litigation activities of the Litigation Settlement Trust, ;

(B)    compensation of the Litigation Settlement Trustee, and reimbursement of the Litigation Settlement Trustee and the Litigation Settlement TAC members all reasonable out-of-pocket costs and expenses actually incurred by such persons in connection with the performance of their duties hereunder; and

(C)    costs and expenses of the Litigation Settlement Trust related to the Westport Participation Agreement, the Westport Loan, or the Litigation Settlement Trust Assets;

(iv)    establish such reserves and accounts, including but not limited to reserves for the Litigation Settlement Trust Expenses, with the Litigation Settlement Trust Assets as deemed by the Litigation Settlement Trustee to be useful in carrying out the purposes of the Litigation Settlement Trust;

(v)    participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(vi)    establish, supervise and administer the Litigation Settlement Trust in accordance with the Plan, this Agreement and the Litigation Settlement TDP, and administer, amend, supplement, or modify the Litigation Settlement TDP in accordance with the terms thereof, a copy of which is attached hereto as Exhibit ___;

(vii)    appoint such officers and hire employees, and engage legal, financial, accounting, investment, auditing, forecasting, and other consultants and agents as the business of the Litigation Settlement Trust may require; and to delegate to such persons power and authority as the fiduciary duties of the Litigation Settlement Trustee permit and as the Litigation Settlement Trustee, in his or her discretion, deems advisable or necessary to carry out the purposes of the Litigation Settlement Trust in accordance with the Plan and this Agreement;

(viii)    execute and deliver such instruments as the Litigation Settlement Trustee considers proper in administering the Litigation Settlement Trust;

(ix)    enter into such other arrangements with third parties as are deemed by the Litigation Settlement Trustee to be useful in carrying out the purposes of

NY\7379172.9

the Litigation Settlement Trust, provided such arrangements do not conflict with any other provision of this Agreement;

(x)     defend and indemnify, and if appropriate purchase insurance indemnifying (a) the Litigation Settlement Trustee, (b) the Litigation Settlement TAC, and (c) the officers and employees of, and the legal, financial, accounting, investment, auditing, forecasting, and other advisors or consultants hired or retained by the Litigation Settlement Trust (the "**Additional Indemnitees**"), to the fullest extent that a corporation or trust organized under the law of the State of Delaware is from time to time entitled to indemnify and/or insure its directors, officers, employees, agents, advisors and representatives;

(xi)    consult with the Litigation Settlement TAC at such times and with respect to such issues relating to the conduct of the Litigation Settlement Trust as the Litigation Settlement Trustee considers desirable;

(xii)   make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Litigation Settlement Trust, any Claim, right, action, or cause of action, if any, included in the Litigation Settlement Trust Assets before any court of competent jurisdiction; provided that the Litigation Settlement Trust must seek approval from the Bankruptcy Court, after notice to parties in interest, of any settlement of actions that are pending before the Bankruptcy Court as of the Effective Date; and

(xiii)  process and resolve, as appropriate, Litigation Claims as provided in the Plan, this Agreement and the Litigation Settlement TDP.

(d)     The Litigation Settlement Trustee shall not have the power to cause the Litigation Settlement Trust to guarantee debt of any other Entity.

(e)     The Litigation Settlement Trustee shall give the Litigation Settlement TAC prompt notice of any act performed or taken pursuant to Sections 2.2(c)(i) and (ii), and 2.2(d), and any act proposed to be performed or taken pursuant to Section 2.2(f), below.

## 2.2     <u>General Administration.</u>

(a)     The Litigation Settlement Trustee shall act in accordance with this Agreement, the Litigation Settlement TDP, and the Plan. In the event of an inconsistency between the Plan and this Agreement, the Plan shall govern.

(b)     The Litigation Settlement Trustee shall:  (i) timely file such income tax and other returns and statements required to be filed by the Litigation Settlement Trust and shall from the Litigation Settlement Trust Assets timely pay all taxes required to be paid by the Litigation Settlement Trust, (ii) comply with all withholding obligations, as required under the applicable provisions of the IRC and of any state law and any regulations promulgated thereunder, (iii) meet without limitation all requirements

necessary to qualify and maintain qualification of the Litigation Settlement Trust as a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC, and (iv) take no action that could cause the Litigation Settlement Trust to fail to qualify as a qualified settlement fund within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

(c)    The Litigation Settlement Trustee shall timely account to the Bankruptcy Court as follows:

(i)    Depending on whether the Litigation Settlement Trustee decides, in his or her sole discretion, to operate the Litigation Settlement Trust on a calendar or fiscal year basis, the Litigation Settlement Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, but in no event later than one hundred and twenty (120) days following the end of each calendar or fiscal year, an annual report containing, *inter alia,* financial statements of the Litigation Settlement Trust (including, without limitation, a balance sheet of the Litigation Settlement Trust as of the end of such fiscal year and a statement of operations for such fiscal year). The Litigation Settlement Trustee shall provide a copy of such report to the Litigation Settlement TAC, when such reports are filed with the Bankruptcy Court.

(ii)    Simultaneously with delivery of each set of financial statements referred to in Section 2.2(c)(i), above, the Litigation Settlement Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of Litigation Claims disposed of during the period covered by the financial statements. The Litigation Settlement Trustee shall provide a copy of such report to the Litigation Settlement TAC, when such report is filed with the Bankruptcy Court.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court.

(d)    The Litigation Settlement Trustee shall cause to be prepared as soon as practicable prior to the commencement of each calendar or fiscal year a budget and cash flow projections covering such calendar or fiscal year. The Litigation Settlement Trustee shall provide a copy of the budget and cash flow projections to the Litigation Settlement TAC.

(e)    The Litigation Settlement Trustee shall consult with the Litigation Settlement TAC (i) on the general implementation and administration of the Litigation Settlement Trust; (ii) on the general implementation and administration of the Litigation Settlement TDP; and (iii) on such other matters as may be required under this Agreement and the Litigation Settlement TDP.

-6-

(f)     The Litigation Settlement Trustee shall meet with the Litigation Settlement TAC no less often than semiannually.  The Litigation Settlement Trustee otherwise may meet with the Litigation Settlement TAC as and when deemed advisable by the Litigation Settlement Trustee.  Any meetings taking place pursuant to this Section 2.2(f) may occur in person or telephonically.

(g)     The Litigation Settlement Trustee, upon notice from the Litigation Settlement TAC, if practicable in view of pending business, shall at the next meeting with the Litigation Settlement TAC, consider issues submitted by the Litigation Settlement TAC for consideration by the Litigation Settlement Trust.

(h)     Periodically, but not less often than once a year, the Litigation Settlement Trustee shall make available to Claimants and other interested parties the number of claims that have been resolved by the Litigation Settlement Trust  and the amounts of the awards in each case.

**2.3**     **Litigation Claims Administration.**     The Litigation Settlement Trustee shall promptly proceed to implement the Litigation Settlement TDP.

### Section III
### ACCOUNTS AND PAYMENTS

**3.1**     **Accounts.**  The Litigation Settlement Trustee may, from time to time, create such accounts and reserves as he or she may deem necessary, prudent, or useful to (a) provide for the payment, or to make provision for future payment, of Litigation Settlement Trust Expenses, up to the Litigation Settlement Expenses Cap (as defined in Section 3.3, below), (b) provide for the payment, or to make provision for future payment, on account of liquidated Litigation Claims, and/or (c) account for any tax withholding and tax payments that may be necessary with respect to amounts to be paid to Holders of liquidated Litigation Claims; and may, with respect to any such account or reserve, restrict the use of monies therein.  The Litigation Settlement Trustee shall include a reasonably detailed description of any account or reserve created in accordance with this Section 3.1 in the annual reports described in Section 2.2(c)(i) hereof, which description shall include, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account, and the payments or disbursements made from each such account.

**3.2**     **Source of Payments.**  All Litigation Settlement Trust Expenses and all other liabilities of the Litigation Settlement Trust, including for Litigation Claims and shall be payable solely by the Litigation Settlement Trustee out of the Litigation Settlement Trust Assets.  Neither any Litigation Protected Party, nor the Litigation Settlement Trustee in his or her personal capacity, the Litigation Settlement TAC, or any of their respective officers, agents, advisors, or employees shall be liable for the payment of Litigation Settlement Trust Expenses or any other liability of the Litigation Settlement Trust. The Litigation Settlement Trustee shall include a reasonably detailed description of Litigation Settlement Trust Expenses and other liabilities paid in accordance with this Section 3.2 in the annual reports described in Section 2.2(c)(i), above.

**3.3**     **Litigation Settlement Trust Expenses**.  Litigation Settlement Trust Expenses

-7-

shall be paid as and when incurred by the Litigation Settlement Trust, up to a total of $100,000 (the "**Litigation Settlement Trust Expenses Cap**"). The Litigation Settlement Trustee may seek approval from the Litigation Settlement TAC for increases to the Litigation Settlement Trust Expenses Cap by making a request to the Litigation Settlement TAC. The Litigation Settlement TAC shall, within thirty (30) days of receiving such request, approve or reject such request by notice to the Litigation Settlement Trustee. Such approval shall require the affirmative vote of a majority of the members of the Litigation Settlement TAC.

      **3.4**    **Litigation Claim Payments; Withholding**. Litigation Claims shall be submitted to the Trust in the manner prescribed in the Litigation Settlement Trust TDP, and resolved and paid, where applicable, in accordance with the procedures set forth in the Litigation Settlement Trust TDP. Litigation Claims shall be paid from the **"Litigation Claims Payment Fund"**, consisting of the total sum of the Litigation Settlement Trust Assets, less the Litigation Settlement Trust Expenses Cap. The Litigation Settlement Trustee shall withhold from any distributions to be made to Holders of allowed Litigation Claims, any and all amounts, determined pursuant to the Litigation Settlement Trust TDP and the Litigation Settlement Trustee's reasonable sole discretion, as required under applicable law, regulation, rule, ruling, directive, or other governmental requirement. The Litigation Settlement Trustee shall (a) remit such withheld amounts to the appropriate governmental entity(ies), and (b) report to such appropriate governmental entity(ies) any distributions and withholdings on account of an allowed Litigation Claim, as required by applicable law, regulation, rule, ruling, directive, or other governmental requirement. Notwithstanding the foregoing, each Holder of an allowed Litigation Claim that is to receive a distribution pursuant to the Litigation Settlement Trust TDP shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.

### Section IV
### LITIGATION SETTLEMENT TRUSTEE

      **4.1**    **Number.** There shall be one (1) Litigation Settlement Trustee. The initial Litigation Settlement Trustee shall be the person named on the signature page hereof.

**4.2**    **Term of Service.**

      (a)    The initial Litigation Settlement Trustee named pursuant to Section 4.1, above, shall serve from the Effective Date until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b), below, (iii) his or her removal pursuant to Section 4.2(c), below, or (iv) the termination of the Litigation Settlement Trust pursuant to Section 6.4, below.

      (b)    A Litigation Settlement Trustee may resign at any time by written notice to the Litigation Settlement TAC. Such notice shall specify a date when such resignation shall take place, which shall not be less than 90 days after the date such notice is given, where practicable.

(c)     A Litigation Settlement Trustee may be removed by order of the Bankruptcy Court upon notice and motion filed by the Litigation Settlement TAC in the event that the Litigation Settlement Trustee becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration, or for other good cause. Good cause shall be deemed to include, without limitation (i) substantial failure to comply with the general administration provisions of Section 2.2, above, (ii) a consistent pattern of neglect and failure to perform or participate in performing the duties of the Litigation Settlement Trustee hereunder, (iii) repeated nonattendance at scheduled meetings, or (iv) one of the circumstances set forth in Section 4.7 of this Agreement. Removal shall take effect at such time as the Bankruptcy Court shall determine.

**4.3     Appointment of Successor Litigation Settlement Trustee.**

(a)     In the event of a vacancy in the position of a Litigation Settlement Trustee, the Litigation Settlement TAC shall consult concerning appointment of a successor (a "**Successor Litigation Settlement Trustee**"). The vacancy shall be filled by the vote of a majority of the Litigation Settlement TAC members. In the event that the Litigation Settlement TAC members fail to secure a majority vote for the appointment of a Successor Litigation Settlement Trustee, the Bankruptcy Court shall make the appointment. A Litigation Settlement Trustee who is removed for cause may not subsequently serve as a Successor Litigation Settlement Trustee.

