## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SIGNAL INTERNATIONAL, INC., et al.**[1] | Case No. 15-11498 (MFW) |
| Debtors. | Jointly Administered |
| | **Ref. Docket Nos. 386 and 447** |

## NOTICE OF FILING OF SECOND SUPPLEMENT TO THE DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, DATED OCTOBER 8, 2015

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

submit this second plan supplement (the "Second Plan Supplement")[2] in support of, and in

accordance with, the *Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11*

*of the Bankruptcy Code,* dated October 8, 2015 [Docket No. 386] (as may be amended,

supplemented, or modified from time to time, the "Plan"). Capitalized terms used but not

defined herein shall have the meanings ascribed to such terms in the Plan. The documents

contained in this Second Plan Supplement are integral to, part of, and incorporated by reference

into the Plan. These documents have not yet been approved by the Bankruptcy Court. If the

Plan is confirmed by the Bankruptcy Court, the documents contained in this Second Plan

Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

[2] On November 2, 2015, the Debtors filed the *First Supplement to the Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, Dated October 8, 2015* [Docket No. 447].

## Contents

This Second Plan Supplement contains the following documents, each as may be amended, modified, or supplemented from time to time by the Debtors in accordance with the Plan as set forth below:

| Exhibit | Second Plan Supplement Document |
|---------|--------------------------------|
| 1 | Identity of Litigation Settlement Trustee and Litigation Settlement TAC Members |
| 2 | Westport Participation Agreement |

Certain documents, or portions thereof, contained in this Second Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. Subject to the express provision of the Plan, the Debtors reserve all rights to amend, revise, or supplement the Second Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.

Dated:    November 10, 2015
          Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Kenneth J. Enos*
M. Blake Cleary (No. 3614)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Travis G. Buchanan (No. 5595)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 1**

**Identity of Litigation Settlement Trustee
and Litigation Settlement TAC Members**

The Litigation Settlement Trustee, who was selected by the Southern Poverty Law Center, will be Clifford Zucker of CohnReznick LLP. The terms of employment and compensation of the Liquidation Settlement Trustee are set forth in the Liquidation Settlement Trust Agreement.

The identities and affiliations of the initial members of the Liquidation Settlement TAC, which were selected by the Supporting Litigation Claimants, are as follows:

Shane Ramsey
Kilpatrick Townsend & Stockton LLP

Christopher Willett
Equal Justice Center

Daniel Werner
Southern Poverty Law Center

The initial members of the Liquidation Settlement TAC are serving without compensation. The initial members of the Liquidation Settlement TAC shall be entitled to indemnification and expense reimbursement for costs and expenses to the extent set forth in the Liquidation Settlement Trust Agreement.

**Exhibit 2**

**Westport Participation Agreement**

## LOAN PARTICIPATION AGREEMENT

This LOAN PARTICIPATION AGREEMENT (this "Agreement") dated as of _____ ____, 2015 (the "Effective Date"), is made by and between _____ ("Trustee"), in his capacity as trustee of the Litigation Settlement Trust U/A/D _____ (the "Litigation Settlement Trust"), and WESTPORT INVESTORS, LLC, an Alabama limited liability company ("Holder") and an RSA Affiliate (as defined below).  Trustee and Holder are sometimes referred to collectively as the "Parties," and individually, as a "Party."

WHEREAS, Signal International Texas, L.P. ("Signal Texas") is a debtor in Case No. 15-11498 (MFW), Jointly Administered, in the United States Bankruptcy Court of the District of Delaware (the "Bankruptcy Court").  Pursuant to the Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") filed with the Bankruptcy Court, the Litigation Settlement Trust was established as a Qualified Settlement Fund pursuant to 26 CFR § 1.468B-1 to assume all the liability for all Litigation Claims (as defined in the Plan).  The Plan further provides that the Litigation Settlement Trust will share in the proceeds, as provided in this Agreement and the Plan, of the "Westport Loan" as herein defined.

WHEREAS, pursuant to the Plan, Holder has acquired all right, title, and interest in and to the Westport Loan, subject to the Litigation Settlement Trust's participation interest therein as provided in this Agreement and the Plan.

