# Exhibit "B"



RECEIVED
FEB 2 5 2013
BY: _____

**ORIGINAL**

REGIONS COMMERCIAL EQUIPMENT FINANCE, LLC

COMPANY: SIGNAL SHIP REPAIR, LLC
EQUIPMENT FINANCE SCHEDULE NO. EFA-3, DATED: February 25, 2013
TO MASTER AGREEMENT, DATED: December 14, 2012

All terms, including all definitions, of the above referenced Master Agreement (the "Master Agreement") are hereby incorporated into this Equipment Finance Schedule (this "Schedule") which together with the Master Agreement constitutes an Agreement (this "Agreement") covering the equipment (the "Equipment") described in Exhibit A attached hereto and incorporated by reference herein. The express terms of this Schedule shall supersede any contrary terms in the Master Agreement. Without limiting the Master Agreement, as security for Company's obligations hereunder, Company hereby grants to Regions a first priority security interest in the Equipment and all proceeds thereof. Notwithstanding anything to the contrary herein, including the Commencement Date, the security interest granted pursuant to this Schedule shall become effective between the parties with respect to any Items as soon as Company receives possession thereof and shall continue until all of Company's obligations, indebtedness and liabilities to Regions under this Agreement have been paid and performed in full and are not subject to being set aside or rescinded notwithstanding termination or expiration of this Agreement for any reason whatsoever.

A.  Co-Borrowers.

(1) Each of Signal International, Inc. ("SI") and Signal Ship Repair, LLC ("SSR") are collectively designated above and in this Schedule as "Company." In order to remove any doubt of the parties as to their intention, it is expressly agreed:

(a) All obligations of SI and SSR (each of which is hereby designated a "Co-Borrower" and collectively, the "Co-Borrowers") shall be joint and several. Each Co-Borrower shall be individually responsible for fulfilling all obligations of "Company" under this Schedule. All affirmative representations, covenants, agreements and obligations imposed on Company shall be binding on each Co-Borrower. Without in any way limiting the generality of the foregoing, each party expressly agrees that any security interest granted to Regions hereunder or under the Master Agreement as it relates to this Schedule and is incorporated herein shall include all interest individually or collectively held by the Co-Borrowers in any Equipment whether or not one or more Co-Borrowers hold a joint or proportional interest thereof. Each Co-Borrower acknowledges and agrees that: (i) each Co-Borrowers has agreed to execute this Schedule; (ii) the mutual understanding reached by each Co-Borrower in this regard is consideration for each Co-Borrower's execution of the this Schedule; and (iii) each Co-Borrower will receive benefit of loans made hereunder.

(b) The act of each Co-Borrower shall bind each other Co-Borrower and Regions shall be authorized to rely, without investigation, on the authority of either Co-Borrower to give any notice, grant any consent or otherwise act on behalf of both Co-Borrowers.

(c) Each Co-Borrower's obligations shall not be affected by any action taken or not taken by Regions against the other Co-Borrower, by any illegality, unenforceability or invalidity of the other Co-Borrower's obligations or by any of the following: (i) any termination, amendment or modification of the obligations of the other Co-Borrower, (ii) any action by either Co-Borrower with respect to any Item of Equipment, (iii) either Co-Borrower's default or any waiver, consent, extension, indulgence, compromise, settlement, release or other action taken by Regions with respect to either Co-Borrower, (iv) any exercise or non-exercise of any right or remedy against either Co-Borrower, (v) any voluntary or involuntary bankruptcy, insolvency, reorganization or similar proceeding by the other Co-Borrower, (vi) any limitation on either Co-Borrower's obligations or discharge, termination, cancellation, invalidity or unenforceability of either Co-Borrowers obligations, (vii) any defect in or lack of title or any defect in the condition of equipment including with respect to the other Co-Borrower or otherwise, (viii) any merger or consolidation of either Co-Borrower or (ix) any other condition or circumstance that might otherwise constitute a legal or equitable discharge, release, defense or limitation as to the other Co-Borrower.

(d) Without limiting the foregoing and in order to clarify the intention of the parties, the parties agree that, in each context, the term "Company" imposes the maximum restriction on each and every Co-Borrower and grants to Regions the maximum benefits hereunder.

(2) Each Co-Borrower agrees that Regions shall not be required to file suit or take any action against the other Co-Borrower or its assets either before or as a condition to enforcing the obligation of either Co-Borrower hereunder or under any other agreement to which either Co-Borrower is a party. Nothing herein shall limit either Co-Borrower's right of contribution against the other Co-Borrower or any other rights between the Co-Borrowers to the extent such rights and their enforcement do not affect Regions or its rights hereunder or under or under any other agreement to which either Co-Borrower is a party. Each Co-Borrower acknowledges that it is not relying on Regions with respect to any aspect of its rights against or with respect to its fellow Co-Borrowers and Regions shall have no obligation whatsoever with regard to the allocation of use of any Item of Equipment or distribution of any funds among the Co-Borrowers.

