IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re                                                            :    Chapter 11
                                                                 :
SIGNAL INTERNATIONAL, INC, *et al.*,[1]                          :    Case No. 15-11498 (MFW)
                                                                 :
                                          Debtors.               :    (Jointly Administered)
---------------------------------------------------------------- x

**RESERVATION OF RIGHTS OF MAX SPECIALTY INSURANCE COMPANY TO DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE [D.I. 386]**

Max Specialty Insurance Company n/k/a Alterra Excess & Surplus Insurance Company ("Max Specialty"), hereby respectfully submits this reservation of rights to the Debtors' Plan.[2] Max Specialty reserves its rights to object to the Plan to the extent that the Debtors are unable to confirm that the Plan will be sufficiently funded to provide for payment of Max Specialty's Claim (defined below) when Allowed or to the extent that the Plan is intended to modify the terms of the Final DIP Order contrary to statements in the Disclosure Statement.

**PRELIMINARY STATEMENT**

Max Specialty is a judgment creditor of Signal International, LLC ("Signal") with a lien on all of Signal's property within Jackson County, Mississippi, including Signal's Pascagoula, Mississippi facility. The Debtors and Lenders[3] take the position that Max Specialty is not a

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066) (collectively, the "Debtors"). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

[2] Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 386].

[3] Employees' Retirement System of Alabama ("ERSA") and Teachers' Retirement System of Alabama ("TRSA") (collectively "Lenders").

1

secured creditor and depending on the outcome of a pending appeal, may not have a claim. Pursuant to the Plan, "Other Secured Claims" and "General Unsecured Claims" will be paid from the "Disputed Claims Reserve" and the "GUC Payment Amount" respectively. Max Specialty does not object to the Plan to the extent that the Debtors can establish that those funds will be sufficient to pay Max Specialty's Claim once it becomes an Allowed claim. Max Specialty reserves its rights to object to the Plan to the extent that the (i) funding of the Disputed Claims Reserve is not sufficient to pay (or will not be sufficient to pay) Max Specialty's Claim in full if Max Specialty's Claim is allowed as an Other Secured Claim and/or (ii) the funding of the GUC Payment Amount is not sufficient (or won't remain sufficient) to provide for the payment of Max Specialty's Claim as a General Unsecured Claim if the Court ultimately allows Max Specialty's Claim as a General Unsecured Claim.

In resolution of Max Specialty's Objection[4] to the Debtors' DIP Financing Motion,[5] the Debtors and Max Specialty reached a Settlement pursuant to which, upon the occurrence of an "MS Escrow Funding Event" (as defined in the Final DIP Order[6]), the MS Escrow (as defined in the Final DIP Order) would be funded. The Disclosure Statement provided that nothing in the

---

[4] Objection of Max Specialty Insurance Company to Debtors Motions Seeking Approval of (I) DIP Financing [D.I. 11], (II) Bid Procedures [D.I. No. 120], and (III) Assumption of Plan Support Agreement [D.I. No. 112] [D.I. 239] (the "Objection").

[5] Debtors Motion for Interim and Final Orders (I) Authorizing Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection To Pre-Petition Lenders, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing [D.I. 11] (the "DIP Financing Motion").

[6] Final Order Authorizing Debtors In Possession To (I) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Grant Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. § 364, (III) Use Cash Collateral, (IV) Provide Adequate Protection to Prepetition Credit Parties, and (IV) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 [D.I. 316] (the "Final DIP Order").

Plan is intended to modify the terms of the Final DIP Order. Max Specialty reserves its rights to object to the Plan to the extent that the Confirmation Order or Plan do modify the terms of the Final DIP Order.

