**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SIGNAL INTERNATIONAL, INC. *et al.*,[1] | ) | Case No. 15-11498 (MFW) |
| | ) | Jointly Administered |
| Debtors. | ) | **Re: D.I. 386** |

**CERTAIN INSURERS' LIMITED OBJECTION TO DEBTORS' JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Fireman's Fund Insurance Company ("Fireman's Fund"), National Liability and Fire Insurance Company ("National Liability") and QBE Marine & Energy Syndicate 1036 ("QBE") (collectively, "Certain Insurers"), creditors and parties in interest in these cases, hereby submit this limited objection (the "Objection") to the Debtors' *Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"). [Docket No. 386]. In support of its Objection, Certain Insurers respectfully state as follows:

**FACTUAL BACKGROUND**

1. In August 2009, a dry dock at one of the Debtors' facilities in Port Arthur, Texas took on water and sank and was rendered a constructive total loss. At the time of the sinking, Debtor Signal International, LLC ("SI LLC") held five insurance policies that potentially provided coverage for the dry dock:

(i) a marine general liability policy subscribed to by Fireman's Fund and One Beacon Insurance Company ("One Beacon") on a 50-50 basis with Fireman's Fund as lead insurer having full claims control, providing $1 million coverage per occurrence less a $100,000 deductible;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Signal International, Inc. (4248); Signal Ship Repair, LLC (2642); Signal International, LLC (5074); Signal International Texas GP, LLC (3050); and Signal International Texas, L.P. (5066). The Debtors' principal offices are located at RSA Battle House Tower, 11 North Water Street, Mobile, Alabama 36602.

1

(ii) a marine excess liability policy subscribed to by Certain Insurers Fireman's Fund, National Liability, and QBE on a 34-34-32 basis, also with Fireman's Fund as lead insurer, providing $25 million coverage per occurrence ("Bumbershoot Policy");

(iii) a pollution policy subscribed to by Great American Insurance Company ("Great American"), providing $5 million coverage ("Pollution Policy");

(iv) a primary property policy subscribed to by Westchester Surplus Lines Insurance Company ("Westchester"), providing $10 million coverage; and

(v) an excess property policy subscribed to by Max Specialty Insurance Company ("Max Specialty"), providing $15 million coverage in excess of the primary property policy ("Excess Property Policy").

2. Debtor SI LLC submitted insurance claims, *inter alia*, for the value of the dry dock, for business interruption, and for the removal of the dry dock. The primary property insurer, Westchester, paid the $10 million limit under its primary property policy without allocation, and Max Specialty paid $3.6 million under its Excess Property Policy contending that the payment was for the balance of the dry dock value.

3. Certain Insurers paid, on a without prejudice basis, the amount of $12,395,026.00 under the Bumbershoot Policy in respect of the removal and cleanup resulting from the loss.

4. In March 2010, Certain Insurers filed a declaratory judgment action in the U.S. District Court for the Southern District of New York against SI LLC and the other insurers seeking (i) a determination on insurance coverage arising out of the sinking of the dry dock and resulting damage, and (ii) contribution from Great American (under the Pollution Policy) and Max Specialty (under the Excess Property Policy) towards the cost of removal and clean up paid under the Bumbershoot Policy. That action is captioned *Fireman's Fund Insurance Company,*

*National Liability and Fire Insurance Company and QBE Marine & Energy Syndicate 1036 v. Great American Insurance Company of New York, Max Specialty Insurance Company and Signal International, LLC*, Civil Action No. 10- cv-1653 (JPO)(JLC) (the "District Court Action").

5. In the District Court Action, SI LLC filed cross-claims against Max Specialty relating to business interruption under the Excess Property Policy. After some discovery, Max Specialty filed cross-claims against SI LLC seeking rescission of its Excess Property Policy and a refund of the amounts it had already paid based on its allegation that SI LLC had misrepresented the pre-damage condition of the dry dock. Great American also filed cross-claims against SI LLC seeking rescission of the Pollution Policy on similar grounds.

6. On March 31, 2014, the District Court issued an Opinion and Order which held that the Pollution Policy issued by Great American and the Excess Property Policy issued by Max Specialty were void *ab initio* based on alleged material misrepresentations and/or non-disclosures of SI LLC. On June 17, 2014, the District Court entered a $3,976,362.45 judgment in favor of Max Specialty against SI LLC.

7. SI LLC appealed the District Court decision to the Second Circuit. Certain Insurers have also appealed the District Court's decision and have filed briefs arguing that the District Court erred in holding that the Great American policy and Max Specialty policy were void *ab initio*. The appeal has been fully briefed and argued and the parties are awaiting a decision. It is pending as Case No. 14-1346-cv(L), 14-2516-cv(CON), 14-3079-cv(CON).

8. On August 31, 2015, the Debtors filed a *Motion for Order Modifying the Automatic Stay to the Extent Necessary to Permit Continued Consideration of the Appeal to the Second Circuit* (D.I. 271), which sought to allow the Second Circuit appeal to move forward to

decision. Certain Insurers joined in that Motion. On September 10, 2015, the Court entered its *Order Modifying Automatic Stay to the Extent Necessary to Permit Continued Consideration of Appeal to the Second Circuit* (D.I. 314).

9. As a threshold matter, Certain Insurers do not read the Plan to impose any injunction that would prohibit the continuation of the Second Circuit Appeal as contemplated by the Stay Relief Order. However, to the extent such an injunction is contained in the Plan, it should be deemed inapplicable to the Second Circuit Appeal.

