# EXHIBIT A

## SETTLEMENT AGREEMENT & GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into as of this 14th day of December, 2010 between SIGNAL INTERNATIONAL, L.L.C., and its heirs, executors, guardians, administrators, successors, and assigns (collectively "Signal") and FIREMAN'S FUND INSURANCE COMPANY and ONE BEACON INSURANCE COMPANY (collectively referred to as the "MGL Underwriters"), as their interests appear in the Marine General Liability Insurance Policy (bearing policy number OML 92001349) and FIREMAN'S FUND INSURANCE COMPANY, NATIONAL LIABILITY AND FIRE INSURANCE COMPANY, and QBE MARINE & ENERGY SYNDICATE 1036 (collectively herein referred to as the "Bumbershoot Underwriters"), as their interests appear in the Marine Excess Liability Insurance Policy (bearing policy number OXL 92001369), and the MGL Underwriters' and Bumbershoot Underwriters' predecessors and successors, parent, subsidiary, and/or affiliate entities, re-insurers, and any and all of their past and present officers, directors, managers, stockholders, employees, agents, and/or representatives (collectively the "MGL / Bumbershoot Underwriters"). Signal and MGL / Bumbershoot Underwriters are collectively referred to as the "Parties".

### RECITALS

WHEREAS, on August 20, 2009, SIGNAL INTERNATIONAL, L.L.C. owned a floating drydock unit identified as AFDB-5, which was located at its facility in Pleasure Island, Texas;

WHEREAS, on or about August 20, 2009 the AFDB-5 sank at its location in Pleasure Island, Texas ("the Incident");

WHEREAS, in connection with the Incident, SIGNAL INTERNATIONAL, L.L.C., through its insurance broker, submitted a claim(s) to the MGL Underwriters and Bumbershoot Underwriters and to its other insurers;

WHEREAS, also in connection with the sinking of the drydock and the insurance claim(s) arising therefrom, SIGNAL INTERNATIONAL, L.L.C., commenced suit against the MGL Underwriters and Bumbershoot Underwriters in the United States District Court for the Eastern District of Texas in an action captioned *Signal International, L.L.C. v. Fireman's Fund Insurance Company et al.*, and assigned case index number 10-CV-00147 (hereinafter the "Texas Action");

WHEREAS, the MGL Underwriters and Bumbershoot Underwriters commenced suit in the United States District Court for the Southern District of New York in an action captioned *Fireman's Fund Insurance Company et al. v. Great American Insurance Company of New York et al.*, and assigned case index number 10-CV-1653, in which SIGNAL INTERNATIONAL, L.L.C. was made a defendant, for claims and matters arising in connection with the sinking of the drydock (hereinafter the "New York Action");

WHEREAS, among the underlying insurance policies to the Marine Excess Liability Insurance Policy issued by the Bumbershoot Underwriters was a pollution liability insurance

[371]

Signal (NY) 002865

policy (bearing policy number OMH 6539337 05) issued by Great American Insurance Company of New York;

WHEREAS, at the time of the sinking of the drydock AFDB-5, SIGNAL INTERNATIONAL, L.L.C. was insured pursuant to a primary property insurance policy issued by Westchester Surplus Lines Insurance Company (bearing policy number D37362220-001) and by an excess property policy issued by Max Specialty Insurance Company (bearing policy number MAX2XP0004029) (collectively the "Property Policies);

WHEREAS, the parties to this Agreement desire to fully and finally resolve the claims between them on an amicable basis without incurring further legal expense and costs;

NOW, THEREFORE, in consideration of the mutual promises, covenants, conditions and provisions set forth below, the Parties agree as follows:

1. Releases.

   (a) In exchange for good and valuable consideration, including:

   (i) three hundred thousand dollars ($300,000.00) payable to SIGNAL INTERNATIONAL, L.L.C. within thirty days of the date this Agreement is entered into (as set forth in the first paragraph to this Agreement);