(b)     Immediately upon the appointment of any Successor Litigation Settlement Trustee, all rights, titles, duties, powers and authority of the predecessor Litigation Settlement Trustee hereunder shall be vested in, and undertaken by, the Successor Litigation Settlement Trustee without any further act. No Successor Litigation Settlement Trustee shall be liable personally for any act or omission of his or her predecessor Litigation Settlement Trustee.

(c)     A Successor Litigation Settlement Trustee shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b), above, (iii) his or her removal pursuant to Section 4.2(c), above, or (iv) the termination of the Litigation Settlement Trust pursuant to Section 6.4, below.

**4.4     Liability of Litigation Settlement Trustee,  Litigation Settlement TAC.**

Neither the Litigation Settlement Trustee nor the members of the Litigation Settlement TAC shall have any liability to the Litigation Settlement Trust, to any Litigation Claimant, or to any other Entity, for actions taken or not taken in connection with the operation of the Litigation Settlement Trust or the administration, processing, settlement, resolution, liquidation, satisfaction and/or payment of Litigation Claims under the Litigation Settlement TDP except for a breach of fiduciary duty by any of the foregoing committed through fraud, gross negligence or willful misconduct.

**4.5     Compensation and Expenses of Litigation Settlement Trustee.**

(a)     Subject to Section 3.3, above, for all time expended (i) administering the Litigation Settlement Trust in accordance with the terms of this Agreement and the Plan,

(ii) preparing for and attending Litigation Settlement Trust meetings, and (iii) receiving, processing, administering, resolving, liquidating and/or paying Litigation Claims, the Litigation Settlement Trustee shall receive the sum of $___ per hour[2], and the sum of $___ per hour[3] for non-working travel time, in both cases computed on a quarter-hour basis. The Litigation Settlement Trustee shall record all hourly time to be charged to the Litigation Settlement Trust on a daily basis.

(b)     On a monthly basis, by the 15th day of each month for the preceding month, the Litigation Settlement Trustee shall submit bills for compensation for such preceding month to the Litigation Settlement TAC.  If no objection is made in writing to such bill within seven (7) days of submission, then the Litigation Settlement Trustee shall be entitled to pay such bill from the Litigation Settlement Trust Assets.  If a written objection is timely submitted, the objecting party shall discuss its objection in good faith with the Litigation Settlement Trustee in an effort to reach a consensual resolution.  If no resolution is reached within seven (7) days of submission of a written objection then the Litigation Settlement Trustee shall be entitled to payment of the monthly bill to which such objection was submitted unless a written objection is filed with the Bankruptcy Court seeking a determination of the matter.  An objection to a monthly bill filed with the Bankruptcy Court and notice of any hearing scheduled on such matter must be served on the Litigation Settlement Trust and the members of the Litigation Settlement TAC.  If a written objection is filed, payment of the bill to which the objection relates shall be made only pursuant to (i) an order of the Bankruptcy Court or (ii) agreement of the Litigation Settlement Trustee and the party filing the objection, which agreement also would result in a withdrawal of the objection filed with the Bankruptcy Court.

(c)     Subject to Section 3.3, above, the Litigation Settlement Trust will promptly reimburse the Litigation Settlement Trustee for all reasonable out-of-pocket costs and expenses incurred by the Litigation Settlement Trustee in connection with the performance of his or her duties hereunder, provided however, that the Litigation Settlement TAC may make such motion to the Bankruptcy Court as they deem advisable to seek disgorgement of any cost or expense for which the Litigation Settlement Trustee has received reimbursement that the Litigation Settlement TAC believes was not reasonable under the circumstances.

(d)     The hourly compensation payable to the Litigation Settlement Trustee hereunder may be reviewed by the Litigation Settlement Trustee on a yearly basis and, after consultation with the Litigation Settlement TAC, appropriately adjusted as may be reasonable under the circumstances including, without limitation, for changes in the cost of living.

(e)     The Litigation Settlement Trust shall include a description of the amounts paid under this Section 4.5 in the accounts to be filed with the Bankruptcy Court and provided to the Litigation Settlement TAC pursuant to Section 2.2(c)(i), above.

---

[2] To be determined prior to the Confirmation Hearing.
[3] To be determined prior to the Confirmation Hearing.

NY\7379172.9

**4.6** **Litigation Settlement Trustee's Employment of Experts.** The Litigation Settlement Trustee may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the Litigation Settlement Trustee to be qualified as experts on the matters submitted to them (a "**Trust Professional**").  In the absence of the Litigation Settlement Trustee's gross negligence, the written opinion of, or information provided by, any such Trust Professional on the particular matter in respect of which such Trust Professional is an expert may be relied upon by the Litigation Settlement Trustee and shall be full and complete authorization and protection to the Litigation Settlement Trustee in respect of any action taken or not taken in good faith by the Litigation Settlement Trustee otherwise consistent with this Agreement and in accordance with the written opinion of or information provided by such Trust Professional.  Fees paid to Trust Professionals shall be deemed Litigation Trust Expenses subject to the limitations in Section 3.3, above.

**4.7** **Litigation Settlement Trustee's Independence.**   The Litigation Settlement Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for any Entity with a financial interest in the operation of the Litigation Settlement Trust.  No Litigation Settlement Trustee shall act as an attorney for any Claimant either (i) in connection with such Claimant's Litigation Claim, or (ii) otherwise prior to final payment on account of such Litigation Claim.   In addition to the circumstances set forth in Section 4.2(c) of this Agreement, any violation of this Section 4.7 shall be cause for removal of the Litigation Settlement Trustee.

**4.8** **Bond.**  The Litigation Settlement Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**Section V**
**TRUST ADVISORY COMMITTEE**

**5.1** **Formulation and Members.**  The Litigation Settlement TAC shall be formed pursuant to the Plan as of the Effective Date. The Litigation Settlement TAC shall consist of three (3) members, who shall initially be the persons named on the signature page hereof.

**5.2** **Duties.**  The members of the Litigation Settlement TAC shall serve in a fiduciary capacity representing all Litigation Claimants.  The Litigation Settlement Trustee must consult with the Litigation Settlement TAC on matters identified in Sections 2.2(e) and 3.3, above, and may consult with the Litigation Settlement TAC with respect to such other matters affecting or relating to the Litigation Settlement Trust.

**5.3** **Term of Office.**

(a)     Each member of the Litigation Settlement TAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b), below, (iii) his or her removal pursuant to Section 5.3(c), below, or (iv) the termination of the Litigation Settlement Trust pursuant to Section 6.4, below.

(b)     A member of the Litigation Settlement TAC may resign at any time by written notice to the other members of the Litigation Settlement TAC and the Litigation

Settlement Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    A member of the Litigation Settlement TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated nonattendance at scheduled meetings, or for other good cause. Such removal shall be made at the recommendation of the remaining members of the Litigation Settlement TAC with the approval of the Bankruptcy Court.

**5.4    Appointment of Successor Members.**

(a)    A vacancy in the Litigation Settlement TAC caused by resignation, death or as a result of removal, shall be filled with an individual, not a firm, nominated by the remaining members of the Litigation Settlement TAC and approved by the majority vote of the Litigation Settlement Trustee and all remaining members of the Litigation Settlement TAC.  No member of the Litigation Settlement TAC who has been removed for cause may be reappointed.

(b)    Each successor member of the Litigation Settlement TAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b), above, (iii) his or her removal pursuant to Section 5.3(c), above, or (iv) the termination of the Litigation Settlement Trust pursuant to Section 6.4, below.

**5.5    Litigation Settlement TAC's Employment of Professionals.**  The Litigation Settlement TAC may at its sole cost (but is not required to) retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the Litigation Settlement TAC to be qualified as experts on matters submitted to the TAC (the "**TAC Professionals**").  Subject to the provisions of Section 6.1 of this Agreement, the Litigation Settlement TAC and the TAC Professionals shall at all times have complete access to the Litigation Settlement Trust's employees and agents, as well as to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Litigation Settlement Trust or the Litigation Settlement Trustee other than the Privileged Information (as defined in the Plan), provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege, and provided further that the foregoing provisions shall not amend, modify, or alter in any fashion the provisions regarding and/or restrictions applicable to Privileged Information, the terms of which apply fully hereunder.  In the absence of the Litigation Settlement TAC's gross negligence, the written opinion of or information provided by any such TAC Professional on the particular matter in respect of which such TAC Professional is an expert may be relied upon by the Litigation Settlement TAC and shall be full and complete authorization and protection to the Litigation Settlement TAC in respect of any action taken or not taken in good faith by the Litigation Settlement TAC otherwise consistent with this Agreement and in accordance with the written opinion of or information provided by such TAC Professional.

-12-

**5.6**    **Reimbursing Expenses of Litigation Settlement TAC.**  Subject to Section 3.3, above, the members of the Litigation Settlement TAC shall be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred by the members of the Litigation Settlement TAC in connection with their attendance at meetings and as may be agreed upon by the Litigation Settlement Trustee. Any such reimbursement or direct payment shall be deemed a Litigation Settlement Trust Expense.  The Litigation Settlement Trust shall include a description of the amounts paid under this Section 5.6 in the accounts to be filed with the Bankruptcy Court and provided to the Litigation Settlement Trustee and the Litigation Settlement TAC, pursuant to Section 2.2(c)(i) above.

**Section VI**
**GENERAL PROVISIONS**

**6.1**    **Procedures for Consultation with Litigation Settlement TAC.**  In the event the Litigation Settlement Trustee is required to consult with the Litigation Settlement TAC as provided herein, the Litigation Settlement Trustee shall provide the Litigation Settlement TAC with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances.  The Litigation Settlement Trustee shall also provide the Litigation Settlement TAC with such reasonable access to Trust Professionals and other experts retained by the Litigation Settlement Trust and its staff (if any) as the Litigation Settlement TAC may reasonably request during the time that the Litigation Settlement Trustee is considering such matter, and shall also provide Litigation Settlement TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Litigation Settlement Trustee; provided that in no event shall the Litigation Settlement TAC or its members (a) have any role, whether by consent, consultation or otherwise, in the Litigation Settlement Trust's selection of counsel, experts or other professionals to defend Litigation Claims against the Litigation Settlement Trust, or (b) have any right to consult with or obtain information from the Litigation Settlement Trust or anyone employed by the Litigation Settlement Trust concerning the defense of any such Litigation Claims.

In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 6.1, the Litigation Settlement Trustee shall take into consideration the time required for the Litigation Settlement TAC, if its members so wish, to engage and consult with a TAC Professional as to such matter. In any event, the Litigation Settlement Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the Litigation Settlement TAC with the initial written notice that such matter is under consideration by the Litigation Settlement Trustee, unless such time period is waived by the Litigation Settlement TAC.

**6.2**    **Indemnification.**

(a)    The Litigation Settlement Trust shall indemnify, hold harmless and defend the Litigation Settlement Trustee, the members of the Litigation Settlement TAC and the Additional Indemnitees in the performance of their respective duties hereunder to the fullest extent that a corporation or trust organized under the laws of the State of Delaware is entitled to indemnify and defend such persons against any and all liabilities, expenses,

claims, damages or losses incurred by them in the performance of their duties hereunder. Notwithstanding the foregoing, no individual shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which he or she is ultimately held liable as a result of such individual's own breach of fiduciary duty committed through fraud, gross negligence or willful misconduct.

(b)     The Litigation Settlement Trust may purchase and maintain reasonable amounts and types of insurance on behalf of an Indemnified Party to provide for payment of the obligations of the Litigation Settlement Trust under this Section 6.1 of this Agreement.

**6.3     Irrevocability.**  The Litigation Settlement Trust is irrevocable.

**6.4     Termination.**  The Litigation Settlement Trust shall automatically terminate on the date that is ninety (90) days after the date that all Litigation Claims have been (a) liquidated and paid to the extent provided in this Agreement and the Litigation Settlement TDP, or (b) disallowed pursuant to the terms of this Agreement and the Litigation Settlement TDP.

**6.5     Amendments.**  The Litigation Settlement Trustee, after consultation with the Litigation Settlement TAC pursuant to Section 6.1 of this Agreement, may modify or amend this Agreement, provided that any such amendments must be consistent with the requirements of the Plan.  The Litigation Settlement Trustee, after consultation with the Litigation Settlement TAC pursuant to Section 6.1 of this Agreement, may modify or amend the Litigation Settlement TDP, *provided, however,* that such amendment is consistent with (a) any limitation on amendments provided in the Litigation Settlement TDP, and (b) the requirements of the Plan.   Any modification or amendment made pursuant to this Section 6.5 must be made in writing. Notwithstanding anything contained in this Agreement or the Litigation Settlement TDP to the contrary, neither this Agreement nor the Litigation Settlement TDP shall be modified or amended in any way that could jeopardize, impair, or modify (i) the efficacy or enforceability of the injunctions entered in connection with confirmation of the Plan, or (ii) the status of the Litigation Settlement Trust as a qualified settlement fund under section 468B of the IRC.