NOW, THEREFORE, in consideration of the mutual agreements contained herein, and intending to be legally bound, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

For purposes hereof, each of the following terms shall have the meaning specified with respect thereto:

"Borrower" means Westport Orange Shipyard, LLC, or any successor or other entity owing indebtedness under the Westport Loan.

"Business Day" means any day, other than Saturday or Sunday, on which commercial banks in the State of Alabama are neither required nor authorized to close.

"Collateral" means all tangible or intangible rights, properties or assets of Borrower or any other person, whether real, personal or mixed, from time to time securing the Borrower's obligations under the Westport Loan Documents.

"Debtors" has the meaning ascribed to that term under the Plan.

"ERSA" has the meaning ascribed to that term under the Plan.

"Participant" means the Litigation Settlement Trust, acting by and through the Trustee. Participant is a Party hereunder in such capacity.

"Participation Share" means the undivided percentage interest of each Party in and to the Westport Loan, the Westport Loan Documents and the Collateral pursuant to this Agreement and the Plan.  Subject to adjustment as provided herein and the Plan, the Participant's Participation Share shall be 66.9%, and the Holder's Participation Share shall be 33.1%.

"Proceeds" means all proceeds derived from the Westport Loan including, without limitation, scheduled payments of principal and interest, prepayments, proceeds of enforcement, proceeds of liquidation of Collateral, and proceeds of any condemnation or insurance awards collected with respect to Collateral.

"RSA Affiliate" means ERSA, TRSA or an affiliate or designee of either of them.

"TRSA" has the meaning ascribed to that term under the Plan.

"Westport Loan" means that certain purchase money indebtedness owing by Borrower under the Westport Loan Documents in the stated principal amount of up to $29,894,469.

"Westport Loan Documents" means all instruments or documents evidencing, securing or otherwise governing the Westport Loan including, without limitation, the documents listed on Schedule A annexed hereto.

## ARTICLE II
## PARTICIPATION

Section 2.1. Purchase of Participation.

(a)    Subject to the terms and conditions of this Agreement and the Plan, Holder hereby sells, transfers, assigns and delivers to Participant, without recourse, and Participant hereby purchases and accepts from Holder, an undivided participation interest in and to the Westport Loan, the Westport Loan Documents and the Collateral, in an amount equal to the Participant's Participation Share.

(b)    Notwithstanding subsection (a) above, if the Westport Loan is prepaid in full, in accordance with its terms, prior to its scheduled maturity date, and the application of the Participant's Participation Share to all Proceeds would result in the Participant receiving less than $20,000,000 in Proceeds in the aggregate, then the Participation Shares of the Parties shall be adjusted such that the Participant shall receive aggregate Proceeds of $20,000,000.

(c)    Notwithstanding subsection (a) above, if the application of the Participant's Participation Share to all Proceeds would result in the Participant receiving more than $22,000,000 in Proceeds in the aggregate, then the Participation Shares of the Parties shall be adjusted such that the Participant shall receive aggregate Proceeds of $22,000,000.  Upon the Participant receiving $22,000,000 of Proceeds in the aggregate, Holder shall be entitled to all remaining Proceeds.

- 2 -

25642518 v4

(d)     Each of the Parties acknowledges and agrees that, pursuant to the Plan, each of the Holder and the Participant shall constitute a holder in due course and a "person entitled to enforce instrument" under section 3-301 of the Uniform Commercial Code with respect to the Westport Loan and the Westport Loans Documents, subject to the terms of this Agreement and the Plan.

Section 2.2.  <u>Administration Expenses</u>.  All out-of-pocket costs and expenses reasonably and actually incurred by Holder in connection with the administration of the Westport Loan shall be payable from the Proceeds collected prior to any distribution to the Parties in accordance with their respective Participation Shares.  Any costs and expenses reimbursed out of Proceeds pursuant to the preceding sentence shall not be deducted from the Participant's Participation Share for purposes of Sections 2.1(b) and 2.1(c).

Section 2.3.  <u>Third Party Beneficiaries</u>.  The Parties hereby agree that the provisions of this Agreement shall inure to the benefit of the Parties only and not to any third parties except as otherwise expressly provided herein.