(3) Notwithstanding the fact that SSR did not execute the Master Agreement, SSR, SI and Regions each desire to incorporate into this Schedule the terms of such Master Agreement and any and all addenda, amendments or other modifications thereto as if SSR were a party to the Master Agreement and such other documents. For all purposes of this Schedule, the term "Company" shall mean and include SSR and SI, jointly and severally as Co-Borrowers, as set forth above. SSR and SI each reaffirms for the benefit of Regions all of Company's representations, warranties and covenants set forth in the Master Agreement. SSR agrees to be bound by all obligations of Company under the Master Agreement and all addenda, amendments or other modifications thereto as if SSR were a party to the Master Agreement.

B.  Definitions and Basic Terms.

1.  Periodic Payments shall be payable on the following basis (each, a "Period" for purposes of this Agreement): Monthly, in arrears.

2.  Amount Advanced/Principal: $325,000.00

3.  Term of Agreement (No. of Months): 48

4.  Commencement Date: The date of this Schedule

5.  Location of Equipment: 11 NORTH WATER STREET SUITE 1, MOBILE, AL 36602

2/21/2013
015-0008417-003

6. Ownership of Equipment Location: The address of the Equipment Location is a bona fide business address of the Company. The building located at such address is (INITIAL ONE):
   a. ____ Leased by the Company.
   b. ____ Owned by the Company free and clear of any Liens except those in favor of Regions or its Affiliates or consented to by Regions.
   c. ✓ Owned by the Company subject to a mortgage.
   d. ____ Neither owned nor leased by the Company.

7. As used in the Master Agreement, with respect to this Schedule, the "Casualty Value" of an Item shall mean an amount equal to product of: (a) the principal balance outstanding plus Interest accrued and not yet paid, and (b) the ratio of the value of the applicable Item to the value all Items, in each case as determined by Regions. In making any such value determination, Regions may, but shall not be obligated to, consider the initial cost of Items as well as the depreciation thereof.

C. Payment.

(1) In consideration for Regions' lending of the Amount Advanced set forth above, Company hereby unconditionally promises to pay to the order of Regions or its successors or assigns the principal sum of the Amount Advanced together with interest ("Interest") from the date hereof on so much thereof as is from time to time outstanding and unpaid, at a rate equal to Seven And 87/100 Percent (7.87%). All interest will be computed on the basis of a year consisting of twelve months of thirty days each. All installments paid hereunder shall be applied first to the payment of accrued interest and fees and second to the balance of principal remaining.

(2) Principal and Interest shall be payable as follows: Periodic Payments shall be due on the 25th day of each Period in the amount of $7,914.38. The first such payment shall be due on March 25, 2013 and Periodic Payments shall continue for the number of Periods set forth above until the last Periodic Payment at which time the entire principal balance together with all accrued Interest thereon and all Other Payments due hereunder shall be due and payable in full as a balloon payment. Company shall also be responsible for taxes and amounts from time to time as provided in this Agreement. All Payments due hereunder shall be delivered to REGIONS COMMERCIAL EQUIPMENT FINANCE, LLC, P. O. Box 11407, Birmingham, AL 35246-0557 or such other address as Regions shall specify in writing from time to time. Regions shall be under no obligation to refund any Payment to Company.

(3) COMPANY MAY NOT PREPAY PRINCIPAL OR INTEREST EXCEPT AS FOLLOWS: If no Event of Default, or event that with lapse of time or notice or both would become an Event of Default, has occurred and is continuing, Company may prepay in full all principal and interest obligations hereunder on a day when a Periodic Payment is due hereunder by paying to Regions an amount equal to the Casualty Value of all Equipment as of such date, plus a premium (which is to compensate Regions for unanticipated repayment and not a penalty) equal to the following (the "Prepayment Premium"): (1) if during the first year of the Loan Term, four percent (4%) of the Casualty Value, (2) if during the second year of the Loan Term, three percent (3%) of the Casualty Value, (3) if during the third year of the Loan Term, two percent (2%) of the Casualty Value and (4) if during the fourth year of the Loan Term, one percent (1%) of the Casualty Value. No partial prepayments are permitted and Regions may, at its election in each instance: (i) return any payments Company makes in excess of the amount then due; or (ii) hold any such excess payments in escrow to be applied to Company's future obligations, in which case Regions may commingle such excess payments with other funds and such payments will not bear interest.