## BACKGROUND

*Max Specialty's Claim as a Secured Judgment Creditor*

On March 31, 2014, the U.S. District Court for the Southern District of New York entered an order voiding an excess policy that Max Specialty had issued to Signal *ab initio*.[7] On June 17, 2014, the district court entered a $3,976,362.45 judgment in favor of Max Specialty against Signal.[8] On April 7, 2015, Max Specialty filed a Domestication of Judgment in the Circuit Court of Jackson County, Mississippi. On April 10, 2015,[9] the Clerk of the Circuit Court of Jackson County, Mississippi enrolled the Judgment on the Judgment Roll. In accordance with Mississippi Code § 11-7-191, the enrolled Judgment is a lien on all the property of Signal within Jackson County. *See* Miss. Code. Ann. § 11-7-191 (2015).[10] Therefore, Max Specialty has a

---

[7] In August 2009, a dry dock at Signal's Orange Yard in Port Arthur, Texas took on water and sank. Signal submitted claims, *inter alia*, for $13.6 million for the value of the property. The primary insurer paid $10 million under its policy, and Max Specialty paid $3.6 million for damage under an excess policy. In March 2010, some of Signal's insurers filed an action against Signal and other insurers seeking a determination on coverage for the damage in the U.S. District Court for the Southern District of New York. Signal filed cross-claims against Max Specialty relating to business interruption and extra expense losses under the excess policy. During discovery, Max Specialty found that Signal had misrepresented the pre-damage condition of the dry dock and filed cross-claims against Signal seeking rescission of the excess policy and a refund of the amounts it had paid.

[8] Signal appealed the District Court decision to the Second Circuit. The appeal has been fully briefed and argued and the parties are awaiting a decision. This Court lifted the automatic stay to allow the Second Circuit to proceed to decision on September 10.

[9] Signal filed for bankruptcy on July 12, 2015. April 13, 2015 is 90 days prior to that date. Therefore, the enrollment was more than 90 days prior to the filing of the petition.

[10] Miss. Code. Ann. § 11-7-191 (2015) ("A judgment so enrolled shall be a lien upon and bind all property of the defendant within the county where so enrolled from rendition thereof, and shall have priority according to the order of such enrollment, in favor of the judgment creditor, his representatives or assigns, against the judgment debtor and all persons claiming the property under him after the rendition of the judgment.").

3

lien on all of Signal's assets located in Jackson County, Mississippi, including all of Signal's property at the Pacagoula, Mississippi facility.[11] On September 21, 2015, Max Specialty filed its proof of claim (the "Max Specialty's Claim") in the amount of $3,981,144.34, which includes interest through the petition date.[12] Max Specialty's Claim indicated that it was secured.

## RESERVATION OF RIGHTS

*Reservation of Rights With Respect to Funding of Plan.*

If the Court ultimately allows all or a portion of Max Specialty's claim as a secured claim, it would be an Other Secured Claim.[13] Pursuant to the Plan, as described in the Disclosure Statement, Other Secured Claims "shall be paid in full in Cash by the Signal Liquidating Trustee solely from the Disputed Claims Reserve . . . ."[14] The Disputed Claims Reserve is the reserve account established "for the payment of: (i) the face value of all . . . Other Secured Claims as of the Effective Date plus (ii) an amount to be agreed upon by the Debtors, Committee and RSA in

---

[11] The Debtors describe the Pascagoula, Mississippi facility as handling rig fabrication and repair, with significant automation as well as a deep hole for thruster work, space for storage of offshore equipment, and a 30,000-ton Dual Carrier/heavy lift dry dock. *See* Declaration of Christopher S. Cunningham In Support of Chapter 11 Petition and First Day Motions [ECF No. 12] (the "Cunningham Declaration") at ¶ 33.

[12] The proof of claim explicitly reserved Max Specialty's rights to post-petition interest to the extent Max Specialty is determined to be oversecured.

[13] "'Other Secured Claim' means any Claim, other than a DIP Facility Claim or First Lien Loan Agreement Claim, that is secured by a lien on property in which an Estate has an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under Section 553 of the Bankruptcy Code, solely to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to section 506(a) of the Bankruptcy Code." Plan p. 9, § I.C.89.

[14] Alternatively, Other Secured Claims can "receive delivery of collateral securing any such Claim and payment of any interest requested under section 506(v) of the Bankruptcy Code, or be treated on such other terms as agreed between the Signal Liquidating Trustee and the Holder thereof, subject to the reasonable consent of the Purchaser." Plan p. 18, § III.B.2.(ii). Max Specialty has not consented to other treatment nor can it receive the collateral securing its claim because that collateral is being sold "free and clear" of liens to the Lenders.

an amount necessary to satisfy any Contingent and/or unliquidated . . . Other Secured Claims, *provided, however,* that such amount shall not be less than the maximum non-contingent and liquidated amount set forth in any Proof of Claim. . . plus (iii) such other amount as determined by order of the Bankruptcy Court." Plan at p. 6, § I.C.47.