10. Moreover, in the event there is a reversal of the District Court Decision by the Second Circuit, the claims asserted in the District Court Action would be reinstated. Included in the reinstated claims would be the claim of Certain Insurers against Great American, which claim was assigned to Certain Insurers in connection with the settlement between the Debtor Signal International LLC and Certain Insurers dated December 14, 2010. [A copy of the Settlement Agreement and Assignment are attached hereto as Exhibit A].

11. Given that the assignment of the claim against Great American was made prepetition, the claim does not constitute a Post-Effective Date Asset[2] assigned to the Signal

---

[2] "**'Post-Effective Date Assets'** means any Assets that are not sold through the Sale Transaction or otherwise disposed of prior to the Effective Date, which shall be administered by the Signal Liquidating Trust." Plan, at Art. I, C(102).

"**'Assets'** means all property owned by the Debtors, including, but not limited to, Cash, real property, personal property, intellectual property, intangible property, and the Signal Causes of Action." *Id.*, at C(7).

"**'Signal Causes of Action'** means all of the Debtors' actions, causes of action, objections to claims, rights of setoff, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or

Liquidating Trust pursuant to the terms of the Plan.  As such, none of the Plan injunction provisions are applicable to this claim in the event the Second Circuit reverses the District Court Decision, permitting the District Court claims to move forward.  To the extent any injunction provision is deemed applicable to the District Court claims, the claim against Great American assigned to Certain Insurers should be exempted from such injunction.

12. The Plan provides that the "Signal Liquidating Trust Assets"[3] shall irrevocably transfer to the Signal Liquidating Trust on the Effective Date.

> Signal Liquidating Trust Assets
>
> On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred the Signal Liquidating Trust Assets to the Signal Liquidating Trust.  In accordance with section 1141 of the Bankruptcy Code, the Signal Liquidating Trust Assets shall automatically vest in the Signal Liquidating Trust free and clear of all Claims, liens, encumbrances, or interests subject only to the Signal Liquidating Trust interests and the Signal Liquidating Trust Expenses, as provided for in the Plan and the Signal Liquidating Trust Agreement.
>
> Plan, at Art. V, E.

13. Because this transfer of property rights is automatic and irrevocable, Certain Insurers' rights against Great American as asserted in the District Court Action could possibly be altered by operation of the Plan.  To ensure that does not occur, Certain Insurers submit that the definition of "Assets" be clarified as follows:

> **"Assets"** means all property owned by the Debtors, including, but not limited to, Cash, real property, personal property, intellectual property, intangible property, and the Signal Causes of Action; but excluding,

---

otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Cases, through and including the Effective Date; *provided, however*, that the Signal Causes of Action shall not include the Released Signal Causes of Action."  *Id.*, at C(136).

[3] "**'Signal Liquidating Trust Assets'** means (i) all Post-Effective Date Assets, if any, (ii) the GUC Payment Fund, (iii) the Signal Liquidating Trust Expense Fund, and (iv) the Disputed Claims Reserve."  *Id.*, at C(139).

<u>however, unless and until the decision of the United States District Court for the Southern District of New York in Civil Action No. 10- cv-1653 (JPO)(JLC), styled *Fireman's Fund Ins. Co., et al. v. Great American Ins. Co. of New York, et al.*, is affirmed by final order, the time to appeal such order having lapsed with no appeal having been filed, those property rights assigned by Signal International, L.L.C. ("Assignor") to, *inter alia*, (i) Fireman's Fund Insurance Company and One Beacon Insurance Company (collectively, the "MGL Underwriters"), as their interests appear in the Marine General Liability Insurance Policy (bearing policy number OML 92001349) and to (ii) National Liability and Fire Insurance Company, and QBE Marine & Energy Syndicate 1036 (collectively, the "Bumbershoot Underwriters"), as their interests appear in the Marine Excess Liability Insurance Policy (bearing policy number OXL 92001369) pursuant to that certain assignment of all of Assignor's right, title, share, and interest in and to its claims and causes of action against Great American Insurance Company of New York ("Great American") and Great American's agents, subsidiaries, affiliates, and/or parents, for any rights, entitlements, claims, proceeds, and/or payments owing under, against, and/or in connection with Great American's pollution liability insurance policy (bearing policy number OMH 653933705) for the sinking of drydock AFDB-5 on or about August 20, 2009.</u>

## CONCLUSION

WHEREFORE, the Certain Insurers respectfully request that any Order entered by the Court confirming the Debtors' Plan be consistent with the terms of this Objection, and any inconsistent provisions contained in the Plan be stricken, and that the Court grant such other and further relief as is just and proper.

Date:  November 12, 2015
       Wilmington, DE                          **SULLIVAN · HAZELTINE · ALLINSON LLC**

                                               */s/ William D. Sullivan*
                                               William D. Sullivan (No. 2820)
                                               William A. Hazeltine (No. 3294)
                                               Elihu E. Allinson III (No. 3476)
                                               901 North Market Street, Suite 1300
                                               Wilmington, DE 19801
                                               Tel: (302) 428-8191
                                               Fax: (302) 428-8195

                                               and

John A.V. Nicoletti, Esq.
Val Wamser, Esq.
Nicoletti Hornig & Sweeney
Wall Street Plaza
88 Pine Street
New York, NY  10005
Tel:  (212) 220-3830
Fax:  (212) 220-3780

*Attorneys for Fireman's Fund Insurance Company, National Liability and Fire Insurance Company and QBE Marine & Energy Syndicate 1036*