   (ii) the prior consent and agreement by the MGL Underwriters and Bumbershoot Underwriters to the contract between SIGNAL INTERNATIONAL, L.L.C. and Weeks Marine, Inc. ("Weeks") for the removal of the AFDB-5 (the "Removal Contract") and to funding thereof as reflected in the Assignment executed by Christopher Cunningham, Chief Financial Officer of SIGNAL INTERNATIONAL, L.L.C., on June 28, 2010;

   (iii) and the settlement of the instant dispute and pending Texas Action and New York Action,

receipt of the foregoing consideration the Parties hereby acknowledge, the Parties hereby fully and finally release, acquit and forever discharge each other from and against any and all claims, demands, liabilities, damages, actions or causes of action, suits and/or controversies of any kind and every nature whatsoever, in admiralty, equity, or law, from the beginning of time to the date of these presents, that are now existing or that have ever existed, without limitation, that occurred or originated as of, or prior to the date of this Agreement, whether such claims, demands, liabilities, damages, actions or causes of action, suits and/or controversies of any kind and every nature, are known or unknown, direct or indirect, joint or several, absolute or contingent, including but not limited to, all claims resulting from or arising out of, or to arise out of, or related to or connected with, directly or indirectly:

   (i) The sinking of the floating drydock unit identified as AFDB-5 owned by SIGNAL INTERNATIONAL, L.L.C. on or about August 20, 2009, in Pleasure Island, Texas;

Signal (NY) 002866

(ii) The Texas Action and/or the New York Action;

(iii) The Marine General Liability Insurance Policy bearing policy number OML 92001349;

(iv) The Marine Excess Liability Insurance Policy bearing policy number OXL 92001369;

(v) Extraneous and/or collateral expenses related to the removal of the drydock AFDB-5, including the lease with the port/landowner and labor, services, and/or materials by SIGNAL INTERNATIONAL, L.L.C. and/or third-parties; and/or

(vi) All claims which have been or could have been asserted by the Parties in the Texas Action and/or New York Action, including, but not limited to all claims and demands whatsoever in admiralty, equity, or law, including, by way of examples and without limiting the broadest application of the foregoing, any actions, causes of action or claims under any contract or any federal, state or local decisional law, statutes, regulations or constitutions, under the laws of the United States and/or each of its individual states, and any claims for fraud, fraudulent inducement, breach of contract, breach of warranty, bad faith, wrongful or tortious conduct, consequential and/or punitive damages, and any injuries arising from any source or condition, which the Parties, their heirs, executors, guardians, administrators or assigns can, shall, or may have, by reason of any matter, cause, or thing whatsoever, including but not limited to those claims or demands allegedly resulting from or relating to, either directly or indirectly, the Texas Action and/or New York Action.

(b) It is understood and agreed by the Parties that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected, now developed or which may develop in the future, except as expressly reserved immediately below.

2. **Claims Against Great American Insurance Company of New York, Westchester Surplus Lines Insurance Company, and Max Specialty Insurance Company.**

(a) Notwithstanding anything to the contrary herein, it is expressly agreed and understood by and between the Parties that in the event, and only in the event, that a legal and/or judicial determination is made that Signal is without coverage under the pollution liability insurance policy issued by Great American Insurance Company of New York because of a material misrepresentation by Signal in conjunction with the placement and/or continuation of Signal's coverage under that policy for claims arising in connection with the sinking of the drydock AFDB-5, then the Bumbershoot Underwriters have the right to seek reimbursement from Signal for any amount not to exceed five million dollars ($5,000,000.00).

(b) It is further agreed and understood by and between the Parties that, notwithstanding anything to the contrary herein, the MGL Underwriters and Bumbershoot Underwriters expressly reserve their rights — and this Agreement shall not be construed as a waiver of such rights — to seek reimbursement and/or contribution for the removal costs of the drydock AFDB-5 from the Property Policies issued by Westchester Surplus Lines Insurance Company (bearing policy number D37362220-001) and Max Specialty Insurance Company

Signal (NY) 002867

(bearing policy number MAX2XP0004029), respectively to the extent those Property Policies provide coverage for the removal of the drydock AFDB-5 and the limits of liability under those Property Policies have not been exhausted by payment of other valid claims SIGNAL INTERNATIONAL, L.L.C. may have as a result of the sinking of the drydock AFDB-5.