**6.6     Severability.**  Should any provision in this Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Agreement.

**6.7     Notices.**  Notices to Litigation Claimants shall be given by first class mail, postage prepaid, at the address of such person in each case as provided on such person's Proof of Claim with respect to his or her Litigation Claim.

Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Litigation Settlement Trust: [TO BE PROVIDED]

-14-

To the Litigation Settlement Trustee: [TO BE PROVIDED]

To the Litigation Settlement TAC:

With a copy to:

     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

     **6.8**    **Successors and Assigns.**  The provisions of this Agreement shall be binding upon and inure to the benefit of the Litigation Protected Parties, the Litigation Settlement Trust, the Litigation Settlement Trustee, and their respective successors and assigns, except that neither the Litigation Protected Parties, the Litigation Settlement Trust, the Litigation Settlement Trustee, may assign or otherwise transfer any of its, or their, rights or obligations under this Agreement except, in the case of the Litigation Settlement Trust and the Litigation Settlement Trustee, as contemplated by Section 2.1, above.

     **6.9**    **Entire Agreement; No Waiver.**  The entire agreement of the parties relating to the subject matter of this Agreement is contained herein and in the Plan Documents referred to herein, and this Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

     **6.10**    **Headings.**  The headings used in this Agreement are inserted for convenience only and do not constitute a portion of this Agreement, nor in any manner affect the construction of the provisions of this Agreement.

     **6.11**    **Governing Law.**  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to conflict of law principles.

     **6.12**    **Representations and Cooperation.**  The Debtors are hereby irrevocably designated as the settlors, and are hereby authorized to take any action required of the settlors in connection with this Agreement.  Pursuant to the terms of the Plan, the Debtors, the Signal Liquidating Trustee, and the Purchaser agree to reasonably cooperate as may be requested by the Litigation Settlement Trustee in implementing the goals and objectives of the Litigation Settlement Trust.

     **6.13**    **Dispute Resolution.**  Any disputes that arises under this Agreement or under the Litigation Settlement TDP may be resolved by (i) submission of the matter to an alternative dispute resolution ("**ADR**") process mutually-agreeable to the parties involved with such dispute, or (ii) application to the Bankruptcy Court for a judicial determination of the matter, except as otherwise provided herein or in the Litigation Settlement TDP.  Any review by the Bankruptcy Court of a dispute that is first submitted to non-binding ADR shall be *de novo*.

**6.14    Enforcement and Administration.**    The provisions of this Agreement and the Litigation Settlement TDP shall be enforced by the Bankruptcy Court pursuant to the Plan.  The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Litigation Settlement Trustee and over any disputes hereunder not resolved by ADR in accordance with Section 6.13, above.

**6.15    Effectiveness.**    This Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

**6.16    Counterpart Signatures.**    This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement this  day of _____ _____, 2015.

SIGNAL INTERNATIONAL, INC. AND ITS AFFILIATE DEBTORS

By:    /s/ _____
Title:    _____

LITIGATION SETTLEMENT TRUSTEE


By:    /s/ _____
Title:    _____

Accepted and Agreed:

LITIGATION SETTLEMENT TRUST
ADVISORY COMMITTEE

_____

_____


_____

_____


_____

_____

**Exhibit 2**

**Litigation Settlement TDP**

## SIGNAL LITIGATION SETTLEMENT TRUST DISTRIBUTION PROCEDURES

The Signal Litigation Settlement Trust Distribution Procedures ("TDP") set forth herein provide for resolving all Litigation Claims against Signal International, Inc. and Signal International, LLC, as provided in and required by the Plan Support Agreement, the Plan, and the Confirmation Order.[1]  The Plan and Litigation Settlement Trust Agreement establish the Signal Litigation Settlement Trust ("Trust").  The Trustee of the Trust shall implement and administer this TDP in accordance with the Plan, Confirmation Order, and the Litigation Settlement Trust Agreement.

## Section I
## INTRODUCTION

**1.1.**      **Purpose.**  This TDP has been adopted pursuant to the Plan, Confirmation Order, and the Litigation Settlement Trust Agreement.  It is designed to provide similarly situated Litigation Claims with equitable and substantially similar treatment.

**1.2.**      **Interpretation**.  Except as otherwise may be provided below, nothing in this TDP shall be deemed to create a substantive right for any holder of a Litigation Claim.

## Section II
## OVERVIEW

**2.1**    **Trust Objectives.**  The principal objective of the Trust is to provide a source of funding and criteria for the compensation of all holders of Litigation Claims and, in doing so, to treat all similarly-situated Litigation Claims equitably.  This TDP furthers that goal by setting forth procedures for processing and paying claims generally on an impartial and predictable basis.  To this end, the TDP establishes a schedule of claim categories, eligibility requirements, and corresponding payment values.

**2.2**    **Claims Liquidation Procedures**.  The Trustee shall process and evaluate Litigation Claims that are submitted to the Trust to determine (a) whether the submitted claim meets the eligibility requirements for the category in which it is submitted and (b) the compensation to be paid for eligible claims, as set forth below.

## Section III
## TDP ADMINISTRATION

**3.1**    **Trust Administrator.**  This TDP may be administered on behalf of the Trustee by an agent or employee who shall be referred to as the "Trust Administrator."  Selection of the Trust Administrator shall be based on the experience, fees to be charged, and commercial

---

[1]      All capitalized terms not otherwise defined herein shall have the respective meanings ascribed to them in *Debtors' Joint  Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, as may be amended, modified or supplemented from time to time (the "**Plan**") and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), shall have the meanings given to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

reputation of the prospective candidates. The Trust Administrator may be delegated the authority by the Trustee to act on behalf of the Trustee under this TDP.

**3.2    Consent and Consultation Procedures**. The Trust Administrator shall act at the direction of the Trustee and shall serve at the will of the Trustee. The Trust Administrator shall regularly consult with the Trustee and, in the instance of any Litigation Claim or other issue which is not resolved by the terms of the Trust Agreement or this TDP, shall obtain the guidance of the Trustee.

**3.3.    Duty to Follow Trust Agreement and TDP Provisions**. The Trust Administrator may be authorized to administer the provisions of the Trust Agreement and TDP in its discretion, but in so doing, the Trust Administrator shall strictly comply with the express provisions of the Trust Agreement and this TDP. Notwithstanding anything herein to the contrary, the Trustee may only delegate ministerial duties to the Trust Administrator.

**Section IV**
**ELIGIBILITY REQUIREMENTS**

**4.1    Persons Eligible**. A Litigation Claim will be eligible for compensation, subject to satisfying the requirements of this TDP, if:

(a) the Litigation Claimant was offered employment by Signal International Inc. and/or Signal International, LLC (collectively, "Signal") through the H-2B temporary guest worker program, as evidenced by one of the following pieces of documentation:

1. a copy of an H-2B visa for employment at Signal stamped with a July 31, 2007 expiration date;
2. a copy of the operative complaint or amended complaint alleging the Litigation Claimant was an employee of Signal and Signal's answer to the complaint or amended complaint admitting the Litigation Claimant was an employee;
3. a copy of a letter from Signal dated no later than February 28, 2007 offering the Litigation Claimant employment through the H-2B temporary guest worker and/or permanent residency/"green card" program;
4. a copy of Signal payroll records showing the Litigation Claimant was an employee with a badge number beginning in "5" or "6";
5. a copy of a Signal identification badge identifying the Litigation Claimant as an employee with a badge number beginning in "5" or "6"; or
6. a copy of sworn testimony by a Signal employee identifying the Litigation Claimant as an employee hired through the H-2B temporary guest worker program.

AND

(b) the Litigation Claimant timely submitted a Proof of Claim asserting his Litigation Claim in the Bankruptcy Cases, or otherwise is covered by the Proof of Claim submitted by the Southern Poverty Law Center on behalf of the Fair Labor Standards Act ("FLSA")

Claimant Group, or submitted or to be submitted by the Equal Employment Opportunity Commission ("EEOC"), to the extent timely submitted.

**4.2    Claim Categories**.  There are two (2) categories of Litigation Claims which may be submitted under this TDP, as follows:

(a) Liquidated Judgment Claims:  Litigation Claims held by H-2B Workers that had been asserted in a court of law in the United States of America against one or more of the Debtors before the Petition Date, ***and*** that had been liquidated by a jury verdict or judgment in such court of law before the Petition Date ("Judgment Claimants").

(b) Unliquidated Litigation Claims:   Any Litigation Claim that is not a Liquidated Judgment Claim.

**4.3.    Claim Components and Documentation Required to Evidence Eligibility for Compensation.**  Each Litigation Claimant may assert one or more of fourteen (14) claims eligible for compensation from the Litigation Claim Payment Fund, each of which shall be considered a component of that Litigation Claimant's overall claim, *provided that* no Litigation Claimant may assert a claim or claims that have been dismissed with prejudice by a final ruling of a court of law in the United States of America.  The Trustee shall determine, based on the Trust Claim Form, the specific claim component or components asserted by the Litigation Claimant.  The general description of each potential claim component is set forth in Sections 4.3(a) through (n) below.

In order to evidence eligibility for compensation from the Trust, each Litigation Claimant must submit or have submitted on such Litigation Claimant's behalf: (1) a completed Trust Claim Form in the form attached hereto as Exhibit A, (2) at least one of the documents identified in Section 4.1(a), and (iii) such documentation as required to evidence the existence of each claim component asserted on such Litigation Claimant's Trust Claim Form, as set forth in Sections 4.3(a) through (n), as applicable.

(a)    Trafficking:  Labor trafficking claims brought, or that could be brought, under civil remedy of the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. § 1595, as amended ("TVPRA").  Each Litigation Claimant asserting a trafficking claim must provide evidence that (i) the claimant was recruited for employment at Signal through the H-2B guest worker program (as evidenced by any one of the pieces of documentation identified in Section 4.1(a)); (ii) the claimant paid fees to Signal or its Agents[2] for the opportunity to work at Signal (as evidenced by receipts, canceled checks, an affidavit, sworn testimony, or the filing of a complaint in a court of law in the United States of America attesting to such fact); and (iii) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of

---

[2]    For purposes of this TDP, Signal's "Agents" shall consist of Malvern C. Burnett, The Law Offices of Malvern C. Burnett, PLC, Gulf Coast Immigration Law Center, Sachin Dewan, Dewan Consultants Pvt. Ltd., Michael Pol, and Global Resources, Inc.

documentation identified in Section 4.1(a)(1) or (3) and pay stubs reflecting wages earned while employed at Signal).

(b)     Breach of Contract:   Common law breach of contract claim and quasi-contract claim ("Breach of Contract") for Signal's failure to fulfill promises to sponsor H-2B Workers for green cards.  Each Litigation Claimant asserting a Breach of Contract claim must provide evidence that (i) the claimant was recruited for employment at Signal through the H-2B guest worker program (as evidenced by any one of the pieces of documentation identified in Section 4.1(a)); (ii) the claimant was told that Signal would sponsor him for a green card (as evidenced by an affidavit, sworn testimony, or the filing of a complaint in a court of law in the United States of America attesting to such fact); and (iii) the claimant filed a lawsuit asserting Breach of Contract claims prior to May 5, 2014 (for claimants recruited for employment in Mississippi) or May 5, 2015 (for claimants recruited for employment in Texas).

(c)     Section 1981 Discrimination/Harassment:  Discrimination and harassment claims under 42 U.S.C. § 1981 ("Section 1981 Discrimination/Harassment") based on harassment and/or adverse terms and conditions of employment.  Each Litigation Claimant asserting a Section 1981 Discrimination/Harassment claim must provide evidence that the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal).

(d)     Section 1981 Retaliation:  Retaliation claims under 42 U.S.C. § 1981 ("Section 1981 Retaliation") based on Signal's termination without cause of certain employees at its Pascagoula, Mississippi, facility on March 9, 2007.  Signal's termination of certain employees on March 9, 2007 shall be considered without cause if Signal expressly targeted by badge number and terminated the H-2B worker in retaliation for that worker engaging in protected activity opposing unlawful discrimination.  Each Litigation Claimant asserting a Section 1981 Retaliation claim must provide evidence that (i) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal); (ii) Signal terminated the claimant on March 9, 2007 on a basis other than because Signal believed the claimant lacked sufficient skill to perform the duties of the position he held (as evidenced by Signal records reflecting alternative motives for termination of such claimant); and (iii) the claimant filed a lawsuit in a court of law in the United States of America asserting Section 1981 Retaliation claims prior to March 9, 2011.