Section 2.4.  <u>Reporting and Audit Rights</u>.  The Holder shall, promptly at the beginning of each fiscal quarter, submit a report to the Participant detailing (a) the Proceeds collected, (b) the out-of-pocket costs and expenses incurred, and (c) the amounts distributed or disbursed, if any, in the prior fiscal quarter.  The Participant shall have the right, at such Participant's expense and at any reasonable time during normal business hours, to request from Holder and have access to and examine any and all books, records and documents relating to the Westport Loan or relating to any matters covered by this Agreement.  In addition, Holder shall deliver copies of all written information that it receives from Borrower in satisfaction of the reporting requirements of Borrower under the Loan Documents promptly to the Participant.  Holder may perform any of its obligations hereunder by or through its agents, employees, or attorneys.

Section 2.5.   <u>True Sale; Ownership Interests</u>.   The Parties hereby acknowledge and confirm that the purchase and sale of Participant's Share under this Agreement shall for all purposes be deemed a true sale, and not a loan or other extension of credit by Participant to Holder.  Each of the Parties shall, without the necessity of any written instrument of assignment or other document, become vested with an undivided legal and equitable ownership interest equal to its Participation Share in and to (i) the Westport Loan Documents, (ii) the Collateral, (iii) all Proceeds, and (iv) all other rights and claims with respect to the Westport Loan.  The respective Participation Shares of the Parties shall be of equal priority with one another.  If Holder acquires an ownership interest in any of the Collateral due to the foreclosure or other realization of any security interest in or lien granted by any of the Loan Documents, Holder hereby irrevocably sells, grants and conveys an undivided interest in such ownership interest to the Participant equal to the Participant's Participation Share, notwithstanding the fact that title is taken in the name of Holder alone.

**ARTICLE III**
**DISTRIBUTION OF PAYMENTS; REIMBURSEMENT**

- 3 -

Section 3.1.  <u>Distribution of Proceeds</u>.

(a)    Holder agrees that all Proceeds received by it shall be held by Holder in trust for the benefit of the Parties for disbursement in accordance with this Agreement and the Plan. Holder shall pay to each of the Parties such Party's Participation Share of Proceeds received by Holder.  Payments shall be made no later than 5:00 P.M. the Business Day next following the day on which Holder receives such payment of Proceeds in immediately available funds; provided, however, that if Holder does not have enough information at such time to reimburse all incurred out-of-pocket costs and expenses in accordance with Section 2.2, Holder may retain a reasonable reserve to reimburse Holder for such costs and expenses at a later date; provided, further, that, once the Holder has determined the amount of such costs and expenses, to the extent that the amount so reserved exceeds the amount necessary to pay such costs and expenses, such excess shall be paid over to the Parties in accordance with their respective Participation Shares pursuant to the provisions of this Section 3.1.

(b)    Participant hereby authorizes and directs Holder to render payment of Participant's Share of Proceeds by wire transfer as follows:

Bank:
ABA No.:
Account No.:
Re:
Notify on Arrival:

Participant shall be entitled to direct that payments be made to such other single account or payee as Participant may elect by written notice to Holder.  All wire transfer fees or other out-of-pocket charges incurred by Holder in connection with the delivery of Proceeds to Participant shall be deducted from such Proceeds at the time of payment. Any costs and expenses deducted out of Proceeds pursuant to the preceding sentence shall not be deducted from the Participant's Participation Share for purposes of Sections 2.1(b) and 2.1(c).

Section 3.2.  <u>Special Distributions</u>.  In addition to any Proceeds received by Holder subsequent to the Effective Date, Holder agrees that it shall pay to Participant, to the extent actually received by Holder, Participant's Participation Share of (i) any payments of principal on account of the Westport Loan paid to TRSA, ERSA, or any of the Debtors on or after June 30, 2015, and (ii) any payments of interest on account of the Westport Loan, including, without limitation, interest paid to TRSA, ERSA, or any of the Debtors on or after November 5, 2015.

Section 3.3.  <u>Sharing of Payments</u>.  If any Party shall receive any payment (whether voluntary, involuntary, through the exercise of any right of set-off or otherwise) on account of any obligation of Borrower in connection with the Westport Loan, such Party shall pay over to the other Party such portion of such payment as may be necessary in order that the Parties each share in the total amount of such payment in accordance with the Parties' Participation Shares.