D. Additional Representations, Covenants and Warranties: Usury Savings Clause. In addition to all representations, covenants and warranties in the Master Agreement, Company hereby represents, covenants and warrants that: (1) as of the date hereof, there has been no material adverse change in Company's financial condition since the date of the Master Agreement; and (2) until Company's obligations under or related to this Schedule are satisfied in full, if requested by Regions or if required by federal, state or local law, Company shall, at Company's sole cost and expense, permanently affix and maintain on any or all Items (or as many items as required), as determined by Regions or as required by applicable law, in a prominent place, a sign, legend, plate, plaque, tag or other identifying label disclosing Regions' security interest in the Equipment. It is the intention of the parties to comply strictly with applicable usury laws and, accordingly, in no event and upon no contingency shall Regions ever be entitled to receive, collect, or apply as interest any interest, fees, charges or other payments determined by a court of law to be the equivalent of interest, in excess of the maximum rate which Regions may lawfully charge under applicable statutes and laws from time to time in effect; and in the event that Regions ever receives, collects, or applies as interest any such excess, such amount which, but for this provision, would be excessive interest, shall be applied to the reduction of the principal amount of the loan, all provided, however, that Company waives, to the extent permitted by law, the right to seek such reduction; and if the principal amount of the loan, all lawful Interest thereon, and all lawful fees and charges in connection therewith, are paid in full, any remaining excess shall forthwith be paid to Company, or other party lawfully entitled thereto.

E. Remedies; Additional Provisions. With respect to this Schedule only, Section X of the Master Agreement is supplemented as follows:,(1) the term "Base Default Amount" shall mean on the specific date of calculation (the "Calculation Date") an amount equal to the Casualty Value of all Equipment as of the Calculation Date plus any prepayment premium, unamortized closing lost reimbursement or other amounts set forth in Section B(3) above; (2) Company expressly acknowledges that the Required Default Amount as it includes the Base Default Amount sets forth a reasonable amount and reasonable formula for calculation of Regions' damages in light of the anticipated harm caused by any default by Company hereunder and that such amounts are difficult or impossible to calculate or ascertain; (3) unless the Equipment threatens to decline speedily in value or is a type customarily sold on a recognized market, Regions will give Company reasonable notice of the time after which any private or public sale or any other intended disposition of the Equipment is to be made; (4) the requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the public sale or the time after which any other disposition is to be made; (5) in addition to other rights and remedies under the Master Agreement, Regions may accept return of all or a portion of the Equipment in full or partial satisfaction of Company's obligations to Regions with respect to this Schedule pursuant to the provisions of Article 9 of the UCC; and (6) in the event the sum of the Net Proceeds and the amounts paid by Company to Regions is greater than the Required Default Amount, such excess shall be paid first to any secured parties granted rights to such proceeds pursuant to Article 9 of the UCC and any remainder shall be paid to Company.

F. Proceeds Distribution. Company hereby authorizes Regions to disburse the total proceeds of $325,000.00 by check, funds transfer or deposit, in such amounts and with such payees as are listed below.

2/21/2013
015-0008417-003

**RECEIVED FEB 2 5 2013**

BY: _____

Payee: SIGNAL SHIP REPAIR, LLC
Ref. No.: REIMBURSEMENT FOR BARGE
Amount: $325,000.00

[ ] Check

[X] Funds Transfer to Account No. 5990017307 in Payee's Name at REGIONS BANK;
Notification Information: _____

G. Acceptance; Commencement Date. THIS AGREEMENT IS NONCANCELLABLE, ABSOLUTE AND UNCONDITIONAL. BY EXECUTION OF THIS SCHEDULE BELOW, COMPANY AGREES THAT: (a) all Equipment has been inspected and delivery accepted by Company; (b) all Equipment is in good order and condition, and conforms to the specifications, requirements and standards applicable thereto and is satisfactory to Company; and (c) as of the date hereof no Event of Default, or event which with notice, lapse of time or both would become an Event of Default, exists under this Agreement. COMPANY HEREBY AUTHORIZES REGIONS TO PAY SUPPLIER FOR ALL EQUIPMENT AND WAIVES ANY RIGHT TO REJECT OR REVOKE ACCEPTANCE OF ANY ITEM.

Company: SIGNAL SHIP REPAIR, LLC
By: [signature]
Print Name: Chris Cunningham
Title: CFO
Witness: (signature) [signature]
Witness: (print name) Elizabeth A. White

Regions: REGIONS COMMERCIAL EQUIPMENT FINANCE, LLC
By: [signature]
Title: SVP
Date of Acceptance by Regions: 2/25/2013
REGIONS COMMERCIAL EQUIPMENT FINANCE, LLC
Attn: Manager, Equipment Finance Operations
P. O. Box 2545
Birmingham, AL 35202

Company: SIGNAL INTERNATIONAL, INC.
By: [signature]
Print Name: Chris Cunningham
Title: CFO
Witness: (signature) [signature]
Witness: (print name) Elizabeth A. White

2/21/2013
015-0008417-003