Although they have not filed an objection to Max Specialty's claim, the Debtors have already asserted that Max Specialty is the holder of a contingent, unliquidated and disputed general unsecured claim.[15] However, Max Specialty's Claim is neither contingent nor unliquidated. It is based upon a judgment that was entered setting the amount that Max Specialty is entitled to. That Judgment has not been stayed. Moreover, Max Specialty's Claim is "deemed allowed" as filed unless an objection is filed. *See* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects").[16] No objection has been filed. Therefore, Max Specialty's Claim is deemed allowed.

If Max Specialty's Claim is ultimately allowed as an Other Secured Claim, Max Specialty is entitled to the same treatment as Other Secured Creditors; payment in full of its claim. *See* 11 U.S.C. § 1129(a)(4) (requiring that a plan "provide the same treatment of each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a

---

[15] *See Debtors' Reply to Objection of Max Specialty Insurance Company to Debtors' Motions Seeking Approval of (I) DIP Financing, (II) Bid Procedures and (III) Assumption of Plan Support Agreement* [ECF NO. 247] at ¶ 16. ("On August 11, 2015, SI LLC filed its Schedules of Assets and Liabilities [D.I. 216], which identified Max Specialty as the holder of a contingent, unliquidated, and disputed general unsecured claim in the amount of $3,976,362.45.")

[16] The Bankruptcy Code and Rules require a written objection to claims. *See* 11 U.S.C. § 502 and Bankr. R. 3007 and 9004.

less favorable treatment of such particular claim or interest."). Max Specialty reserves its rights to object to the Plan to the extent that the Debtors are unable to confirm to the Court that the Disputed Claims Reserve will be and will remain sufficiently funded to pay Max Specialty's Claim in full if it is ultimately allowed as an Other Secured Claim.

Similarly, if a portion or all of Max Specialty's claim is determined to be unsecured, such claim would be a General Unsecured Claim[17] and entitled to a corresponding distribution. General Unsecured Claims shall, "[o]n the Effective Date . . . each Holder of an Allowed General Unsecured Claim that votes to accept the Plan <u>and</u> does not opt out of the releases set forth in Section 11.H shall also receive, on account of its claim, its Pro Rata share [ ] of the GUC Payment Amount."  Plan p. 19, § III.B.5 (emphasis in original).  The "GUC Payment Amount shall be an aggregate amount equal to the lessor of (i) $900,000, or (ii) an amount equal to fifteen percent (15%) of the total amount of all allowed General Unsecured Claims which remain outstanding after all assumption and cure has been implemented with respect thereto." Plan p. 19, § III.B.5.  The Plan further provides that "[p]rior to the first distribution to Holders of Class 5 Allowed General Unsecured Claims, the Signal Liquidating Trust shall refund to the Purchaser the difference between (i) and (ii)." Plan p. 8, § I.C.67. Max Specialty filed a Ballot for its potential Class 5: General Unsecured Claim accepting the plan and did not opt out of the releases set forth in Section 11.H of the plan.[18] Therefore, if Max Specialty's Claim, in whole or in part,

---

[17] "'General Unsecured claim' means any Claim that is (i) not a DIP Facility Claim, Professional Fee Claim, First Lien Loan Agreement Claim, Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Litigation Claim, Intercompany Claim, or an Equity Interest, or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.  General Unsecured Claims shall not include any Claims that are disallowed or released, whether by operation of law or pursuant to a Final Order, written release or settlement, the provisions of the Plan or otherwise." Plan p. 7, § I.C.65.

[18] Max Specialty's filing of the Ballot does not constitute an admission that Max Specialty's claim is a General Unsecured Claim or that the claim amount is only $1.00. Max Specialty reserves all rights to (i)

6

is allowed as a General Unsecured Claim, Max Specialty is entitled to a portion of the GUC Payment Amount, just like other General Unsecured Creditors. *See* 11 U.S.C. § 1129(a)(4).