(c) It is further agreed and understood by and between MGL / Bumbershoot Underwriters and Signal that, notwithstanding anything to the contrary herein, Signal expressly reserves its rights — and this Agreement shall not be construed as a waiver of such rights — with regard to (i) other claims arising out of or related to the Incident, including but not limited to, claims against Westchester Surplus Lines Insurance Company, Max Specialty Insurance Company, Rectec L.L.C. (which claim is currently pending in the 136th District Court, Jefferson County, Texas, D185-890) or any other party not specifically released herein; and/or (ii) any other claims unrelated to the Incident.

3. **Settlement Not an Admission of Liability.** The Parties agree that this Agreement is the compromise of a disputed claim, and that the payment made is not to be construed as an admission of liability, negligence, breach of contract, breach of warranty, or fault of any kind whatsoever by the Parties nor the validity of any claimed damages, but is to be construed as a compromise and settlement of all issues between the Parties for purposes of avoiding controversy, litigation and expense. The Parties further agree that all claims or allegations of liability, negligence, breach of contract, breach of warranty, fault, and legal responsibility have been and are denied by the Parties.

4. **Dismissal with Prejudice.** Upon execution of this Agreement by the Parties, Signal agrees to withdraw and dismiss the Texas Action with prejudice to the re-filing thereof against all MGL / Bumbershoot Underwriters and to dismiss with prejudice all causes of action, including in particular all counterclaims, against the MGL / Bumbershooot Underwriters in the New York Action. MGL / Bumbershoot Underwriters will execute or cause to be executed on their behalf a Stipulation of Dismissal with Prejudice in the Texas Action and the New York Action, in the form acceptable to the Parties.

5. **Representations and Warranties.** In return for the foregoing consideration, the Parties hereby warrant, represent, and covenant that the Parties are the sole owners of any claims, demands, liabilities, damages, actions or causes, suits and/or controversies of any kind and every nature, which are released by this Agreement and which are in fact released by the Parties pursuant to this Agreement, and that no other persons or entities have any interest in any claims, demands, liabilities, damages, actions or causes of action, suits and/or controversies of any kind and every nature, which the Parties release pursuant to this Agreement. The Parties further covenant that they have not assigned, transferred, pledged, encumbered, or hypothecated any claims the Parties may have against each other to any insurers, re-insurers, governmental entities, or any other person or entity whatsoever, except as provided herein. As of the date of, and upon execution of this Agreement and its waiver and release of all claims, the Parties covenant, represent and warrant that neither the Parties nor any of them, nor any person acting on their behalf, have asserted or will assert, threaten or commence any claim, allegation, action, complaint or proceeding against each other or any of them by reason of any cause, matter or thing, known or unknown, existing up to the present time. If the Parties or any of them should, after the execution of this Agreement, make, pursue, prosecute, or threaten to make any claim or

Signal (NY) 002868

allegation, or pursue or commence or threaten to commence any claim, action, complaint or proceeding against each other, or any of them, for or by reason of any cause, matter or thing whatsoever existing up to the present time, this Agreement may be raised as, and shall constitute, a complete bar to any such claim, allegation, action, complaint or proceeding, and the non-breaching Party shall be entitled to recover from the breaching Party all reasonable costs incurred by virtue of defending same, including reasonable attorney's fees, without altering or diminishing the effectiveness of the release provisions provided under this and the preceding paragraphs; provided, however, that nothing in this Agreement shall limit either of the Parties, individually or collectively, from enforcing their respective rights under this Agreement.