(e)     Intentional Infliction of Emotional Distress (No Physical Injury):  Tort claim for common law intentional infliction of emotional distress, for which physical

injuries were not suffered ("IIED-No Physical Injury") based on Signal employees' detention and attempted detention of certain employees at its Pascagoula, Mississippi, facility on March 9, 2007.  Each Litigation Claimant asserting an IIED-No Physical Injury claim must provide evidence that (i) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal); (ii) Signal detained or attempted to detain the claimant on March 9, 2007 (as evidenced by an affidavit, sworn testimony, or the filing of a complaint in a court of law in the United States of America attesting to such fact); and (iii) the claimant filed a lawsuit in a court of law in the United States of America asserting Intentional Infliction of Emotional Distress claims prior to March 9, 2008.

(f)     <u>Intentional Infliction of Emotional Distress (Physical Injury)</u>:  Tort claim for intentional infliction of emotional distress, for which physical injuries were suffered and hospitalization required ("IIED-Physical Injury") based on Signal employees' detention and attempted detention of certain employees at its Pascagoula, Mississippi, facility on March 9, 2007 and/or threats of physical or bodily harm communicated directly to certain H-2B Workers or their family members by Signal employees or their agents on or about March 8, 2007.  Each Litigation Claimant asserting an IIED-Physical Injury claim must provide evidence that (i) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal); (ii) Signal detained or attempted to detain the claimant on March 9, 2007 or Signal or its Agents directly threatened family members on or about March 8, 2007 (as evidenced by an affidavit, sworn testimony, or the filing of a complaint in a court of law in the United States of America attesting to such fact); (iii) the claimant was hospitalized for injuries suffered on or about March 9, 2007 (this may be submitted by sworn testimony, rather than by medical records); and (iv) the claimant filed a lawsuit in a court of law in the United States of America asserting Intentional Infliction of Emotional Distress claims prior to March 9, 2008.

(g)     <u>False Imprisonment</u>:  Tort claim for common law false imprisonment ("False Imprisonment") based on Signal employees' detention and attempted deportation of certain employees at its Pascagoula, Mississippi, facility on March 9, 2007. Each Litigation Claimant asserting a False Imprisonment claim must provide evidence that (i) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal); (ii) Signal detained or attempted to detain the claimant on March 9, 2007 (as evidenced by an affidavit, sworn testimony, or the filing of a complaint in a court of law in the United States of

America attesting to such fact); and (iii) the claimant filed a lawsuit in a court of law in the United States of America asserting False Imprisonment claims prior to March 9, 2008.

(h)    Assault (Physical Injury):  Tort claim for common law assault, for which physical injuries were suffered and hospitalization required ("Assault"), based on Signal employees' detention and physical touching of certain employees at its Pascagoula, Mississippi, facility on March 9, 2007.  Each Litigation Claimant asserting an Assault claim must provide evidence that (i) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal); (ii) Signal detained or attempted to detain the claimant on March 9, 2007 (as evidenced by an affidavit, sworn testimony, or the filing of a complaint in a court of law in the United States of America attesting to such fact); (iii) the claimant was hospitalized for injuries suffered on or about March 9, 2007 (this may be submitted by sworn testimony, rather than by medical records); and (iv) the claimant filed a lawsuit in a court of law in the United States of America asserting Assault claims prior to March 9, 2008.

(i)    Civil Rights Conspiracy:  Claim under 42 U.S.C. § 1985 for conspiracy to violate civil rights, for which physical injuries were suffered and hospitalization required ("Civil Rights Conspiracy"), based on Signal employees' detention and attempted deportation of certain employees at its Pascagoula, Mississippi, facility on March 9, 2007.  Each Litigation Claimant asserting a Civil Rights Conspiracy claim must provide evidence that (i) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal); (ii) Signal detained or attempted to detain the claimant on March 9, 2007 (as evidenced by an affidavit, sworn testimony, or the filing of a complaint in a court of law in the United States of America attesting to such fact); (iii) the claimant was hospitalized for injuries suffered on or about March 9, 2007 (this may be submitted by sworn testimony, rather than by medical records); and (iv) the claimant filed a lawsuit in a court of law in the United States of America asserting Civil Rights Company claims prior to March 9, 2011.

(j)    Fair Labor Standards Act:  Claims under the FLSA for failure to pay the federal minimum wage for all hours worked held by H-2B Workers that had been asserted by timely filing before the claim was or will be time-barred under the applicable statute of limitations and not withdrawing a Consent to Sue form in the matter of *David v. Signal Int'l, LLC*, No. 08-1220 (E.D. La.). Each Litigation Claimant asserting a Fair Labor Standards Act claim must provide: (i) one of the documents listed in Section 4.1(a)(4) or (5); and (ii) a copy of the Consent to Sue

by which the H-2B Worker timely asserted claims under the FLSA in the matter of *David v. Signal Int'l, LLC*, No. 08-1220 (E.D. La.) prior to July 31, 2011.

(k)　　<u>EEOC Title VII Claims (Not Including Retaliation)</u>:  Claims by Plaintiff EEOC on behalf of former H-2B Workers under Title VII, 42 U.S.C. § 2000 et seq. ("Title VII") in the matter of *EEOC v. Signal Int'l, LLC*, No. 12-557 (E.D. La.) for harassment and/or adverse terms and conditions of employment.  Each Litigation Claimant asserting a Title VII Claim (Not Including Retaliation) must provide evidence that the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal).

(l)　　<u>EEOC Intervenors' Title VII Claims (Not Including Retaliation)</u>:  Claims in intervention in the matter of *EEOC v. Signal Int'l, LLC*, No. 12-557 (E.D. La.) under Title VII, 42 U.S.C. § 2000 et seq. for harassment and/or adverse terms and conditions of employment, and discrimination by agents, based on disparate impact and disparate treatment theories.  Each Litigation Claimant asserting an EEOC Intervenors' Title VII Claims (Not Including Retaliation) must provide evidence that (i) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal); and (ii) the claimant was an intervenor in the matter of *EEOC v. Signal Int'l, LLC*, No. 12-557 (E.D. La.).

(m)　　<u>EEOC Title VII Retaliation Claims</u>:  Claims by Plaintiff EEOC and Plaintiffs-Intervenors for retaliation under Title VII, 42 U.S.C. § 2000 et seq. in the matter of *EEOC v. Signal Int'l, LLC*, No. 12-557 (E.D. La.).  Each Litigation Claimant asserting an EEOC Title VII Retaliation Claim must provide evidence that (i) the claimant was employed at Signal through the H-2B guest worker program (as evidenced by (x) any one of the pieces of documentation identified in Section 4.1(a)(2), (4), (5), or (6), or (y) either of the pieces of documentation identified in Section 4.1(a)(1) or (3) *and* pay stubs reflecting wages earned while employed at Signal); (ii) Signal terminated the claimant on March 9, 2007 on a basis other than because Signal believed the claimant lacked sufficient skill to perform the duties of the position he held (as evidenced by Signal records reflecting alternative motives for termination of such claimant); and (iii) the claimant alleged retaliation as an intervenor in the matter of *EEOC v. Signal Int'l, LLC*, No. 12-557 (E.D. La.).

(n)　　<u>Attorneys' Fees and Costs</u>:  To the extent legally permissible, Litigation Claimants who filed lawsuits and are represented by not-for-profit organizations (the Southern Poverty Law Center and the Equal Justice Center) will have a claim for attorneys' fees and costs as provided by 18 U.S.C. § 1964(c), 18 U.S.C. § 1595, 42 U.S.C. § 1988, 29 U.S.C. § 216, and Fed. R. Civ. P. 54(d)(1), to the

extent their non-profit counsel may collect such fees and costs to the extent that such Litigation Claimants are required to or have agreed to pay their non-profit counsel for fees and costs, capped at a total non-reduced Claim Value of $6,567,500.00, consisting of a non-reduced Claim Value of $6,000,000 for attorneys' fees and costs claims for the Southern Poverty Law Center ("SPLC") and $567,000 for attorneys' fees and costs claims for the Equal Justice Center ("EJC").  Each Litigation Claimant asserting Attorneys' Fees and Costs must provide evidence that the claimant was a plaintiff represented by the non-profit SPLC in the matter *David v. Signal Int'l, LLC*, No. 08-1220 (E.D. La.), *EEOC v. Signal Int'l, LLC*, No. 12-557 (E.D. La.), or by the non-profit EJC in the matter of *Kambala v. Signal Int'l, LLC*, No. 1:13-cv.00498-RC-ZJH (E.D. Tex.).  A copy of the operative complaint or amended complaint in these cases, with the accompanying signature block, shall be adequate evidence.

## Section V
## RESOLUTION OF LITIGATION CLAIMS

**5.1**    **Filing Litigation Claims**.  Within thirty (30) days after the Effective Date, the Trustee shall send Litigation Claims Materials, consisting of (a) instructional materials, (b) a Trust Claim Form in the form attached as Exhibit A hereto, and (c) a copy of this TDP, to all holders of Litigation Claims who filed a Proof of Claim in the Bankruptcy Case, at the addresses designated on the Proof of Claim form.  Such holders of Litigation Claims shall be required to return the Trust Claim Form within sixty (60) days after receipt, along with documentation evidencing eligibility as set forth in Sections 4.1 and 4.3, above.  If a Litigation Claimant fails to return a Trust Claim Form so that it is received by the Trustee within such sixty (60) day period, the Litigation Claim asserted by such Litigation Claimant shall be disallowed for all purposes hereunder.

**5.2**    **Review Process**.  The Trustee shall commence reviewing and processing filed Trust Claim Forms as and when they are received by the Trust, and shall complete its initial review of a submitted Trust Claim Form and supporting documentation within twenty-one (21) days after receipt.  For each Trust Claim Form that is submitted, the Trust shall determine whether the claim described therein meets the eligibility requirements of Sections 4.1 of this TDP and the eligibility requirements for each component of such holder's Litigation Claims identified in the Trust Claim Form as set forth in Section 4.3 of this TDP.  The Trustee shall allow submitted Litigation Claims that satisfy all eligibility criteria applicable to such Litigation Claim, *provided*, *however*, that, if the eligibility requirements of Section 4.1 of this TDP are otherwise met, the Trustee shall only allow those claim components identified on the Trust Claim Form that meet the eligibility requirements of the subsection of Section 4.3 applicable to such claim.

If a Litigation Claimant submits an incomplete or deficient claim, *e.g.*, the claimant failed to include required documentation or failed to sign the Trust Claim Form, the Trustee shall send a deficiency notice to such Litigation Claimant and the Trustee shall informally and reasonably work with that claimant in an effort to cure any such deficiencies.  Litigation Claimants submitting incomplete or deficient claims shall have twenty-one (21) days to cure a deficiency,

and any Litigation Claim that continues to be incomplete or deficient after that twenty-one (21)-day cure period shall be disallowed, *provided*, *however*, that, if the eligibility requirements of Section 4.1 of this TDP are otherwise met, the Trustee shall only disallow claim components identified on the Trust Claim Form that continue to be incomplete or deficient after the twenty-one (21)-day cure period.

If the holder of a disallowed Litigation Claim wishes to dispute the disallowance of such claim pursuant to Section 5.1 or this Section 5.2, such holder may file a motion in the Bankruptcy Court seeking an order resolving that dispute (a "**Dispute Resolution Motion**") within fourteen 14 days of receiving a disallowance notice from the Trust. Any Dispute Resolution Motion should be served on the Trustee as required by Rule 9006-1 of the Local Rules for the United States Bankruptcy Court, District of Delaware. For the avoidance of any doubt, the sole remedy that may be sought by a Dispute Resolution Motion is allowance of the asserted Litigation Claim, which shall be subject to the applicable treatment provided in this TDP.

Once the Trustee has completed review and processing of the submitted Trust Claim Forms, the Trustee will maintain records with the name of every Litigation Claimant, the claim or claims for which he seeks compensation, the evidence submitted in support of the claim or claims, and which claim or claims was/were allowed or disallowed.

**5.3    Nominal Claim Values.** The Nominal Claim Values for each of the fourteen (14) claim components described in Sections 4.3(a) through (n) are as follows:

- Trafficking: The valuation of the Liquidated Claims for Trafficking track the average value apportioned to the TVPRA component of the judgment entered in the lawsuit styled *David v. Signal International, L.L.C.* No. 08-cv-01220 (E.D. La.), except that the claims for punitive damages are capped at fifteen percent (15%) of the amount of punitive damages in the judgment. The valuation of the Unliquidated Claims for Trafficking is seventy percent (70%) of the valuation of the Liquidated Claims for Trafficking.