Section 3.4.  <u>Excess Interest</u>.  Notwithstanding any provisions contained in the Loan Documents, neither Party shall ever be entitled to receive, collect or apply, as interest on the

- 4 -

Westport Loan, any amount in excess of the maximum rate of interest permitted to be charged by applicable law, and, in the event either Party ever receives, collects, or applies as interest any such excess, such amount which would be excess interest shall be applied to the reduction of the unpaid principal balance of the Westport Loan and, if the Westport Loan has been paid in full, any remaining excess shall forthwith be paid to Borrower.

## ARTICLE IV
## ADMINISTRATION OF LOAN

Section 4.1.  <u>General Administration</u>.  The Holder will be responsible for the collection and distribution of the Proceeds, and if necessary, the enforcement of the Westport Loan, for the ratable benefit of the Parties.  The duties of Holder in servicing the Westport Loan and the Loan Documents comprise solely the following: (i) while any Loan Documents are in the possession or custody of Holder, to safely keep the same (a) separate and apart from Holder's own property and (b) with the same standard of care that Holder applies to its own property, (ii) subject to the terms of this Agreement and the Plan, to take such actions as may be commercially reasonable in the circumstances in order to collect or protect the Westport Loan if a default occurs or any payment pursuant to the Westport Loan is not paid when due, and (iii) to keep full and complete records concerning the Westport Loan and Proceeds received by Holder.  Holder shall discharge the foregoing duties with the same degree of care and skill as it would apply in servicing and administering the Westport Loan solely for its own account.  Holder shall not have any duties or responsibilities to Participant except those expressly set forth in this Agreement, nor any fiduciary relationship, partnership or joint venture with Participant.  No implied covenants, functions, responsibilities, duties, obligations or liabilities shall be read into this Agreement.

Section 4.2.  <u>Timing of Payments</u>.  Whenever Holder receives, from or on behalf of Borrower or anyone else, a payment of principal, interest or other Proceeds or any other amount in connection with the Westport Loan, with respect to any of which the Participant is entitled to receive its Participation Share, Holder shall hold such amounts in trust for the Participant and promptly pay to the Participant via wire transfer of federal funds, the amount due to the Participant as determined pursuant to this Agreement (including, without limitation, in accordance with the priorities set forth in Section 4.3 hereof, to the payment of interest and to the repayment of the Participation Share).  Payment shall be made as provided in Section 3.1 above, in lawful money of the United States of America.  Holder shall not be required to remit to a Party any amount not actually collected by Holder, whether or not the Westport Loan is then in default.  If Holder fails to timely remit any payments due to a Party, the amount of such payments shall accrue interest at a per annum rate equal to the Federal Funds Rate from and including the date on which such failure occurs until but excluding the day on which paid.

Section 4.3.  <u>Application of Proceeds</u>.  All Proceeds collected or received by Holder shall be applied in the following order of priority:

(a)     <u>First</u>, to the payment of all costs and expenses incurred in the enforcement of the Westport Loan or other costs and expenses to which Holder is entitled to reimbursement under this Agreement (including reasonable legal and other reasonable expenses and

- 5 -

disbursements of Holder, but excluding salaries and wages of its officers and employees and overhead expenses);

(b)   <u>Second</u>, to the payment of any amounts owed by the Borrower pursuant to any Loan Document (other than the payment of interest or principal under clauses (c) and (d) below) and to the repayment to Holder of any amount permitted to be paid by Holder under the Loan Documents and actually paid by Holder;

(c)   <u>Third</u>, to the payment of interest on the Westport Loan due and payable under the Loan Documents; and

(d)   <u>Fourth</u>, to the payment of the outstanding principal amount of the Westport Loan under the Loan Documents.

Within each of the categories listed above, the amount of any payment shall be determined as to each Party in accordance with the amount owed each but with equal priority.