The Plan provides that once a Disputed or Contingent claim becomes Allowed, the Holder shall receive what it would have if it had been an Allowed Claim on the Effective Date. Plan p. 37, §VII.C. ("As soon as practicable after the date that any Disputed Non-Litigation Claim is Allowed or any Contingent Non-Litigation Claim becomes fixed or liquidated, in whole or in part, the Signal Liquidating Trust shall distribute to the Holder of such Claim any Cash that would have been distributed to such Holder if the Claim had been an Allowed Claim on the Effective Date."). The Plan further provides that the Debtors are to reserve sufficient amounts to pay such Disputed Claims when they become Allowed.[19]

Max Specialty does not generally object to the Plan. However, Max Specialty wants to make sure that its claim will be treated the same as all other Other Secured Claims and/or other General Unsecured Claims, as applicable, depending upon how Max Specialty's Claim is ultimately allowed. Therefore, Max Specialty reserves its rights to object to the Plan to the extent that the Debtors are unable to confirm that the (i) Disputed Claims Reserve is sufficiently funded (and will remain sufficiently funded) to pay Max Specialty's Claim in full if it is ultimately allowed as an Other Secured Claim and/or (ii) the GUC Payment Amount is sufficient

---

assert that its claim is secured and therefore entitled to treatment as an Other Secured Claim and (ii) assert that its claim amount is $3,981,144.34 plus any post-petition interest if Max Specialty is deemed oversecured.

[19] "For purposes of calculating and making Distributions to Holders of Allowed Non-Litigation Claims, the Debtors shall hold in the applicable Cash Reserve at the time of such Distribution an amount sufficient to make Distributions on Non-Litigation Claims that are not Allowed Non-Litigation Claims in such Class in the same Pro Rata percentage as is being made on Allowed Non-Litigation Claims in such Class. For purposes of determining the amount to be reserved, the Debtors shall use the maximum non-contingent and liquidated amount set forth in the Proof of Claim, unless a lesser amount is so ordered by the Bankruptcy Court or agreed to by the Debtors or the Signal Liquidating Trustee and the Holder of such Non-Litigation Claim." Plan p. 37, § VII.C.

(and there will remain sufficient funds) to pay 15% of Max Specialty's Claim (or its pro rata share of the GUC Payment Amount) if it is ultimately allowed as a General Unsecured Claim.

### *Reservation of Rights With Respect to Final DIP Order.*

In resolution of Max Specialty's Objection to the Debtors' DIP Financing Motion, the Debtors and Max Specialty reached a Settlement pursuant to which, upon the occurrence of an "MS Escrow Funding Event", the MS Escrow would be funded.  *See* Final DIP Order ¶ 36.  The Disclosure Statement provided: "Nothing in the Plan is intended to modify the terms of the Final DIP Order."  Disclosure Statement p. 12.[20]  To the extent that the Confirmation Order confirms this, Max Specialty does not object to the Plan.  However, to the extent that the Confirmation Order or Plan are now intended to modify the terms of the Final DIP Order, Max Specialty reserves its rights to object to the Plan.

For the foregoing reasons, Max Specialty reserves its rights to object to the Plan if the Debtors are unable to confirm that (i) the Plan will be sufficiently funded to pay Max Specialty's Claim when Allowed or (ii) neither the Plan nor the Confirmation Order modify the terms of the Final DIP Order.

*[Remainder of Page Intentionally Left Blank]*

---

[20] Disclosure Statement For Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code [ECF No. 384-5] (the "Disclosure Statement").

| | |
|---|---|
| Dated: November 12, 2015<br>Wilmington, Delaware | **CROSS & SIMON, LLC**<br><br>By: */s/ Christopher P. Simon*<br>Christopher P. Simon (No. 3697)<br>1105 N. Market St., Suite 901<br>P.O. Box 1380<br>Wilmington, DE 19899-1380<br>Ph: (302) 777-4200<br>Fax: (302) 777-4224<br>csimon@crosslaw.com<br><br>-and-<br><br>Filiberto Agusti<br>Joshua R. Taylor<br>Steptoe & Johnson LLP<br>1330 Connecticut Ave., NW<br>Washington, DC 20036<br>Tel: (202) 429-3000<br>Facsimile: (202) 261-0658<br><br>*Counsel for Max Specialty Insurance Company n/k/a Alterra Excess & Surplus Insurance Company* |