6. **Understanding, competency, authority of persons signing this Agreement with free will.** The Parties represent that they have read all terms of the Agreement and have consulted with legal counsel concerning these terms and conditions, and fully understand these terms and conditions. The Parties further represent that they are of legal age, legally competent, and fully and duly authorized to discontinue the Texas Action and/or New York Action and to execute this Agreement, and further represent that the Parties execute this Agreement of their own free will and not under fraud, misrepresentation, duress, coercion, or by mistake, and not as a result of reliance upon any statements or representations by the Releasees or any of the Releasees' attorneys, agents, or representatives. The Parties acknowledge that they have been represented by licensed attorneys of their choice throughout these negotiations, and the Parties have executed this Agreement with the advice and consent of their respective attorneys and hereby authorize and instruct those attorneys to perform all acts necessary to carry out the intent and purpose of this Agreement. The Parties further acknowledge that they have read and fully understand all the provisions of this Agreement, and that they have executed this Agreement voluntarily and with a full understanding of its meaning and the waivers and releases contained herein.

7. **Attorneys' Fees and Costs.** The Parties hereby waive against each other any claim for attorney's fees arising out of or in connection with, directly or indirectly, the attorneys' representation of the respective Parties, this Agreement and/or any matter which is subject to the releases contained herein.

8. **Entire Agreement of the Parties.** This Agreement embodies the entire agreement between the parties hereto and may not be amended, modified or terminated, nor may any provision hereof be waived, except by express written agreement between the parties. The Parties hereby agree and represent that no promise or agreement not herein expressed has been made to them, and represent that this Agreement contains the entire agreement between the parties hereto, and that the terms of this Agreement are contractual and not merely a recital.

9. **Choice of Law.** This Agreement shall be construed and governed exclusively by the laws of the State of Texas, both statutory and decisional, without giving effect to choice of law principles.

10. **Consent to Choice of Forum.** The Parties' attorneys herewith agree that in the event of a dispute arising out of related to this Agreement, the Parties agree to submit to binding mediation before the Honorable Nicholas Politan, a retired United States District Court Judge.

Signal (NY) 002869

The time and place of the mediation shall be within the discretion of Judge Politan, who will also be empowered to formulate the rules and procedures under which the mediation shall take place.

11.  **Consideration for Certain Sections.** The specific sections of paragraphs 7, 9 and 10 (including Attorneys' Fees and Costs, Choice of Law, and Consent to Choice of Forum) are agreed to be part of the material and bargained-for consideration, in support of this Agreement.

12.  **Agreement to Execute All Necessary Documentation.** The parties to this Agreement agree to execute any further documentation that may be required to implement this Agreement, including but not limited to a stipulation of discontinuance with prejudice.

13.  **Agreement Drafted Jointly.** Each party has cooperated in the drafting and preparation of this Agreement, and it shall be construed according to the plain meaning of the its language and not for or against any party.

14.  **Survival of Terms and Conditions.** The provisions, sections, and paragraphs of this Agreement, and the specific terms set forth therein, are severable. If any provision, section, or paragraph of this Agreement, or specific term contained therein, or the application contained thereof is determined by a court to be illegal, invalid, or unenforceable, the provision, section, paragraph, or term shall not be a part of this Agreement, and the legality, validity and enforceability of the remaining provisions, sections, and paragraphs of this Agreement, and all other terms therein, shall not be affected thereby.

15.  **Binding Nature of Agreement.** The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors.

16.  **Agreement is not Assignable.** This Agreement and any rights or obligations hereunder shall not be assignable by any party hereto without the prior written consent of the others, except as part of a merger or acquisition of all or substantially all of the assets of the entities.

17.  **Execution of the Agreement.** The Agreement may be executed in counterparts, each of which shall be deemed an original and such counterparts shall constitute but one and the same instrument.

Signal (NY) 002870

SIGNAL INTERNATIONAL, L.L.C.

_____
Christopher Cunningham
Chief Financial Officer

On  December 14 , 2010, before me, the undersigned Notary Public in and for the State of Alabama , personally appeared Christopher Cunningham, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Chief Financial Officer of Signal International, L.L.C., and that by his signature on the within instrument, the individual executed this Settlement and General Release on behalf of Signal International, L.L.C., and that such individual made such appearance before the undersigned in the City of Mobile , State of Alabama .