- Breach of Contract: The valuation of the Liquidated Claims for Breach of Contract track the average value apportioned to the Breach of Contract component of the judgment entered in the lawsuit styled *David v. Signal International, L.L.C.* No. 08-cv-01220 (E.D. La.), except that the claims for punitive damages are capped at fifteen percent (15%) of the amount of punitive damages in the judgment. The valuation of the Unliquidated Claims for Breach of Contract is seventy percent (70%) of the valuation of the Liquidated Claims for Breach of Contract.

- Section 1981 Discrimination/Harassment:  The valuation of the Liquidated Claims for Section 1981 Discrimination/Harassment track the average value apportioned to the Section 1981 Discrimination/Harassment component of the judgment entered in the lawsuit styled *David v. Signal International, L.L.C.* No. 08-cv-01220 (E.D. La.), except that the claims for punitive damages are capped at fifteen percent (15%) of the amount of punitive damages in the judgment. The valuation of the Unliquidated Claims for Section 1981 Discrimination/Trafficking is seventy percent (70%) of the valuation of the

Liquidated Claims for Section 1981 Discrimination/Harassment, *except that* Unliquidated Claims for Section 1981 are included in the Unliquidated EEOC Title VII Claims (Not Including Retaliation). As such, an Unliquidated Claim for Section 1981 Discrimination/Harassment will not be allowed for any Litigation Claimant eligible to recover Unliquidated EEOC Title VII Claims (Not Including Retaliation).

• Section 1981 Retaliation: The valuation of the Liquidated Claims for Section 1981 Retaliation track the average value apportioned to the Breach of Contract component of the judgment entered in the lawsuit styled *David v. Signal International, L.L.C.* No. 08-cv-01220 (E.D. La.).

• Intentional Infliction of Emotional Distress (No Physical Injury): The valuation of the Liquidated Claims for IIED-No Physical Injury track the average value apportioned to the IIED component of the judgment entered in the lawsuit styled *David v. Signal International, L.L.C.* No. 08-cv-01220 (E.D. La.). Known claims for IIED-No Physical Injury are liquidated. There are no known unliquidated claims for IIED for which physical injuries were not suffered.

• Intentional Infliction of Emotional Distress (Physical Injury): All known claims for IIED-Physical Injury are unliquidated. There are no known liquidated claims for IIED for which physical injuries were suffered.

• False Imprisonment: The valuation of the Liquidated Claims for False Imprisonment track the average value apportioned to the False Imprisonment component of the judgment entered in the lawsuit styled *David v. Signal International, L.L.C.* No. 08-cv-01220 (E.D. La.). The valuation of the Unliquidated Claims for False Imprisonment is seventy percent (70%) of the valuation of the Liquidated Claims for False Imprisonment, except capped at $150,000.

• Assault (Physical Injury): Known claims for Assault are unliquidated. There are no known Liquidated Claims for Assault for which physical injuries were suffered.

• Civil Rights Conspiracy: Known claims for Civil Rights Conspiracy are unliquidated. There are no known Liquidated Claims for Civil Rights Conspiracy for which physical injuries were suffered.

• Fair Labor Standards Act: Known FLSA claims are unliquidated. There are no known liquidated claims under the FLSA.

• EEOC Title VII Claims (Not Including Retaliation): Known Title VII claims are unliquidated. There are no known liquidated claims under the Title VII.

• EEOC Title VII Retaliation Claims: Known Title VII claims are unliquidated. There are no known liquidated claims under the Title VII.

• EEOC Intervenors' Title VII Claims (Not Including Retaliation): Known Title VII claims are unliquidated. There are no known liquidated claims under the Title VII.

- <u>Attorneys' Fees and Costs</u>:   Known attorneys' fees and costs claims are unliquidated.  There are no known liquidated claims of attorneys' fees and costs.

Each allowed Litigation Claim shall be valued based on the particular components of that claim, as identified in the Trust Claim Form and documentation evidencing eligibility for compensation mandated by Section 4.3 based on the claim(s) timely asserted by or on behalf of the individual claimant (i) in a court of law against one or more of the Debtors before the Petition Date, or (ii) in a Proof of Claim in the Bankruptcy Case.  The Trustee then shall determine, based on the tables set forth below, the value associated with each asserted claim component.  The Trustee will sum the applicable values of all claim components to determine the "**Nominal Claim Value**" of that allowed Litigation Claim.

**(a)      Liquidated Litigation Claims**.

| Claim Component | Individual Nominal Claim Value[3] | Anticipated Maximum Number of Claimants |
|---|---|---|
| Trafficking | $181,000 | 5 |
| Section 1981 Discrimination/Harassment | $179,120 | 5 |
| Breach of Contract | $575,000 | 5 |
| Section 1981 Retaliation | $600,000 | 1 |
| IIED-No Physical Injury | $600,000 | 1 |
| False Imprisonment | $600,000 | 1 |

---

[3]      The values assigned are solely for purposes of the TDP and associated settlement and are without prejudice to the rights of any party in the event that the settlement is not consummated.

**(b)     Unliquidated Litigation Claims**.

| Claim Component | Individual Nominal Claim Value[*] | Anticipated Maximum Number of Claimants |
|---|---|---|
| Trafficking | $126,700 | 344 |
| Breach of Contract | $402,500 | 227 |
| IIED-Physical Injury | $800,000 | 1 |
| False Imprisonment | $150,000 | 4 |
| Assault | $800,000 | 1 |
| Conspiracy to violate civil rights (42 U.S.C. § 1985) | $800,000 | 1 |
| Fair Labor Standards Act | $13,000 | 382 |
| EEOC Title VII Retaliation Claims | $800,000 | 2 |
| Section 1981 Discrimination/ Harassment **OR** Title VII Claims (not including retaliation) | $117,500 | 473 |
| EEOC Intervenors' Title VII claims (not including retaliation) | $225,000 | 9 |
| Non-profit attorneys' fees and costs - SPLC | $500,000 | 12 |
| Non-profit attorneys' fees and costs – EJC | $27,000 | 21 |

**5.4     Distributions to Holders of Allowed Litigation Claims.**

(a)     **Distributions Generally**.  A Holder of an allowed Litigation Claim shall be entitled to receive his Pro Rata Trust Share  (as defined below) of the Litigation Claim Payment Fund distributed by the Trustee. The "Pro Rata Trust Share" shall mean the proportion, expressed as a percentage, that the total of the Nominal Claim Values of all allowed Litigation Claim components held by a given Litigation Claimant bears to the aggregate of all Nominal Claim Values for all allowed Litigation Claims.     All distributions made by the Trustee shall be made in accordance with, and shall be governed by, Article VIII of the Plan (including, without limitation, paragraph C. thereof relating to withholding of taxes).

(b)     **Timing of Distributions**.   The Trustee shall distribute payments to Holders of allowed Litigation Claims within fourteen (14) days after the review and allowance or disallowance of all timely-submitted Trust Claim Forms has been completed on a final basis; *provided*, *however*, that to the extent that the total value of the Litigation

Settlement Trust Assets has not yet been received by the Trust such that the Litigation Claim Payment Fund is not yet fully funded, *i.e.*, because certain of the underlying Litigation Settlement Trust Assets consist of amounts that may be paid incrementally over time, the Trust shall make an initial distribution based on the amount then-currently held in the Litigation Claim Payment Fund.  The Trust, in consultation with the TAC, shall make additional distributions to Holders of allowed Litigation Claims as and when additional funds are received by the Litigation Settlement Trust in amounts sufficient to make a distribution practicable, until such time as the total value of Litigation Settlement Trust Assets has been received by the Trust and distributed on a *pro rata* basis to all holders of allowed Litigation Claims, excluding portions set aside for the Trustee's expenses as set forth in the Litigation Trust Agreement.

## Section VI
## MISCELLANEOUS

**6.1    Amendments.**  The Trustee, with notice to the Litigation Settlement TAC, may amend, modify, delete, or add to any provision of this TDP, *other* *than* Section 5.3, which may not be amended, modified, or deleted, other than as set forth in Section 6.2, below.

**6.2    Severability**.    Should any provision in this TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TDP, *provided*, *however*, that to the extent that Section 5.3 is held to be unenforceable, then the Trustee, Litigation Settlement TAC, and representatives of holders of Litigation Claims, along with any holders of Litigation Claims that submitted Proofs of Claim in the Bankruptcy Cases but who are not represented by counsel, shall meet and confer and reach agreement on revisions to Section 5.3, as applicable, that would render that Section (or those Sections) enforceable.

**6.3    Governing Law**.  Except for the purposes of determining the liquidated value of any Litigation Claim, administration of this TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware.

**Exhibit 3**

**Identity of Litigation Settlement Trustee**

**[To Be Provided]**

**Exhibit 4**

**Identity of Litigation Settlement TAC Members**

**[To Be Provided]**

**Exhibit 5**

**Signal Liquidating Trust Agreement**

# SIGNAL LIQUIDATING TRUST AGREEMENT[1]

This Agreement (the "**Agreement**"), dated as of November___, 2015, and effective as of the later of the date on which all parties to this Agreement have executed this Agreement and the Effective Date of the Plan,  is entered into by Signal International, Inc., Signal Ship Repair, LLC, Signal International, LLC, Signal International Texas GP, LLC, and Signal International Texas, L.P., debtors and debtors-in-possession in (the "**Debtors**" or the "**Settlors**")  in the Chapter 11 Case No. 15-11498 (MFW) (the "**Bankruptcy Cases**"), and _____ (the "**Signal Liquidating Trustee**") for the benefit of the "**Beneficiaries**" (defined below) under the terms of the First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, dated October 8, 2015, as may be amended, modified or supplemented, the "**Plan**") confirmed by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") in the Bankruptcy Cases  by Order dated November __, 2015 (Docket No. ____) (the "**Confirmation Order**")

## RECITALS

WHEREAS, on the Petition Date, each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  The Bankruptcy Cases, which are captioned *In re Signal International, Inc. et al.,* Case No. 15-11498 (MFW), are being jointly administered by the Bankruptcy Court.

WHEREAS, the Debtors filed the Plan on September 3, 2015;

WHEREAS, the Bankruptcy Court entered the Confirmation Order on November __, 2015 and the Plan became effective on _____, 2015 (the "**Effective Date**");

WHEREAS, the Signal Liquidating Trust established pursuant to the terms of this Agreement is intended to qualify as a "grantor trust" for federal income tax purposes pursuant to Sections 671 through 677 of the Internal Revenue Code of 1986, as amended (the "**Tax Code**") with the Signal Liquidating Trust Beneficiaries treated as grantors and owners of the Signal Liquidating Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Signal Liquidating Trustee, and the Signal Liquidating Trust Beneficiaries) shall treat the transfer of the Signal Liquidating Trust Assets by the Debtors to the Signal Liquidating Trust as a transfer of such assets by the Debtors to the Signal Liquidating Trust Beneficiaries entitled to Distributions from the Signal Liquidating Trust Assets, followed by a transfer by such Holders to the Signal Liquidating Trust. Thus, the Signal Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

WHEREAS, the Plan contemplates, among other things, on the Effective Date, (a) the creation of a Signal Liquidating Trust (the "**Signal Liquidating Trust**"), and (b) the Signal Liquidating Trust will be vested with (i) all Post-Effective Date Assets, if any, (ii) the GUC

---

[1] All capitalized terms not otherwise defined herein shall have the meaning as set forth in the Plan and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), shall have the meaning given to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

Payment Amount, (iii) the Signal Liquidating Trust Expense Fund, and (iv) the Disputed Claims Reserve (collectively, the "**Signal Liquidating Trust Assets**"); and

WHEREAS, pursuant to the Plan, the Signal Liquidating Trust shall be established to, among other things, (a) administer the Signal Liquidating Trust Assets; (b) resolve all Disputed and/or Contingent Non-Litigation Claims; (c) pursue any Signal Causes of Action, if any; and (d) make all Distributions to the Holders of Allowed Non-Litigation Claims against the Debtors provided for under the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the purpose of the Signal Liquidating Trust and the Plan.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is hereby agreed as follows:

# ARTICLE I
# AGREEMENT OF TRUST

**1.1.    Creation and Name**.    The Debtors, as Settlors, hereby create the Signal Liquidating Trust, which is the trust provided for and referred to in Article V of the Plan. The Signal Liquidating Trustee may transact the business and affairs of the Signal Liquidating Trust in the name of the Signal Liquidating Trust.