Section 4.4.   <u>Powers Granted To Holder</u>.   Participant hereby appoints Holder as an independent contractor (and not as an agent, employee or fiduciary, except as otherwise specifically stated herein) to act on behalf of Participant in the normal course of servicing and administering the Westport Loan.   Subject to the limitations specifically contained in this Agreement (including, without limitation, Section 4.5 of this Agreement), Holder shall be entitled: (a) to negotiate, control, manage and service the Westport Loan; (b) to enforce or to refrain from enforcing the Loan Documents; (c) to give consents, approvals or waivers in connection with the Loan Documents; (d) to agree to any amendments or modifications of the Loan Documents; (e) to acquire additional security for the Westport Loan; (f) to take or refrain from taking any action and make any determination provided for herein or in the Loan Documents; and (g) to exercise all such rights and powers as may be incidental to the foregoing. Holder shall exercise such powers for the benefit of the Parties and in accordance with the terms of this Agreement with the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

Section 4.5.   <u>Limitation on Holder's Actions</u>.   Holder shall not, without the prior written consent of the Participant, which consent shall not be unreasonably conditioned, withheld or delayed:

(a)   consent to or accept any cancellation or termination of any of the Westport Loan Documents or agree to any transfer or termination of any instrument now or hereafter assigned to it as security for the Westport Loan;

(b)   extend the maturity date of the Westport Loan or any payment due thereunder;

(c)   reduce the interest rate payable under Westport Loan Documents or otherwise reduce the amount of any payment of principal or interest due thereunder or modify any of the other payment terms in the Loan Documents;

- 6 -

(d)    release, either partially or fully, any Collateral or any guarantors or any surety including any obligor under any performance bond except as specifically provided in the Loan Documents;

(e)    increase the amount of the Westport Loan (other than by virtue of the capitalization of unpaid charges or unreimbursed expenses owing by Borrower under the Westport Loan Documents);

(f)    subordinate the priority of any lien or security agreement or of any payment of the Westport Loan;

(g)    materially amend the Loan Documents or affirmatively grant any material waivers thereunder;

(h)    establish a fixed interest rate for the Westport Loan; or

(i)    if Borrower shall become subject to an insolvency or liquidation proceeding:

a.    seek to provide, or vote in favor of, any financing to the Borrower ("**DIP Financing**") under Section 364 of the Title 11 of the United States Code, as amended (the "Bankruptcy Code") or any equivalent provision of any similar Federal, state or foreign law for the relief of debtors (any such law, a "Bankruptcy Law");

b.    consent to the use of cash collateral under Section 363 of the Bankruptcy Code or any equivalent provision of any other Bankruptcy Law that constitutes Collateral or proceeds thereof;

c.    support, sponsor, vote for, propose or seek confirmation of a specific plan of reorganization;

d.    consent to any order granting any relief on account of obligations under the Westport Loan Documents as adequate protection (or its equivalent) for the benefit of the holders thereof in the Collateral unless such relief is provided in respect of all of the such obligations on an equal and ratable basis;

e.    consent to any order relating to a sale of Collateral; or

f.    file any pleadings or motions, take any position at any hearing or proceeding of any nature, or otherwise take any action whatsoever, in each case in respect of any of the Collateral;

provided, however, that, so long as Borrower shall not have become subject to an insolvency or liquidation proceeding, Holder shall not be restricted from taking any action (x) where obtaining Participant's prior consent would not be practicable and (y) which in Holder's reasonable business judgment is necessary (i) to preserve or protect the Collateral from damage or loss, (ii)

to preserve or protect any claim, right or remedy against Borrower, any other obligor or any third party, (iii) to respond to any situation constituting an emergency, or (iv) to avoid exposing Holder to any potential claim, demand, expense, obligation or liability for which Holder has not been provided adequate indemnity.  Holder will promptly advise Participant in writing of any action taken by it or proposed to be taken by it pursuant to the authority set forth in the preceding clauses (i) through (iv).