_____
Elizabeth A. Moore
NOTARY PUBLIC, STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 20, 2014
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Page 7 of 9

FIREMAN'S FUND INSURANCE COMPANY, as lead insurer for the MGL Underwriters as their interests appear in the Marine General Liability Insurance Policy bearing policy number OML 92001349

_____

On _____, 2010, before me, the undersigned Notary Public in and for the State of _____, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as _____ _____ of Fireman's Fund Insurance Company, and that by his signature on the within instrument, the individual executed this Settlement and General Release on behalf of Fireman's Fund Insurance Company, and that such individual made such appearance before the undersigned in the City of _____, State of _____.

_____
Notary Public

Signal (NY) 002872

FIREMAN'S FUND INSURANCE COMPANY
as lead insurer for the Bumbershoot
Underwriters as their interests appear in the
Marine Excess Liability Insurance Policy
bearing policy number OXL 92001369

_____

On _____, 2010, before me, the undersigned Notary Public in and for the State of _____, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as _____ of Fireman's Fund Insurance Company, and that by his signature on the within instrument, the individual executed this Settlement and General Release on behalf of Fireman's Fund Insurance Company, and that such individual made such appearance before the undersigned in the City of _____, State of _____.

_____
Notary Public

X:\Public Word Files\12155\Settlement General Release.12.14.10.doc

Signal (NY) 002873

## ASSIGNMENT

For and in acknowledgement of good and valuable consideration, as detailed in part more fully below, the receipt and sufficiency of which is hereby further acknowledged, SIGNAL INTERNATIONAL, L.L.C. ("Assignor") does hereby assign, transfer, grant, and deliver to FIREMAN'S FUND INSURANCE COMPANY and ONE BEACON INSURANCE COMPANY (collectively herein referred to as the "MGL Underwriters"), as their interests appear in the Marine General Liability Insurance Policy (bearing policy number OML 92001349) and FIREMAN'S FUND INSURANCE COMPANY, NATIONAL LIABILITY AND FIRE INSURANCE COMPANY, and QBE MARINE & ENERGY SYNDICATE 1036 (collectively herein referred to as the "Bumbershoot Underwriters"), as their interests appear in the Marine Excess Liability Insurance Policy (bearing policy number OXL 92001369), and the MGL Underwriters' and Bumbershoot Underwriters' respective agents, subsidiaries, affiliates, and/or parents (hereinafter sometimes referred to collectively as "Assignee"), all of Assignor's right, title, share, and interest in and to its claims and causes of action against Great American Insurance Company of New York ("Great American") and Great American's agents, subsidiaries, affiliates, and/or parents, for any rights, entitlements, claims, proceeds, and/or payments owing under, against, and/or in connection with Great American's pollution liability insurance policy (bearing policy number OMH 653933705) ("the Great American pollution policy") for the sinking of drydock AFDB-5 on or about August 20, 2009 (hereinafter the "Claim").

As part of the consideration for this Assignment, the MGL Underwriters and the Bumbershoot Underwriters confirm that they have given consent to the contract

1

[372]

Signal (NY) 002860

for the removal of the AFDB-5 between Signal and Weeks Marine, Inc. ("Weeks"), dated June 22, 2010, (the "Removal Contract") and MGL Underwriters and Bumbershoot Underwriters have confirmed that they will make payments (on a without prejudice basis and with a full reservation of rights under their respective policies and at law) directly to Weeks as required pursuant to the Removal Contract, upon receipt of written confirmation from Signal that Milestones as defined in the Removal Contract have been achieved and that the payments are properly payable, and with no claim for reimbursement, set off or contribution from Assignor, except in the event the Assignment is nullified and/or as otherwise detailed below. Moreover, Bumbershoot Underwriters will agree to pay Signal for all valid claims covered under Signal's Marine General Liability Policy (Policy Number OML 92001349) and Signal's Marine Excess Liability Insurance Policy (bearing policy number OXL 92001369) in accordance with each respective Policy's terms and conditions, including but not limited to each respective policy's limits of liability and other insurance clauses, and the Maintenance of Underlying Insurance Clause as provided in the Bumbershoot policy.