**1.2.    Purpose.**    On the Effective Date, the Signal Liquidating Trust shall be established in accordance with the Plan Documents.  Except as otherwise provided in this Signal Liquidating Agreement, the Plan or the Confirmation Order, the Signal Liquidating Trustee shall control and exercise authority over the Signal Liquidating Trust Assets and shall be responsible for liquidating and administering (or abandoning, as the case may be) the Signal Liquidating Trust Assets and taking actions on behalf of, and representing, the Signal Liquidating Trust.  The Signal Liquidating Trustee shall have the authority to bind the Signal Liquidating Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity of Signal Liquidating  Trustee and not individually.

**1.3.    Transfer of Assets.** Pursuant to Section V.E of the Plan, upon the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred the Signal Liquidating Trust Assets to the Signal Liquidating Trust, in trust, to be held and administered in accordance with this Agreement.  In accordance with section 1141 of the Bankruptcy Code, the Signal Liquidating Trust Assets shall automatically vest in the Signal Liquidating Trust free and clear of all Claims, liens, encumbrances, or interests subject only to the Signal Liquidation Trust Expenses, as provided for in the Plan and this Agreement.

**1.4.    Funding of the Trust.** The Signal Liquidating Trust shall be funded, on the Effective Date, with the Signal Liquidating Trust Assets, as provided for in the Plan and in the Confirmation Order.

**1.5.    Acceptance by the Signal Liquidating Trustee**. The Signal Liquidating Trustee hereby accepts the trust imposed upon it by this Agreement and agrees to observe and perform

that trust on and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order.  In connection with and in furtherance of the purposes of the Signal Liquidating Trust, the Signal Liquidating Trustee hereby accepts the transfer of the Signal Liquidating Trust Assets.

  **1.6.** **Name of the Liquidating Trust.**  The trust established hereby shall be known and referred to as the "Signal Liquidating Trust".

**ARTICLE II**
**THE SIGNAL LIQUIDATING TRUSTEE**

  **2.1** **Appointment.** The Signal Liquidating Trustee has been selected pursuant to the provisions of the Plan and has been appointed as of the Effective Date.  The Signal Liquidating Trustee's appointment shall continue until the earlier of (i) the date that the Signal Liquidating Trust is dissolved in accordance with this Agreement and (ii) the date of the Signal Liquidating Trustee's resignation, death, dissolution, removal or liquidation.

  **2.2** **General Powers.**  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Signal Liquidating Trustee may control and exercise authority over the Signal Liquidating Trust Assets, and the acquisition, management, and disposition thereof. Nothing in this Agreement shall be deemed to prevent the Signal Liquidating Trustee from taking, or failing to take, any action that, based upon the advice of counsel, it determines it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty that the Signal Liquidating Trustee owes to the Signal Liquidating Trust Beneficiaries or any other Person or Entity.  No Person dealing with the Signal Liquidating Trust shall be obligated to inquire into the Signal Liquidating Trustee's authority in connection with the acquisition, management, or disposition of Signal Liquidating Trust Assets.  Without limiting the foregoing, but subject to the Plan, the Confirmation Order, and other provisions of this Agreement, the Signal Liquidating Trustee shall be expressly authorized to, with respect to the Signal Liquidating Trust and the Signal Liquidating Trust Assets:

    (a) Hold legal title to any and all Signal Liquidating Trust Assets or cause title to any such assets to be held in the name of a nominee.

    (b) Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Signal Liquidating Trust Assets by any officer, director, shareholder or other party acting in the name of the Debtors or their respective Estates with like effect as if duly authorized, exercised, and taken by action of such officers, directors, shareholders, or other party.

    (c) Open and maintain bank accounts on behalf of or in the name of the Signal Liquidating Trust, calculate and make Distributions, and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, including the Disputed Claims Reserve, in accordance with the terms of the Plan.

(d)     Receive, manage, invest, supervise, and protect the Signal Liquidating Trust Assets, subject to the limitations provided herein.

(e)     Subject to the applicable provisions of the Plan and this Agreement, collect and liquidate all Signal Liquidating Trust Assets pursuant to the Plan.

(f)     Conduct an analysis of Administrative Claims (other than Purchaser Assumed Liabilities), Priority Tax Claims, Other Priority Claims, Other Secured Claims, and General Unsecured Claims, and prosecute objections thereto or settling or otherwise compromising such Claims if necessary and appropriate.

(g)     Supervise and administer the commencement, prosecution, settlement, compromise, withdrawal or resolution in any manner approved by the Bankruptcy Court of all Contingent and Disputed Non-Litigation Claims and calculate and make the Distributions to the Allowed Non-Litigation Claims and creditors of the Signal Liquidating Trust, in accordance with this Agreement, the Plan, and the Confirmation Order including the maintenance of appropriate reserves in the name of the Signal Liquidating Trust.

(h)     Subject to the terms of this Agreement, commence, prosecute, compromise, settle, withdraw, abandon, or resolve in any manner approved by the Bankruptcy Court any Signal Causes of Action.

(i)     Seek a determination of tax liability under Section 505 of the Bankruptcy Code; file, if necessary, any and all tax and information returns required with respect to the Signal Liquidating Trust; make tax elections for and on behalf of the Signal Liquidating Trust; and pay taxes, if any, payable for and on behalf of the Signal Liquidating Trust.

(j)     Pay all lawful expenses, debts, charges, taxes, and liabilities of the Signal Liquidating Trust.

(k)     Withhold from the amount distributable to any Person or Entity such amount as may be sufficient to pay any tax or other charge that the Signal Liquidating Trustee has determined, based upon the advice of any one or more of its agents and professionals, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof.

(l)     Enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement and perform all obligations thereunder.

(m)     Purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable.

(n)     Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Agreement.

(o)    Employ and compensate such professionals and other agents as are necessary and appropriate in furtherance of the Signal Liquidating Trustee's duties without Bankruptcy Court approval.

(p)    Prepare and file tax returns and related forms and filings on behalf of the Signal Liquidating Trust, cause the Signal Liquidating Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, and make any tax elections by and on behalf of the Signal Liquidating Trust.

(q)    Maintain the books and records of the Signal Liquidating Trust, including the books and records of the Debtors transferred to the Signal Liquidating Trust.

(r)    Pay taxes or other obligations owed by the Signal Liquidating Trust from the funds held by the Signal Liquidating Trust in accordance with the Plan or applicable law.

(s)    Undertake all administrative functions remaining in the Bankruptcy Cases, including the preparation and filing of post-Effective Date operating reports and the ultimate closing of the Bankruptcy Cases.

(t)    Invest the Signal Liquidating Trust Assets transferred to the Signal Liquidating Trust, the proceeds thereof, or any income earned by the Signal Liquidating Trust in Permissible Investments, provided however, that the scope of any such Permissible Investments shall be limited to include only those investments that a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) may be permitted to hold, pursuant to the Treas. Reg. s or any modification in the Internal Revenue Services ("**IRS**") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements, or otherwise.

(u)    Take all other actions consistent with the provisions of the Plan that the Signal Liquidating Trustee deems reasonably necessary or desirable to administer the Signal Liquidating Trust and the Plan.

2.3    **Valuation**.  As soon as possible after the Effective Date, the Signal Liquidating Trustee shall make a good faith valuation of the Signal Liquidating Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including without limitation, the Debtors, the Signal Liquidating Trustee, the Holders of Allowed Claims, and the Signal Liquidating Trust Beneficiaries) for all federal income tax purposes.

2.4    **Limitation of Signal Liquidating Trustee's Authority.**

(a)    All power or authority of the Signal Liquidating Trustee shall be as set forth in this Agreement, the Plan, and the Confirmation Order.

(b)    For federal tax purposes, the Signal Liquidating Trustee shall not be authorized to engage in any trade or business with respect to the Signal Liquidating Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the

liquidating purpose of the Signal Liquidating Trust.  The Signal Liquidating Trustee shall take such actions consistent with the prompt orderly liquidation of the Signal Liquidating Trust Assets as required by applicable law and consistent with the treatment of the Signal Liquidating Trust as a liquidating trust under Treas. Reg. § 301.7701-4(d), to the extent such actions are permitted by this Agreement.  The Signal Liquidating Trustee shall not take, or fail to take, any action that would jeopardize treatment of the Signal Liquidating Trust as a "liquidating trust" for federal income tax purposes.

    **2.5**    **Compensation.**

    (a)    The Signal Liquidating Trustee's fee shall be   determined as follows: [RESERVED].

    (b)    Each of the Signal Liquidating Trustee's  agents and professionals (unless any such agents or professionals and the Signal Liquidating Trustee agree to different treatment) seeking compensation or reimbursement shall serve a statement on the Signal Liquidating Trustee.  The Signal Liquidating Trustee will have fifteen (15) days from the date such statement is received to review the statement and object to such statement by serving an objection on the party seeking compensation (including the Signal Liquidating Trustee) setting forth the precise nature of the objection and the amount at issue.  At the expiration of the fifteen (15) day period, and without further order of the Bankruptcy Court (except as provided herein), the Signal Liquidating Trustee shall pay from the Signal Liquidating Trust Assets, or the proceeds or income thereof, 100% of the amounts requested, except for the portion of such fees and expenses to which any objection has been made.  The parties shall attempt to consensually resolve objections, if any, to any statement.  If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and expenses may seek payment of such fees and expenses by filing a motion with and obtaining an order from the Bankruptcy Court and providing notice to the Signal Liquidating Trustee.  If the Signal Liquidating Trustee's agents or professionals fail to submit a statement, such parties shall be ineligible to receive payment of fees and expenses as provided in this Agreement until such statement is submitted.

    **2.6**    **General Duties, Obligations, Rights, and Benefits of the Signal Liquidating Trustee.**  The Signal Liquidating Trustee shall have all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Signal Liquidating Trust under the Plan, the Confirmation Order, this Agreement and any other agreement entered into pursuant to or in connection with the Plan or this Agreement. Such duties, obligations, rights, and benefits include, without limitation, all duties, obligations, rights, and benefits relating to the collection and liquidation of the Signal Liquidating Trust Assets, administration of Non-Litigation Claims, satisfaction of claims of creditors of the Signal Liquidating Trust, the pursuit of Signal Causes of Action, if any, Distributions to Holders of Allowed Non-Litigation Claims, administration of the Signal Liquidating Trust and any other duties, obligations, rights, and benefits reasonably necessary to accomplish the purpose of the Signal Liquidating Trust under the Plan, the Confirmation Order, this Agreement, and any other agreement entered into pursuant to or in connection with the Plan or this Agreement.

**2.7**    <u>**Replacement of the Signal Liquidating Trustee.**</u> The Signal Liquidating Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Signal Liquidating Trustee.  The Signal Liquidating Trustee may also be removed by the Bankruptcy Court upon application and after notice and a hearing.  In the event of the resignation or removal of the Signal Liquidating Trustee, a successor Signal Liquidating Trustee shall be appointed by the Bankruptcy Court based upon submissions from interested parties (including the Signal Liquidating Trustee or any Signal Liquidating Trust Beneficiary). Upon its appointment, the successor Signal Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor, except as provided herein, and all responsibilities of the predecessor Signal Liquidating Trustee relating to the Signal Liquidating Trust shall be terminated.  In the event the Signal Liquidating Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation, or removal, such Signal Liquidating Trustee shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced.

**2.8**    <u>**Signal Liquidating Trust Continuance.**</u> The death, dissolution, liquidation, resignation, or removal of the Signal Liquidating Trustee shall not terminate the Signal Liquidating Trust or revoke any existing agency created by the Signal Liquidating Trustee pursuant to this Agreement or invalidate any action theretofore taken by the Signal Liquidating Trustee, and the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Signal Liquidating Trustee and all of its successors or assigns.