Section 4.6.   Retention of Counsel.   In the event of actual or threatened litigation affecting the Westport Loan or the collateral for the Westport Loan brought by Borrower or any third parties, with respect to which litigation Holder is of the opinion that the services of an attorney should be retained for the mutual protection of the interests of the Parties; or in the event that Holder is of the opinion that counsel should be retained to enforce the provisions of the Loan Documents or in connection with any default or modification of Loan Documents, Holder may employ counsel reasonably acceptable to the Participant to represent Holder and the interests of the Parties with the Participant's prior written consent, unless employment of the same is an emergency, in which event Holder will attempt to obtain the Participant's prior consent but will be entitled to employ such counsel solely to address such emergency whether or not the Participant has given Holder its consent.  Holder shall seek to cause Borrower to pay the fees and expenses of such counsel in accordance with the terms and conditions of the Loan Documents, but if Borrower fails to pay such fees and expenses, Holder shall use monies received by Holder under the Loan Documents and in connection with the Westport Loan in accordance with Sections 3.1 and 4.3 of this Agreement.   In the event such monies are insufficient to employ counsel, the Parties shall pay the remaining fees and expenses in proportion to their respective Participation Shares.  If Holder later receives reimbursement therefor from or on behalf of Borrower, Holder shall return the Participant's portion of any amounts so repaid, without interest, unless such amount is received by Holder with interest, in which case the Party would also receive its share of the amount of interest.  The Participant may retain its own counsel in connection with the same litigation at the sole cost and expense of the Participant.  In the event of litigation by and between Holder and the Participant arising out of this Agreement, each Party shall each bear its own costs in retaining counsel for the same.

Section 4.7.   Default.   Upon the occurrence of a default under any of the Loan Documents, the Party which first acquires knowledge thereof shall promptly notify the other Party of the existence and nature thereof but failure to give any such notice shall not result in any liability nor affect the duties and obligations of either Party.

Section 4.8.   Reliance on Holder.   Neither Holder, nor any of its directors, officers, agents or employees shall be liable for any action taken or omitted to be taken by it or them under or in connection with this Agreement or the Loan Documents unless such action or inaction constitutes gross negligence, fraud, willful misconduct, or failure to administer the Westport Loan with the same care as it would exercise if it were administering the Westport Loan for its own account in the absence of the Participant.  Without limiting the generality of the foregoing, Holder: (a) may consult with legal counsel, independent public accountants and other experts selected by it and, in the absence of Holder's gross negligence, fraud, or willful misconduct, shall not be liable for any action taken or omitted to be taken by it in accordance with the advice of such counsel, accountants or experts; and (b) in the absence of Holder's gross negligence,

- 8 -

fraud, or willful misconduct, shall incur no liability under or in respect of this Agreement or the Loan Documents by acting upon any notice, consent, certificate or other instrument or writing believed by it to be genuine and signed or sent by the proper party or parties.

Section 4.9. <u>Other Loans to Borrower</u>. Holder and its affiliates may accept deposits from, lend money to, act as trustee under indentures of trust of and generally engage in any kind of business with Borrower, and any individual, corporation, partnership, association, joint stock company, trust, unincorporated organization or joint venture who may do business with Borrower without any duty to account therefor to the Participant so long as Holder takes no action that would or might jeopardize the value of the Westport Loan.

Section 4.10. <u>Borrower Contact</u>. The Participant shall not, without prior written notice to Holder, contact the Borrower with respect to any matters relating to the Westport Loan.

Section 4.11. <u>Disgorgement of Proceeds</u>. If Holder shall for any reason be obligated or compelled pursuant to any applicable law or any order of any court or governmental authority having jurisdiction, to rescind, return or disgorge any Proceeds received by Holder ("<u>Returned Proceeds</u>"), then to the extent that Participant has received payment of Participant's Participation Share of such Returned Proceeds, Participant shall within two (2) Business Days after receiving written notice from Holder, pay to Holder an amount equal to (i) Participant's Participation Share of such Returned Proceeds, plus (ii) to the extent any interest, fee, penalty, or other charge lawfully assessed against Holder with respect to such Returned Proceeds is not on account of the Holder's gross negligence, fraud, or willful misconduct, Participant's Participation Share of any interest, fee, penalty or other charge lawfully assessed against Holder with respect to such Returned Proceeds.

Section 4.12 <u>Insolvency of Holder</u>. In the event of the insolvency, bankruptcy or similar proceeding involving Holder, it is hereby agreed by the Parties hereto that the Participant shall automatically succeed to all right, title, interest, status and responsibilities which Holder has regarding the holding and servicing of the Westport Loan, Holder's authority to act as the agent for the Participant in the Westport Loan shall terminate and Holder shall assign the Loan Documents and transfer physical possession of the Loan Documents to the Participant.