Assignor does hereby irrevocably authorize and empower Assignee, its successors and assigns, to commence action upon, continue action upon, and/or prosecute and collect on, all causes of action or claims and to take all legal or other measures deemed proper or necessary with respect to the aforesaid Claim, including the prosecution of same in litigation with the same force and effect as if done so and solely in the name of Assignor but and solely at Assignee's expense and in Assignee's name. The attorneys' fees and costs of prosecuting the aforesaid Claim shall be borne solely by

Signal (NY) 002861

Assignee and Assignor shall under no circumstances have any obligation to meet reimburse or contribute to such attorneys' fees and costs.

Assignee hereby is given specific, irrevocable authority to settle the Claim, which is the subject of this Assignment, on any basis without approval or permission of Assignor and Assignor agrees that any and all monies collected in the prosecution and/or compromise of the aforementioned Claim, shall be the property of Assignee and shall not in any manner accrue to the benefit of Assignor or any other persons claiming by or through Assignor.

Assignee shall defend, indemnify and hold Assignor harmless (including payment of attorneys' fees) for any claim, counterclaim or other proceedings that Great American might assert against Assignor arising out of this Assignment except as set forth expressly below.

It is further agreed that this Assignment and all of its terms and conditions shall be void and without legal effect in the event, and only in the event, that a legal and/or judicial determination is made that Assignor is without coverage under the Great American pollution policy because of a material misrepresentation by Assignor in conjunction with the placement and/or continuation of Assignor's coverage under that policy for the Claim. In that event only, the Bumbershoot Underwriters hereby reserve the right to seek reimbursement from the Assignor for an amount not to exceed $5 million.

Nothing contained herein shall be construed as a waiver by the Bumbershoot Underwriters' of their right to seek reimbursement and/or contribution for the cost of removal of the wrecked drydock from the proceeds which have been paid to

Signal (NY) 002862

Signal or may be paid to Signal under the primary and excess property insurance policies issued by Westchester Surplus Lines Insurance Company (bearing policy number D37362220-001) and Max Specialty Insurance Company (bearing policy number MAX2XP0004029), respectively to the extent the property policies respond for debris removal of the wrecked drydock to the extent the property policies' limits have not been exhausted by other claims. The Bumbershoot Underwriters shall have the right to receive copies of all materials and information, which are submitted by Signal to the primary and/or excess property insurers as soon as Signal's claims under the primary and excess property insurance policies have been settled. In the event of any dispute between Signal and the Bumbershoot Underwriters concerning the appropriateness of the payments to Signal under the primary and excess property insurance contracts, the parties hereto agree to submit to binding mediation before the Honorable Nicholas Politan, a retired United States District Court Judge. The time and place of the mediation shall be within the discretion of Judge Politan, who will also be empowered to formulate the rules and procedures under which the mediation shall take place.

This Assignment shall be interpreted under the laws of the State of Texas. Except as expressly provided herein, this Assignment shall in no way effect the Parties' rights and the Parties expressly reserve and maintain all rights and remedies against one another, any other party, Underwriters or insurance company in any way arising out of the sinking of the AFDB-5, including, but not limited to, Assignor's personal jurisdictional defenses to the lawsuit filed by Bumbershoot Underwriters against Assignor in the United States District Court for the Southern District of New York (Civ. Action: 10-cv-1653), which defenses the parties agree are expressly reserved. It is further

Signal (NY) 002863

agreed that if the terms of the Assignment hereinabove set forth or any of its terms shall be held invalid or should not be given effect, for any reason, this shall not affect the validity or finality of the foregoing agreement.

SIGNAL INTERNATIONAL, L.L.C.

_____
Christopher Cunningham
Chief Financial Officer

On June 28, 2010, before me, the undersigned Notary Public, personally appeared Christopher Cunningham, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to this Assignment and acknowledged to me that s/he executed the same in her/his capacity as Chief Financial Officer of SIGNAL INTERNATIONAL, L.L.C., and that by her/his signature on this Assignment, the individual executed this Assignment on behalf of SIGNAL INTERNATIONAL, L.L.C., and that such individual made such appearance before the undersigned in the City of Mobile, State of Alabama.

_____
Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Apr 9, 2014
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Signal (NY) 002864