**ARTICLE III**
**LIABILITY OF SIGNAL LIQUIDATING TRUSTEE**

**3.1**    <u>**Standard of Care; Exculpation.**</u> Neither the Signal Liquidating Trustee, nor any director, officer, affiliate, employee, employer, professional, successors, assigns, agent, or representative of the Signal Liquidating Trustee (each, an "**Exculpated Party**" and collectively, the "**Exculpated Parties**") shall be liable for any losses, claims, damages, liabilities, obligations settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "**Losses**"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Agreement (including these exculpation provisions), as and when imposed on the Signal Liquidating Trustee, incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Signal Liquidating Trustee's execution, delivery, and acceptance of, or the performance or nonperformance of its powers, duties, and obligations under, this Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Exculpated Party; <u>provided</u>, <u>however</u>, that the foregoing limitation shall not apply to any Losses suffered or incurred by any Signal Liquidating Trust Beneficiary or other Holder of an Allowed Non-Litigation Claim that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from the fraud, gross negligence, or willful misconduct of such Exculpated Party.  Every act taken or omitted, power exercised, or obligation assumed by the Signal Liquidating Trust or any Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or

omitted, exercised, or assumed, as the case may be, by the Signal Liquidating Trust or any Exculpated Party acting for and on behalf of the Signal Liquidating Trust and not otherwise; provided, however, that none of the foregoing Entities or Persons are deemed to be responsible for any other such Entities' or Persons' actions or inactions.  Except as provided in the first proviso of the first sentence of this Section 3.1, every Person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the Signal Liquidating Trust or any Exculpated Party shall have recourse only to the Signal Liquidating Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships and the Signal Liquidating Trust and the Exculpated Parties shall not be individually liable therefore.  In no event shall the Signal Liquidating Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Signal Liquidating Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.

3.2     **Indemnification.**

(a)     The Signal Liquidating Trustee and any director, officer, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Signal Liquidating Trustee (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**") shall be defended, held harmless, and indemnified from time to time by the Signal Liquidating Trust against any and all losses, including, without limitation, the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Agreement (including these indemnity provisions), as and when imposed on the Signal Liquidating Trustee, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Signal Liquidating Trustee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Indemnified Party; provided, however, such indemnity shall not apply to any such Losses to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from the fraud, gross negligence, or willful misconduct of such Indemnified Party.  [RESERVED].

(b)     [RESERVED].

3.3     **No Liability for Acts of Successor/Predecessor Trustees.**     Upon the appointment of a successor Signal Liquidating Trustee and the delivery of the Signal Liquidating Trust Assets to the successor Signal Liquidating Trustee, the predecessor Signal Liquidating Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Signal Liquidating Trustee shall have no further liability or responsibility with respect thereto.  A successor Signal Liquidating Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Signal Liquidating Trustee shall be in any way liable for the acts or omissions of any predecessor Signal Liquidating Trustee unless a successor Signal Liquidating Trustee expressly assumes such responsibility.  A predecessor Signal Liquidating Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Signal Liquidating Trustee

for any events or occurrences subsequent to the cessation of its role as Signal Liquidating Trustee.

**3.4**    **Reliance by Signal Liquidating Trustee on Documents or Advice of Counsel.** Except as otherwise provided in this Agreement, the Signal Liquidating Trustee, any director, officer, affiliate, employee, employer, professional, agent, or representative of the Signal Liquidating Trustee may rely, and shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed in good faith by the Signal Liquidating Trustee to be genuine and to have been presented by an authorized party.  Neither the Signal Liquidating Trustee nor any director, officer, affiliate, employee, employer, professional, agent, or representative of the Signal Liquidating Trustee shall be liable for any action taken or omitted or suffered by the Signal Liquidating Trustee, in reasonable reliance upon the advice of counsel or other professionals engaged by the Signal Liquidating Trustee in accordance with this Agreement. [RESERVED].

**3.5**    **Insurance.** The Signal Liquidating Trustee, may purchase, using the Signal Liquidating Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Signal Liquidating Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of [RESERVED], with respect to the implementation and administration of the Plan or this Agreement.

**ARTICLE IV**
**GENERAL PROVISIONS CONCERNING**
**ADMINISTRATION OF THE SIGNAL LIQUIDATING TRUST**

**4.1**    **Reserves and Additional Funds.**  The Signal Liquidating Trust shall maintain the Disputed Claims Reserve, the Signal Liquidating Trust Expense Fund, and the GUC Payment Fund and shall distribute the Disputed Claims Reserve, the Signal Liquidating Trust Expense Fund, and the GUC Payment Fund pursuant to and in accordance with the provisions of the Plan and this Agreement.

**4.2**    **Books and Records.** [RESERVED]

**4.3**    **Transfer of Privileged Information and Confidential Information.**  On the Effective Date or as soon thereafter as is reasonably practicable, the Privileged Information, solely to the extent that the Purchaser has not acquired or will not acquire control of such privileges pursuant to Asset Purchase Agreement, the Sale Order (or otherwise in connection with the transactions approved by the Sale Order), of the Debtors needed for the handling of the Non-Litigation Claims shall be transferred, assigned, given over to, and shall vest exclusively in the Signal Liquidating Trustee.  With regard to any such privileges, (i) they are transferred or contributed for the sole purpose of enabling the Signal Liquidating Trustee to perform its duties to administer the Signal Liquidating Trust and for no other reason, (ii) they are vested solely in the Signal Liquidating Trustee, and not in the Signal Liquidating Trust or any other entity, committee, any subtrust or reserve of the Signal Liquidating Trust, or any person (including counsel) who has

been engaged by, represents, or has represented any Litigation Claimant or any person who alleges or may allege a claim directly or indirectly relating to or arising from the Debtors' premises or operations, (iii) they shall be preserved and not waived, (iv) for the avoidance of doubt (if any), any such transfer or contribution shall have no effect on any right, claim, or privilege of any person other than the Debtors, and (v) no information subject to a privilege or a prior assertion thereof shall be publicly disclosed by the Signal Liquidating Trustee or the Signal Liquidating Trust or communicated to any person not entitled to receive such information or in a manner that would diminish the protected status of any such information.

## ARTICLE V
## BENEFICIAL INTERESTS AND BENEFICIARIES

**5.1** **Signal Liquidating Trust Beneficial Interests.**  Each holder of an Allowed General Unsecured Claim against the Debtors, shall be entitled to receive beneficial interests in accordance with the treatment of such Claim under the Plan, and shall be entitled to Distributions as set forth in the Plan.

**5.2** **Interest Beneficial Only.** Ownership of a beneficial interest in the Signal Liquidating Trust shall not entitle any Signal Liquidating Trust Beneficiary to any title in or to the Signal Liquidating Trust Assets or to any right to call for a partition or division of the Signal Liquidating Trust Assets or to require an accounting.

**5.3** **Evidence of Beneficial Interest.**  Ownership of a beneficial interest in the Signal Liquidating Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Signal Liquidating Trust by the Signal Liquidating Trustee.  In the absence of manifest error, the ownership of beneficial interests as reflected on the books and records of the Signal Liquidating Trust maintained by the Signal Liquidating Trustee shall be conclusive and binding on all owners of beneficial interests.

**5.4** **Exemption from Registration.**  The parties hereto intend that the rights of the holders of the beneficial interests arising under this Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the parties hereto intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

**5.5** **Transfers of Beneficial Interests.**  Beneficial interests in the Signal Liquidating Trust shall be nontransferable except upon death of the interest holder or by operation of law. The Signal Liquidating Trust shall not have any obligation to recognize any transfer of Claims occurring after the Record Date.  Only those Holders of Claims of record stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

**5.6** **Absolute Owners.**  The Signal Liquidating Trustee may deem and treat the Signal Liquidating Trust Beneficiary reflected as the owner of a beneficial interest on the

Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

      **5.7**    **Change of Address.** A Signal Liquidating Trust Beneficiary or other Holder of an Allowed Non-Litigation Claim may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court (copy served on the Signal Liquidating Trustee) identifying such alternative distribution address.  Absent such notice, the Signal Liquidating Trustee shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the Signal Liquidating Trustee.

      **5.8**    **Effect of Death, Dissolution, Incapacity, or Bankruptcy of Signal Liquidating Trust Beneficiary.**  The death, dissolution, incapacity, or bankruptcy of a Signal Liquidating Trust Beneficiary during the term of the Signal Liquidating Trust shall not (i) operate to terminate the Signal Liquidating Trust during the term of the Signal Liquidating Trust; (ii) entitle any representative or creditors of the deceased, incapacitated, or bankrupt Signal Liquidating Trust Beneficiary (a) to an accounting, (b) to take any action in any court or elsewhere for the distribution of the Signal Liquidating Trust Assets, or (c) to a partition of the Signal Trust Assets; or (iii) otherwise affect the rights and obligations of the Signal Liquidating Trust Beneficiary under this Agreement or in the Signal Liquidating Trust.

      **5.9**    **Standing.** Except as expressly provided in this Agreement, the Plan, or the Confirmation Order, a Signal Liquidating Trust Beneficiary does not have standing to direct the Signal Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Signal Liquidating Trust Assets.

**ARTICLE VI**
**PROCEDURES FOR RESOLVING AND TREATING DISPUTED**
**AND CONTINGENT NON-LITIGATION CLAIMS**

      **6.1**    **Incorporation of Plan Provisions.** As of the Effective Date, the Signal Liquidating Trust shall assume responsibility for all Non-Litigation Claims matters against the Debtors.

      **6.2**    **Distributions Regarding Disputed and Contingent Non-Litigation Claims.** Payments and distributions to each Holder of a Contingent Non-Litigation Claim, a Disputed Non-Litigation Claim, or any other Non-Litigation Claim that is not an Allowed Claim, to the extent that such Non-Litigation Claim ultimately becomes an Allowed Claim, shall be made in accordance with the Plan, including the provisions governing the Class of Claims in which such Claim is classified.  As soon as practicable after the date that any Disputed Non-Litigation Claim is Allowed or any Contingent Non-Litigation Claim becomes fixed or liquidated, in whole or in part, the Signal Liquidating Trust shall distribute to the Holder of such Claim any Cash that would have been distributed to such Holder if the Claim had been an Allowed Claim on the Effective Date.  No Distributions shall be made with respect to all or any portion of a Disputed Non-Litigation Claim or Contingent Non-Litigation Claim unless and until all objections to such Claim have been settled, withdrawn, or resolved by Final Order.

**6.3**    **Disputed Claims Reserve.**

(a)    On the Effective Date, the Debtors or the Signal Liquidating Trustee shall establish the Disputed Claims Reserve and deposit Cash in an amount equal to the face value of all Administrative Claims (that are not Purchaser Assumed Liabilities), Priority Tax Claims, Other Priority Claims, and Other Secured Claims as of the Effective Date plus an amount to be agreed upon by the Debtors, Committee, and the Purchaser in an amount necessary to satisfy any Contingent or unliquidated Administrative Claims (that are not Purchaser Assumed Liabilities), Priority Tax Claims, Other Priority Claims, and Other Secured Claims.

(b)    The Disputed Claims Reserve shall be closed and extinguished by the Signal Liquidating Trustee when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and this Agreement have been made. Upon closure of the Disputed Claims Reserve, all Cash and other property held in that Disputed Claims Cash Reserve shall be returned to the Purchaser.

# ARTICLE VII
# DISTRIBUTIONS

**7.1**    **Distributions from Signal Liquidating Trust Assets.**    All payments to be made by the Signal Liquidating Trust to any Signal Liquidating Trust Beneficiary or other Holder of an Allowed Non-Litigation Claim shall be made only in accordance with the Plan, the Confirmation Order, and this Agreement and out of the Signal Liquidating Trust Assets (or from the income and proceeds realized from the Signal Liquidating Trust Assets).

**7.2**    **Distributions; Withholding.**    The Signal Liquidating Trustee shall make Distributions to Holders of Allowed Claims as provided in the Plan. All such distributions shall be made as provided, and subject to any withholding or reserve, in this Agreement, the Plan or the Confirmation Order. Additionally, the Signal Liquidating Trustee may withhold from amounts distributable to any Signal Liquidating Trust Beneficiary or other Holder of an Allowed Non-Litigation Claim any and all amounts, determined in the Signal Liquidating Trustee's sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. In addition, all distributions under this Agreement shall be net of the actual and reasonable costs of making such distributions. The net income of the Signal Liquidating Trust and all net proceeds from the sale of Signal Liquidating Trust Assets shall be distributed at least annually (except that the Signal Liquidating Trustee may retain an amount of cash or other Signal Liquidating Trust Assets or net income of the Signal Liquidating Trust reasonably necessary to maintain the value of the Signal Liquidating Trust Assets and to meet claims and contingent liabilities (including Disputed Claims)).

**7.3**    **Unclaimed Distributions.**    Any Distributions to be made by the Signal Liquidating Trust under the Plan that cannot be delivered to the Entity entitled thereto within 90 days after an attempted distribution (including by an Entity's failure to negotiate a check issued to such Entity 90 days after issuance of a check) shall become vested in, and shall be transferred to, the Signal Liquidating Trust, notwithstanding state or other escheat or similar laws to the contrary. In such event, such Entity's Claim shall no longer be deemed to be Allowed and such Entity shall be deemed to have waived its rights to such payments or Distributions under the Plan

pursuant to section 1143 of the Bankruptcy Code, shall have no further Claim in respect of such Distribution and shall not participate in any further Distributions under the Plan with respect to such Claim

**7.4    Expenses of Distribution.** All Distributions to be made by the Signal Liquidating Trust under the Plan shall be net of the actual and reasonable costs of making such Distributions.