Section 4.13. <u>Tax Matters</u>. Each of the Parties shall be solely responsible for determining and discharging any and all tax obligations arising with respect to the ownership of such Party's Participation Share and the receipt or distribution by such Party of Proceeds hereunder. The Parties acknowledge that, pursuant to the Plan, the Litigation Settlement Trust has been formed under Delaware law with the intention that it constitute a Qualified Settlement Fund within the meaning of 26 CFR § 1.468B-1. Trustee agrees that it shall not take any action, or fail to take any action, which would cause the Trust's status as a Qualified Settlement Fund to be terminated, revoked or otherwise impaired.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES;
## INDEMNIFICATION

25642518 v4

Section 5.1.   Mutual Representations and Warranties.   The Parties each represent and warrant that they are entering into this Agreement in accordance with all applicable laws, rules and regulations and the Plan.

Section 5.2.   Representations and Warranties by Holder.   Holder hereby represents and warrants to the Participant that Holder will use commercially reasonable efforts to insure that any information provided to the Participant with respect to the Borrower, the Westport Loan or the Collateral is materially correct and complete and Holder will, whenever reasonably possible, notify Participant if Holder knows or reasonably should know that any such information is incorrect or incomplete in any material respect.

Section 5.3.   Independent Decisions.   Each Party represents and warrants that it will make its own credit decisions in taking or not taking any action pursuant to this Agreement, independently and without reliance on the Participant except as provided herein.

Section 5.4.   Disclaimer of Other Representations or Warranties.   Neither Holder nor the Participant makes any representations or warranties with respect to matters not specifically set forth herein, including without limitation, the following matters: (a) the truthfulness and accuracy of any of the representations by Borrower contained in the Loan Documents; (b) the collectability of any amount payable under the Loan Documents; (c) the enforceability, sufficiency or value of any rights conferred upon Holder under any of the Loan Documents or hereunder by way of security or collateral for obligations owed under the Loan Documents; or (d) the financial condition of Borrower.

Section 5.5.   Indemnification. Holder and the Participant agree to indemnify each other in accordance with their respective Participation Shares of the Westport Loan (to the extent not reimbursed by or on behalf of Borrower) from and against any and all claims, liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against Holder or the Participant in any way relating to or arising out of the Loan Documents, or any action taken or omitted to be taken by Holder or Participant under the Loan Documents; provided, however, that the indemnifying Party shall not be liable for any portion of such claims liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from the Participant's willful misconduct or gross negligence or breach of its obligations hereunder.  The obligations of Holder and the Participant under this Section 5.5 shall survive the termination of this Agreement, the payment of the Westport Loan, and the payment of all other obligations of Borrower under the Loan Documents; provided, however, no Party shall have any obligations under this Section 5.5 for actions or inactions of such Party that occur after such Party ceases to have a Participation Share.

## ARTICLE VI
## PURCHASE OF PARTICIPATION SHARES

Section 6.1. Decisions if Consent Withheld; Purchase Upon Withholding Consent.

(a)      In the event that the Participant either (i) notifies Holder that it will not give its consent to any proposed action to be taken by Holder under Section 4.5 of this Agreement, or (ii) Holder delivers a written request to the Participant for the Participant's consent to any proposed action to be taken by Holder under Section 4.5 of this Agreement, and the Participant does not respond or consent to such proposed action within seven (7) Business Days of the date of such written request, then Holder shall have the option (but not the obligation) to purchase or cause to be purchased the Participant's Participation Share of the Westport Loan then in effect within ten (10) Business Days after notifying Participant in writing of Holder's intent to exercise such purchase option.

(b)      If Holder has not exercised its option to purchase or cause to be purchased Participant's Participation Share as therein provided, then Participant shall have the option (but not the obligation) to purchase or cause to be purchased Holder's Participation Share of the Westport Loan then in effect within ten (10) Business Days after notifying Holder in writing of Participant's intent to exercise such purchase option.

(c)      Any such purchase shall be at par plus accrued interest to the date of purchase plus such Party's share of any other monies paid by Borrower to Holder pursuant to the Loan Documents and not yet distributed pursuant to the terms of this Agreement, plus, if the Party exercising the purchase option is the Participant, any costs and expenses to which Holder would be entitled to reimbursement for under this Agreement through the date of purchase, less any sums theretofore required to be paid by Participant to Holder or by Holder to Participant, as applicable, pursuant to this Agreement and not actually paid by Holder or Participant (collectively, the "Purchase Price").