**7.5    Timing of Distributions Under the Plan.**  Any Distribution made pursuant to the Plan shall be deemed to have been timely made if made within ten (10) business days of the time specified in the Plan.

**7.6    No Distribution in Excess of Allowed Amount of Claim.**  Notwithstanding anything to the contrary herein or in the Plan, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

**7.7    Manner of Payment Under the Plan.**  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made under the Plan shall be made by check drawn on a domestic bank, or by wire transfer from a domestic bank.

**7.8    Setoffs.**  Subject to the limitations provided in section 553 of the Bankruptcy Code, the Signal Liquidating Trust may, but shall not be required to, setoff against any Claim and the payments or Distributions to be made pursuant to the Plan in respect of such Claim, any claims, rights, causes of action and liabilities of any nature that the Signal Liquidating Trust may hold against the Holder of such Claim; *provided, however*, that neither the failure to effect such a setoff nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Signal Liquidating Trust of any of such claims, rights, causes of action and liabilities that the Signal Liquidating Trust may have against the Holder of such Claim.

**ARTICLE VIII**
**TAXES**

**8.1    Income Tax Status.**  Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Signal Liquidating Trust shall be treated as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d) and as a grantor trust pursuant to §§ 671-677 of the Tax Code. As such, the Signal Liquidating Trust Beneficiaries will be treated as both the grantors and the deemed owners of the Signal Liquidating Trust.  Any items of income, deduction, credit, and loss of the Signal Liquidating Trust shall be allocated for federal income tax purposes to the Signal Liquidating Trust Beneficiaries.

**8.2    Tax Returns.**  In accordance with § 6012 of the Tax Code and Treas. Reg. § 1.671-4(a), the Signal Liquidating Trust shall file with the IRS annual tax returns on Form 1041.  In addition, the Signal Liquidating Trust shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the Signal Liquidating Trust Assets (or the income or proceeds thereof).  Within a reasonable time following the end of the taxable year, the Signal Liquidating Trust shall send to each Signal Liquidating Trust Beneficiary a separate statement setting forth the Signal Liquidating Trust Beneficiary's share of items of income, gain, loss, deduction or credit and informing each such Signal Liquidating Trust Beneficiary that such items should be

reported on such Signal Liquidating Beneficiary's federal, state, and other income tax returns, as applicable. The Signal Liquidating Trust may provide each Signal Liquidating Trust Beneficiary with a copy of the Form 1041 for the Signal Liquidating Trust (without attaching any other Signal Liquidating Trust Beneficiary's Schedule K-1 or other applicable information form) along with such Signal Liquidating Trust Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Signal Liquidating Trustee shall allocate the taxable income, gain, loss, deduction, or credit of the Signal Liquidating Trust with respect to each Signal Liquidating Trust Beneficiary.

**8.3** **Withholding of Taxes and Reporting Related to Signal Liquidating Trust Operations.** The Signal Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Signal Liquidating Trust shall be subject to any such withholding and reporting requirements. To the extent that the operation of the Signal Liquidating Trust or the liquidation of the Signal Liquidating Trust Assets creates a tax liability, the Signal Liquidating Trust shall promptly pay such tax liability out of the Signal Liquidating Trust Assets (or the income or proceeds thereof) and any such payment shall be considered a cost and expense of the operation of the Signal Liquidating Trust payable without Bankruptcy Court order. The Signal Liquidating Trust may reserve a sum, the amount of which shall be determined by the Signal Liquidating Trustee, sufficient to pay the accrued or potential tax liability arising out of the operations of the Signal Liquidating Trust or the operation of the Signal Liquidating Trust Assets. The Signal Liquidating Trustee, on behalf of the Signal Liquidating Trust, may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.

**8.4** **Tax Identification Numbers.** The Signal Liquidating Trustee may require any Signal Liquidating Trust Beneficiary or other Holder of an Allowed Non-Litigation Claim to furnish to the Signal Liquidating Trustee its social security number or employer or taxpayer identification number as assigned by the IRS and the Signal Liquidating Trustee may condition any Distribution to any Signal Liquidating Trust Beneficiary or other Holder of an Allowed Non-Litigation Claim upon the receipt of such identification number.

## ARTICLE IX
## TERMINATION OF THE SIGNAL LIQUIDATING TRUST

**9.1** **Termination of Signal Liquidating Trust.** The Signal Liquidating Trustee shall be discharged and the Signal Liquidating Trust shall be terminated, at such time as (a) all Disputed and Contingent Non-Litigation Claims have been resolved, (b) all of the Signal Liquidating Trust Assets have been liquidated, (c) all duties and obligations of the Signal Liquidating Trustee hereunder have been fulfilled, (d) all Distributions required to be made by the Signal Liquidating Trustee under the Plan and this Agreement have been made, and (e) the Bankruptcy Cases have been closed; provided, however, that in no event shall the Signal Liquidating Trust be terminated later than the term of the Signal Liquidating Trust under Section 9.2 of this Agreement, as such term may be extended pursuant to Section 9.2.

**9.2    Maximum Term.**  The term of the Signal Liquidating Trust shall end no later than the third (3rd) anniversary of the Effective Date (the "**Initial Signal Liquidating Trust Term**"); provided, however, that the Signal Liquidating Trustee may, subject to the further provisions of this Section 9.2, extend the term of the Signal Liquidating Trust for such additional period of time as is necessary: within the six (6) month period prior to the termination of the Initial Signal Liquidating Trust Term, the Signal Liquidating Trustee may file a notice of intent to extend the term of the Signal Liquidating Trust with the Bankruptcy Court and upon approval of the Bankruptcy Court of such extension, the term of the Signal Liquidating Trust shall be so extended.  The Signal Liquidating Trust may file one or more such extension notices, each notice to be filed within the six (6) month period prior to the termination of the extended term of the Signal Liquidating Trust (all such extensions, collectively, are referred to herein as the "**Supplemental Signal Liquidating Trust Term**").  Notwithstanding anything to the contrary in this Section 9.2, however, the Signal Supplemental Liquidation Term may not exceed five (5) years without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Signal Liquidating Trust as a liquidating trust for federal income tax purposes.  In addition, the provisions of this Section 9.2 shall be without prejudice to the right of any party in interest under Section 1109 of the Bankruptcy Code to petition the Bankruptcy Court, for cause shown, to shorten the Supplemental Signal Liquidating Trust Term.

**9.3    Events Upon Termination.**  At the conclusion of the term of the Signal Liquidating Trust, the Signal Liquidating Trustee shall distribute the remaining Signal Liquidating Trust Assets, if any, to the Purchaser, in accordance with the Plan, the Confirmation Order, and this Agreement.

**9.4    Winding Up, Discharge, and Release of the Signal Liquidating Trustee.**  For the purposes of winding up the affairs of the Signal Liquidating Trust at the conclusion of its term, the Signal Liquidating Trustee shall continue to act as Signal Liquidating Trustee until its duties under this Agreement have been fully discharged or its role as Signal Liquidating Trustee is otherwise terminated under this Agreement and the Plan.  Upon a motion by the Signal Liquidating Trustee, the Bankruptcy Court may enter an order relieving the Signal Liquidating Trustee, its agents and employees of any further duties, discharging, and releasing the Signal Liquidating Trustee and releasing its bond, if any.

**ARTICLE X**
**MISCELLANEOUS PROVISIONS**

**10.1    Amendments.**  The Signal Liquidating Trustee may modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.  The Signal Liquidating Trustee shall seek Bankruptcy Court approval of any material modification, supplement, or amendment.

**10.2    Waiver.**  No failure by the Signal Liquidating Trust, the Signal Liquidating Trustee, or its agents, professionals and employees to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**10.3     Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**10.4     No Bond Required.** Notwithstanding any state law to the contrary, the Signal Liquidating Trustee (including any successor Signal Liquidating Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

**10.5     Irrevocability.** This Agreement and the Signal Liquidating Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Agreement.

**10.6     Relationship to the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.  In the event that any provision of the Plan is found to be inconsistent with a provision of the Confirmation Order, the Confirmation Order shall control.

**10.7     Applicable Law.** This Signal Liquidating Trust shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

**10.8     Retention of Jurisdiction.**  Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Signal Liquidating Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Agreement, or any Entity's obligations incurred in connection herewith, including without limitation, any action against the Signal Liquidating Trustee or any professional retained by the Signal Liquidating Trustee, in each case in its capacity as such.  Each party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, forum *non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court.  Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Agreement.

**10.9     Severability.**  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**10.10   Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Signal Liquidating Trust Beneficiaries any rights or remedies under or by reason of this Agreement; *provided, however,* that the TRSA, ERSA and any Purchaser that is a permitted designee under the Asset Purchase Agreement of the TRSA and/or ERSA (each an "RSA Entity" and collectively, the "RSA Entities") shall be intended third-party beneficiaries of this Agreement with standing to enforce the Agreement's applicable terms to the extent this Agreement (a) confers any rights on, or preserve any rights for, any or all such RSA Entities and/or (b) limits any obligations of any or all such RSA Entities.

**10.11   Notices.** Notices to Non-Litigation Claimants shall be given by first class mail, postage prepaid, at the address of such person in each case as provided on such person's Proof of Claim with respect to his or her Non-Litigation Claim.

(a)   Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Signal Liquidating Trust: [TO BE PROVIDED]

To the Signal Liquidating Trustee: [TO BE PROVIDED]

(b)   All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

**10.12   Entire Agreement; No Waiver.** The entire agreement of the parties relating to the subject matter of this Agreement is contained herein and in the Plan Documents referred to herein, and this Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**10.13   Headings.** The headings used in this Agreement are inserted for convenience only and do not constitute a portion of this Agreement, nor in any manner affect the construction of the provisions of this Agreement.

**10.14   Effectiveness.** This Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

**10.15**  **Counterpart Signatures.**  This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

*Signature Page Follows*

IN WITNESS WHEREOF, the parties have executed this Agreement this___day of _____ _____, 2015.

Settlors:

SIGNAL INTERNATIONAL, INC.    SIGNAL SHIP REPAIR, LLC

By:_____    By:_____
    Name:                          Name:
    Title:                          Title:

SIGNAL INTERNATIONAL, LLC    SIGNAL INTERNATIONAL TEXAS GP, LLC

By:_____    By:_____
    Name:                          Name:
    Title:                          Title:

SIGNAL INTERNATIONAL TEXAS, L.P.
By:    Signal International Texas GP, LLC,
        its general partner

By:_____
    Name:
    Title:

Signal Liquidating Trustee

[_____]

By:_____
    Name:
    Title:

Expiration Date of Initial Term: _____

Anniversary of the date of this Agreement

9600817.2

**Exhibit 6**

**Identity of Signal Liquidating Trustee**

**[To Be Provided]**

**Exhibit 7**

**Westport Participation Agreement**

**[To Be Provided]**

**Exhibit 8**

**Apology Letter**



**S I G N A L**

**I N T E R N A T I O N A L**

*A Marine & Fabrication Company*

**Richard L. Marler**
*Chief Executive Officer • President*

September 22, 2015

Dear former employee,

On behalf of Signal International, Inc., its management expresses their sincerest apology and regret for the treatment its guest workers from India received while living and working at Signal to help in the rebuilding effort on the Gulf Coast after Hurricanes Katrina and Rita.  Signal was wrong in failing to ensure that the guest workers were treated with the respect and dignity they deserved.  Signal deeply regrets the living conditions the guest workers were subjected to, and is sorry for its actions on March 9, 2007.  Signal knows this treatment caused hardship to the guest workers and, in many cases, their families.  Signal has learned from its mistakes and is committed to ensuring the experiences of the guest workers and their families will not be repeated.

Signal is pleased to have recently achieved bankruptcy court approval of the July 12, 2015 settlement agreement and, although pursuant to the agreement, Signal is obligated under the circumstances not to admit to legal liability, Signal is pleased that the settlement will ultimately result in a meaningful recovery to those who have been affected.  Signal looks forward to confirming its chapter 11 plan and completing its bankruptcy case so that the guest workers will begin to receive the benefits of the settlement agreement.

Sincerely,

Richard L. Marler
CEO and President
Signal International, Inc.