Section 6.2.    Purchase in the Event of Holder's Default.    In the event Holder defaults under this Agreement, which default is continuing for more than fifteen (15) days after written notice to Holder from Participant, then, in addition to any of its rights at law or in equity, Holder shall be obligated, at Participant's request, to purchase or cause to be purchased Participant's Participation Share of the Westport Loan within ten (10) Business Days after notice from such Participant in writing.  Any such purchase shall be for the Purchase Price.

Section 6.3.    Consummation of Purchase.    Any purchase pursuant to Section 6.1 or 6.2 above shall occur on a date selected by Holder or Participant, as the case may be, as specified in its notice as required thereby.  The applicable Purchase Price shall be paid on such date in immediately available funds and, concurrently therewith, Participant or Holder, as the case may be, shall execute and deliver to the Participant or Holder, as the case may be, customary assignment documents assigning its Participation Share.  Each Party agrees to be responsible for any expenses incurred by or on behalf of it, including, without limitation, legal fees and recording costs, in connection with the aforesaid purchase.

# ARTICLE VII
# TERMINATION

Section 7.1.    Termination of the Participation Agreement.    Holder shall be discharged of its duties hereunder and this Agreement shall be terminated, at such time as either (i) (a) all

- 11 -

payments required to be made pursuant to the Loan Documents have been made, (b) all duties and obligations of Holder hereunder have been fulfilled, (c) all Proceeds have been distributed to the Parties in accordance with the terms of this Agreement, and (d) the Westport Loan has been terminated, or (ii) a purchase of Holder's or Participant's share pursuant to Article VI of this Agreement has occurred.

# ARTICLE VIII
# MISCELLANEOUS

Section 8.1.  <u>Transfer</u>.  Each Party agrees not to sell, assign, transfer, subparticipate or otherwise divide its Participation Share or any of its rights in this Agreement, except upon prior written notice to and with the consent of the other Party, which consent shall not be unreasonably withheld in the case of a transfer of the entirety of such Party's Participation Share to a single assignee.

Section 8.2.   <u>Notices</u>.   Unless otherwise specified herein, all notices and other communications provided for hereunder shall be in writing and shall be mailed, by certified mail, return receipt requested, to such Party at its address set forth below or at such other address as shall be designated by such Party in a written notice to the Participant complying as to delivery with the terms of this Section 8.2:

Litigation Settlement Trust

_____

_____

_____

Holder

_____

_____

_____

Section 8.3.  <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to principles of conflict of laws.

Section 8.4. <u>Severability of Provisions</u>. The invalidity or unenforceability of any term or provision of this Agreement shall not affect the validity or enforceability of the remaining terms or provisions hereof, which shall remain in full force and effect.

Section 8.5.   <u>Entire Agreement</u>.   This Agreement constitutes the entire agreement between the Parties as of the date hereof with respect to the subject matter hereof and may not be amended or terminated orally.  No modification hereof shall be valid unless in writing and signed on behalf of each of the Parties by duly authorized individuals. All previous agreements between the Parties hereto with respect to the subject matter hereof whether written or oral, are superseded by this Agreement and are hereby rendered null and void and of no effect.  To the

25642518 v4

extent that this Agreement contains any term, covenant, condition or agreement as to which the Plan is silent, this Agreement shall be controlling.

Section 8.6.   <u>Headings</u>.   The section headings in this Agreement are provided for convenience and identification only; do not define or limit the scope, extent, or intent of this Agreement or any of the provisions hereof; and are not intended to affect the interpretation or construction of this Agreement.

Section 8.7.   <u>Counterparts</u>.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same Agreement.

*{Signature Page Follows}*

25642518 v4

IN WITNESS WHEREOF, each of the parties hereto has caused this Participation Agreement to be executed by having its duly authorized officer sign below.

**PARTICIPANT:**

_____

_____, Trustee, in his capacity as trustee of the [Litigation Settlement Trust]

**HOLDER:**

WESTPORT INVESTORS, LLC, an Alabama limited liability company

By:    _____

Name: _____

Title: _____

## SCHEDULE A

**WESTPORT LOAN DOCUMENTS**

25642518 v2